JEFFREY M. RATINOFF (SBN 197241)
Email: jeffrey.ratinoff@bipc.com
BUCHANAN INGERSOLL & ROONEY, LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418
Telephone: (650) 622-2300
Facsimile: (650) 622-2499

Attorneys for Plaintiff,
FIRST ADVANTAGE BACKGROUND SERVICES CORP.

E-filing

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

FIRST ADVANTAGE BACKGROUND SERVICES CORP., a Florida corporation,

Plaintiff,

vs.

PRIVATE EYES, INC., a California corporation, DOES 1-10

Defendants.

Case No. C 07 2424

COMPLAINT FOR (1) BREACH OF WRITTEN CONTRACT; (2) BREACH OF IMPLIED-IN-FACT CONTRACT; (3) COMMON COUNT FOR SERVICES PERFORMED; (4) OPEN BOOK ACCOUNT; (5) ACCOUNTS STATED; AND (6) UNJUST ENRICHMENT/QUANTUM MERUIT

DEMAND FOR JURY TRIAL

FIRST ADVANTAGE BACKGROUND SERVICES CORP. ("Plaintiff" or "First Advantage") hereby complains and alleges as follows:

**PARTIES**

1. First Advantage is and, at all relevant times mentioned herein, was a corporation organized and existing under the laws of the State of Florida with its principal place of business in St. Petersburg, Florida. First Advantage is a leading risk mitigation and business solutions provider, including a comprehensive suite of employer solutions specifically designed to reduce the time and cost associated with recruiting, hiring management, screening and ongoing retention processes of employees. Among other things, First Advantage provides employers with drug testing and screening services, driver qualification and employee background verifications.

COMPLAINT

2. First Advantage is the successor in interest to Employee Information Services, Inc. ("EIS"). In or about September 2003, First Advantage acquired all of EIS' assets, rights and interests.

3. Plaintiff is informed and believes, and based thereon alleges that Defendant PRIVATE EYES, INC. ("Defendant" or "Private Eyes") is and, at all relevant times mentioned herein was, a corporation organized and existing under the laws of the State of California and its principle place of business is located in Walnut Creek, California. Plaintiff is further informed and believes, and based thereon alleges that Private Eyes provides pre-employment screening, background investigations, drug screening, physicals, and Department of Transportation ("DOT") driver qualification files to businesses.

4. The true and names and capacities, whether individual, corporate, associate or otherwise, of defendants Does 1 through 10, inclusive, are unknown to Plaintiff who therefore sues said defendants by such fictitious names. Plaintiff is informed and believes, and based thereon alleges that each of the defendants designated herein as a fictitiously named defendant is, in some manner, responsible for the events and happenings herein referred to, either contractually or tortiously, and caused the damage to the Plaintiff as herein alleged. When Plaintiff ascertains the true names and capacities of Does 1 through 10, it will ask leave of this Court to amend its complaint by setting forth the same.

5. Plaintiff is informed and believes, and based thereon alleges that at all times mentioned herein, each of the defendants named in the caption of this complaint, which is incorporated herein by this reference, was, and now is, the agent, servant and employee of each of the other defendants and were acting in the course and scope of said agency and/or employment, and all of the things alleged to have been done by said defendants were done in the capacity of, and as agents of, the other defendants, and were ratified and approved by the officers or agents of the other defendants. Plaintiff shall hereinafter collectively refer to defendants Private Eyes, Inc. and Does 1 through 10 as "Private Eyes" or "Defendant."

**JURISDICTION AND VENUE**

6. The Court has original jurisdiction over this action under 28 U.S.C. § 1332, in that it

is a civil action between citizens of different states and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

7. Plaintiff is informed and believes, and based thereon alleges that the Court has personal jurisdiction over Private Eyes because, inter alia, Private Eyes: (a) was incorporated in the State of California on or about September 2, 1999; (b) has its principle place of business in Walnut Creek, California; and (c) operates, conducts, engages and carries on a continuous and substantial business within Contra Costa County and the State of California.

8. Venue is proper in the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1391 in Plaintiff is informed and believes and thereon alleges that Private Eyes has a substantial presence in and otherwise resides in the Northern District of California and because personal jurisdiction exists over Private Eyes in the Northern District of California.

9. Plaintiff is informed and believes, and based thereon alleges that a substantial part of the events and omissions, which give rise to this action, including the place where at least part of the contract was to be performed and where the breaches occurred took place in the State of California. Thus, the agreement at issue is to be construed in accordance with and governed by the laws of the State of California.

### GENERAL ALLEGATIONS

10. In or about 2002, Plaintiff is informed and believes, and based thereon alleges that Coca-Cola Enterprises Inc. ("CCE") contracted with Private Eyes for background screens and drug screening and testing for CCE's employees. Plaintiff is further informed and believes, and based thereon alleges that Private Eyes did not have the capability to provide drug screening and testing services to CCE. As a result, Private Eyes approached EIS, the predecessor-in-interest to First Advantage, to provide drug screening and testing services directly to CCE.

11. In or about March 2002, Private Eyes and EIS negotiated a contract where EIS would provide drug screening and testing services directly to CCE. This agreement was memorialized in a letter agreement, dated March 19, 2002 and executed by Private Eyes on or about March 29, 2002 ("the Agreement"). A true and correct copy of the Agreement is attached to this

1  Complaint as Exhibit A and is incorporated herein by reference.

2      12. The parties agreed that since CCE's contract for services was with Private Eyes, EIS would bill Private Eyes and Private Eyes would, in turn, bill CCE for those services. Further, because Private Eyes indicated it would be offering CCE a 3% "fast pay" discount for any invoices paid to Private Eyes within fifteen days and, EIS agreed to offer Private Eyes a 3% "fast pay" discount for any invoice paid to EIS within twenty-two days.

    13. The specific services to be provided by EIS and the price for those services were identified in the Agreement. The Agreement also contemplated that EIS may be asked to provide additional testing, screening, physicals and other related services.

    14. After the parties executed the Agreement, EIS began providing CCE with the agreed-upon testing and screening services and continued to perform such services under the terms of the Agreement. In turn, Private Eyes began performing under the Agreement by allowing First Advantage to perform those services and by paying for those services.

    15. During the course of the parties' dealings under the Agreement, EIS began providing additional services and testing at CCE's request, which were priced on a quoted per service/test basis and billed in a manner consistent with the originally agreed-upon testing and screening services.

    16. After First Advantage's acquisition of EIS in or about September 2003, where First Advantage obtained all of EIS' rights and interest in the Agreement, First Advantage continued to provide services to CCE as previously agreed by Private Eyes and EIS under the Agreement. In turn, Private Eyes accepted First Advantage as EIS' successor in interest by, among other things, allowing First Advantage to continue to provide services to CCE and by paying for those services up to about June 2005 when Private Eyes began to repeatedly breach the Agreement.

    17. During the normal course of business, EIS, and after the acquisition, First Advantage billed Private Eyes at the end of each month with each invoice being due within thirty (30) days thereafter.

    18. Between June 2005 and through the present, Private Eyes repeatedly and materially breached the Agreement.

19. Beginning with the June 2005 invoice and continuing through the June 2006 invoice, Private Eyes unilaterally imposed the 3% "fast pay" discount despite Private Eye's failure to pay any of those invoices within the agree-upon "fast-pay" period. In some instances, the wrongfully applied "fast pay" discount exceeded .3% of the invoice amount.

20. Plaintiff is informed and believes, and based thereon alleges that Private Eyes also wrongfully applied the "fast pay" discount to invoices sent by First Advantage where CCE had paid the full amount of the corresponding invoice sent by Private Eyes to CCE.

21. First Advantage repeatedly demanded that Private Eyes cease invoking the "fast pay" discount in an improper manner and to reimburse First Advantage for the wrongfully withheld funds.

22. Between June 2005 and October 2006, Private Eyes' payment of outstanding invoices also became more erratic and untimely.

23. By November 2006, Private Eyes had failed to pay any amount towards the July 2006, August 2006, September 2006 and October 2006 invoices.

24. In or about October and November 2006, First Advantage made several demands that Private Eyes immediately remit the amounts due and owing to First Advantage on the July 2006, August 2006, and September 2006 invoices, as well as monies improperly withheld by Private Eyes under the guise of the "fast pay" discount.

25. Despite First Advantage's demands, Private Eyes failed to pay the amounts due and owing to First Advantage.

26. As a result of Private Eyes' material breaches consisting of failures to timely pay and the wrongful withholding of monies under the guise of the "fast pay" discount, in or about November 2006, First Advantage was forced to terminate the Agreement and discontinue providing testing and screening and other related services to CCE on Private Eyes' behalf under the Agreement.

27. In or about November 2006, Private Eyes indicated that it would pay First Advantage the monies due and owing. However, when Private Eyes finally paid the July 2006, August 2006, and September 2006 invoices, it again improperly applied the "fast pay" discount

1  despite these invoices being past due. By the time that Private Eyes paid these invoices, Private
2  Eyes had wrongfully withheld at least $153,000 for the period of June 2005 through September
3  2006. First Advantage again demanded that Private Eyes reimburse these monies due and owing to
4  First Advantage.

5      28.    On or about the end of October 2006, First Advantage issued its October 2006
6  invoice, which totaled over $270,000.00, to Private Eyes. A true and correct copy of the first page
7  of the October 2006 invoice is attached hereto as Exhibit B.

8      29.    First Advantage is informed and believes, and based thereon alleges, that Private
9  Eyes received payment from CCE for at least the amount reflected in the October 2006 invoice for
10 services performed by First Advantage. Nonetheless, Private Eyes refused and continues to refuse
11 to pay the entire balance owed to First Advantage for that month.

12     30.    As a result of Private Eyes' material breaches of the Agreement and the parties'
13 course of dealing based thereon, there is now approximately over $423,000.00, plus interest, due
14 and owing for services performed by First Advantage on behalf of and for the benefit of Private
15 Eyes.

## FIRST CAUSE OF ACTION

(Breach of Written Contract)

18     31.    Plaintiff repeats and re-alleges the allegations contained in paragraph 1 through 30,
19 inclusive, above and incorporates the same by reference as though set forth in full herein.

20     32.    On or about March 29, 2002, Defendant entered into the Agreement with Plaintiff.

21     33.    After the parties entered into the Agreement, Plaintiff began to regularly provide
22 services on behalf of and for the benefit of Defendant.

23     34.    Beginning in or about June 2005 and continuing through November 2006, Defendant
24 breached the Agreement by failing to pay in full for the agreed-upon services performed by
25 Plaintiff, which were reflected by monthly invoices, by improperly and arbitrarily discounting its
26 payments for such services.

27     35.    Defendant also breached the Agreement by failing and refusing to pay the sums due
28 and owing as reflected by the October 2006 invoice, pursuant to the terms of the Agreement, despite

Plaintiff's demands to Defendant.

36. Plaintiff has performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms of the parties' agreement, except those conditions, covenants, and promises, the performance of which were excused as a result of Defendant's material breaches of the Agreement.

37. As a direct and proximate result of Defendant's breaches of the Agreement, Plaintiff has been damaged in an amount according to proof at trial, but in no event less than the approximate amount of $423,000.00, plus interest on that amount at the rate of ten percent (10%) per annum from the time of breach. Further, based on Defendant's breaches of its contractual duties, Plaintiff has incurred attorneys' fees and costs of bringing this action. Plaintiff will continue to incur such interest, fees and costs in amounts to be proven at time of trial.

WHEREFORE, Plaintiff prays for relief as set forth below.

## SECOND CAUSE OF ACTION

(Breach of Implied in Fact Contract – Cal. Civ. Code § 1621)

38. Plaintiff repeats and re-alleges the allegations contained in paragraph 1 through 37, inclusive, above and incorporates the same by reference as though set forth in full herein.

39. Plaintiff performed all of the above-mentioned acts as part of the course of dealing between Plaintiff and Defendant, as reflected by the Agreement and the monthly invoices sent by Plaintiff to Defendant, and as a result of the personal understanding between Plaintiff and Defendant, as well as the result of oral and written representations creating and enforcing Plaintiff's reasonable expectation that Defendant would continue to perform under the implied in fact contract between Plaintiff and Defendant.

40. Plaintiff performed all of the acts in relation to the implied in fact contract as part of the course of dealing between Plaintiff and Defendant, as reflected by the Agreement and the monthly invoices sent by Plaintiff to Defendant, and as a result of the personal understanding between Plaintiff and Defendant, as well as the result of oral and written representations creating and enforcing Plaintiff's reasonable expectation that Defendant would perform under the implied contract between Plaintiff and Defendant.

41. Plaintiff has performed all conditions, covenants and promises required on its part to be performed in accordance with the implied in fact contract.

42. Defendant has breached the implied in fact contract by failing to pay the amounts reflected by the monthly invoices sent by Plaintiff to Defendant in accordance to the terms of the implied in fact contract and by improperly discounting its payments that it made under that implied in fact contract. Plaintiff has made repeated demands upon Defendant to perform under the implied in fact contract by paying all monies due and owing for services performed by Plaintiff, but Defendant has refused.

43. As a direct and proximate result of Defendant's breaches of its contractual duties, Plaintiff has been damaged in the approximate amount of at least $423,000.00, plus interest on that amount at the rate of ten percent (10%) per annum from the time of breach. Further, based on Defendant's breaches of its contractual duties, Plaintiff has incurred attorneys' fees and costs of bringing this action. Plaintiff will continue to incur such interest, fees and costs in amounts to be proven at time of trial.

WHEREFORE, Plaintiff prays for relief as set forth below.

### THIRD CAUSE OF ACTION

(Common Count For Services Performed)

44. Plaintiff repeats and re-alleges the allegations contained in paragraph 1 through 43, inclusive, above and incorporates the same by reference as though set forth in full herein.

45. Within the last two years, Defendant became indebted to Plaintiff in the sum of $4,275,273.88 for services performed by Plaintiff at the request of and for the benefit of Defendant at an agreed price.

46. Plaintiff has repeatedly demanded payment from Defendant. The last demand was made on or about April 9, 2007.

47. Defendant has paid only the sum of $3,835,382.26 to Plaintiff, leaving a balance due of $439,891.62, plus interest on that amount at the rate of ten percent (10%) per annum from and after the date payments were due.

48. Plaintiff has incurred and will continue to incur attorneys' fees and costs in

Buchanan Ingersoll & Rooney LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418

connection with this matter in an amount to be determined at trial. Plaintiff is entitled to recover its attorneys' fees and costs incurred pursuant to law, including under California Civil Code Section 1717.5.

WHEREFORE, Plaintiff prays for relief as set forth below.

## FOURTH CAUSE OF ACTION

(Open Book Account)

49. Plaintiff repeats and re-alleges the allegations contained in paragraph 1 through 48, inclusive, above and incorporates the same by reference as though set forth in full herein.

50. Within the last two years, Defendant became indebted to Plaintiff on an open book account for money due in the sum of no less than $439,891.62 for services performed by Plaintiff at the request Defendant, and for which Defendant agreed to pay.

51. Neither the whole nor any part of the above sum has been paid, although a demand therefor has been made. There is now due, owing, and unpaid the sum of no less than $439,801.62, plus interest on that amount at the rate of ten percent (10%) per annum from and after the date payments were due.

52. Plaintiff has incurred and will continue to incur attorneys' fees and costs in connection with this matter in an amount to be determined at trial. Plaintiff is entitled to recover its attorneys' fees and costs incurred as a result of Defendant's failure to pay its debt on an open book account, pursuant to law, including under California Civil Code Section 1717.5.

WHEREFORE, Plaintiff prays for relief as set forth below.

## FIFTH CAUSE OF ACTION

(Account Stated)

53. Plaintiff repeats and re-alleges the allegations contained in paragraph 1 through 52, inclusive, above and incorporates the same by reference as though set forth in full herein.

54. Within the last two years, in Contra Costa County, California, an account was stated in writing by and between Plaintiff and Defendants wherein it was acknowledged that Defendant was indebted to Plaintiff in the amount of $439,891.62.

55. Although demand has been made on Defendants, no part of said sum has been paid,

1  and there is now due, owing and unpaid to Plaintiff from Defendants, the sum of at least
2  $439,801.62, plus interest on that amount at the rate of ten percent (10%) per annum from and after
3  the date payment was due.

4      56.    Plaintiff has incurred and will continue to incur attorneys' fees and costs in
5  connection with this matter in an amount to be determined at trial. Plaintiff is entitled to recover its
6  attorneys' fees and costs incurred pursuant to law, including under California Civil Code Section
7  1717.5.

8      WHEREFORE, Plaintiff prays for relief as set forth below.

### SIXTH CAUSE OF ACTION

(Unjust Enrichment/Quantum Meruit)

11      57.    Plaintiff repeats and realleges the allegations contained in paragraph 1 through 56
12  inclusive, above and by reference thereto, incorporates the same as though set forth in full herein.

13      58.    Within the last two years, Plaintiff performed services at the request of, on behalf of
14  and for the benefit of Defendant.

15      59.    Defendant knew that these services were being provided and promised to pay their
16  reasonable value.

17      60.    Plaintiff reasonably relied on Defendant's promise to pay for services rendered.

18      61.    The fair and reasonable value of the services provided to the Defendant was at least
19  $4,275,273.88. The services performed are reflected in written invoices sent by Plaintiff to
20  Defendant for the months of June 2005 through October 2006.

21      62.    Defendant has paid only the sum of $3,835,382.26 to Plaintiff, leaving a balance of
22  at least $439,891.62 due and owing.

23      63.    Plaintiff has repeatedly demanded payment of the remaining balance from
24  Defendant. However, Defendant has failed and refused, and continues to fail and refuse, to
25  reimburse Defendant for the remaining balance.

26      64.    Plaintiff is informed and believes and based thereon alleges, that CCE has paid
27  Defendant for at least the amounts stated in the invoices for the months of June 2005 through
28  October 2006 for services performed by Plaintiff. Defendant has therefore been unjustly enriched

by failing to pay Plaintiff the remaining balance due and owing.

65. As a direct and proximate result of the above-referenced acts and omissions by Defendant, Plaintiff is entitled to restitution of the amount by which Defendant was unjustly enriched.

66. Plaintiff has incurred and will continue to incur attorneys' fees and costs in connection with this matter in an amount to be determined at trial. Plaintiff is entitled to recover its attorneys' fees and costs incurred pursuant to law, including under California Civil Code Section 1717.5.

WHEREFORE, Plaintiff prays for relief as set forth below.

### PRAYER

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1. For actual damages in the sum of no less than $439,891.62
2. For interest thereon as authorized by law;
3. For reasonable attorneys' fees according to proof as authorized by law;
4. For costs of suit incurred herein; and
5. For such other and further relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure, Plaintiff FIRST ADVANTAGE BACKGROUND SERVICES CORP. hereby demands trial by jury of all issues so trialable.

Dated: May 4, 2007                    Respectfully submitted,

                                      BUCHANAN INGERSOLL & ROONEY LLP

                                      By: _____
                                          JEFFREY M. RATINOFF
                                          Attorneys for Plaintiff
                                          FIRST ADVANTAGE BACKGROUND
                                          SERVICES CORP.

Exhibit A



Employee Information Services

[via email]

March 19, 2002

Ms. Sandra James
Private Eyes, Inc
700 Ygnacio Valley Road #350
Walnut Creek, CA 94596

Dear Ms. James:

Thank you for taking time today to discuss the opportunities with Coca-Cola. I am biased, but I believe that Employee Information Services (EI) is uniquely able to partner with Private Eyes for this relationship and hopefully many others. Due to the relative speed in which this opportunity is developing, I believe it is worth documenting some of what has been discussed and agreed to at this point. Therefore, please consider this letter as a Letter of Understanding (LOU) and a work in process. For the purposes of this letter and in respect to time, this LOU applies for Coca-Cola but can be expanded at any time to address other prospects or current clients of Private Eyes and EI.

Business Relationship:
It is EI's understanding that Coca-Cola has contracted with Private Eyes for background screens and drug screening. Private Eyes is seeking a partner to provide drug screening services directly to Coca-Cola. Therefore, EI will provide complete support and services for drug screening directly to Coca-Cola.

As a result of this relationship and for the purposes of developing a partnership relationship with Private Eyes, Coca-Cola and possibly other clients, EI will agree not to directly solicit Coca-Cola for any of the services provided by Private Eyes unless EI receives the written consent of Private Eyes. In return, Private Eyes will agree not to directly solicit Coca-Cola for any of the services that are provided by EI unless Private Eyes receives the written consent of EI.

The parties realize that the success of the Coca-Cola relationship is dependant on the satisfactory performance of both of the service components of the contract. Private Eyes reserves the right to cancel subcontract with EIS if Coca-Cola expresses dissatisfaction with the performance of EIS and EIS is unable to correct any performance deficiencies within 30 days of formal or informal notice from Coca-Cola of such dissatisfaction.

Invoicing
    Since Coca-Cola's contract for services is with Private Eyes, Private Eyes will be responsible for unified invoicing to the client. Therefore, EI will agree to and provide data to Private Eyes to import into their financial package to generate appropriate invoicing. Specifications and methods of interfacing billing data will be agreed to at a later time

Pricing
    EI offers Private Eyes the following pricing for services to be provided to Coca-Cola.

    "In Network" Drug Screening                          $23.00 per test
    - Source in-network collection facilities
    - Set up in-network collection facilities
    - Complete urine specimen collection
    - Set up laboratory accounts
    - Order laboratory supplies
    - Complete laboratory analysis
    - Order pre-printed Custody and Control Forms
    - Oversee Medical Review Officer services
    - Report results
    - Store records
    - Consolidate urine collection, laboratory, MRO and program management fees

    "Out of Network" Drug Screening                      $41.00 per test
    - Source out of network collection facilities
    - Set up out of network collection facilities
    - Complete urine specimen collection
    - Set up laboratory accounts
    - Order laboratory supplies
    - Complete laboratory analysis
    - Order pre-printed Custody and Control Forms
    - Oversee Medical Review Officer services
    - Report results
    - Store records
    - Consolidate urine collection, laboratory, MRO and program management fees

    Mobile/After-Hours Services.                         see below
    - Coordination for the collection of mobile/post-accident tests performed at $100/hour (one-hour minimum) plus the actual cost of the collection
    - Mobile charges (which are based on mileage, wait time, number of people tested, tests performed and other applicable charges) passed through at cost

    Please note that EI has additional services that can be quoted at a future time including:
        DOT or Non-DOT physicals scheduling, review, and compliance
        Medical Consultation and return to duty evaluation
        Employee Assistance Programs (EAP)

    Follow up testing, rehabilitation management
    Policy development
    Records Management (Driver files, compliance checks, etc)

**Payments and Rebates**
    EI's billing data to Private Eyes will be at the rates listed above. Alternately, EI's bill to Private Eyes can be at a reduced rate and Private Eyes can "mark up" the amount for invoicing to the client.

    It is EI's understanding that CocaCola will be offered a 3% discount (based on $23.00 actual cost of goods) for any invoices paid to Private Eyes less than net-15. Accordingly, EI will offer Private Eyes a 3% discount for any invoice paid to EI net-22 or less.

**Future Agreements**
    It is understood and agreed to by both EI and Private Eyes that there may be additional agreements and / or contracts to formalize this or other business initiatives. Therefore, this LOU may be superceded.

Sandra, in the brief conversations that we have had to date, it is obvious that both of our companies have similar goals and priorities on service, value add, and mutually beneficial relationships. EI strives to infuse integrity and ingenuity into an industry that is plagued with border-line business practices. I am confident that as we continue to develop our abilities to partner together, our companies and our clients will benefit from our efforts.

Please do not hesitate to contact me. I look forward to working with you and your organization. To formalize our understandings and intents, if you find this LOU agreeable, please sign and return a copy to me.

Best Regards,

*Todd Oliver* (signature)

Todd Oliver
Employee Information Services

Agreed to by:

*Sandra James* (signature)

Sandra James
Private Eyes Incorporated

Date 3/29/02

Exhibit B



**FIRSTAdvantage**

100 CARILLON PKWY
ST PETERSBURG, FL 33716

RIVATE EYES, INC
TTN: ACCOUNTS PAYABLE
)0 N WIGET LANE SUITE 220
'ALNUT CREEK, CA 94598

INVOICE NUMBER: 272157
INVOICE DATE: 10/01/06 TO 10/30/06
TERMS: 30-Nov-06

| DESCRIPTION | DATE | AMOUNT |
|---|---|---|
| CTOBER 2006 DRUG | 10/30/2006 | 182,431.00 |
| CTOBER 2006 PHYSICALS | 10/30/2006 | 42,126.00 |
| CTOBER 2006 BILLBACKS | 10/30/2006 | 46,064.64 |
| OTAL | | 270,621.64 |

mportant: Detach and Return This Portion With Your Payment
To ensure proper credit to your account, please
Write your customer and invoice number on check

REMIT TO: *FIRST ADVANTAGE OCCUPATIONAL HEALTH SVCS*
100 CARILLON PKWY
ST PETERSBURG, FL 33716

CUSTOMER NAME PRIVATE EYES
CUSTOMER NUMBER C 53804
INVOICE NUMBER 272157

AMOUNT DUE   $270,621.64

AMOUNT ENCLOSE