JEFFREY M. RATINOFF. (SBN 197241)
Email: jeffrey.ratinoff@bipc.com
KARINEH KHACHATOURIAN. (SBN 202634)
Email: karineh.khachatourian@bipc.com
BUCHANAN INGERSOLL & ROONEY, LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA  94065-1418
Telephone:  (650) 622-2300
Facsimile:  (650) 622-2499

Attorneys for Plaintiff and Counter-Defendant,
FIRST ADVANTAGE BACKGROUND SERVICES CORP.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FIRST ADVANTAGE BACKGROUND SERVICES CORP., a Florida corporation,<br><br>Plaintiff,<br><br>vs.<br><br>PRIVATE EYES, INC., a California corporation, DOES 1-10<br><br>Defendants.<br><br>─────────────────────────<br><br>AND RELATED COUNTER-CLAIMS. | Case No.: C 07-02424 SC<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO DISMISS PRIVATE EYES, INC.'S COUNTERCLAIMS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[F.R.Civ.P. 9(b) and F.R.Civ.P. 12(b)(6)]<br><br>Date:  August 17, 2007<br>Time:  10:00 a.m.<br>Judge:  Honorable Samuel Conti<br>Dept.:  Courtroom 1<br><br>Complaint Filed:    May 4, 2007 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT, on August 17, 2007 at 10:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 1 of the above entitled court, located at 450 Golden Gate Avenue, 17th Floor, San Francisco, California, Plaintiff and Counter-Defendant First Advantage Background Services Corp. ("First Advantage"), will move for an order pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") and applicable case law dismissing Defendant and Counterclaimant Private Eyes, Inc.'s ("PEI") Fourth, Fifth and Ninth Causes of Action in its Counterclaim asserted against First Advantage with prejudice.

- 1 -

Buchanan Ingersoll & Rooney LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418

Buchanan Ingersoll & Rooney LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418

1    First Advantage will also move for an order pursuant to Federal Rule of Civil Procedure 9(b)

2  ("Rule 9(b)") and Rule 12(b)(6) dismissing PEI's Sixth, Seventh and Eighth Causes of Action in its

3  Counterclaim asserted against First Advantage with prejudice.

4    This motion is made on the grounds that: (1) PEI's Fourth and Fifth Causes of Action are

5  barred by the applicable statute of limitations; (2) PEI's Fifth Cause of Action fails to adequately

6  state a claim for intentional interference with prospective economic relations; (3) PEI's Sixth Cause

7  of Action fails to meet Rule 9(b)'s heightened pleading standards and is barred by the applicable

8  statute of limitations; (4) PEI's Seventh Cause of Action fails to meet Rule 9(b)'s heightened

9  pleading standards and fails to adequately state a claim for fraud; (5) PEI's Eighth Cause of Action

10  fails to meet Rule 9(b)'s heightened pleading standards, fails to adequately state a claim for fraud

11  and is barred by the litigation privilege pursuant to Cal. Civ. Code § 47(b); and (6) PEI's Ninth

12  Cause of Action fails to adequately state a claim for unfair trade practices under Cal. Bus. & Prof.

13  Code § 17200 et seq.

14    This motion is based upon this Notice of Motion and Motion, the Memorandum of Points

15  and Authorities below, PEI's Counterclaim filed in this action and the Request for Judicial Notice,

16  along with the papers, records, and pleadings on file herein and on such other and further matters as

17  may be presented at the hearing on this motion.

18

19  Dated:  July 12, 2007                    Respectfully submitted,

20                                           BUCHANAN INGERSOLL & ROONEY LLP

21

22  _____/s/ Jeffrey M. Ratinoff_____
    By:    JEFFREY M. RATINOFF

23         Attorneys for Plaintiff
           FIRST ADVANTAGE BACKGROUND

24         SERVICES CORP.

25

26

27

28

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION AND SUMMARY OF THE ARGUMENT ........................................1

II. STATEMENT OF ISSUES TO BE DECIDED ....................................................2

III. FACTUAL AND PROCEDURAL BACKGROUND........................................................3

IV. LEGAL DISCUSSION..........................................................................5

    A. Applicable Legal Standards. ...............................................................5

    B. PEI's Fourth And Fifth Causes Of Action For Intentional Interference Are Barred By The Applicable Two-Year Statute Of Limitations. ...............................6

    C. PEI's Fifth Cause Of Action Fails To Allege Facts Sufficient To Plead A Claim For Intentional Interference With Prospective Economic Relations.............9

    D. The Court Should Dismiss PEI's Sixth Cause of Action For Fraud Without Leave To Amend..........................................................................11

        1. PEI's Sixth Cause of Action Is Barred By The Three-Year Statute Of Limitations For Fraud Claims.................................................................11

        2. PEI's Attempt To "Plead Around" The Statute Of Limitations Cannot Save Its Sixth Cause of Action. .................................................................12

        3. PEI's Sixth Cause of Action Fails To Meet Rule 9(b)'s Heightened Pleading Requirements. ..................................................................14

    E. PEI's Seventh Cause Of Action Fails To State A Cognizable Claim For Fraud. ....................................................................................14

        1. PEI's Seventh Cause Of Action Fails To Provide First Advantage Adequate Notice Of The Accused Fraud.....................................................15

        2. PEI's Counterclaim Fails To Allege Facts Sufficient To Establish The Essential Elements Of A Claim For Promissory Fraud. ...........................16

            a. PEI Fails To Allege That First Advantage Made A Material Promise That PEI Could Justifiably Rely Upon. .......................17

            b. PEI Fails To Allege Sufficient Facts To Establish Actual And Justifiable Reliance On The Alleged False Promise......................17

            c. PEI Fails To Allege Sufficient Facts To Establish That It Suffered Damages As A Result Of The Alleged False Promise. ..................................................................19

    F. PEI's Eighth Cause Of Action Fails To State A Claim For A False Representation Of Fact. ....................................................................20

Buchanan Ingersoll & Rooney LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418

1.   PEI Fails To Allege That First Advantage Falsely Represented A Material Fact. ...........................................................................21

2.   PEI Also Fails To Plead Facts Sufficient To Show That It Justifiably Relied On The Alleged Representation. ..................................22

3.   PEI Fails To Allege Sufficient Facts To Establish The Elements Of Causation And Damages. .......................................................23

4.   The Statements Made In The June 21, 2005 Cease and Desist Letter Are Subject To The Litigation Privilege. ...............................23

G.   PEI's Ninth Cause Of Action For Unfair Trade Practices Fails As A Matter Of Law Because It Wholly Depends On The Foregoing Claims That Are Subject To Dismissal. ..................................................................24

V.   CONCLUSION ..............................................................................25

Buchanan Ingersoll & Rooney LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418

PLAINTIFF'S NOTICE OF MOTION; MOTION TO DISMISS; MPA; CASE NO.:  C 07-02424 SC

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Accuimage Diagnostics Corp. v. Terarecon, Inc.,*
260 F.Supp.2d 941 (N.D.Cal. 2003) ........................................................................10

*Ashton-Tate Corp. v. Ross,*
728 F.Supp. 597 (N.D.Cal. 1989) .............................................................................7

*Atari Corp. v. Ernst & Whinney,*
981 F.2d 1025 (9th Cir.1992) ..................................................................................22

*Baymiller v. Guarantee Mut. Life Co.,*
2000 WL 1026565 (C.D.Cal. 2000) .........................................................................17

*Boys Town, U.S.A., Inc. v. World Church,*
349 F.2d 576 (9th Cir. 1965) ...................................................................................7

*City Solutions, Inc. v. Clear Channel Commc'ns,*
365 F.3d 835 (9th Cir. 2004) ..................................................................................16

*Daly v. Viacom, Inc.,*
238 F.Supp.2d 1118 (N.D.Cal. 2002) ......................................................................25

*Daniels v. Fesco Division of Cities Service Co.,*
733 F.2d 622 (9th Cir. 1984) ...................................................................................7

*De La Cruz v. Tormey,*
582 F.2d 45 (9th Cir. 1978) ....................................................................................5

*Desaigoudar v. Meyercord,*
223 F.3d 1020 (9th Cir. 2000) .................................................................................6

*Dozier v. Maispace,*
2007 WL 518622 (N.D.Cal. Feb. 13, 2007) ............................................................16

*Durning v. First Boston Corp.,*
815 F.2d 1265 (9th Cir.1987) ..................................................................................5

*Frome v. Renner,*
1997 WL 33308718 (C.D.Cal. Oct 01, 1997) ..........................................................17

*Garamendi v. SDI Vendome S.A.,*
276 F.Supp.2d 1030 (C.D.Cal. 2003) ......................................................................11

*Glenn K. Jackson Inc. v. Roe,*
273 F.3d 1192 (9th Cir. 2001) .................................................................................25

*Golden Day School, Inc. v. Pirillo,*
118 F.Supp.2d 1037 (C.D. Cal. 2000) ......................................................................13

Buchanan Ingersoll & Rooney LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418

PLAINTIFF'S NOTICE OF MOTION; MOTION TO DISMISS; MPA; CASE NO.:  C 07-02424 SC

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*,
    896 F.2d 1542 (9th Cir.1989) ............................................................................5

*High Country Linens, Inc. v. Block*,
    2002 WL 1998272 (N.D.Cal. 2002) ...............................................................7

*Hsu v. OZ Optics Ltd.*,
    211 F.R.D. 615 (N.D.Cal. 2002) ...................................................................10

*Informix Software, Inc. v. Oracle Corp.*,
    927 F.Supp. 1283 (N.D.Cal. 1996) .................................................................5

*Jablon v. Dean Witter & Co.*,
    614 F.2d 677 (9th Cir. 1980) ..........................................................................5

*Kentucky Cent. Life Ins. Co. v. LeDuc*,
    814 F.Supp. 832 (N.D.Cal. 1992) ...................................................................5

*Meadows v. Bicrodyne Corp.*,
    785 F.2d 670 (9th Cir. 1986) ........................................................................11

*Moore v. Kayport Package Express, Inc.*,
    885 F.2d 531 (9th Cir. 1989) ..........................................................................6

*NL Industries, Inc. v. Kaplan*,
    792 F.2d 896 (9th Cir.1986) ...........................................................................5

*Orlando v. Carolina Casualty Ins. Co.*,
    2007 WL 781598 (E.D. Cal. 2007)..........................................................14, 17

*Rasidescu v. Midland Credit Management, Inc.*,
    435 F.Supp.2d 1090 (S.D.Cal. 2006)............................................................20

*Ritchie v. United States*,
    210 F.Supp.2d 1120 (N.D.Cal. 2002) .............................................................6

*Sackett v. Beaman*,
    399 F.2d 884 (9th Cir. 1969) ..........................................................................9

*Semegen v. Weidner*,
    780 F.2d 727 (9th Cir. 1985) ....................................................................6, 15

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007)..........................................................6, 14, 15, 17

*Textainer Equip. Managem't (U.S.) Ltd. v. TRS Inc.*,
    2007 WL 1795695 (N.D.Cal., June 20, 2007)..............................................21

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ......................................................6, 14, 15, 17

*Western Mining Counsel v. Watt*,
    643 F.2d 618 (9th Cir. 1981) ..........................................................................5

Buchanan Ingersoll & Rooney LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418

PLAINTIFF'S NOTICE OF MOTION; MOTION TO DISMISS; MPA; CASE NO.: C 07-02424 SC

*Zito v. Steeplechase Films, Inc.,*
    267 F.Supp.2d 1022 (N.D.Cal. 2003) ........................................................................18, 22

**STATE CASES**

*Balfour, Guthrie & Co. v. Hansen,*
    227 Cal.App.2d 173 (1964) ........................................................................................22

*Bernson v. Browning-Ferris Indus.,*
    7 Cal.4th 926 (1994) ..................................................................................................12

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,*
    20 Cal.4th 163 (1999) ................................................................................................25

*Davis v. Rite-Lite Sales Co.,*
    8 Cal.2d 675 (1937) ...................................................................................................13

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.,*
    11 Cal.4th 376 (1995) ..................................................................................................9

*Doran v. N. State Grocery, Inc.,*
    137 Cal.App.4th 484 (2006) .......................................................................................13

*Fuhrman v. California Satellite Systems,*
    179 Cal.App.3d 408 (1986) ........................................................................................24

*Goodman v. Kennedy,*
    18 Cal.3d 335 (1976) ..................................................................................................22

*Gorman v. Holte,*
    164 Cal.App.3d 984 (1985) ........................................................................................13

*Grisham v. Philip Morris U.S.A., Inc.,*
    40 Cal.4th 623 (2007) ....................................................................................13, 18, 22

*Guido v. Koopman,*
    1 Cal.App.4th 837 (1991) ................................................................................18, 19, 22

*Harris v. King,*
    60 Cal .App.4th 1185 (1998) ......................................................................................23

*Hill v. Wrather,*
    158 Cal.App.2d 818 (1958) ........................................................................................17

*Hills Transp. Co. v. Sw. Forest Indus., Inc.,*
    266 Cal.App.2d 702 (1968) ........................................................................................16

*JRS Products, Inc. v. Matsushita Elec. Corp. of America,*
    115 Cal.App.4th 168 (2004) .......................................................................................10

*Julrik Productions, Inc. v. Chester,*
    38 Cal.App.3d 807 (1974) ..........................................................................................19

Buchanan Ingersoll & Rooney LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418

*Kasparian v. County of Los Angeles,*
    38 Cal.App.4th 242 (1995) ................................................................................9

*Khoury v. Maly's of California, Inc.,*
    14 Cal.App.4th 612 (1993) ..............................................................................10

*Kline v. Turner,*
    87 Cal.App.4th 1369 (2001) ............................................................................11

*Korea Supply Co. v. Lockheed Martin Corp.,*
    29 Cal.4th 1134 (2003) ....................................................................................9

*Lazar v. Superior Court,*
    12 Cal.4th 631 (1996) ...............................................................................16, 20

*Lerette v. Dean Witter Org'n, Inc.,*
    60 Cal.App.3d 573 (1976) ...............................................................................24

*Nguyen v. Proton Technology Corp.,*
    69 Cal.App.4th 140 (1999) ..............................................................................23

*Norgart v. Upjohn Co.,*
    21 Cal.4th 383 (1999) ..........................................................................7, 11, 12

*Pacific Gas & Elec. Co. v. Bear Stearns & Co.,*
    50 Cal.3d 1118 (1990) ................................................................................6, 7

*Roland v. Hubenka,*
    12 Cal.App.3d 215 (1970) ...............................................................................19

*Rothman v. Jackson,*
    49 Cal.App.4th 1134 (1996) ............................................................................23

*Rubin v. Green,*
    4 Cal.4th 1187 (1993) ......................................................................................23

*Service by Medallion, Inc. v. Clorox Co.,*
    44 Cal.App.4th 1807 (1996) ......................................................................19, 23

*Silberg v. Anderson,*
    50 Cal.3d 205 (1990) ................................................................................23, 24

*State Farm Fire & Cas. Co. v. Keenan,*
    171 Cal.App.3d 1 (1985) ...........................................................................18, 22

*Tarmann v. State Farm Mut. Auto. Ins. Co.,*
    2 Cal.App.4th 153 (1991) ................................................................................16

*Wilhelm v. Pray, Price, Williams & Russel,*
    186 Cal.App.3d 1324 (1986) ..................................................................... passim

**FEDERAL STATUTES**

Federal Rule of Civil Procedure 12 ..................................................................1, 5

Buchanan Ingersoll & Rooney LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418

- vi -

Federal Rule of Civil Procedure 9 ....................................................................................... passim
Federal Rule of Evidence 201 ...................................................................................................5

**CALIFORNIA STATE STATUTES**

Cal. Civ. Code § 47.................................................................................................................23
Cal. Civ. Proc. Code § 338 ....................................................................................................11
Cal. Civ. Proc. Code § 17200 et seq. .........................................................................2, 3, 24, 25

**SECONDARY AUTHORITIES**

*Dictionary.com Unabridged (v 1.1),* Random House, Inc. 05 Jul. 2007 (<Dictionary.com
     http://dictionary.reference.com/browse/endeavor>)............................................................21

Buchanan Ingersoll & Rooney LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418

PLAINTIFF'S NOTICE OF MOTION; MOTION TO DISMISS; MPA; CASE NO.:  C 07-02424 SC

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION AND SUMMARY OF THE ARGUMENT

The present lawsuit initiated by First Advantage involves a simple breach of contract consisting of PEI's failure to pay for services rendered by First Advantage on its behalf.  Instead of simply answering First Advantage's allegations, PEI attempts to turn what can be generously described as alleged breaches of contact by First Advantage into intemperate allegations of intentional interference with economic relations and fraud.  The assertion of these tort counterclaims, however, is nothing more than an attempt to distract this Court from PEI's own wrongdoing.

Upon close examination of its Counterclaim, it is clear that PEI's shotgun approach to pleading its tort counterclaims cannot pass muster under Rules 9(b) and 12(b)(6).  Illustrative of PEI's inadequate pleadings is that the allegations supporting its interference claims reveal that they are barred by the applicable two-year statute of limitations.  Both its Fourth Cause of Action for intentional interference with contract and Fifth Cause of Action for intentional interference with prospective economic advantage rely on First Advantage's alleged wrongdoing that PEI learned of as early as April 2004.  Since PEI filed its interference counterclaims in the summer of 2007 and fails to assert any allegations that would toll the statute of limitations, the Court should dismiss these counterclaims with prejudice.

Likewise, PEI's Sixth Cause of Action for fraud is barred by the applicable three-year statute of limitations as PEI concedes that it discovered the alleged false promise in April 2004.  In an attempt to save this counterclaim, however, PEI simply concludes that the statute of limitations was tolled by the parties reaching an alleged oral settlement agreement.  What PEI fails to appreciate is that the alleged compromise does not constitute legal grounds to toll the statute of limitations under California law and, by its operation, effectively extinguished PEI's fraud claim.  Thus, PEI's Sixth Cause of Action fails as a matter of law and should be dismissed with prejudice.

PEI's Sixth, Seventh and Eighth Causes of Action for fraud are subject to dismissal because PEI fails to allege them with particularity as required by Rule 9(b).  While PEI may take accusing another business of fraud lightly, First Advantage does not take kindly to such unsubstantiated and

Buchanan Ingersoll & Rooney LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418

Buchanan Ingersoll & Rooney LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418

inflammatory allegations.  Under Ninth Circuit precedent, PEI's fraud claims are insufficiently

plead.  The allegations supporting such claims are not specific enough to give First Advantage

notice of the particular misconduct which is alleged to constitute the fraud.  As a result, First

Advantage cannot do more than deny that it has done something wrong, which is exactly what Rule

9(b)'s heightened pleading requirements are meant to prevent.

PEI's Seventh and Eighth Causes of Action also do not allege facts sufficient to establish the

essential elements of fraud.  PEI fails to allege that the purported promises and representations were

material.  Nor can it do so as PEI's allegations reveal that no reasonable person would consider such

representations to be material at the time they were made.  Likewise, PEI's fraud claims fail as a

matter of law because on the facts alleged, no reasonable person in PEI's position would have been

justified in relying on the alleged fraudulent promises and representations.  The allegations in the

Counterclaim reveal that PEI had actual knowledge of their alleged falsity and/or simply did not

have any basis, let alone a reasonable one, to rely on such promises and statements to its detriment.

These claims also fail as a matter of law based on allegations in the Counterclaim, which

demonstrate that not only was there nothing for PEI to lose, but PEI did not suffer any resulting

loss.

PEI's Ninth Cause of Action for unfair trade practices under California's unfair competition

law rises and falls with the foregoing claims.  Because PEI's Fourth through Eighth Causes of

Action are subject to dismissal, so is its Section 17200 claim.

Finally, granting PEI leave to amend would be futile because the foregoing defects are not

subject to being cured.  Accordingly, First Advantage respectfully requests that the Court dismiss

PEI's Fourth through Ninth Causes of Action with prejudice.

## II.    STATEMENT OF ISSUES TO BE DECIDED

1.    Whether PEI's Fourth and Fifth Causes of Action for intentional interference are

barred by the applicable two-year statute of limitations;

2.    Whether PEI's Fifth Cause of Action fails to adequately state a claim for intentional

interference with prospective economic relations;

3.    Whether PEI's Sixth Cause of Action for fraud is barred by the applicable three-year

- 2 -

1  statute of limitations;

2      4.      Whether PEI's Sixth Cause of Action fails to adequately state a claim for fraud under

3  the heightened pleading standards prescribed by Rule 9(b);

4      5.      Whether PEI's Seventh Cause of Action fails to adequately state a claim for fraud

5  under the heightened pleading standards prescribed by Rule 9(b);

6      6.      Whether PEI's Eighth Cause of Action fails to adequately state a claim for fraud

7  under the heightened pleading standards prescribed by Rule 9(b);

8      7.      Whether PEI's Seventh and Eighth Causes of Action allege facts sufficient to

9  establish a claim for fraud under California law; and

10     8.      Whether PEI's Ninth Cause of Action fails to adequately state a claim for unfair

11  business practices under Cal. Bus. & Prof. Code § 17200 et seq.

12             **III.    FACTUAL AND PROCEDURAL BACKGROUND**

13         In 2002, Coca-Cola Enterprises Inc. ("CCE") contracted with PEI for background screens

14  and drug screening and testing for CCE's employees. Counterclaim, Exhibit A and ¶¶ 8-9 (attached

15  hereto as Exhibit 1). PEI approached Employment Information Services, Inc. ("EIS"), the

16  predecessor-in-interest to First Advantage, to provide drug screening and testing services directly to

17  CCE. *Id.*, Exhibit A and ¶ 10. In or about March 2002, PEI and EIS negotiated a contract where

18  EIS would provide drug screening and testing services directly to CCE. *Id.* This agreement was

19  memorialized in a letter agreement, dated March 19, 2002 and executed by Private Eyes on or about

20  March 29, 2002 (the "Agreement"). *Id.*

21         The parties agreed that since CCE's original contract for services was with PEI, EIS would

22  bill PEI and PEI would, in turn, bill CCE for those services. Counterclaim, Exhibit A. After the

23  parties executed the Agreement, EIS began providing CCE with the agreed-upon testing and

24  screening services, and after First Advantage's acquisition of EIS, First Advantage continued to

25  perform such services under the terms of the Agreement. *Id.*, ¶ 13. In October 2003, First

26  Advantage and PEI entered into a confidentiality agreement concerning the parties' proprietary

27  information. *Id.*, Exhibit B and ¶ 13.

28  / / /

Buchanan Ingersoll & Rooney LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418

During the course of the parties' business relationship, there were various disagreements between them. Ultimately, First Advantage terminated the parties' relationship in or about November 2006 based on PEI's failure to pay some or all of the amounts due and owing on invoices dating as far back as June 2005. After First Advantage made repeated efforts to informally resolve these outstanding invoices, it was left with no other option than to file its Complaint for: (1) Breach of Written Contract; (2) Breach of Implied-In-Fact Contract; (3) Common Count for Services Performed; (4) Open Book Account; (5) Accounts Stated; and (6) Unjust Enrichment/Quantum Meruit against PEI.

On June 22, 2007, PEI filed an answer and counterclaims for: (1) Breach of Written Contract; (2) Breach of Oral Contract; (3) Unjust Enrichment; (4) Intentional Interference with Contractual Relations; (5) Intentional Interference with Prospective Economic Advantage; (6) Fraud - False Promise I; (7) Fraud - False Promise II; (8) Fraud - Intentional Misrepresentation; (9) Unfair Trade Practices; (10) Account Stated; and (11) Open Book Account (the "Counterclaim").

PEI's breach of written contract counterclaim is based on First Advantage's alleged offering of services to CCE that PEI had previously been providing to CCE and the alleged disclosure of PEI's confidential information to CCE. Counterclaim, ¶¶ 23-32. PEI's counterclaim for breach of oral contract is based on an alleged verbal "settlement agreement" that PEI asserts resolved First Advantage's allegedly wrongful solicitation. *Id.*, ¶¶ 32-35. PEI's interference counterclaims are also based on the alleged breach of the non-solicitation provisions in the two written agreements and First Advantage's alleged breach of a confidentiality provision in one of those agreements. *Id.*, ¶¶ 41-55.

PEI's first fraud counterclaim is based on First Advantage's alleged false promise made in the two written agreements to not offer services directly to CCE that PEI had been providing. *Id.*, ¶¶ 56-68. The second counterclaim for fraud is based on an alleged oral promise made by various agents of First Advantage in October 2006 that First Advantage would run all of its billings directly through PEI. *Id.*, ¶¶ 69-78. The third fraud counterclaim consists of an alleged misrepresentation, made by counsel for First Advantage in a cease and desist letter, that it had not previously interfered with PEI's relationship with CCE. *Id.*, ¶¶ 79-89.

Buchanan Ingersoll & Rooney LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418

- 4 -

Buchanan Ingersoll & Rooney LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418

1    PEI's claim for unfair trade practices incorporates the alleged interference and fraud

2   counterclaims, while its unjust enrichment counterclaim and common counts appear to be based on

3   its breach of contract counterclaims. *Id.*, ¶¶ 90-95. As discussed below, PEI's Counterclaim fails to

4   state any causes of action that sound in tort or unfair trade practices because those claims are barred

5   by the statute of limitations, fail to state a claim upon which relief can be granted, fail to meet the

6   heightened pleading requirements of Rule 9(b), and/or are barred by the litigation privilege.

**IV.    LEGAL DISCUSSION**

8   **A.    Applicable Legal Standards.**

9    Rule 12(b)(6) provides that a party may move to dismiss an action for failure to state a claim

10   upon which relief can be granted. On a motion to dismiss pursuant to Rule 12(b)(6), the allegations

11   of the complaint must be accepted as true. *NL Industries, Inc. v. Kaplan,* 792 F.2d 896, 898 (9th

12   Cir.1986). However, the court need not accept as true the conclusory allegations, legal

13   characterizations, unreasonable inferences or unwarranted deductions of fact alleged in the

14   operative complaint. *Western Mining Counsel v. Watt,* 643 F.2d 618, 624 (9th Cir. 1981). In

15   addition to considering the allegations in the pleading at issue, the Court may also consider exhibits

16   submitted with the pleading and matters that may be judicially noticed pursuant to Federal Rule of

17   Evidence 201. *Hal Roach Studios, Inc. v. Richard Feiner & Co.,* 896 F.2d 1542, 1555 n. 19 (9th

18   Cir.1989). In that regard, factual allegations can be disregarded if contradicted by the facts

19   established by reference to documents attached as exhibits to the pleading or matters of which the

20   Court takes judicial notice. *See Durning v. First Boston Corp.,* 815 F.2d 1265, 1267 (9th Cir.1987);

21   *Informix Software, Inc. v. Oracle Corp.,* 927 F.Supp.1283, 1285 (N.D.Cal. 1996).

22    Dismissal under Rule 12(b)(6) is appropriate where there is either a "lack of a cognizable

23   legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *De La*

24   *Cruz v. Tormey,* 582 F.2d 45, 48 (9th Cir. 1978). Dismissal is also appropriate where the

25   allegations in a pleading disclose an absolute defense or bar to recovery. *Kentucky Cent. Life Ins.*

26   *Co. v. LeDuc,* 814 F.Supp. 832, 840 (N.D.Cal. 1992). In particular, where the facts and dates

27   alleged in the pleading indicate that a claim is barred by the statute of limitations, the Court should

28   grant a motion to dismiss for failure to state a claim. *Jablon v. Dean Witter & Co.,* 614 F.2d 677,

1  682 (9th Cir. 1980); *accord Ritchie v. United States*, 210 F.Supp.2d 1120, 1123 (N.D.Cal. 2002).

2      Finally, the Court should grant a motion to dismiss claims for fraud or mistake where the

3  allegations underlying those claims fail to meet Rule 9(b)'s heightened pleading requirements.  In all

4  averments of fraud or mistake, the circumstances constituting fraud or mistake must be stated "with

5  particularity."  Fed. R. Civ. P. 9(b); *see also Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022-1023

6  (9th Cir. 2000) (fraud claims must be pled "with a high degree of meticulousness").  The allegations

7  must be "specific enough to give defendants notice of the particular misconduct which is alleged to

8  constitute the fraud… so that they can defend against the charge and not just deny that they have

9  done anything wrong."  *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985); *accord Vess v.*

10  *Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).  Allegations that are vague and

11  conclusory are insufficient to satisfy the particularity required by Rule 9(b).  *Moore v. Kayport*

12  *Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).

13      The Ninth Circuit mandates that allegations of fraud specifically include "an account of the

14  time, place, and the specific content of the false representations as well as the identities of the

15  parties to the misrepresentations."  *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007); *Vess*,

16  317 F.3d at 1106 ("[a]verments of fraud must be accompanied by 'the who, what, when, where, and

17  how' of the misconduct charged.") (citation omitted).  The "plaintiff must set forth more than the

18  neutral facts necessary to identify the transaction.  The plaintiff must set forth what is false or

19  misleading about a statement, and why it is false."  *Vess,* 317 F.3d at 1106.

20  **B.  PEI's Fourth And Fifth Causes Of Action For Intentional Interference Are Barred By**
    **The Applicable Two-Year Statute Of Limitations.**

21

22      PEI's Fourth Cause of Action for intentional interference with contractual relations[1] and

23  Fifth Cause of Action for intentional interference with prospective economic advantage[2] are subject

24  _____

25  [1] The elements that a plaintiff must plead to state a claim for intentional interference with
    contractual relations are: (1) a valid contract between plaintiff and a third party; (2) defendant's
    knowledge of this contract; (3) defendant's intentional acts designed to disrupt the contractual

26  relationship; (4) the disruption of the contractual relationship; and (5) resulting damage.  *Pacific*
    *Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal.3d 1118, 1126, 1129 (1990).

27  [2] The elements that a plaintiff must plead to state a claim for intentional interference with

28  prospective economic relations are: (1) an economic relationship between the plaintiff and some

Buchanan Ingersoll & Rooney LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418

Buchanan Ingersoll & Rooney LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418

1  to the same two-year statute of limitations under California Code of Civil Procedure section

2  339(1).[3] *See Boys Town, U.S.A., Inc. v. World Church*, 349 F.2d 576, 579 (9th Cir. 1965)

3  (interference with contract); *Ashton-Tate Corp. v. Ross*, 728 F.Supp. 597, 604 (N.D.Cal. 1989)

4  (same); *High Country Linens, Inc. v. Block*, 2002 WL 1998272, *2 fn 1 (N.D.Cal. 2002)

5  (interference with contractual relations and prospective economic advantage).  As a general rule, a

6  cause of action for intentional interference with a contract or prospective economic advantage

7  accrues at the time the wrongful act occurs and liability arises.  *See Norgart v. Upjohn Co.*, 21

8  Cal.4th 383, 397 (1999); *see also Pacific Gas & Elec.*, 50 Cal.3d at 1126, 1129 (claim for

9  intentional interference with the plaintiff's performance under contract arises where plaintiff's

10  performance is made more costly or more burdensome).  The exception is the discovery rule, which

11  postpones accrual of a cause of action until the injured party discovers, or has reason to discover,

12  the cause of action.  *Norgart*, 21 Cal.4th at 397.  The allegations that are incorporated by reference

13  and made in direct support of PEI's Fourth and Fifth Causes of Action make clear that PEI learned

14  of the alleged acts of interference and suffered the alleged resulting harm over two years before

15  filing its Counterclaim.  *See* Counterclaim, ¶¶ 41, 48.

16      In its Fourth Cause of Action, PEI claims that First Advantage "intended to disrupt" a verbal

17  contract between PEI and CCE by "directly soliciting business from CCE that CCE had been

18  assigning to PEI and by disclosing PEI's confidential and proprietary information to CCE."

19  Counterclaim, ¶¶ 42-44.  PEI further alleges that this conduct "prevented performance by PEI or

20  made performance more expensive or difficult by PEI." *Id.*, ¶¶ 45-46.  Similarly, in its Fifth Cause

21  of Action, PEI asserts that First Advantage "intended to disrupt" the economic relationship between

22  PEI and CCE by engaging "in wrongful conduct through (1) soliciting or assisting with the

23  _____

24  third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's
    knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt

25  the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff
    proximately caused by the acts of the defendant." *Pacific Gas & Elec.*, 50 Cal.3d at 1126 fn 3.

26  [3] In this case, which is based on diversity jurisdiction, it is undisputed that California law governs

27  the parties' respective common law claims and counterclaims.  Thus, California law governs when
    the cause of action for interference with contract accrues. *See Daniels v. Fesco Division of Cities*

28  *Service Co.*, 733 F.2d 622 (9th Cir. 1984).

1    solicitation of business from CCE… and (2) disclosing PEI's confidential and proprietary

2    information…." *Id.*, ¶¶ 49-52.  In conclusion, PEI alleges that "[its] relationship with CCE was in

3    fact disrupted by the aforementioned conduct of First Advantage." *Id.*, ¶¶ 53-54.

4         In support of both causes of action, PEI alleges that in January or February 2004, First

5    Advantage allegedly solicited CCE to obtain a contract for motor vehicle records ("MVR") services,

6    which PEI claims CCE had been previously assigning to PEI pursuant to their verbal contract.  *Id.*,

7    ¶ 14.  PEI further alleges that "[a]s a direct result of First Advantage's solicitation… CCE ceased

8    assigning [MVRs] to PEI and began assigning them to First Advantage." *Id.*, ¶ 15.  Consequently,

9    at that time, PEI was allegedly "deprived of all profits it had been making on the MVR

10   assignments." *Id*.  PEI asserts that it first learned of First Advantage's alleged wrongful solicitation

11   and the loss of the assignment of MVR services from CCE in April 2004.  *Id.*, ¶ 16.

12        In addition, PEI claims that in spring 2005, it "learned for the first time that First Advantage

13   was soliciting all remaining services from CCE."  *Id.*, ¶ 19.  PEI also alleges that in spring 2005, it

14   "learned for the first that First Advantage had disclosed confidential and proprietary information to

15   CCE," which allegedly resulted in CCE insisting that PEI charge less for its services.  *Id.*, ¶ 20.

16        From the face of PEI's Counterclaim, which was filed on June 22, 2007, it is clear that PEI

17   first learned of First Advantage's alleged acts of interference and the consequences thereof over two

18   years before filing its Counterclaim.  PEI learned of the alleged acts of interference with respect to

19   the MVRs and allegedly lost the opportunity to provide those services in April 2004 - over three

20   years before it filed its Counterclaim.  *See* Counterclaim, ¶¶ 14-16, 41-45, 48-53.

21        The allegations in PEI's Counterclaim also raise a complete defense to the extent PEI's

22   interference claims are based on First Advantage's alleged solicitation of all remaining services and

23   alleged disclosure of confidential information to CCE in "spring 2005."  *See* Counterclaim ¶¶ 19-20,

24   41-45, 48-53.  PEI's attempt to vaguely and ambiguously plead its "discovery" of First Advantage's

25   alleged acts of interference and the resulting harm during a three-month period of "spring 2005"

26   cannot save its Fourth Cause of Action.  Even under the most generous reading of its Counterclaim,

27

28

Buchanan Ingersoll & Rooney LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418

PLAINTIFF'S NOTICE OF MOTION; MOTION TO DISMISS; MPA; CASE NO.:  C 07-02424 SC

Buchanan Ingersoll & Rooney LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418

1    PEI filed it two years and two days **after** the end of spring, which is the last possible day that it

2    could have learned of the alleged misconduct and resulting harm.[4]    The Court should therefore

3    dismiss the Fourth and Fifth Causes of Action with prejudice.  *See Sackett v. Beaman*, 399 F.2d

4    884, 892 (9th Cir. 1969) (affirming denial of motion for leave to amend because statute of

5    limitations rendered claim futile).

6    **C.    PEI's Fifth Cause Of Action Fails To Allege Facts Sufficient To Plead A Claim For**
      **Intentional Interference With Prospective Economic Relations.**

7

8          In addition to being barred by the statute of limitations, PEI's Fifth Cause of Action for

9    intentional interference with prospective economic advantage fails to allege facts sufficient to state

10   such a claim.  First, PEI's Counterclaim reveals that First Advantage was an integral part of that

11   economic relationship, i.e. First Advantage was providing the services to CCE with PEI's blessing

12   that PEI had contracted with CCE to perform.  *See* Counterclaim, ¶ 10 and Exhibit A.  Under

13   California law, a party that is not a stranger to the alleged economic relationship cannot be held

14   liable for the disruption of that relationship under the theory of intentional interference with a

15   prospective economic advantage.  *Kasparian v. County of Los Angeles,* 38 Cal.App.4th 242, 262

16   (1995).  Since First Advantage was not a stranger to the relationship between PEI and CCE at the

17   time of the alleged intentional interference, PEI's Fifth Cause of Action fails as a matter of law.

18         Second, PEI fails to allege an intentional act that is "independently wrongful," i.e.,

19   "wrongful by some measure beyond the fact of the interference itself."  *Della Penna v. Toyota*

20   *Motor Sales*, *U.S.A., Inc.*, 11 Cal.4th 376, 392-393 (1995); *accord Korea Supply Co. v. Lockheed*

21   *Martin Corp.,* 29 Cal.4th 1134, 1153-1154 (2003).  In other words, the act must be proscribed by

22   some constitutional, statutory, regulatory, common law, or other determinable standard that is the

23   equivalent of unlawful or tortious conduct, rather than merely be a product of an improper, but

24   lawful, purpose or motive.  *See Korea Supply Co.*, 29 Cal.4th at 1159 & fn. 11.

25

26   _____

27   [4] First Advantage requests that the Court take judicial notice that the last day of spring in 2005 was
     June 20 as the summer solstice occurred on June 21, 2005.  *See* First Advantage's Request for
28   Judicial Notice in Support of its Motion to Dismiss concurrently filed herewith.

- 9 -

1    In applying this requirement, Courts have found that a defendant's breach of an agreement

2  with the plaintiff that constitutes the alleged act of interference is not sufficient to constitute an

3  independent wrongful act. *See, e.g., Accuimage Diagnostics Corp. v. Terarecon, Inc.*, 260

4  F.Supp.2d 941, 956-958 (N.D.Cal. 2003) (in dismissing claims for intentional and negligent

5  interference with prospective economic advantage, court found that employer's remedy against

6  former employee who allegedly breached a confidentiality provision of an employment agreement

7  when he went to work for a competitor was in contract and not tort); *Hsu v. OZ Optics Ltd.*, 211

8  F.R.D. 615, 621 (N.D.Cal. 2002) (finding that defendant's refusal to perform under a contract and

9  allegation that this refusal had an adverse impact on plaintiffs' business expectancies was not

10  independently wrongful); *JRS Products, Inc. v. Matsushita Elec. Corp. of America*, 115 Cal.App.4th

11  168, 180-83 (2004) ("contracting party's unjustified failure or refusal to perform is a breach of

12  contract, and cannot be transmuted into tort liability by claiming that the breach detrimentally

13  affected the promisee's business") (citation omitted).  Where the defendant's alleged misconduct

14  amounts to a breach of contract, the effect on the plaintiff's customers and the damage to appellant's

15  business are merely consequences of breach of contract. *Khoury v. Maly's of California, Inc.*, 14

16  Cal.App.4th 612, 618 (1993); *accord Accuimage*, 260 F.Supp.2d at 956-958; *JRS Products*, 115

17  Cal.App.4th at 180-83.  Thus, an aggrieved party's remedy lies in a claim for breach of contract and

18  not intentional interference with prospective economic relations.  *Id.*

19    In its Counterclaim, PEI alleges that the act of interference consists of two breaches of

20  contract: (1) a breach of the non-solicitation provision; and (2) a breach of the confidential

21  provision.  Counterclaim, ¶ 52.  Under California law, this is insufficient to constitute an

22  "independent wrong."  Moreover, since PEI's Fifth Cause of Action sounds in contract and PEI has

23  also asserted such a claim in its First Cause of Action, it cannot also maintain a cause of action for

24  intentional interference with prospective economic relations.  Thus, PEI's Fifth Cause of Action is

25  also subject to dismissal with prejudice on this additional ground.

26  / / /

27  / / /

28  / / /

Buchanan Ingersoll & Rooney LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418

- 10 -

**D.    The Court Should Dismiss PEI's Sixth Cause of Action For Fraud Without Leave To Amend.**

**1.    PEI's Sixth Cause of Action Is Barred By The Three-Year Statute Of Limitations For Fraud Claims.**

PEI's Sixth Cause of Action for Fraud is subject to a three-year statute of limitations.  Cal. Civ. Proc. Code § 338(d).  A cause of action for fraud accrues when the aggrieved party first discovers the facts constituting the fraud.  *Id.*  However, a plaintiff "need not know the specific facts necessary to establish the cause of action" in order for its claims to accrue.  *Norgart*, 21 Cal.4th at 396 (internal quotation marks omitted); *see also Meadows v. Bicrodyne Corp.*, 785 F.2d 670, 672 (9th Cir. 1986) (under California law, a failure to discover details of alleged fraud does not prevent running of statute of limitations).  In that regard, the statute of limitations for fraud begins to run when the aggrieved party "has reason to suspect wrongdoing - that is, until the plaintiff has notice or information of circumstances to put a reasonable person on inquiry."  *Garamendi v. SDI Vendome S.A.*, 276 F.Supp.2d 1030, 1040 (C.D.Cal. 2003) (internal quote and citation omitted); *accord Kline v. Turner*, 87 Cal.App.4th 1369, 1373-74 (2001).

The allegations supporting PEI's Sixth Cause of Action make clear that it is barred by the statute of limitations.  Counterclaim, ¶¶ 14-16, 56-62.  PEI alleges that on March 29, 2002 and on October 8, 2003, First Advantage promised to not to directly offer CCE any of the services provided by PEI.  *Id.*, ¶¶ 10-11, 56-57.  PEI further alleges that in January or February 2004, First Advantage purportedly solicited CCE to obtain a contract for MVR services in violation of those promises.  *Id.*, ¶¶ 14, 56-59.  PEI then *admits* in its Counterclaim that it first learned of First Advantage's alleged offering of MVR services to CCE and was now doing such work directly for CCE in April 2004, which PEI *admits* revealed that First Advantage's previous promise not to solicit CCE was allegedly false.  *Id.*, ¶¶ 14-16, 56-59, 62-64.  Thus, by no later than April 30, 2004, PEI had actual knowledge of the facts constituting the alleged false promises.  Since PEI waited until June 22, 2007 - over three years *after* the discovery of the alleged fraud -  to file its claim based on the false promise not to solicit services, PEI's Sixth Cause of Action is barred by the statute of limitations.

Buchanan Ingersoll & Rooney LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418

- 11 -

Buchanan Ingersoll & Rooney LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418

2.      **PEI's Attempt To "Plead Around" The Statute Of Limitations Cannot Save Its Sixth Cause of Action.**

In apparent recognition that its Sixth Cause of Action is barred by the applicable three-year statute of limitations, PEI attempts to "plead around" this defense by claiming that the statute should be tolled to a date that is no earlier than June 2005. *See* Counterclaim, ¶ 68. PEI's tolling allegations, however, do not save its cause of action from dismissal with prejudice.

In support of this tolling theory, PEI alleges that the parties entered into a verbal agreement in the summer of 2004 to settle the legal dispute between the parties concerning First Advantage's solicitation of CCE. *See* Counterclaim, ¶¶ 14-17, 32-34, 56-62, 68. PEI further alleges that First Advantage made commissions payments under this agreement, which were to allegedly remedy the lost profits PEI had suffered as a result of First Advantage's purported wrongful solicitation of the MVRs, until sometime in June 2005. *See id*, ¶¶ 14, 18, 56. PEI claims that because of its reliance on that settlement agreement and the payments made thereon it did not file suit for fraud until June 2007. *Id*, ¶ 68. PEI's reasonable reliance theory is fatally flawed.

The statute of limitations may be tolled where there is an excusable delay in the ***discovery*** of fraud, not where there is an intentional waiver of the right to sue after discovering that fraud. *See Norgart*, 21 Cal.4th at 397; *see also Bernson v. Browning-Ferris Indus.*, 7 Cal.4th 926, 931 (1994) ("defendant's fraud in concealing a cause of action against him will toll the statute of limitations, and that tolling will last as long as a plaintiff's reliance on the misrepresentations is reasonable"). In PEI's Counterclaim, there are no allegations of its continued reliance on First Advantage's alleged false promise to not directly offer MVRs to CCE beyond April 2004. Nor could there be, as PEI was resigned to allow First Advantage to continue providing CCE with those services after the discovery of the alleged false promise. Consequently, the tolling of the statute of limitations is not available to PEI to excuse its delay in filing its fraud claim.

Buchanan Ingersoll & Rooney LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418

1    To the extent that reliance on a subsequent settlement agreement could arguably toll the

2  statute of limitations, PEI's reliance on that agreement is not justified.[5]  PEI admits that it was

3  appraised of all facts constituting the fraud and had already suffered the appreciable harm in April

4  2004.  Counterclaim, ¶¶ 14-16, 56-62.  With that knowledge, PEI alleges that it settled its fraud

5  claim in the April 2004 and received payments based thereon for approximately a year.  *See id*,

6  ¶¶ 14, 18, 56 and Exhibit C.  PEI does not allege that it was fraudulently induced to enter into the

7  verbal agreement to resolve a legal dispute between the parties or that First Advantage made any

8  false promises therein.  To the contrary, PEI alleges that First Advantage's failure to pay

9  commissions after June 2005 constituted a mere breach of that agreement.  *See id.*, ¶¶ 32-35.

10    It is therefore clear that PEI not only "discovered" the alleged fraud in April 2004, but also

11  knowingly waived its right to seek redress for the alleged fraud by entering into the verbal

12  settlement agreement at that time.[6]  *See Doran v. N. State Grocery, Inc.*, 137 Cal.App.4th 484, 492

13  (2006) ("a compromise settlement operates as a bar to reopening the controversy"); *accord Gorman*

14  *v. Holte*, 164 Cal.App.3d 984, 988 (1985) ("[a] settlement contract … is decisive of the rights of the

15  parties and serves to bar reopening of the issues settled"); *see also Davis v. Rite-Lite Sales Co.*, 8

16  Cal.2d 675, 682 (1937) (the fact that settlement negotiations between the parties commence prior to

17  the expiration of the statute of limitations and no settlement was reached did not operate to toll the

18  statute).  As a result, PEI cannot claim that it justifiably relied on the settlement agreement for the

19  purposes of tolling the statute of limitations for its Sixth Cause of Action.

---

[5] Whether reliance was justified may be decided as a matter of law where the facts permit reasonable minds to come to just one conclusion.  *Grisham v. Philip Morris U.S.A., Inc.*, 40 Cal.4th 623, 638 (2007).

[6] First Advantage is not conceding that it entered into an enforceable verbal settlement agreement as alleged in PEI's Counterclaim.  To the contrary, given the vagueness of the terms of this alleged verbal agreement, when it was formed and the exact day when the alleged breach occurred, there are also serious questions concerning whether such an agreement is enforceable under the statute of frauds and any claims based on the agreement are barred by the statute of limitations.  *See* Counterclaim, ¶¶ 17-18, 32-34, 68.  In ruling on motion to dismiss, however, the Court must take all allegations asserted therein as true.  *See Golden Day School, Inc. v. Pirillo*, 118 F.Supp.2d 1037, 1041 (C.D. Cal. 2000).  Since PEI's tolling theory incorporates the allegations concerning this agreement by reference, for the limited purpose of ruling on the tolling issue, the Court should give this verbal agreement its legal effect.

- 13 -

Buchanan Ingersoll & Rooney LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418

### 3.    PEI's Sixth Cause of Action Fails To Meet Rule 9(b)'s Heightened Pleading Requirements.

Even assuming *arguendo* that the Sixth Cause of Action is not barred by the three-year statute of limitations, it is also subject to dismissal on the grounds that it fails to adequately state a claim for fraud.  For example, PEI's allegations that pertain to alleged verbal false promises fail to meet the heightened pleading standards of Rule 9(b).  *See* Counterclaim, ¶ 57.

The Ninth Circuit stresses that for each alleged fraudulent statement, PEI must specifically allege the exact representation, that the purported representations were false when made, identify the speaker, state when and where the statements were made, and state the manner in which the representations were false and misleading.  *Swartz*, 476 F.3d at 764; *Vess*, 317 F.3d at 1106.  Where it is alleged that a corporation committed fraud, it is insufficient to allege that the corporation or its "agents" committed fraud.  *Orlando v. Carolina Casualty Ins. Co.*, 2007 WL 781598, *8 (E.D. Cal. 2007).  Rather, "the specific identity of the agent must be alleged for the purposes of Rule 9(b)." *Id.*

Here, PEI fails to identify the who, what, when, and where of the alleged verbal false promises not to solicit from CCE certain business services.  *See* Counterclaim, ¶¶ 56-57.  Without providing such factual information, First Advantage is left to guess as to what verbal representations PEI believes were fraudulent, who made those representations, when those representations were made, the manner in which they were false, and PEI's reasonable reliance thereon.  PEI also fails to allege sufficient facts establishing the circumstances of how it discovered the falsity of the promise.  Thus, for this additional reason, the Court should dismiss PEI's Sixth Cause of Action.

### E.    PEI's Seventh Cause Of Action Fails To State A Cognizable Claim For Fraud.

In support of its Seventh Cause of Action, PEI alleges that First Advantage made false promises "in or about October 2006 that all services it was then performing at that time for CCE would be billed through PEI." *See id.*, ¶ 70.  PEI alleges that First Advantage made this promise because it had wrongfully solicited CCE and wanted to continue a business relationship with PEI. *See id.*  PEI vaguely alleges that this promise was made by three different named individuals on behalf of First Advantage.  *See id.*

- 14 -

1    PEI claims that First Advantage never intended to perform the alleged promise and only

2 made such a promise so PEI would forfeit its rights to set-off amounts it allegedly owed First

3 Advantage. *See id.*, ¶¶ 71-72. PEI asserts that it relied on this promise by making payments on

4 "some" outstanding billings and that such reliance was reasonable. *See id.*, ¶¶ 73-74. It also claims

5 that after making the alleged false promise, First Advantage did not allow any billings to be run

6 through PEI and that it was harmed as a result thereof. *See id.*, ¶¶ 75-77.

7    In light of these vague and conclusory allegations, as discussed below, PEI not only fails to

8 meet the heightened pleading requirements of Rule 9(b), but it also fails to allege facts that could

9 constitute an actionable false promise. *See* Counterclaim, ¶¶ 1-22, 69-78.

10    **1.    PEI's Seventh Cause Of Action Fails To Provide First Advantage Adequate
          Notice Of The Accused Fraud.**

11

12    The allegations in support of this claim are woefully deficient under the requirements of

13 Rule 9(b) because they fail to provide First Advantage with specific enough information to defend

14 against the fraud charged and not just deny that it did anything wrong. *See Vess*, 317 F.3d at 1105;

15 *accord Semegen*, 780 F.2d at 731 (Rule 9(b)'s requirement of particularity is "designed to prohibit a

16 plaintiff from unilaterally imposing upon the court, the parties and society enormous social and

17 economic costs absent some factual basis"). PEI does not sufficiently allege who said what, when,

18 where and to whom, and whether the alleged false promise was verbal and/or in writing as required

19 by Rule 9(b). *See Swartz*, 476 F.3d at 764; *Vess*, 317 F.3d at 1106.

20    Specifically, PEI claims that this promise was made by three individuals, yet its

21 Counterclaim fails to specifically identify and differentiate when each individual made the alleged

22 promise and to whom at PEI they made the promise. PEI's Counterclaim also does not pin-point

23 where each alleged false representation was made, and how or in what form they were made.

24    PEI's claim that First Advantage's alleged representation that it would run billings through

25 PEI constituted an actionable false promise is also nonsensical. There is no logical connection

26 between First Advantage's alleged false promise to run billings through PEI (presumably for the

27 MVRs) on a go-forward basis and that promise allegedly inducing PEI to pay for outstanding

28 invoices for services that First Advantage had already performed for and billed to PEI prior to the

Buchanan Ingersoll & Rooney LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418

- 15 -

1    alleged false promise. *See* Counterclaim, ¶¶ 71-73. Likewise, there is no logical connection

2    between an alleged false promise made in October 2006 and the resolution of First Advantage's

3    alleged wrongful solicitation of the MVRs, which PEI allegedly discovered over two years before

4    the alleged false promise, and had ***already resolved*** with First Advantage. *Id.*

5         Finally, from the allegations supporting this counterclaim, it does not make sense why this

6    promise was made to "continue a business relationship with PEI" when CCE had informed PEI that

7    it would seek alternative vendors for the services provided by PEI and First Advantage ***prior*** to the

8    alleged false promise. *See id.*, ¶¶ 21, 69-70. Consequently, because the Counterclaim does not set

9    forth allegations concerning the circumstances constituting the alleged fraud with particularity, Rule

10   9(b) mandates the dismissal of the Seventh Cause of Action with prejudice.

11        **2.    PEI's Counterclaim Fails To Allege Facts Sufficient To Establish The Essential
            Elements Of A Claim For Promissory Fraud.**

12

13        To allege a cause of action for fraud based on a false promise under California law, PEI

14   must allege facts that establish: (1) a material promise; (2) knowledge of its falsity; (3) intent to

15   defraud or induce reliance; (4) justifiable reliance; (5) resulting damage. *Lazar v. Superior Court*,

16   12 Cal.4th 631, 638 (1996); *accord City Solutions, Inc. v. Clear Channel Commc'ns*, 365 F.3d 835,

17   839 (9th Cir. 2004); *Dozier v. Maispace*, 2007 WL 518622 *4 (N.D.Cal. Feb. 13, 2007). The

18   "general pleading of the legal conclusion of fraud is insufficient; and "every element of the cause of

19   action for fraud must be alleged in full, factually and specifically ...." *Wilhelm v. Pray, Price,*

20   *Williams & Russel*, 186 Cal.App.3d 1324, 1331 (1986).

21        Further, to maintain an action for fraud based on a false promise, "one must specifically

22   allege and prove, among other things, that the promisor did not intend to perform at the time he or

23   she made the promise and that it was intended to deceive or induce the promisee to do or not do a

24   particular thing." *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal.App.4th 153, 157 (1991). It is

25   not sufficient to allege simply that the promisor intended the promisee to rely on his promise, and

26   that it did rely on the promise. *Hills Transp. Co. v. Sw. Forest Indus., Inc.*, 266 Cal.App.2d 702,

27   708 (1968). As discussed in detail below, PEI fails to allege facts that establish several of the

28   elements for a claim for promissory fraud.

Buchanan Ingersoll & Rooney LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418

- 16 -

Buchanan Ingersoll & Rooney LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418

### a.     PEI Fails To Allege That First Advantage Made A Material Promise That PEI Could Justifiably Rely Upon.

PEI fails to set forth allegations that establish that First Advantage's promise to run future billings directly through PEI was material. *See* Counterclaim, ¶¶ 14-20, 69-70. As discussed above, PEI fails to allege how directing all billing to PEI has any bearing on any payment of invoices by PEI for services already rendered by First Advantage and ***billed to PEI***. There is also an inexplicable disconnect between the alleged reason this promise was made and the time when it was made. There does not appear to be any contemporaneous wrongdoing alleged in the Counterclaim, i.e. wrongful solicitation of CCE in the fall of 2006, which would make the alleged false promise material to continuing the parties' business relationship. *See Hill v. Wrather*, 158 Cal.App.2d 818, (1958) (false representation which cannot possibly affect the intrinsic merits of a business transaction is immaterial); *accord Frome v. Renner*, 1997 WL 33308718, *2 (C.D.Cal. Oct 01, 1997). The fact that PEI alleges that CCE had already notified it that it no longer would be contracting services from the parties further undermines the materiality of the alleged false promise.

### b.     PEI Fails To Allege Sufficient Facts To Establish Actual And Justifiable Reliance On The Alleged False Promise.

PEI also fails to allege sufficient facts that it actually and justifiably relied on First Advantage's promise to run all future billings directly through PEI. In its Counterclaim, PEI simply alleges that it "reasonably relied" upon First Advantage's promise to run all billings through PEI "since First Advantage represented itself as being an honest and ethical company and had expressed an interest in continuing the business relationship on such terms." *See* Counterclaim, ¶ 74. This vague and ambiguous allegation is insufficient to establish justifiable reliance.

As an initial matter, PEI fails to allege who made this representation, when and where it was made, to whom it was made and whether it was verbal or in writing. *See Swartz*, 476 F.3d at 764; *Vess*, 317 F.3d at 1106; *Orlando*, 2007 WL 781598, *8; *see also Baymiller v. Guarantee Mut. Life Co.*, 2000 WL 1026565 (C.D.Cal. 2000) (plaintiff "must not only plead the allegations of fraud with enough specificity so that a defendant knows what is false or misleading about a statement and why it is false, but must also establish justifiable reliance on such misrepresentations"). Since there are

- 17 -

1   no specific allegations establishing the circumstances surrounding this statement and PEI's reliance

2   thereon, dismissal is appropriate.

3        Further, PEI's sparse allegations fail to establish justifiable reliance on the alleged false

4   promise as a matter of law. *See Grisham*, 40 Cal.4th at 638 (whether a party's reliance was justified

5   may be decided as a matter of law if reasonable minds can come to only one conclusion based on

6   the facts). In order to sufficiently plead reliance a plaintiff must show: (1) actual reliance, i.e., that

7   the representation was an "immediate cause" that altered the parties' legal relations; and (2)

8   justifiable reliance, i.e., circumstances were such to make it reasonable for plaintiff to accept

9   defendant's statements without an independent inquiry or investigation. *Wilhelm*, 186 Cal.App.3d at

10  1331-32. "In determining whether one can reasonably or justifiably rely on an alleged

11  misrepresentation, the knowledge, education and experience of the person claiming reliance must be

12  considered." *Guido v. Koopman*, 1 Cal.App.4th 837, 843 (1991). Where a plaintiff fails to allege

13  facts sufficient to establish justifiable reliance in support of a claim for promissory fraud, that claim

14  is subject to dismissal. *See, e.g., Wilhelm*, 186 Cal.App.3d at 1331-32 (dismissing fraud claim

15  based on failure to allege sufficient facts establishing actual and justifiable reliance); *Zito v.

16  Steeplechase Films, Inc.*, 267 F.Supp.2d 1022, 1027-28 (N.D.Cal. 2003) (dismissing claim for fraud

17  where allegations in complaint revealed that plaintiff did not justifiably rely on defendants'

18  misrepresentations); *State Farm Fire & Cas. Co. v. Keenan*, 171 Cal.App.3d 1, 29 (1985) (fraud

19  claim dismissed because plaintiffs failed to allege that they had no knowledge of its falsity or had

20  no reason to question its truthfulness).

21       Here, PEI alleges that it is a corporation in the same business as First Advantage, which

22  includes providing among other things investigative and background check services. *See, e.g.*,

23  Counterclaim, ¶¶ 1-2, 8-10. PEI also claims that between April 2004 and prior to First Advantage

24  making the alleged false promise in October 2006, PEI learned of multiple violations of the non-

25  solicitation provisions in the parties' agreements, as well as alleged false promises and

26  misrepresentations of fact allegedly made by First Advantage pertaining to that alleged misconduct.

27  *See* Counterclaim, ¶¶ 10-21, 56-68, 79-89. It is well established under California law, where a

28  person learns one representation is false, he may not assume other representations are true. *See*

Buchanan Ingersoll & Rooney LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418

- 18 -

Buchanan Ingersoll & Rooney LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418

1  *Roland v. Hubenka,* 12 Cal.App.3d 215, 225 (1970); *see also Julrik Productions, Inc. v. Chester*, 38

2  Cal.App.3d 807, 810 (1974) (if a person distrusts the defendant's honesty from the beginning, he

3  cannot have had a justifiable reliance on the defendant's false representation).  PEI therefore cannot

4  seriously contend that PEI, a sophisticated corporation that is in the business of conducting

5  investigations, justifiably relied on First Advantage's alleged promise to direct all billings to PEI –

6  especially where that promise directly relates back to prior false promises and misrepresentations of

7  fact of which PEI had prior knowledge.  *See Guido*, 1 Cal.App.4th at 843.

8  It is also specious for PEI to allege that it "reasonably relied" on First Advantage's promise

9  to run billings directly through PEI on a go-forward basis in October 2006 when PEI also claims

10  that CCE had previously notified the parties that it intended to use other vendors in September

11  2006. *See id.*, ¶¶ 21, 69-70.  As these and the other allegations in PEI's Counterclaim demonstrate

12  that PEI did not actually or justifiably rely on First Advantage's alleged false promise as a matter of

13  law, it is clear that PEI's Seventh Cause of Action fails to adequately state a claim for fraud.

14  **c.      PEI Fails To Allege Sufficient Facts To Establish That It Suffered**

15  **Damages As A Result Of The Alleged False Promise.**

16  Finally, PEI fails to adequately allege that it suffered damages as a result of the alleged false

17  promise by First Advantage to run all future billings through PEI.  In order to recover for fraud, the

18  plaintiff must plead and prove the "detriment proximately caused" by the defendant's tortious

19  conduct.  *Service by Medallion, Inc. v. Clorox Co.*, 44 Cal.App.4th 1807, 1818 (1996).  "Whatever

20  form it takes, the injury or damage must not only be distinctly alleged but its causal connection with

21  the reliance on the representations must be shown."  *Id.* (internal quotes and citations omitted).

22  The only resulting harm that PEI alleges it suffered is "that it failed to obtain its anticipated

23  profits on the services it performed."  Counterclaim, ¶¶ 21, 69, 76-77.  However, it is unclear how

24  PEI's alleged reliance on First Advantage's promise to run all future billings through PEI would

25  have caused it to suffer damages for "anticipated profits."  PEI provides no explanation as to what

26  these anticipated profits were and how it expected to make such profits by relying on such a

27  promise.  As discussed above, PEI also fails to establish a causal connection between how First

28  Advantage's alleged broken promise had a detrimental effect on PEI's "anticipated profits" for

- 19 -

Buchanan Ingersoll & Rooney LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418

1   services *PEI performed* and how that promise had any bearing on whether PEI would pay First

2   Advantage for outstanding invoices for services *First Advantage performed for PEI's benefit*.  It is

3   also unclear how PEI could have any reasonable expectation to gain anything by relying on this

4   alleged false promise, let alone suffer actual damages from First Advantage's failure to perform,

5   when PEI alleges that CCE canceled its verbal contract with PEI *before* First Advantage made the

6   alleged false promise.  As such, this claim fails as a matter of law.

7   **F.    PEI's Eighth Cause Of Action Fails To State A Claim For A False Representation Of**
        **Fact.**

8

9        In its Eighth Cause of Action, PEI claims that on June 21, 2005, First Advantage

10  "represented to PEI that it had not 'endeavored to directly sell its services to Coca Cola, or in

11  anyway circumvent the relationship that Private Eyes has had with Coca Cola.'"  Counterclaim ¶ 80.

12  PEI claims that this representation was false when made and that First Advantage "continued to

13  solicit business from CCE, including MVRs and other business services."  *Id.*, ¶¶ 81-82.  PEI

14  speculates that this representation was made with the intent that PEI would continue to subcontract

15  CCE services until First Advantage was able to entice CCE to assign all such services to First

16  Advantage.  *Id.*, ¶¶ 83-84.

17       PEI claims that it "reasonably relied" on this statement and continued to subcontract services

18  to First Advantage "since it was made by counsel for First Advantage and at the time it had no

19  reason to believe that First Advantage would continue to solicit business from CCE."  *Id.*, ¶ 84-85.

20  PEI alleges that it was harmed by the representation because it continued to assign services to First

21  Advantage, which allowed it an inside opportunity to solicit additional business services from CCE.

22  *Id.*, ¶ 86.  PEI also speculates that had First Advantage "not made such solicitations, PEI has every

23  reason to believe that it would have continued to receive assignments from CCE."  *Id.*, ¶ 86.

24       To allege a cause of action for fraud based on a misrepresentation of fact under California

25  law, PEI must allege facts that establish: (1) a representation of a material fact; (2) knowledge of its

26  falsity; (3) intent to defraud; (4) justifiable reliance; and (5) resulting damage.  *Wilhelm*, 186

27  Cal.App.3d at 1331; *Lazar*, 12 Cal.4th at 638 (1996); *accord Rasidescu v. Midland Credit*

28  *Management, Inc.*, 435 F.Supp.2d 1090, 1099 (S.D.Cal. 2006).  Similar to promissory fraud, "a

- 20 -

1  claim for intentional misrepresentation is also subject to the heightened pleading standard of Rule

2  9(b)." *Textainer Equip. Managem't (U.S.) Ltd. v. TRS Inc.*, 2007 WL 1795695, *4 (N.D.Cal., June

3  20, 2007).  As discussed below, the allegations supporting this claim fail to meet the particularity

4  requirements of Rule 9(b) and fail to fully, factually and specifically allege facts establishing all of

5  the essential elements for fraudulent misrepresentation. *See Wilhelm*, 186 Cal.App.3d at 1331-32.

6        **1.      PEI Fails To Allege That First Advantage Falsely Represented A Material Fact.**

7        PEI fails to set forth allegations that establish that First Advantage's statement that "it had

8  not 'endeavored to directly sell its services to Coca Cola, or in anyway circumvent the relationship

9  that Private Eyes has had with Coca Cola'" was a misrepresentation of a material fact.  *See*

10  Counterclaim, ¶¶ 14-20, 79-84.

11        As demonstrated by the letter containing the alleged misrepresentation, PEI takes the

12  statement made by First Advantage out of context.  *See* Counterclaim, Exhibit D.  The alleged

13  misrepresentation was made in a cease and desist letter sent by counsel for First Advantage in

14  regard to PEI's breach of the parties' agreement.  *Id.*  It was not an agreement, promise or something

15  that could be reasonably taken as a representation of material fact because it was part of First

16  Advantage's demand that PEI cure its breach of the parties' contract.  *Id.*

17        Even if it could be read in the context suggested by PEI, it still does not constitute a

18  representation that First Advantage would not solicit or interfere with PEI's relationship with CCE.

19  *See* Counterclaim, Exhibit D.  The letter simply states that First Advantage "has not endeavored" to

20  sell its services to CCE.  In plain English, this simply means that in the past, First Advantage had

21  <u>tried</u> not to solicit CCE.[7]  *See id.*

22        Finally, taking PEI's assertion that the representation was false when made at face value, the

23  representation still cannot be material because PEI admits that it already knew that First Advantage

24  attempted to solicit CCE and circumvent the relationship that PEI had with CCE.  Counterclaim,

25  ¶¶ 14-20, 79.  As a matter of law, there cannot be a misrepresentation of a material fact unless the

26  

27  [7] The word "endeavor" means "to attempt; try."  *Dictionary.com Unabridged (v 1.1),* Random House, Inc. 05 Jul. 2007 (<Dictionary.com http://dictionary.reference.com/browse/endeavor>).

28  

*Buchanan Ingersoll & Rooney LLP*
*333 Twin Dolphin Drive, Suite 700*
*Redwood Shores,  CA 94065-1418*

defendant has "sole knowledge or access to material facts and knows that such facts are not known to or reasonably discoverable by the other party." *Goodman v. Kennedy* 18 Cal.3d 335, 347 (1976). Thus, because PEI discovered that First Advantage was providing MVR services to CCE in April 2004 and offered CCE other services in the spring of 2005, PEI cannot assert that First Advantage's statement was material to the parties' business relationship at the time it was made.

### 2.    PEI Also Fails To Plead Facts Sufficient To Show That It Justifiably Relied On The Alleged Representation.

In addition to failing to establish that the alleged representation was material, PEI also fails to demonstrate that it justifiably relied upon that representation as a matter of law. *See Grisham*, 40 Cal.4th at 638. As discussed above, the allegations supporting its Eighth Cause of Action must demonstrate that under the circumstances, taking into account PEI's knowledge, sophistication and experience, it was reasonable for it to accept First Advantage's statement without an independent inquiry or investigation. *Wilhelm*, 186 Cal.App.3d at 1331-32; *Guido*, 1 Cal.App.4th at 843. PEI's failure to allege such facts, as discussed below, requires the dismissal of the Eighth Cause of Action. *See, e.g., Wilhelm*, 186 Cal.App.3d at 1331-32; *Zito*, 267 F.Supp.2d at 1027-28; *Keenan*, 171 Cal.App.3d at 29.

In its Counterclaim, PEI alleges that it discovered no less than three prior false statements made by First Advantage. *See* Counterclaims, ¶¶ 14-20, 79. PEI also alleges that at the time the alleged misrepresentation was made on June 21, 2005, it was already aware of First Advantage repeatedly soliciting CCE for the sale of its services, and in one instance, First Advantage was successful in directly selling MVRs to CCE. *Id.* In light of this knowledge and experience with First Advantage, as well as PEI being a highly sophisticated corporation in the investigation business, PEI cannot establish as a matter of law that its reliance on the representation was justified. *See Balfour, Guthrie & Co. v. Hansen,* 227 Cal.App.2d 173, 196 (1964) (reliance is not justified if representation is obviously false or at least doubtful to a degree sufficient to put recipient upon inquiry); *Atari Corp. v. Ernst & Whinney*, 981 F.2d 1025, 1030-31 (9th Cir.1992) ("it is plain that California law does not permit a party to claim that it justifiably relied on representations that were obviously false"); *see also Wilhelm*, 186 Cal.App.3d at 1331-32; *Guido*, 1 Cal.App.4th at 843.

Buchanan Ingersoll & Rooney LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418

Buchanan Ingersoll & Rooney LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418

1    Given PEI's admitted knowledge of the falsity of First Advantage's alleged misrepresentation, leave

2    to amend would be futile.  As such, the Court should dismiss the Eighth Cause of Action with

3    prejudice.

4    **3.    PEI Fails To Allege Sufficient Facts To Establish The Elements Of Causation And Damages.**

5    PEI fails to allege with particularity that it suffered any measurable damages as a result of

6    the alleged misrepresentation.  As noted above, in order to recover damages for fraud, the plaintiff

7    must plead and prove the "detriment proximately caused" by the defendant's tortious conduct.

8    *Service by Medallion*, 44 Cal.App.4th at 1818.  Here, PEI did not incur any damages because PEI

9    does not allege that CCE actually assigned any services directly to First Advantage that PEI had

10   been providing to CCE <u>after</u> the alleged misrepresentation was made.  Counterclaim, ¶¶ 14-20.  As

11   such, PEI fails to plead that it suffered damages from relying on the alleged false statement.

12   **4.    The Statements Made In The June 21, 2005 Cease and Desist Letter Are Subject To The Litigation Privilege.**

13   

14   PEI also cannot base a claim for false representation on the June 21, 2005 cease and desist

15   letter because the statements made therein are absolutely privileged under California Civil Code

16   section 47(b) ("Section 47(b)").  This provides in part that "[a] privileged publication or broadcast is

17   one made ... [i]n any ... judicial proceeding."  Cal. Civ. Code § 47(b).  This privilege is absolute, not

18   qualified.  *See Silberg v. Anderson*, 50 Cal.3d 205, 215 (1990).  It applies to any communication (1)

19   made in a judicial or quasi-judicial proceeding, (2) by litigants or other participants authorized by

20   law, in or out of court, (3) to achieve the objects of litigation, and (4) which has some connection or

21   logical relation to the action.  *See id.* at 212.  The litigation privilege is a defense "to all torts other

22   than malicious prosecution, including fraud, negligence and negligent misrepresentation."  *Harris v.*

23   *King* 60 Cal .App.4th 1185, 1188. (1998); *accord Rothman v. Jackson*, 49 Cal.App.4th 1134, 1140

24   (1996) (stating that only malicious prosecution actions are exempt from Section 47(b)).

25   Courts have routinely held that the privilege "applies to prelitigation communications as

26   well as those occurring during the course of actual litigation."  *Nguyen v. Proton Technology Corp.*,

27   69 Cal.App.4th 140, 147 (1999); *see also Rubin v. Green*, 4 Cal.4th 1187, 1194 (1993)

28   (acknowledging that communications with some relation to an anticipated lawsuit are within the

- 23 -

1   privilege); *Lerette v. Dean Witter Org'n, Inc.*, 60 Cal.App.3d 573, 575, 577-78 (1976) (holding that

2   demand letter such as that sent by defendant was "fully privileged ... as preliminary to a judicial

3   proceeding"). Pre-litigation demands in anticipation of litigation "are protected as part of the price

4   paid for affording litigants the utmost freedom of access to the courts." *Fuhrman v. California*

5   *Satellite Systems*, 179 Cal.App.3d 408, 422 n. 5 (1986), *overruled on other grounds in Silberg*, 50

6   Cal.App.3d at 212. Indeed, one court has suggested that counsel may well have a duty to try to

7   resolve a dispute without first filing suit and that to do so is consistent with "well established legal

8   practice." *Lerette*, 60 Cal.App.3d at 577.

9       On its face, the letter at issue was clearly made in the context of a potential legal dispute

10  between the parties over PEI's breach of its obligations under their March 29, 2002 agreement.

11  Counterclaim, Exhibit D. This letter requested that PEI cease and desist from engaging in conduct

12  that First Advantage considered to be such a breach or it would consider taking actions to preserve

13  its legal interest. *See id.* Thus, it has a logical relation to a potential legal dispute at that time, as

14  well as to the present action, which is based on a dispute arising from that agreement. Accordingly,

15  as a matter of law, PEI's claim based on the June 21, 2005 letter is barred by the litigation privilege

16  under Section 47(b).

17  **G.     PEI's Ninth Cause Of Action For Unfair Trade Practices Fails As A Matter Of Law**
         **Because It Wholly Depends On The Foregoing Claims That Are Subject To Dismissal.**
18

19      In its Ninth Cause of Action, PEI alleges that First Advantage engaged in unfair business

20  practices in violation of California Business and Professions Code section 17200 et seq.

21  Counterclaim, ¶¶ 90-95. Instead of setting forth separate allegations to support this counterclaim,

22  PEI simply incorporates by reference the allegations supporting the proceeding tort claims. *Id.*

23  Since PEI's unfair trade practices counterclaim is entirely dependent on its Fourth through Eighth

24  Causes of Action, it too is subject to dismissal on the same grounds for failing to state a claim upon

25

26

27

28

Buchanan Ingersoll & Rooney LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418

- 24 -

1  which relief can be granted.[8]  *Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192, 1203 (9th Cir. 2001)

2  ("the breadth of § 17200 does not give a plaintiff license to 'plead around' the absolute bars to relief

3  contained in other possible causes of action by recasting those causes of action as ones for unfair

4  competition") (citing *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163,

5  182 (1999), *accord Daly v. Viacom, Inc.*, 238 F.Supp.2d 1118, 1126 (N.D.Cal. 2002).

6  ## V.    CONCLUSION

7      For the foregoing reasons, First Advantage respectfully requests that the Court dismiss PEI's

8  Fourth through Ninth Causes of Action with prejudice.

9

10  Dated:  July 12, 2007                                Respectfully submitted,

11                                                       BUCHANAN INGERSOLL & ROONEY LLP

12

13                                                       /s/ Jeffrey M. Ratinoff
                                                         _____

14  By:  JEFFREY M. RATINOFF
         Attorneys for Plaintiff
         FIRST ADVANTAGE BACKGROUND
15       SERVICES CORP.

16

17

18

19

20

21  _____

22  [8] PEI will likely argue that its intentional inference with contractual relations claim is saved by the

23  four year statute of limitations under Section 17200.  This argument does not save its Section 17200 claim.  "When a plaintiff who claims to have suffered injury from a direct competitor's 'unfair' act or

24  practice invokes section 17200, the word 'unfair' in that section means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its

25  effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition."  *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163,

26  187 (1999).  Since the remaining allegations that are not subject to dismissal amount to nothing more than breach of contract claims and intentional interference with a contract, PEI cannot sustain

27  a Section 17200 claim on those allegations.  *See id.* at 186 ([i]njury to a competitor is not equivalent to injury to competition; only the latter is the proper focus of antitrust laws").

28

Buchanan Ingersoll & Rooney LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418