3061-0001

1  Mark R. Mittelman (SBN 96598)
   Paul A. Kanter (SBN 194596)
2  LAW OFFICES OF MARK R. MITTELMAN
   A Professional Corporation
3  190 North Wiget Lane, Suite 101
   Walnut Creek, California 94598
4  Telephone: (925) 256-0677
   Facsimile: (925) 256-0679
5  E-mail: mmittelman@mittellaw.com
   Attorneys for Defendant / Counter-Claimant /
6  Cross-Complainant
   PRIVATE EYES, INC.

7

8

9                    UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11                     SAN FRANCISCO DIVISION

12

13  PRIVATE EYES, INC., a California corporation        Case No. C07-2424 SC

14         Counterclaimant and Cross-Complainant,       **PRIVATE EYES, INC.'S
                                                         MEMORANDUM OF POINTS AND
15     vs.                                               AUTHORITIES IN OPPOSITION TO
                                                         MOTION TO DISMISS PORTIONS OF
16  FIRST ADVANTAGE BACKGROUND                           COUNTER-CLAIM AGAINST FIRST
    SERVICES CORP., a Florida corporation;              ADVANTAGE BACKGROUND
17                                                       SERVICES CORP.**
           Counterdefendant,.                            **[F.R.C.P 12(B)]**

18  and                                                  **Date:       August 17, 2007**
                                                         **Time:       10:00 A.M.**
19  ROES 1-20,                                           **Judge:      Hon. Samuel Conti**
                                                         **Dept:       1**
20         Cross-Defendants.

21

22

23

24

25

26

27

28

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK CA 94598
Phone: (925) 256-0677
FAX (925) 256-0679

# MEMORANDUM OF POINTS AND AUTHORITIES

## TABLE OF CONTENTS

TABLE OF CONTENTS...........................................................................................i

TABLE OF AUTHORITIES....................................................................................ii

I.    STATEMENT OF ISSUES TO BE DECIDED...........................................1

II.   STATEMENT OF FACTS.........................................................................1

III.  ARGUMENT.............................................................................................4

    A.    LEGAL STANDARDS THAT APPLY TO FRCP 12 MOTIONS TO DISMISS........ 4

    B.    FIRST ADVANTAGE CANNOT SHOW THAT ALL CLAIMS FOR INTENTIONAL INTERFERENCE WITH CONTRACT AND PROSPECTIVE ECONOMIC ADVANTAGE ARE NECESSARILY BARRED BY THE TWO-YEAR STATUTE OF LIMITATIONS...................................5

    C.    PEI HAS ADEQUATELY PLEADED A CLAIM FOR INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE, OR AT LEAST CAN DO SO ON AMENDMENT........................................5

    D.    PEI'S CLAIM FOR FRAUD BASED ON THE VIOLATION OF THE NON-SOLICITATION AGREEMENT IS NOT BARRED BY THE STATUTE OF LIMITATIONS AND IS ADEQUATELY PLEADED......................................12

    E.    PEI CAN ADEQUATELY PLEAD A CLAIM FOR FRAUD BASED ON THE PROMISE TO RUN BILLINGS THROUGH PEI.....................................15

    F.    PEI HAD ADEQUATELY PLED A CLAIM FOR FRAUD BASED ON THE REPRESENTATION THAT FIRST ADVANTAGE HAS NOT ENDEAVORED TO SOLICIT CCE BUSINESS....................................17

    G.    PEI HAS ADEQUATELY PLEADED A CLAIM FOR UNFAIR BUSINESS PRACTICES, OR AT LEAST CAN DO SO ON AMENDMENT.......19

IV.   CONCLUSION..........................................................................................21

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
150 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone (925) 256-0677
FAX (925) 256-0679

i

1

# MEMORANDUM OF POINTS AND AUTHORITIES

2

## TABLE OF AUTHORITIES

3

4

### Statutes

5

California Business & Professions Code §17200 et seq. ...........................................1, 19, 20, 21

6

California Business & Professions Code §17208 ......................................................................20

7

California Civil Code §47(b) ....................................................................................................18

8

California Civil Code §1439.......................................................................................................14

9

California Civil Code §3426.1 et seq (Uniform Trade Secrets Act (UTSA) )........................10, 21

10

California Civil Code §3426.3....................................................................................................10

11

California Civil Code §3426.1(b)(2)(B)(ii) ..............................................................................10

12

28 U.S.C. §1332...........................................................................................................................4

13

Florida Rule of Professional Conduct 4-4.1..............................................................................17

14

FRCP 8..........................................................................................................................................4

15

FRCP 9(b) ...................................................................................................................1, 5, 13, 15

16

FRCP 12........................................................................................................................................4

17

18

### Cases

19

Accuimage Diagnostics Corp. v. Terarecon,
260 F.Supp.2d 941 (N.D.Cal. 2003) .........................................................................................9

20

21

Atchison Topeka & Santa Fe Railway v. Lan Franco,
267 Cal.App.2d 881, 885 [73 Cal.Rptr. 660, 663] (1968) ......................................................16

22

Atwater Elementary School District v. California Department of General Services,
41 Cal.4th 227, 232-33 [59 Cal.Rptr.3d 233, 236] (2007) ....................................................12

23

24

Big Bear Lodging Association v. Snow Summit, Inc.,
182 F.3d 1096, 1105 (9th Cir. 1999) .........................................................................................6

25

26

Bishop Creek Lodge v. Scira,
46 Cal.App.4th 1721, 1734 [54 Cal.Rptr.2d 745, 752] (1996) ...............................................15

27

28

Blakemore v. Superior Court,
129 Cal.App.4th 36 [27 Cal.Rptr.3d 877] (2005) ....................................................................19

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone (925) 256-0577
FAX (925) 256-0676

Blaxland v. Commonwealth Director of Public Prosecutions,
323 F.3d 1198, 1201 (9th Cir. 2003) ............................................................5

Bosse v. Crowell Collier & MacMillan,
565 F.2d 602, 611 (9th Cir. 1977) ..............................................................5

Cal-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.,
20 Cal.4th 163 [83 Cal.Rptr.2d 548] (1999) ................................................20

Chipanno v. Champion International Corp.,
702 F.2d 827, 831 (9th Cir. 1983) ..............................................................4

Cicone v. URS Corp.,
183 Cal.App.3d 194, 205 [227 Cal.Rptr. 887, 894](1986) ..................................15

Concha v. London,
62 F.3d 1493, 1502-03 (9th Cir. 1995) ........................................................5

Cook, Perkiss and Liehe, Inc. v. Northern California Collection Service, Inc.,
911 F.2d 242, 246-47 (9th Cir. 1990) ..........................................................6

Cortez v. Purolator Air Filtration Products Co.,
23 Cal.4th 163, 178-79 [96 Cal.Rptr.2d 518, 528-29] (2000) ..............................20

Courtesy Temporary Services, Inc. v. Camacho,
222 Cal.App.3d 1278 [272 Cal.Rptr. 352] (1990) ...........................................20

Cross Talk Productions, Inc. v. Jacobson,
65 Cal.App.4th 631, 646 [76 Cal.Rptr.2d 615, 624] (1998) ...............................8

Deutsch v. Flannery,
823 F.2d 1361, 1365 (9th Cir. 1987) ..........................................................5

Doe v. United States,
419 F.3d 1058, 1062 (9th Cir. 2005) ..........................................................5

Edwards v. Centex Real Estate Corp.,
53 Cal.App.4th 15, 37-40 [61 Cal.Rptr.2d 518, 532-34] (1997) ..........................18

Employers Insurance of Wausau v. Musick, Peeler & Garrett,
871 F.Supp. 381, 390 (S.D.Cal. 1994) ........................................................5

Fassberg Construction Co. v. Housing Authority of City of Los Angeles,
151 Cal.App.4th 267, 305 [60 Cal.Rptr.3d 375, 411-12] (2007) ..........................14

Feldman v. Allstate Insurance Co.,
322 F.3d 660, 666 (9th Cir. 2003) ............................................................4

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0670

Fontana v. Haskin,
262 F.3d 871, 877 (9th Cir. 2001) ......................................................................13

Hsu v. OZ Optics Ltd.,
211 F.R.D.616, 621 (N.D.Cal. 2002) .................................................................10

JRS Products, Inc. v. Matsushita Electric Corp. of America,
115 Cal.App.4th 168 [8 Cal.Rptr.3d 840] (2004) ..............................................9

Julrik Productions, Inc. v. Chester,
 38 Cal.App.3d 807 [113 Cal.Rptr. 527] (1974) ...............................................16

Kasparian v. County of Los Angeles,
38 Cal.App.4th 242 [45 Cal.Rptr.2d 90] (1995) ................................................8

Khoury v. Macy's of California, Inc.,
14 Cal.App.4th 612 [17 Cal.Rptr.2d 708] (1993) ..............................................9

Lee v. City of Los Angeles,
250 F.3d 668 (9th Cir. 2001) .............................................................................17

London v. Cooper & Lybrand,
644 F.2d 811, 816 n.1 (9th Cir. 1981) .................................................................6

Manderville v. PCG&S Group, Inc.,
146 Cal.App.4th 1486, 1498-99 [55 Cal.Rptrd.2d 59, 69] (2007) ...................17

Moore v. Kayport Package Export,
885 F.2d 531, 540 (9th Cir. 1989) .....................................................................15

Moyes v. Leipziger,
729 F.2d 605, 607-08 (9th Cir. 1984) .................................................................6

Moyo v. Gomez,
32 F.3d 1382, 1384 (9th Cir. 1994) .....................................................................5

Nagrampa v. Mail Coups, Inc.,
469 F.3d 1257, 1270 n.3. (9th Cir. 2006) ............................................................5

Nelson v. Sperling,
270 Cal.App.2d 194, 195 [76 Cal.Rptr. 481, 482] (1969) ...............................13

Overstock.Com v. Gradient Analytics, Inc.,
151 Cal.App.4th 688, [61 Cal.Rptr.3d 29, 49] (2007) .......................................8

Prata v. Superior Court,
91 Cal.App.4th 1128, 1144 [111 Cal.Rptr.2d 296, 308] (2004) ......................19

Progressive West Insurance Co. v. Superior Court,
135 Cal.App.4th 263, 284 [37 Cal.Rptr.3d 434, 457] (2005) ..........................19

Reeves v. Hanlon,
33 Cal.4th 1140, 1155 [17 Cal.Rptr.3d 289, 300] (2004) ................................10

Robinson Helicopter Co., Inc. v. Dana Corp.,
34 Cal.4th 979, 990 [22 Cal.Rptr.3d 352, 359] (2004) ....................................13

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
102 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone. (925) 256-0677
FAX. (925) 256-0679

Roland v. Hubenka,
12 Cal.App.3d 215 [90 Cal.Rptr. 490] (1970) ........................................................................16

Rothman v. Jackson,
49 Cal.App.4th 1134 [57 Cal.Rptr.2d 284](1996) ..................................................................18

Sanford v. Motts,
258 F.3d 1117 (9th Cir. 2001) ...............................................................................................7

SI Handling Systems, Inc. v. Heisley
(3rd Cir. 1985) 753 F.2d 1244, 1260...................................................................................10

Stoner v. Williams,
46 Cal.App.4th 986, 1005 [54 Cal.Rptr.2d 243, 254] (1996) ...............................................14

Structural Steel Fabricators, Inc. v. City of Orange,
40 Cal.App.4th 459, 464-65 [46 Cal.Rptr.2d 867, 870] (1995) ...........................................12

Superior Motels, Inc. v. Rinn Motor Hotels, Inc.,
195 Cal.App.3d 1032, 1051 [241 Cal.Rptr. 487, 495-96](1987) .........................................14

Supermail Cargo, Inc. v. United States,
68 F.3d 1204, 1206 (9th Cir. 1995) .........................................................................................6

Walling v. Beverly Enterprises,
476 F.2d 393, 396 (9th Cir. 1973) ...........................................................................................5

Waterman Convalescent Hospital, Inc. v. State Department of Health Services,
101 Cal.App.4th 1433, 1441 [125 Cal.Rptr.2d 168, 174] (2002) .........................................12

Whitely v. Phillip Morris, Inc.,
117 Cal.App.4th 635, 693 [11 Cal.Rptr.3d 807, 855] (2004) ...............................................15

Woods v. Fox Broadcasting Subsidiary, Inc.,
129 Cal.App.4th 344, 350 [28 Cal.Rptr.3d 463, 468] (2005) ............................................7, 8

Whyte v. Schlage Lock Co.,
101 Cal.App.4th 1443, 1455-56 [125 Cal.Rptr.2d 277, 288] (2002) ...................................10

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
150 NORTHWEST LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 250-0677
FAX: (925) 296-0679

v

1   PRIVATE EYES, INC. hereby respectfully submits the following memorandum of points and

2   authorities in opposition to FIRST ADVANTAGE BACKGROUND SERVICES CORPORATION's

3   motion to dismiss the Fourth, Fifth, Sixth, Seventh, Eighth, and Ninth Causes of Action of the

4   Counter-Claim:

**I.**

## STATEMENT OF ISSUES TO BE DECIDED

1.     Whether PEI's claim for intentional interference with contractual relations and
intentional interference with prospective economic advantage [Fourth and Fifth Causes of Action] are
necessarily barred by the two year statute of limitations because the complaint states that discovery of
the violations occurred "in or about" spring 2005?

2.     Whether PEI has adequately pleaded the elements of intentional interference with
economic advantage in its Fifth Cause of Action?

3.     Whether PEI's claim for fraud based upon the violation of the non-solicitation
agreement [Sixth Cause of Action] is necessarily barred by the three-year statute of limitations?

4.     Whether PEI's claims for fraud in the Sixth, Seventh, and Eighth Causes of Action
have been adequately pleaded under heightened pleading standards of FRCP 9(b)?

5.     Whether PEI has stated a claim for relief under California's unfair trade practices
statute [Business and Professions Code §17200] in its Ninth Cause of Action?

**II.**

## STATEMENT OF FACTS

PRIVATE EYES, INC. [PEI] is a California corporation that is in the business of performing
employment background checks on a contract basis. [Counter-Claim (CC) ¶1]. In 2002, PEI entered
into a verbal contract with Coca-Cola Enterprises [hereinafter CCE] to perform background checks
on its applicants and employees, including verification of motor vehicle records (MVR's). [CC ¶8].
PEI reasonably expected that it would continue to receive periodic assignments from CCE so long as
it performed its background investigation services in a satisfactory manner. [CC ¶9].

PEI was authorized by its verbal contract with CCE to subcontract specific background check
services to third-party vendors. [CC ¶8]. On March 29, 2002, PEI entered into a written contract with

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
100 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

- i -

1  EIS, a predecessor in interest of FIRST ADVANTAGE BACKGROUND SERVICES

2  CORPORATION [FIRST ADVANTAGE], to provide some of the background services that CCE

3  was requesting that PEI conduct.  [CC ¶10].  These services included, but were not limited to, driver

4  qualification maintenance, physicals, and drug testing.  [CC ¶10].  In partial consideration for PEI's

5  agreement to subcontract the aforementioned services, EIS agreed in writing to not directly solicit

6  CCE for those same services.  [CC ¶11].  On October 8, 2003, FIRST ADVANTAGE, which had

7  recently acquired EIS and assumed all of its legal obligations, confirmed in writing that it would not

8  use any confidential information it received from PEI to "intentionally solicit, endeavor to entice

9  away from, or otherwise interfere with the relationship [PEI] has with any of its employment

10  background screening customers, clients, suppliers or other entity whom they do business, based on

11  the Confidential information."  [CC ¶13].

12        In direct violation of the aforementioned agreements, FIRST ADVANTAGE solicited the

13  MVR business directly from CCE.  [CC ¶14].  Although not explicitly pled in the Counter-Claim, the

14  solicitation included the revelation of proprietary information to CCE.[1]  That proprietary information

15  included PEI's costs of doing the work and profit margin.  PEI had taken reasonable steps to keep

16  such information confidential from those without any reason to know the information.  As a

17  subcontractor, FIRST ADVANTAGE obviously knew the costs of its own services, and could learn

18  the total amount of the invoice from CCE.  By putting that information together, FIRST

19  ADVANTAGE could readily determine PEI's profit margin for the MVR services.[2]  As a direct

20  result of the solicitation, and the revelation of PEI's confidential information, CCE assigned all

21  MVR's to FIRST ADVANTAGE in April 2004.  [CC ¶15].

22        FIRST ADVANTAGE had always intended to solicit the MVR services directly from CCE,

23  and had used PEI as a conduit to make the necessary contacts with CCE personnel.  [CC ¶59].  When

24  PEI first learned of FIRST ADVANTAGE's improper solicitation of CCE, and CCE's decision to

25

26    [1]  However, this allegation is certainly within the broad scope of CC ¶20.

27    [2]  Federal courts follow liberal notice pleading standards, and therefore a party asserting a claim is not required to plead every specific evidentiary fact that supports a cause of action.  To the extent that the Court deems it necessary for these

28  facts to be specifically pleaded in the Counter-Claim, they can easily be inserted by amendment.

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94596
Phone: (925) 256-0877
FAX  (925) 256-0879

PRIVATE EYES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO
DISMISS PORTIONS OF COUNTER-CLAIM AGAINST FIRST ADVANTAGE BACKGROUND SERVICES
CORP. [F.R.C.P. 12(B)]  Case No. C07-2424 SC

1   assign all future MVR's to FIRST ADVANTAGE, PEI <u>attempted</u> to negotiate a reasonable resolution

2   of the dispute. [CC ¶17]. FIRST ADVANTAGE agreed to compensate PEI $1.80 for each MVR that

3   it directly performed for CCE. [CC ¶17]. FIRST ADVANTAGE made payments on some of the

4   MVR's for some months, and then stopped paying anything by June 2005. [CC ¶18 and ¶68].

5   However, FIRST ADVANTAGE never disavowed its obligation to make such payments. As a result

6   of that, PEI never brought suit for the underlying fraudulent misrepresentation until FIRST

7   ADVANTAGE brought this lawsuit. FIRST ADVANTAGE's failure to make the necessary

8   payments is a failure of consideration, and therefore cannot support a claim that there was a

9   "settlement" that extinguished the underlying fraud claim.

10       **"In or about"** Spring 2005 PEI learned for the first time that FIRST ADVANTAGE was

11  soliciting CCE for the remaining services that PEI had subcontracted pursuant to the aforementioned

12  written agreements. [CC ¶19]. On June 21, 2005, in response to an inquiry by PEI about the

13  solicitation, FIRST ADVANTAGE's inside counsel Bret Jardine specifically represented that FIRST

14  ADVANTAGE "has not endeavored to directly sell its services to [CCE], or in any way circumvent

15  the relationship that [PEI] has had with [CCE]." [CC ¶¶80-81]. Although PEI had learned facts

16  <u>suggesting</u> otherwise, PEI believed the representation of FIRST ADVANTAGE because it was made

17  by its counsel and he presumably had direct access to the information and would not intentionally

18  assert false facts. Furthermore, the letter can reasonably be read to include a representation that any

19  solicitations would not happen in the future. As a result of these representations by FIRST

20  ADVANTAGE, PEI continued to do business with FIRST ADVANTAGE. [CC ¶84].

21       Also **"in or about"** Spring of 2005, PEI learned for the first time that FIRST ADVANTAGE

22  had disclosed confidential and proprietary information to CCE, including the profit margins on

23  physicals. [CC ¶20]. That disclosure of information was a direct violation of the October 2003

24  written agreements. [CC ¶20].

25       In September 2006, CCE informed PEI that it would be assigning future work to other

26  vendors. PEI believes that CCE's decision was due to (1) FIRST ADVANTAGE's unsatisfactory

27  performance of certain services and (2) CCE's unease with the friction that had been generated

28  between PEI and FIRST ADVANTAGE as a result of the various issues. [CC ¶21]. Although not

-3-

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
180 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94596
Phone (925) 256-0177
FAX. (925) 256-0676

PRIVATE EYES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO
DISMISS PORTIONS OF COUNTER-CLAIM AGAINST FIRST ADVANTAGE BACKGROUND SERVICES
CORP. [F.R.C.P. 12(B)]  Case No. C07-2424 SC

1   specifically pled, PEI would continue to do some work for CCE until the end of 2006.  As a result of

2   CCE's decision, PEI withheld monies that FIRST ADVANTAGE claimed it was owed for past

3   services.  PEI reasonably believed it had the right to withhold such funds, because FIRST

4   ADVANTAGE had violated the terms of the non-solicitation agreements and had materially

5   breached the agreement by performing unsatisfactory work.  In October 2006, FIRST ADVANTAGE

6   agreed to allow all work that it directly performed for CCE to be billed through PEI.  [CC ¶70].  This

7   would allow PEI to recover profits on work that it should have been doing for CCE, had FIRST

8   ADVANTAGE not solicited the business from CCE.  In exchange for this promise, PEI tendered

9   payment on some of the outstanding billings even though it had a legal right to not make such

10  payments. [CC ¶73].  However, FIRST ADVANTAGE never lived up to its promise and in fact

11  never intended to do so.  [CC ¶71].  By the foregoing ruse, FIRST ADVANTAGE was able to obtain

12  payments <u>even though PEI could have legally withheld them</u>.  Those payments represent direct

13  damage to PEI.[3]

14                                    **III.**

15                                  **ARGUMENT**

16  **A.      LEGAL STANDARDS THAT APPLY TO FRCP 12 MOTIONS TO DISMISS.**

17          This case is in federal court pursuant to diversity jurisdiction.  28 U.S.C. §1332.  In diversity

18  cases, the Erie doctrine requires the Court to apply federal procedural rules and state substantive law.

19  <u>See</u>, e.g., <u>Feldman v. Allstate Insurance Co.</u>, 322 F.3d 660, 666 (9th Cir. 2003).  The parties agree that

20  California substantive law applies to all claims that are asserted in the Complaint and Counter-Claim.

21          The legal standards that apply to FRCP 12 motions to dismiss are well known.  Pursuant to

22  FRCP 8, a party is only required to set forth a "short and plain statement of the claim showing that

23  the pleader is entitled to relief."  With rare exceptions, the court must liberally construe the pleadings

24  in favor of the pleading party.  <u>See</u>, e.g., <u>Chipanno v. Champion International Corp.</u>, 702 F.2d 827,

25  831 (9th Cir. 1983).  The Court must assume that all of the allegations in the pleading are true.  <u>See</u>,

26

27  _____

    [3]   Admittedly, many of these facts are not set forth in the Counter-Claim.  As above, if the Court deems it necessary that

28  they be included in the Counter-Claim, they can be inserted by amendment.

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
180 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone (925) 250-0677
FAX  (925) 250-0679

1  e.g., Blaxland v. Commonwealth Director of Public Prosecutions, 323 F.3d 1198, 1201 (9th Cir.

2  2003). Furthermore, the Court is required to give all reasonable inferences to the allegations in a

3  manner that favors the pleading party. See, e.g., Doe v. United States, 419 F.3d 1058, 1062 (9th Cir.

4  2005). Most claims in federal court are subject to a "notice pleading" standard. Under that standard,

5  the pleading will be upheld against a motion to dismiss for failure to state a claim so long as it gives

6  "fair notice" to the other side about the nature of the claims and the relief sought. See, e.g.,

7  Nagrampa v. Mail Coups, Inc., 469 F.3d 1257, 1270 n.3. (9th Cir. 2006).

8          FRCP 9(b) is one exception to notice pleading, which is applicable to fraud claims. Under

9  FRCP 9(b), a party asserting fraud must comply with some heightened pleading standards. However,

10  the standard is not as exact as FIRST ADVANTAGE has contended in its moving papers. In the

11  Ninth Circuit, the standard for heightened pleading only "requires that plaintiffs specifically plead

12  those facts surrounding [the] alleged acts of fraud to which they can reasonably be expected to have

13  access." Concha v. London, 62 F.3d 1493, 1502-03 (9th Cir. 1995). In Concha, the Ninth Circuit

14  stated that the pleader must provide "adequate notice of what [the defendants] are alleged to have

15  done, so that they may defend against the accusations." Id. Under this standard, the pleader is

16  required to set forth in specific detail the nature of the fraudulent representations. Id. See also

17  Deutsch v. Flannery, 823 F.2d 1361, 1365 (9th Cir. 1987) (stating that the pleading must only "give

18  defendants notice of the particular misconduct which is alleged to constitute the fraud charged so they

19  can defend against the charge and not just deny they have done anything wrong."). This standard

20  basically means that the time, place, and nature of the fraud must be specifically alleged in the

21  pleading. See, e.g., Bosse v. Crowell Collier & MacMillan, 565 F.2d 602, 611 (9th Cir. 1977).

22  Nevertheless, the pleading need not be a "model of clarity" to survive a motion to dismiss. Id. And,

23  in the Ninth Circuit, scienter need not be pled despite these heightened pleading standards. See, e.g.,

24  Employers Insurance of Wausau v. Musick, Peeler & Garrett, 871 F.Supp. 381, 390 (S.D.Cal. 1994)

25  (relying upon Walling v. Beverly Enterprises, 476 F.2d 393, 396 (9th Cir. 1973)).

26          Even if a pleading is insufficient in some particularity, the Court should not dismiss it if it

27  appears that the pleader can prove some set of facts that would establish the claim. See, e.g., Moyo v.

28  Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994). Furthermore, even if dismissal of the claim is warranted,

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
150 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone (925) 256-0072
FAX. (925) 256-0579

1    the pleader should be allowed leave to amend when the defect can be cured by an allegation of

2    additional facts.  Neither a proposed amended pleading, or a motion, is necessary.  It is sufficient that

3    the request be made to the Court in the opposition papers.  See, e.g., Cook, Perkiss and Liehe, Inc. v.

4    Northern California Collection Service, Inc., 911 F.2d 242, 246-47 (9th Cir. 1990).  See also Big Bear

5    Lodging Association v. Snow Summit, Inc., 182 F.3d 1096, 1105 (9th Cir. 1999); Moyes v. Leipziger,

6    729 F.2d 605, 607-08 (9th Cir. 1984) (allowing amendments to pleadings to rectify deficiencies).  **PEI**

7    **hereby specifically requests leave to amend its counter-claim to assert any additional facts that**

8    **are necessary to sustain its claims**.

9       **B.    FIRST ADVANTAGE CANNOT SHOW THAT ALL CLAIMS FOR**
         **INTENTIONAL INTERFERENCE WITH CONTRACT AND PROSPECTIVE**
10       **ECONOMIC ADVANTAGE ARE NECESSARILY BARRED BY THE TWO-**
         **YEAR STATUTE OF LIMITATIONS.**
11
           A motion to dismiss on grounds that the claim is barred by the statute of limitations can only
12
     be granted if "it appears beyond doubt that the plaintiff can prove no set of facts that would establish
13
     the timeliness of the claim."  Supermail Cargo, Inc. v. United States, 68 F.3d 1204, 1206 (9th Cir.
14
     1995).  Stated differently, dismissal is appropriate only "if it is obvious on the face of the complaint"
15
     that the claim is time-barred.  London v. Cooper & Lybrand, 644 F.2d 811, 816 n.1 (9th Cir. 1981).
16
     PEI agrees that a two-year statute of limitations applies to Fourth Cause of Action for intentional
17
     interference with contractual relations and the Fifth Cause of Action for intentional interference with
18
     prospective economic advantage.  The parties further agree that California law has a "discovery rule"
19
     that tolls the commencement of the statute of limitations until the time that the plaintiff should have
20
     reasonably discovered the interference.  PEI's Counter-Claim was filed on June 22, 2007.  Thus, the
21
     claims are barred if they **necessarily** commenced on or before June 21, 2005.
22
           Relying upon the allegation in paragraph 19 that PEI first learned that FIRST ADVANTAGE
23
     had been soliciting all remaining services from CCE in "spring 2005," FIRST ADVANTAGE asserts
24
     that all claims for intentional interference are time-barred.  However, FIRST ADVANTAGE gets to
25
     that point by completely ignoring the qualifying language **"in or about."**  FIRST ADVANTAGE
26
     asserts that the very last possible date that PEI discovered the intentional interference was June 20,
27
     2005.  Since that is two years and two days before June 22, 2007, FIRST ADVANTAGE argues that
28

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

-6-

PRIVATE EYES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO
DISMISS PORTIONS OF COUNTER-CLAIM AGAINST FIRST ADVANTAGE BACKGROUND SERVICES
CORP. [F.R.C.P. 12(B)]  Case No. C07-2424 SC

1   the interference claims are time-barred. The problem with FIRST ADVANTAGE's argument is that

2   it strictly, not liberally, construes the allegations in paragraph 19. PEI did not say that it learned of

3   the interference on or before the last day of spring. Instead, PEI asserts that it learned of the

4   interference "in or about" spring 2005. "About" means around, not within.[4] FIRST ADVANTAGE

5   cannot seriously argue that a two day time window (or for that matter a 30 day window) is not

6   encapsulated by the term "about." Even if FIRST ADVANTAGE contends for such a strict reading,

7   this Court is obligated to liberally construe the pleading. Finally, even if the Court somehow favors

8   FIRST ADVANTAGE's strict interpretation, PEI should be given leave to amend to make clear that

9   "in or about" does not mean "necessarily." Such clarifying language would not be inconsistent with

10  the pleading, and thus not prohibited by the rule that a party cannot change factual allegations without

11  some reasonable explanation. Cf. Sanford v. Motts, 258 F.3d 1117 (9th Cir. 2001) (reversing denial

12  of court's leave to amend since additional allegations would be consistent with existing allegations).

13

14      C.      **PEI HAS ADEQUATELY PLEADED A CLAIM FOR INTENTIONAL**
15              **INTEFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE, OR AT**
                **LEAST CAN DO SO ON AMENDMENT.**

16          FIRST ADVANTAGE argues that even if the Fifth Cause of Action for intentional

17  interference with prospective economic advantage is not barred by the two-year statute of limitations,

18  it is not adequately pled by PEI. First of all, as a reminder to the Court, liberal notice pleading

19  standards apply to this particular cause of action.

20          It is of course axiomatic that a "party" to a contract / economic relationship cannot be liable

21  for intentional interference of that same contract / economic relationship. See, e.g., Woods v. Fox

22  Broadcasting Subsidiary, Inc., 129 Cal.App.4th 344, 350 [28 Cal.Rptr.3d 463, 468] (2005) (holding

23  that a major shareholder of one of the parties could be sued for intentional interference with the

24  contractual relationship). FIRST ADVANTAGE, a subcontractor of PEI, attempts to extend this rule

25

---

26  [4]  Merriam-Webster online definition provides the following definition of the word "about:" "1. reasonably close to
27  <about a year ago> b: Almost <about starved> c: on the verge of -- usually used with be and a following infinitive <is
    about to join the army> -- used with a negative to express intention or determination <not about to quit> **** See
28  www.m-w.com/dictionary/about. Reasonably close to, of course, does not mean "exactly."

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
130 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX (925) 256-0675

PRIVATE EYES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO
DISMISS PORTIONS OF COUNTER-CLAIM AGAINST FIRST ADVANTAGE BACKGROUND SERVICES
CORP. [F.R.C.P. 12(B)] Case No. C07-2424 SC

1   to any person or entity that is somehow involved in the relationship. However, the interference torts

2   apply to any **third-party** without a direct contractual relationship <u>in the underlying transaction or</u>

3   <u>potential transaction</u>. A subcontractor has no such direct relationship, and cannot in any sense be

4   considered a "party" to it. It should be noted that <u>Woods</u> explicitly refused to follow the decision in

5   <u>Kasparian v. County of Los Angeles</u>, 38 Cal.App.4th 242 [45 Cal.Rptr.2d 90] (1995), relied upon by

6   FIRST ADVANTAGE. In <u>Kasparian</u>, the Court held that individual partners were not separate from

7   the partnership that entered into the agreement. <u>Woods</u> rejected any assertion that a separate entity

8   could be considered a "party" to the transaction. Furthermore, even if this Court finds <u>Kasparian</u> to

9   be persuasive on what is California law, it clearly does not extend so far as to cover subcontractors of

10  a contracting party. At most, <u>Kasparian</u> stands for the proposition that <u>owners</u> of an underlying entity

11  cannot engage in intentional interference. FIRST ADVANTAGE, of course, has no ownership

12  interest in PEI or CCE.[5] Furthermore, the California courts have held that an entity that can be

13  shown to be acting for its own interests can be held liable for intentional interference. <u>See</u>, e.g.,

14  <u>Cross Talk Productions, Inc. v. Jacobson</u>, 65 Cal.App.4th 631, 646 [76 Cal.Rptr.2d 615, 624] (1998).

15  A reasonable reading of the claim is that FIRST ADVANTAGE was acting for its own economic

16  self-interest when it engaged in the intentional interference. If that self-interest must be specifically

17  pleaded, it can readily be done.

18      FIRST ADVANTAGE also asserts that even if it is not a party to the underlying PEI-CCE

19  contract and economic relationship, it cannot be liable for intentional interference since PEI has not

20  adequately set forth any independent wrongful conduct by FIRST ADVANTAGE that would support

21  the claim. PEI acknowledges that in California a cause of action for intentional interference with

22  prospective economic advantage requires pleading and proof that the defendant engaged in wrongful

23  conduct that is independent from the interference itself. <u>See</u>, e.g., <u>Overstock.Com v. Gradient</u>

24  <u>Analytics, Inc.</u>, 151 Cal.App.4th 688, ___ [61 Cal.Rptr.3d 29, 49] (2007). The California courts have

25  held that this means the conduct violated some constitutional, statutory, regulatory, common law, or

26  _____

27  [5]  To blunt any further creative arguments, it would clearly not be sufficient if FIRST ADVANTAGE for some reason
     owns some stock or other nominal financial stake in CCE. Such a trivial ownership interest would not exonerate FIRST

28  ADVANTAGE of obligations to not tortiously interfere in CCE's contractual / prospective economic relationships.

-8-

PRIVATE EYES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO
DISMISS PORTIONS OF COUNTER-CLAIM AGAINST FIRST ADVANTAGE BACKGROUND SERVICES
CORP. [F.R.C.P. 12(B)]  Case No. C07-2424 SC

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone (925) 256-0077
FAX (925) 256-0079

1    other determinable standard. Id.

2         Based on the foregoing broad definition of independent wrongful conduct, there does not

3    seem to be any reason why a breach of a non-solicitation agreement, which is a common law breach

4    of contract, would not be sufficient in itself to maintain the interference claim. Nevertheless, FIRST

5    ADVANTAGE relies upon a number of inapposite cases for its position that violation of the non-

6    solicitation agreement is insufficient to maintain the claim. However, none of those cases stand for

7    that sweeping proposition. FIRST ADVANTAGE relies upon JRS Products, Inc. v. Matsushita

8    Electric Corp. of America, 115 Cal.App.4th 168 [8 Cal.Rptr.3d 840] (2004) and Khoury v. Macy's of

9    California, Inc., 14 Cal.App.4th 612 [17 Cal.Rptr.2d 708] (1993) for its proposition that a breach of

10   contract cannot be the basis for the independent wrong necessary for the intentional interference tort.

11   However, those cases do not stand for such a broad proposition. In both of those cases, the Court

12   only held that the interference tort cannot be premised on the failure of the defendant to continue to

13   do business with the plaintiff. In Khoury, the defendant failed to comply with its contractual

14   obligations to supply merchandise. In JRS, the defendant prematurely terminated its franchise

15   agreement. In both cases, the "interference" was that the actions of the defendant prevented the

16   plaintiff from servicing its clientele. That damage, of course, is simply a consequence of the

17   defendant's breach of contract and cannot be transformed into an interference tort by creative

18   pleading.[6] In contrast, here FIRST ADVANTAGE violated an affirmative obligation to not solicit

19   business from CCE. The damage to PEI is not that FIRST ADVANTAGE failed to supply services.

20   Rather, the damage to PEI is the loss of CCE's business due to the intermeddling. That is exactly the

21   type of damage that the interference torts are designed to remedy in the first place. PEI is therefore

22   not trying to creatively plead a tort claim to avoid the limitations of a contract claim.

23        The other two cases relied upon by FIRST ADVANTAGE are also clearly inapposite. In

24   Accuimage Diagnostics Corp. v. Terarecon, 260 F.Supp.2d 941 (N.D.Cal. 2003), the district court

25   dismissed the claim against the employee because the plaintiff failed to adequately plead the

26

27   [6]  Basically, these two decisions make it clear that "intentional interference" requires some type of intermeddling by the
     tortfeasor. Intentional conduct that foreseeably causes an interference is not, in itself, sufficient. Soliciting business is a

28   classic form of intermeddling.

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone (925) 256-0007
FAX (925) 256-0678

-9-

PRIVATE EYES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO
DISMISS PORTIONS OF COUNTER-CLAIM AGAINST FIRST ADVANTAGE BACKGROUND SERVICES
CORP. [F.R.C.P. 12(B)]  Case No. C07-2424 SC

1    existence of an underlying relationship with a third-party. The existence of the non-competition

2    agreement, cited by FIRST ADVANTAGE in its parenthetical, had nothing to do with the court's

3    decision to dismiss the claim. The district court did state that the non-solicitation agreement was not

4    sufficient to maintain a claim for **negligent** interference, since it does not create a legal duty.

5    However, PEI is not making a claim for **negligent** interference, so that part of the case is irrelevant.

6    In Hsu v. OZ Optics Ltd., 211 F.R.D.616, 621 (N.D.Cal. 2002), the plaintiff's claim was that the

7    defendant refused to assist the plaintiff in dealing with third parties. The district court made it clear

8    that it was dismissing the claim since a refusal to assist is not the same thing as active interference.

9    Here, of course, PEI is alleging that FIRST ADVANTAGE actively interfered in the relationship

10   with CCE by directly soliciting business from CCE.

11          For the foregoing reasons, PEI asserts that FIRST ADVANTAGE's breach of the non-

12   solicitation agreement is the type of independent wrong that can support a claim for tortious

13   interference with prospective economic advantage.

14          However, assuming the Court accepts FIRST ADVANTAGE's position, it should still allow

15   the claim to proceed, or at least allow an amendment, on grounds that FIRST ADVANTAGE violated

16   the Uniform Trade Secrets Act (UTSA), as codified at California Civil Code §3426.1 et seq. That

17   statutory regime makes it unlawful to misappropriate a trade secret. See Civil Code §3426. 3. The

18   California Supreme Court has indicated that a violation of UTSA is independently wrongful conduct

19   that can support the interference tort. See Reeves v. Hanlon, 33 Cal.4th 1140, 1155 [17 Cal.Rptr.3d

20   289, 300] (2004) (identifying the defendant's misappropriation as one basis for a finding that the

21   defendant engaged in independently wrongful conduct in soliciting at-will employees to come and

22   work for it). Misappropriation includes disclosing a trade secret in violation of an agreement not to

23   do so. Civil Code §3426.1(b)(2)(B)(ii). It is clear that profit margins, and other internal accounting

24   data, are trade secrets so long as reasonable measures are taken to maintain the confidentiality of such

25   information from third parties without any need to know that information. See, e.g., Whyte v.

26   Schlage Lock Co., 101 Cal.App.4th 1443, 1455-56 [125 Cal.Rptr.2d 277, 288] (2002) (favorably

27   citing SI Handling Systems, Inc. v. Heisley (3rd Cir. 1985) 753 F.2d 1244, 1260 for proposition that

28   profit margins, cost of materials, labor, and overhead can be protectible trade secrets). As set forth in

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
150 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone (925) 256-0077
FAX: (925) 256-0079

paragraph 20 of the Counter-Claim, FIRST ADVANTAGE revealed confidential information, including the profit margins on physicals, to CCE. That was a direct violation of its agreement to not disclose the information, and thus the misappropriation of a trade secret in violation of the UTSA. That violation is a proper basis to find that FIRST ADVANTAGE engaged in wrongful conduct independent of the interference itself. If the Court does not feel that sufficient facts are pled to support this theory, PEI requests leave to amend the Counter-Claim to do so.

**D.    PEI'S CLAIM FOR FRAUD BASED ON THE VIOLATION OF THE NON-SOLICITATION AGREEMENT IS NOT BARRED BY THE STATUTE OF LIMITATIONS AND IS ADEQUATELY PLEADED.**

PEI's Sixth Cause of Action is based upon FIRST ADVANTAGE's fraudulent representation that it would not solicit business from CCE. FIRST ADVANTAGE alleges that the claim is barred by the three year statute of limitations and is not adequately pleaded.

The parties agree that a three year statute of limitations applies to fraud claims. The parties also agree that there are tolling provisions that may apply to when the claim commences, although there is disagreement as to whether tolling is available under the facts set forth in the Counter-Claim.

Paragraph 16 acknowledges that PEI first learned about the solicitation of the MVR's in April 2004. Using the last date of April (April 30th), FIRST ADVANTAGE argues that the three year statute of limitations for this particular fraud claim expired no later than April 30, 2007. However, PEI disputes that the claim commenced on April 30, 2004. As set forth in paragraph 68 of the Counter-Claim, PEI contends that the commencement of the limitations period was tolled until no earlier than June 2005. That is because the parties were in the process of attempting to resolve the dispute between them. During the period April 2004 to June 2005, PEI and FIRST ADVANTAGE worked out an arrangement whereby FIRST ADVANTAGE agreed to pay $1.80 to PEI for each MVR that FIRST ADVANTAGE directly did for CCE. This arrangement was to make up for at least some of the losses that PEI sustained because of FIRST ADVANTAGE's improper solicitation of the MVR's. FIRST ADVANTAGE made some payments through June 2005, then stopped.

FIRST ADVANTAGE argues that the foregoing facts are insufficient to find that the statute of limitations was tolled. FIRST ADVANTAGE contends that tolling only applies when the plaintiff

-11-

1    does not discover the fraudulent conduct. However, equitable tolling is not limited to that one

2    circumstance. Rather, equitable tolling applies whenever (1) there is timely notice of the potential

3    claim, (2) there is a lack of prejudice, and (3) the plaintiff acts in good faith. See, e.g., Structural

4    Steel Fabricators, Inc. v. City of Orange, 40 Cal.App.4th 459, 464-65 [46 Cal.Rptr.2d 867, 870]

5    (1995). See also  Waterman Convalescent Hospital, Inc. v. State Department of Health Services, 101

6    Cal.App.4th 1433, 1441 [125 Cal.Rptr.2d 168, 174] (2002), where the court noted that equitable

7    tolling serves to "soften the harsh impact of a technical application of the statute of limitation that

8    might otherwise prevent a good faith litigant from obtaining a trial on the merits." It is clear that PEI

9    has pled sufficient facts to justify a finding of equitable tolling. PEI obviously provided timely notice

10   of the potential claim to FIRST ADVANTAGE, since that led to the attempted resolution of the

11   matter. FIRST ADVANTAGE is not prejudiced in any way, since it knew from the outset that PEI

12   intended to hold it responsible for the improper solicitation and had time to gather whatever evidence

13   it had available to try and rebut the potential claim. Finally, PEI acted in good faith because it

14   reasonably relied upon the representation that it would be compensated, at least somewhat, for the

15   improper solicitation. Under these circumstances, the statute of limitations should be tolled until at

16   least June 2005. Since the claim was brought in June 2007, it is not barred by the three year statute of

17   limitations. In fact, it would not be barred if the Court finds a basis to toll the commencement to at

18   least June 22, 2004. That would only be seven weeks from April 30, 2007. Finally, if the Court

19   considers it necessary for PEI to plead that FIRST ADVANTAGE never intended to comply with its

20   promise to make the payments on the MVR's, PEI will plead such allegations. PEI did not plead that

21   allegation since it does not appear necessary to do so in order to justify tolling the statute of

22   limitations.

23        Assuming arguendo that the above conduct by FIRST ADVANTAGE does not justify

24   equitable tolling, it should at least justify a finding that it may be equitably estopped from asserting

25   the statute of limitations defense. Equitable estoppel is a separate concept from equitable tolling. A

26   party will be equitably estopped from asserting the statute of limitations if it engages in conduct that

27   creates a foreseeable and detrimental reliance in the other party. In other words, conduct which

28   induces the other party to hold off on filing the lawsuit. See, e.g., Atwater Elementary School

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX  (925) 256-0679

-12-

1  District v. California Department of General Services, 41 Cal.4th 227, 232-33 [59 Cal.Rptr.3d 233,

2  236] (2007). Here, given the representations by FIRST ADVANTAGE that it would make payments

3  on the MVR's, a finding of equitable estoppel would be appropriate. While it is true that the

4  payments ceased in June 2005, there was no explicit disavowal of the obligation until very recently.

5  Accordingly, PEI did not wait an extraordinary amount of time before it filed this lawsuit.

6      FIRST ADVANTAGE next claims that hypothetically if the foregoing arrangements were

7  reached, it bars any claim for the underlying fraud because it was a settlement agreement. While this

8  was a settlement of the dispute, and consideration does exist on behalf of PEI for it, FIRST

9  ADVANTAGE's failure to pay the amounts agreed upon was a failure of consideration on its part.

10  Cf. Nelson v. Sperling, 270 Cal.App.2d 194, 195 [76 Cal.Rptr. 481, 482] (1969) (holding that failure

11  of consideration allows the non-breaching party to rescind agreement). This allows PEI to elect its

12  remedies, although "double recovery" is of course not permissible at trial. In any event, a party may

13  plead alternatively[7] and if there was no valid oral contract, then there could not be any settlement that

14  bars this cause of action. As FIRST ADVANTAGE itself indicates, it will contest the validity of the

15  oral contract as this litigation progresses. FIRST ADVANTAGE cannot state on the one hand that it

16  will challenge the validity of that oral agreement, but on the other hand state that the oral agreement

17  bars the fraud claim as some sort of retraxit.

18      Finally, FIRST ADVANTAGE alleges that PEI has not adequately pleaded this fraud claim

19  under heightened pleading standards of FRCP 9(b). In California, a claim for fraud requires pleading

20  and proving the following elements: (1) a material misrepresentation, (2) scienter, (3) intent to

21  defraud / induce reliance, (4) justifiable reliance, and (5) resulting damage. See, e.g., Robinson

22  Helicopter Co., Inc. v. Dana Corp., 34 Cal.4th 979, 990 [22 Cal.Rptr.3d 352, 359] (2004). FIRST

23  ADVANTAGE does not suggest that the Sixth Cause of Action does not adequately plead fraud

24  based on the two written agreements. Rather, FIRST ADVANTAGE argues that PEI must

25  specifically plead the verbal agreements to not solicit CCE business that were made "at other times

26

27  _____
   [7]  See, e.g., Fontana v. Haskin, 262 F.3d 871, 877 (9th Cir. 2001) ("Alternatively pled claims need not even be consistent
28  with one another").

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone (925) 256-0677
FAX (925) 256-0679

-13-

PRIVATE EYES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO
DISMISS PORTIONS OF COUNTER-CLAIM AGAINST FIRST ADVANTAGE BACKGROUND SERVICES
CORP. [F.R.C.P. 12(B)]  Case No. C07-2424 SC

1  throughout the period of the business relationship between FIRST ADVANTAGE and PEI." [See CC

2  ¶57]. PEI acknowledges that it did not specifically plead those similar verbal representations.

3  However, given that they are just additional representations of the same non-solicitation agreement, it

4  seems that such pleading would go well beyond what is required to inform FIRST ADVANTAGE

5  about the nature of the fraud claim. Cf. Stoner v. Williams, 46 Cal.App.4th 986, 1005 [54

6  Cal.Rptr.2d 243, 254] (1996) ("pleading of a representative selection of alleged fraudulent acts will

7  often suffice."). If for some reason the court deems it necessary for the similar verbal representations

8  to be specifically identified, PEI seeks leave to amend to insert such facts.

9      **E.    PEI CAN ADEQUATELY PLEAD A CLAIM FOR FRAUD BASED ON
           THE PROMISE TO RUN BILLINGS THROUGH PEI.**

10

11         PEI's Seventh Cause of Action is based on the fraudulent misrepresentation that FIRST

12  ADVANTAGE made in October 2006 to allow billings on its services to run through PEI so PEI

13  could make a profit on those items. These were for items that PEI had contracted to do for CCE,

14  until FIRST ADVANTAGE directly solicited the business.

15         At the outset, PEI concedes that it inadequately alleged the reliance damages. FIRST

16  ADVANTAGE is correct that there must be proximate causation between the induced reliance and

17  the claimed damages. FIRST ADVANTAGE is correct that the lost profits from its failure to comply

18  with its promise cannot be the reliance damages, since there is no proximate causation between them

19  and the reliance. Accordingly, PEI seeks leave to amend to change the damages from the lost profits

20  to the funds that it paid to FIRST ADVANTAGE for past services. FIRST ADVANTAGE

21  mischaracterizes these payments as money legally owed to it. In fact, PEI alleges that it had a legal

22  right to withhold payment of those amounts for two reasons. First, California law permits one party

23  to withhold payments to set-off debts owed by the other party to a transaction. See, e.g., Fassberg

24  Construction Co. v. Housing Authority of City of Los Angeles, 151 Cal.App.4th 267, 305 [60

25  Cal.Rptr.3d 375, 411-12] (2007) ("The right of set-off is founded on the equitable principle that

26  either party to a transaction involving mutual debts and credits can strike a balance, holding himself

27  owing or entitled only to the net difference."). Second, PEI was justified in withholding the

28  payments on grounds that FIRST ADVANTAGE's unsatisfactory performance of the services for

-14-

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone (925) 256-0677
FAX  (925) 256-0679

PRIVATE EYES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO
DISMISS PORTIONS OF COUNTER-CLAIM AGAINST FIRST ADVANTAGE BACKGROUND SERVICES
CORP. [F.R.C.P. 12(B)] Case No. C07-2424 SC

1  CCE was a <u>material breach</u> of contract that suspended or terminated PEI's obligation to pay for such

2  services. <u>See</u> California Civil Code §1439 and <u>Superior Motels, Inc. v. Rinn Motor Hotels, Inc.</u> 195

3  Cal.App.3d 1032, 1051 [241 Cal.Rptr. 487, 495-96](1987) (a <u>material breach</u> of contract justifies the

4  termination of the contract and the withholding of payment to the breaching party).

5        PEI does contend that it has adequately pleaded the remaining elements of the fraud claim in

6  the Seventh Cause of Action. FIRST ADVANTAGE complains that PEI has not specifically

7  connected each of the individuals identified at paragraph 70 with a particular misrepresentation.

8  However, that degree of exactitude is not required under FRCP 9(b). The Ninth Circuit has noted

9  that when the defendant is a corporation, the plaintiff must identify each specific misrepresentation

10  but is only obligated to identify each specific person when that is "possible." <u>See</u>, e.g., <u>Moore v.</u>

11  <u>Kayport Package Export</u>, 885 F.2d 531, 540 (9th Cir. 1989). Although it may be possible for PEI to

12  do so, it is clear that this is not a basis to dismiss the claim.

13        FIRST ADVANTAGE next contends that PEI would not be entitled to justifiably rely upon

14  the representation that billings would run through it, because FIRST ADVANTAGE engaged in prior

15  fraudulent conduct. First of all, justifiable reliance is almost always a question of fact and a court is

16  rarely justified in taking that issue away from the trier of fact. <u>See</u>, e.g., <u>Cicone v. URS Corp.</u>, 183

17  Cal.App.3d 194, 205 [227 Cal.Rptr. 887, 894](1986). Secondly, FIRST ADVANTAGE is incorrect

18  that some notice of the falsity of representations is always enough to preclude a finding of justifiable

19  reliance. <u>See</u>, e.g., <u>Bishop Creek Lodge v. Scira</u>, 46 Cal.App.4th 1721, 1734 [54 Cal.Rptr.2d 745,

20  752] (1996) (holding that fraud claim not barred because plaintiff had some notice that the

21  representations were false). <u>See also</u> <u>Whitely v. Phillip Morris, Inc.</u>, 117 Cal.App.4th 635, 693 [11

22  Cal.Rptr.3d 807, 855] (2004) (fraud claim supported by evidence even though plaintiff had

23  knowledge that cigarettes were dangerous). FIRST ADVANTAGE essentially argues that PEI could

24  not justifiably rely upon any representation that FIRST ADVANTAGE ever made after it was first

25

26

27

28

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone (925) 256-0577
FAX (925) 256-0579

PRIVATE EYES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO
DISMISS PORTIONS OF COUNTER-CLAIM AGAINST FIRST ADVANTAGE BACKGROUND SERVICES
CORP. [F.R.C.P. 12(B)] Case No. C07-2424 SC

1  known to have solicited CCE business.[8]  However, this amounts to a blanket rule that a party can

2  never choose to "forgive" or ignore past fraudulent conduct.  If that were the rule, and a party were to

3  nevertheless proceed with a further relationship, the other party would have a license to defraud!

4  That is obviously contrary to the policy of California law that everyone is accountable for his or her

5  own wrongful conduct.  See, e.g., Atchison Topeka & Santa Fe Railway v. Lan Franco, 267

6  Cal.App.2d 881, 885 [73 Cal.Rptr. 660, 663] (1968).  It makes no difference that PEI is a

7  "sophisticated" business, a term that FIRST ADVANTAGE uses and which is not pled in the

8  Counter-Claim.  Whether or not PEI is a "sophisticated" business, a trier of fact could find that it was

9  justified in believing that FIRST ADVANTAGE would honor promises that it made to rectify its past

10  conduct.  That is especially true here since the representations involved different transactions at

11  different times, and involve companies with a longstanding business relationship over several years.

12

13  **F.    PEI HAD ADEQUATELY PLED A CLAIM FOR FRAUD BASED ON THE
    REPRESENTATION THAT FIRST ADVANTAGE HAS NOT ENDEAVORED
14  TO SOLICIT CCE BUSINESS.**

15  PEI's Eighth Cause of Action is based upon the fraudulent misrepresentation that Bret

16  Jardine, inside counsel for FIRST ADVANTAGE, made on June 21, 2005, as follows: "First

17  Advantage has not endeavored to directly sell its services to [CCE], or in any way circumvent the

18  relationship that [PEI] has had with [CCE]."  PEI contends that Mr. Jardine knew that representation

19  was false, both as to past, present, and future conduct.

20  FIRST ADVANTAGE first contends that the foregoing representation was not "material,"

21  since it can only be construed as a representation of past conduct.  However, this linguistic

22  interpretation is not the only plausible reading of the statement.  While the term "endeavored" is used

23  in the letter, a reasonable trier of fact could well conclude that given the overall context it means past,

24

25  ─────────────────────
    [8]   FIRST ADVANTAGE asserts that "it is well established under California law [that] where a person learns that one
26  representation is false, he may not assume other representations are true."  However, the two cases cited for that rather
    extraordinary proposition do not nearly go so far.  Roland v. Hubenka, 12 Cal.App.3d 215 [90 Cal.Rptr. 490] (1970)
27  involved in a single transaction and held there was sufficient evidence for the trier of fact to conclude that the plaintiff did
    not justifiably rely upon the representation.  Julrik Productions, Inc. v. Chester, 38 Cal.App.3d 807 [113 Cal.Rptr. 527]
28  (1974) actually held that the trier of fact was justified in finding that the party did justifiably rely upon the representation.

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0637
FAX  (925) 256-0616

PRIVATE EYES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO
DISMISS PORTIONS OF COUNTER-CLAIM AGAINST FIRST ADVANTAGE BACKGROUND SERVICES
CORP. [F.R.C.P. 12(B)]  Case No. C07-2424 SC

1  present, and future.  Given the continued business dealings between PEI and FIRST ADVANTAGE,

2  that would certainly be a reasonable interpretation.  That is especially true in light of the statements

3  immediately before it: "As you are aware, [PEI] and First Advantage have had an ongoing business

4  relationship for the provision of background investigation and drug screening services to [CCE] for a

5  number of years.  That relationship has been based on a trust and a pattern of business that [PEI]

6  would not endeavor to broker the sale of services of a competitor of First Advantage to [CCE] ...."

7  A reasonable reading of this statement is that if PEI and FIRST ADVANTAGE continued to do

8  business together, FIRST ADVANTAGE would not solicit any more business.  Given that this is a

9  reasonable reading, a dismissal would not be warranted just because another reading could be made.

10  See, e.g., Lee v. City of Los Angeles, 250 F.3d 668 (9th Cir. 2001) (reversing dismissal of complaint

11  because district court failed to read the complaint in the light most favorable to the plaintiff).

12  Furthermore, even if for some reason the only reasonable construction is that it denies that there have

13  been past attempts, it is not clear why FIRST ADVANTAGE does not believe that is still actionable

14  fraud.  It would be material since PEI's sources of information may have differed from FIRST

15  ADVANTAGE, and an attorney may have had superior access to information.  Furthermore, the

16  attorney had an ethical obligation to not make misrepresentations to third parties.  Cf.  Florida Rule of

17  Professional Conduct 4-4.1 (attorneys may not make knowingly false representations to third

18  parties).[9]  Given the circumstances, the denial of past solicitation would be material.  For these

19  reasons, PEI was also entitled to justifiably rely upon the representations even though it arguably may

20  have reasonably expected that they were not true.  Cf.  Manderville v. PCG&S Group, Inc., 146

21  Cal.App.4th 1486, 1498-99 [55 Cal.Rptrd.2d 59, 69] (2007) (noting that negligence by the plaintiff is

22  not sufficient to defeat fraud claim).

23      FIRST ADVANTAGE also claims that actual reliance is not adequately pled.  The Counter-

24  Claim clearly notes that the actual reliance was that it continued to deal with FIRST ADVANTAGE.

25  Without the representations by Mr. Jardine, PEI would have switched vendors.  That would have

26

27  _____
   [9]   This assumes Mr. Jardine is licensed to practice law in Florida.  However, even if it some other jurisdiction, all
28  jurisdictions have similar requirements of honesty towards third parties.

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
160 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone (925) 256-0077
FAX: (925) 256-0079

PRIVATE EYES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO
DISMISS PORTIONS OF COUNTER-CLAIM AGAINST FIRST ADVANTAGE BACKGROUND SERVICES
CORP. [F.R.C.P. 12(B)]  Case No. C07-2424 SC

1    prevented them from soliciting additional business from CCE and prevented them from doing any

2    more unsatisfactory work on the CCE account. This led to the damages set forth in paragraph 88,

3    including the loss of additional business with CCE.

4        Finally, FIRST ADVANTAGE argues that this particular fraud claim is barred by the

5    litigation privilege set forth at California Civil Code §47(b). If a statement is within the litigation

6    privilege, it is not actionable under any theory. However, the issue here is whether the particular

7    statement that Mr. Jardine made about the contacts with CCE are covered by the privilege at all. The

8    litigation privilege only covers statements that are "logically related" to pending or anticipated

9    litigation. The statements made by Mr. Jardine do not satisfy this requirement. There was no

10   pending or anticipated litigation, at least based on the letter itself.[10] The letter only says that FIRST

11   ADVANTAGE may protect its interests by directly soliciting CCE for business if PEI does not

12   "cease and desist" in its alleged efforts to obtain alternative vendors. While the letter vaguely says

13   that its efforts "may not be limited" to such actions, there is a glaring absence of any discussion of

14   potential litigation. Use of the words "cease and desist," while legal sounding, does not mean there is

15   a pending legal dispute. While the protection of the litigation privilege is broad, the courts have

16   carefully circumscribed its use to prevent it from being a shield against any and all claims arising

17   from a dispute. See, e.g., Edwards v. Centex Real Estate Corp., 53 Cal.App.4th 15, 37-40 [61

18   Cal.Rptr.2d 518, 532-34] (1997) (litigation privilege did not apply to representations made by

19   developer because a lawsuit was not mentioned and no specific legal claims were being asserted

20   when the representations were made). The Edwards court noted that the party asserting the

21   applicability of the litigation privilege must show that "at the time [the] representations [were made],

22   imminent litigation was seriously proposed and actually contemplated in good faith as a means of

23   resolving the parties' dispute." Id at 39. FIRST ADVANTAGE has not come close to

24   demonstrating, based on the four corners of Mr. Jardine's letter, that litigation was imminent. See

25   also Rothman v. Jackson, 49 Cal.App.4th 1134 [57 Cal.Rptr.2d 284](1996) (rejecting the applicability

26

27   _____
     [10]    At this stage in the proceedings, the Court may only consider the four corners of the letter in determining if the

28   litigation privilege applies as a matter of law to the claims in the Eighth Cause of Action.

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone (925) 256-0677
FAX (925) 256-0019

-18-

1    of the litigation privilege since the statements at a press conference were not "logically related" to

2    any pending litigation).

3    **G.    PEI HAS ADEQUATELY PLEADED A CLAIM FOR UNFAIR
      BUSINESS PRACTICES, OR AT LEAST CAN DO SO ON AMENDMENT.**

4    PEI's Ninth Cause of Action is for Unfair Business Practices (California Business &

5    Professions Code §17200 et seq.). FIRST ADVANTAGE argues that PEI has not adequately stated a

6    claim for any "unlawful, unfair, or fraudulent" business practice that can maintain this claim.

7    However, the claim is adequately supported by the facts, or at least can be on amendment.

8    First of all, FIRST ADVANTAGE seems to concede that if the Court denies the motion to

9    dismiss any of the three causes of action for fraud (Sixth, Seventh, or Eighth), the Ninth Cause of

10   Action is necessarily sufficient. FIRST ADVANTAGE necessarily assumes that the Court will grant

11   its motion to dismiss those three causes of action. If FIRST ADVANTAGE is incorrect, the Court

12   should deny the motion to dismiss the Ninth Cause of Action on this ground alone.

13   Assuming that the Court grants the motion to dismiss the Sixth, Seventh, and Eighth Causes

14   of Action, it nevertheless should still find that the Ninth Cause of Action is legally valid since the

15   claims in those causes of action specifically state representations which would justify a finding of a

16   fraudulent business practice. The California courts have made it clear that B&P Code §17200 et seq.

17   applies to any representation that "is likely to deceive" members of the public. See, e.g.., Prata v.

18   Superior Court, 91 Cal.App.4[th] 1128, 1144 [111 Cal.Rptr.2d 296, 308] (2004). The elements of

19   common law fraud need not be satisfied. See, e.g., Progressive West Insurance Co. v. Superior

20   Court, 135 Cal.App.4[th] 263, 284 [37 Cal.Rptr.3d 434, 457] (2005). It is clear that the

21   misrepresentations set forth in the Sixth, Seventh, and Eighth causes of action are the type that would

22   deceive the public. False representations about soliciting business, making payments to rectify such

23   improper solicitations, and future business dealings are the types of representations that would

24   mislead the public. It is irrelevant that the representations in this particular were not actually made to

25   the public. That is not a necessary element of the claim. Cf. Blakemore v. Superior Court, 129

26   Cal.App.4[th] 36 [27 Cal.Rptr.3d 877] (2005) (overruling demurrer to complaint by the plaintiff that the

27   defendant engaged in fraudulent business practice by sending unordered products to sales

28

-19-

PRIVATE EYES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO
DISMISS PORTIONS OF COUNTER-CLAIM AGAINST FIRST ADVANTAGE BACKGROUND SERVICES
CORP. [F.R.C.P. 12(B)]  Case No. C07-2424 SC

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
1990 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94596
Phone: (925) 256-0677
FAX: (925) 256-0619

1  representatives – case did not involve the general public).  Finally, to the extent that any of the fraud

2  claims are barred by the three-year statute of limitations, they are still actionable under B&P Code

3  §17200 because such claims are subject to a four year statute of limitations under B&P Code §17208.

4  See, e.g., Cortez v. Purolator Air Filtration Products Co., 23 Cal.4th 163, 178-79 [96 Cal.Rptr.2d 518,

5  528-29] (2000) (allowing plaintiff to seek restitution under B&P Code §17200 for claims that were

6  otherwise barred by the statute of limitations applicable to the underlying claim).

7      Even if there is no basis for fraudulent conduct, FIRST ADVANTAGE may still be liable

8  under B&P Code §17200 et seq. for engaging in unfair practices.  Specifically, FIRST

9  ADVANTAGE's intentional interference with prospective economic advantage is an unfair practice.

10  FIRST ADVANTAGE is correct to concede that the four year statute of limitations is applicable to

11  this claim, as noted above. FIRST ADVANTAGE is incorrect that the claim is barred by the decision

12  in Cal-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., 20 Cal.4th 163 [83

13  Cal.Rptr.2d 548] (1999).  Cal-Tech did limit somewhat the scope of "unfair" conduct when a claim is

14  brought by a competitor.  However, Cal-Tech does not limit such claims to literal antitrust violations.

15  Cal-Tech made it clear that such claims can be based on other types of conduct that "significantly

16  threatens or harms" competition.  Id. at 187; 83 Cal.Rptr.2d at 565.  The wrongful intermeddling into

17  the business affairs of another, by wrongfully soliciting business and disclosing trade secrets, is

18  certainly conduct that threatens competition.  Competition in a capitalist society requires that the

19  competitors follow the rules.  One rule is that if a promise is made to not solicit business, that

20  promise must be honored.  Another rule is that if a promise is made to keep information confidential,

21  that promise must also be honored.  A party that violates those covenants, places competitors at an

22  unfair disadvantage because they gave up something in return for nothing.  That is unfair, and falls

23  within Cal-Tech's narrowed definition.

24      Lastly, even assuming there is no basis to assert fraudulent or unfair conduct, PEI seeks leave

25  to amend the Counter-Claim to assert a claim for unlawful conduct based upon the disclosure of trade

26  secrets.  The basis for this claim is set forth above.  It is based on the improper disclosure of PEI's

27  profit margin and costing information.  Cf. Courtesy Temporary Services, Inc. v. Camacho, 222

28  Cal.App.3d 1278 [272 Cal.Rptr. 352] (1990) (opinion of J. Woods, with two justices concurring in

-20-

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
1601 NORTH MAIN STREET LANE
SUITE 101
WALNUT CREEK, CA 94596
Phone (925) 256-0677
FAX (925) 256-0679

1    judgment)(disclosure of trade secrets is actionable under B&P §17200, even where it does not

2    literally violate the provisions of UTSA).

### IV.

### CONCLUSION

5        For the reasons set forth above, PEI hereby respectfully requests that the Court deny the

6    motion to dismiss or, where appropriate, only grant it with leave to amend the particular deficiencies

7    identified by the Court.  PEI hereby specifically requests leave to amend to assert any additional

8    allegations / facts necessary to sustain the claims.

Dated: July ____, 2007                          LAW OFFICES OF MARK R. MITTELMAN

                                                _____

                                                Mark R. Mittelman
                                                Attorneys for Defendant
                                                PRIVATE EYES, INC.

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK CA 94598
Phone  (925) 256-0677
FAX  (925) 256-0679

-21-
PRIVATE EYES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO
DISMISS PORTIONS OF COUNTER-CLAIM AGAINST FIRST ADVANTAGE BACKGROUND SERVICES
CORP. [F.R.C.P. 12(B)]  Case No. C07-2424 SC