EXHIBIT A

3061-0001

1  Mark R. Mittelman (SBN 96598)
   LAW OFFICES OF MARK R. MITTELMAN
2  A Professional Corporation
   190 North Wiget Lane, Suite 101
3  Walnut Creek, California  94598
   Telephone: (925) 256-0677
4  Facsimile:  (925) 256-0679
   E-mail: mmittelman@mittellaw.com
5  Attorneys for Defendant / Counter-Claimant /
   Cross-Complainant
6  PRIVATE EYES, INC.

7

8
                    UNITED STATES DISTRICT COURT
9
                  NORTHERN DISTRICT OF CALIFORNIA
10
                     SAN FRANCISCO DIVISION
11

| | |
|---|---|
| 12  PRIVATE EYES, INC., a California corporation | Case No. C07-2424 SC |
| 13       Counterclaimant and Cross-Complainant, | **PRIVATE EYES, INC.'S** |
| 14       vs. | **COUNTERCLAIM AGAINST FIRST ADVANTAGE BACKGROUND SERVICES CORPORATION AND** |
| 15  FIRST ADVANTAGE BACKGROUND SERVICES CORP., a Florida corporation; | **CROSS-COMPLAINT AGAINST ROES 1-20 FOR THE FOLLOWING CAUSES OF** |
| 16       Counterdefendant,. | **ACTION:** |
| 17  and | **1. BREACH OF WRITTEN CONTRACT** |
| 18  ROES 1-20, | **2. BREACH OF ORAL CONTRACT** |
| | **3. UNJUST ENRICHMENT** |
| 19       Cross-Defendants. | **4. INTENTIONAL INTERFENCE WITH CONTRACTUAL RELATIONSHIP** |
| 20 | **5. INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE** |
| 21 | **6. FRAUD --FALSE PROMISE I** |
| 22 | **7.  FRAUD – FALSE PROMISE II** |
| | **8. FRAUD -- INTENTIONAL MISREPRESENTATION** |
| 23 | **9.   UNFAIR TRADE PRACTICES** |
| 24 | **10.  ACCOUNT STATED [FIRST ADVANTAGE ONLY]** |
| 25 | **11.  OPEN BOOK ACCOUNT (COMMON COUNT) [FIRST ADVANTAGE ONLY]** |
| 26 | **DEMAND FOR JURY TRIAL** |

27

28

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

-1-
PRIVATE EYES, INC.'S COUNTER-CLAIM AGAINST FIRST ADVANTAGE BACKGROUND SERVICES
CORP.  Case No. C07-2424 SC

PRIVATE EYES, INC. hereby counterclaims against FIRST ADVANTAGE BACKGROUND SERVICES CORP. and cross-complains against ROES 1-20 and alleges as follows:

## PARTIES

1.     PRIVATE EYES, INC. (hereinafter "PEI") is, and at all relevant times mentioned herein was, a corporation organized and existing under the laws of the State of California with its principal place of business in Walnut Creek, California.  PEI is in the business of providing a diverse array of background checks, and similar services, for employers seeking to hire and retain personnel. Among other services, these include drug testing. physicals, motor vehicle records(MVR) checks, and employee background verifications.  On occasion, PEI subcontracts such services to third-party vendors.

2.     PEI is informed and believes, and on that basis alleges, that FIRST ADVANTAGE BACKGROUND SERVICES CORP. (hereinafter "FIRST ADVANTAGE") is a Florida corporation with its principal place of business in St. Petersburg, Florida.  PEI is further informed and believes, and on that basis alleges, that FIRST ADVANTAGE is the successor in interest to EMPLOYEE INFORMATION SERVICES, INC. (hereinafter "EIS").  As successor in interest, FIRST ADVANTAGE is legally responsible for all obligations, arising from contract, tort, statute, or otherwise, incurred by EIS.  FIRST ADVANTAGE is sometimes referred to herein as "EIS / FIRST ADVANTAGE" to make it clear that it is responsible for both its own obligations and conduct as well as the obligations and conduct of its predecessor in interest EIS.  However, no matter how denominated in this pleading, FIRST ADVANTAGE is liable for all of the obligations and conduct of EIS.

3.     PEI is ignorant of the true names and capacities of cross-defendants ROES 1 through 20, inclusive, and sues cross-defendants by fictitious names herein.  PEI prays leave to amend this Cross-Complaint to allege their true names and capacities when the same have been ascertained.

4.     That at all times herein mentioned, FIRST ADVANTAGE and ROES 1 through 20,

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX:  (925) 256-0679

PRIVATE EYES, INC.'S COUNTER-CLAIM AGAINST FIRST ADVANTAGE BACKGROUND SERVICES CORP.  Case No. C07-2424 SC

1  inclusive, were the agents, servants, employees, or independent contractors of each of the remaining

2  cross-defendants and at all times herein relevant were acting within the course and scope of said

3  relationship.

## JURISDICTION AND VENUE

5       5.     The Court has original jurisdiction over this action under 28 U.S.C. §1332, in that it is

6  a civil action between citizens of different states and the amount in controversy exceeds the sum of

7  $75,000.00, exclusive of interest and costs.

8       6.     Venue for this counter-claim is proper in the United States District Court for the

9  Northern District of California pursuant to 28 U.S.C. §1391 since PEI has a substantial presence in

10  the Northern District of California and FIRST ADVANTAGE has elected to bring its Complaint in

11  this venue.  Venue for a counter-claim is proper in the federal district court where the Complaint is

12  brought.

13       7.     Venue for the cross-complaint is proper in the United States District Court for the

14  Northern District of California pursuant to 28 U.S.C. §1391 on one or more of the following grounds:

15  (1) ROES 1-20 have a substantial presence in the district, (2) a substantial part of the events and

16  omissions, which gave rise to this action, including the place where at least part of the contracts were

17  to be performed and where the breaches occurred took place, were in this district, and (3) a

18  substantial portion of the tortious actions took place within this district.

## COMMON ALLEGATIONS

20       8.     In or about 2002, PEI entered into a verbal contract with Coca Cola Enterprises, Inc.

21  (hereinafter "CCE") to provide various pre-employment screening background investigations  and

22  drug testing services for personnel that CCE was considering for employment, retention, and/or

23  promotion in its company.  Such services included, but were not limited to, MVR's, applicant /

24  employee physicals, and drug testing.  The verbal contract between PEI and CCE provided that CCE

25  would assign the services to PEI on an as-needed basis, and PEI would perform such services at a

26  stated price.  The verbal contract permitted, but did not require, that PEI could subcontract the

27  performance of some or all of the services to third-party vendors.

28       9.     PEI had a reasonable expectation that it would periodically receive assignments from

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

-3-

PRIVATE EYES, INC.'S COUNTER-CLAIM AGAINST FIRST ADVANTAGE BACKGROUND SERVICES
CORP.  Case No. C07-2424 SC

1   CCE for the services mentioned above, so long as it performed the services in a satisfactory manner.

2       10.     In or about March 2002, PEI subcontracted some of the services referenced above to

3   EIS, the predecessor in interest to FIRST ADVANTAGE.  The services included driver qualification

4   file maintenance, applicant / employee physicals, and drug testing.  A true and correct copy of the

5   written contract between PEI and EIS, which was drafted by EIS and signed by PEI's authorized

6   agent Sandra James on March 29, 2002, is attached as Exhibit A.

7       11.     As part of the written contract attached as Exhibit A, EIS represented and agreed that

8   it would not "directly solicit Coca-Cola for any of the services provided by Private Eyes unless it

9   receives the written consent of Private Eyes."

10      12.     PEI and EIS both agreed that only PEI had a contractual relationship with CCE for the

11  services that were subcontracted in the written contract attached as Exhibit A.  Accordingly, only PEI

12  would invoice CCE for the services.  In turn, PEI agreed to pay EIS within a reasonable amount of

13  time of receiving payment from CCE.  If CCE took any payment discounts, or otherwise reduced its

14  payments, EIS agreed that its own invoice would be discounted / reduced to the same extent.

15      13.     In or about September 2003, FIRST ADVANTAGE acquired EIS and became its legal

16  successor in interest for all rights and liabilities, including all rights and liabilities that EIS had under

17  the written contract attached as Exhibit A.  In an agreement dated October 8, 2003, drafted by FIRST

18  ADVANTAGE and signed by Sandra James as officer for PEI, FIRST ADVANTAGE reiterated its

19  prior agreement to not use any confidential information "obtained from Private Eyes to intentionally

20  solicit, endeavor, to entice away from, or otherwise interfere with the relationship Private Eyes has

21  with any of its employment background screening customers, clients, suppliers, or other entity with

22  whom they do business, based on the Confidential Information."  Furthermore, FIRST

23  ADVANTAGE agreed that it "may not use the Confidential Information for sales and marketing

24  efforts to its existing or prospective employment background screening customers."  A true and

25  correct copy of the Agreement is attached as Exhibit B.

26      14.     In or about January or February 2004, FIRST ADVANTAGE solicited CCE to obtain

27  the contract for MVR's.  These are the same services that CCE had been assigning to PEI pursuant to

28  their verbal contract.  This solicitation was a direct violation of the terms set forth Exhibit A and

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX:  (925) 256-0679

-4-
PRIVATE EYES, INC.'S COUNTER-CLAIM AGAINST FIRST ADVANTAGE BACKGROUND SERVICES
CORP.  Case No. C07-2424 SC

1    Exhibit B, which prohibited such solicitation.

2        15.     As a direct result of FIRST ADVANTAGE'S solicitation, and for no other reason,

3   CCE ceased assigning motor vehicle records to PEI and began assigning them to FIRST

4   ADVANTAGE. PEI was therefore deprived of all profits it had been making on the MVR

5   assignments.

6        16.     In or about April of 2004, PEI learned for the first time that FIRST ADVANTAGE

7   had solicited the MVR's from CCE and was now doing such work directly for CCE.

8        17.     PEI attempted to negotiate a reasonable resolution of FIRST ADVANTAGE'S

9   violation of the non-solicitation agreements set forth in Exhibit A and Exhibit B. After much

10   negotiation, FIRST ADVANTAGE verbally agreed that it would pay PEI $1.80 for each MVR that it

11   performed directly for CCE. These were labeled "commissions," although they were really

12   reimbursement for at least some of the lost profits that PEI had sustained in the past and would

13   continue to sustain in the future. The $1.80 was a compromise, and not necessarily the actual amount

14   of <u>lost profits</u> that PEI was actually sustaining. The lost profit calculation did not reimburse PEI for

15   the loss in value the company would sustain because of the reduction in the revenue stream from

16   CCE services. A true and correct copy of a letter from PEI's counsel, to Bart Valdez of FIRST

17   ADVANTAGE, is attached as Exhibit C. Exhibit C confirms the verbal agreement that the parties

18   entered into.

19        18.     Pursuant to the verbal agreement. FIRST ADVANTAGE made payments to PEI for

20   the MVR's it was now performing directly for CCE. FIRST ADVANTAGE paid $1.80 for some of

21   the MVR's it performed directly for CCE. PEI later learned that it did not pay for all of them. The

22   number of MVR's that FIRST ADVANTAGE did not pay for are unknown to PEI at this time, and

23   will be the subject of discovery. FIRST ADVANTAGE made partial payments on the MVR's for

24   some months, and then cease making payments entirely.

25        19.     In or about spring 2005, PEI learned for the first time that FIRST ADVANTAGE was

26   soliciting all remaining services from CCE. These were other services, such as physicals and drug

27   testing, that CCE had been assigning to PEI and that PEI had in turn subcontracted to FIRST

28   ADVANTAGE. The solicitation was in direct violation of the terms of Exhibit A and Exhibit B.

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

-5-

PRIVATE EYES, INC.'S COUNTER-CLAIM AGAINST FIRST ADVANTAGE BACKGROUND SERVICES
CORP. Case No. C07-2424 SC

20.     In or about the spring of 2005, PEI learned for the first time that FIRST ADVANTAGE had disclosed confidential and proprietary information to CCE.  This confidential and proprietary information included the profits that PEI earned on the physicals that CCE assigned to it. CCE used this confidential and proprietary information to insist that PEI charge less for the services. FIRST ADVANTAGE only obtained access to PEI's profit margin on the physicals because it had subcontracted to perform the work for PEI.  As such, FIRST ADVANTAGE's disclosure was in violation of the terms of Exhibit B.

21.     On or about September 28, 2006, CCE informed PEI that it would be assigning all of the services to different vendors.  PEI is informed and believes, and based thereon alleges, that CCE made this decision for the following two reasons: (1) it was not satisfied with the quality and timeliness of the services that PEI had subcontracted to EIS / FIRST ADVANTAGE and (2) it was wary of the friction that had been created between PEI and EIS / FIRST ADVANTAGE which arose from FIRST ADVANTAGE's direct solicitation of CCE services.

22.     As a direct and proximate result of the foregoing, PEI has sustained damages in the amount of past and future lost profits that will be determined by expert testimony, but which is expected to amount to no less than $5 million dollars plus interest.

## **FIRST CAUSE OF ACTION**

### **BREACH OF WRITTEN CONTRACT**

#### **[All Defendants]**

23.     PEI repeats and re-alleges the allegations contained in paragraph 1 through 22, inclusive, above and incorporates the same by reference as though set forth in fill herein.

24.     On or about March 29, 2002, PEI and EIS entered into the contract attached as Exhibit A.

25.     On or about September 2003, FIRST ADVANTAGE became the successor in interest to EIS, and therefore assumed responsibility for all of its legal obligations, including those set forth in Exhibit A.

26.     On or about October 2003, PEI and FIRST ADVANTAGE entered into the contract attached as Exhibit B.

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

27.     PEI complied with all conditions precedent under Exhibits A and B, and performed all of its obligations that were not legally suspended, excused, or extinguished.

28.     FIRST ADVANTAGE breached the terms of Exhibits A and B by directly soliciting MVR's from CCE.  PEI is also informed and believes, and based thereon alleges, that ROES 1-20 materially contributed to the breach.

29.     FIRST ADVANTAGE further breached the terms of Exhibit B by disclosing confidential and proprietary information to CCE, including but not limited to the profit margins that PEI earned on the physicals.  PEI is also informed and believes, and based thereon alleges, that ROES 1-20 materially contributed to the breach.

30.     FIRST ADVANTAGE further breached the terms of Exhibits A and B by failing to perform the services it subcontracted to perform in a manner that was satisfactory to CCE. Satisfactory performance was an implied term of Exhibit A and Exhibit B.  PEI is also informed and believes, and based thereon alleges, that ROES 1-20 materially contributed to the breach.

31.     As a direct and proximate result of the aforementioned mentioned breaches of contract, PEI has sustained damages in an amount to be proved at trial, but in no event less than $5 million, plus prejudgment interest at the legal rate.  Further, based on the aforementioned breaches of contract, PEI has incurred attorneys' fees and costs of bringing this action.  PEI will continue to incur such interest, fees and costs in amounts to be proven at trial.

WHEREFORE, PEI prays for relief as set forth below.

## SECOND CAUSE OF ACTION

## BREACH OF ORAL CONTRACT

### [All Defendants]

32.     PEI repeats and re-alleges the allegations contained in paragraph 1 through 22, inclusive, above and incorporates the same by reference as though set forth in fill herein.

33.     In or about the summer of 2004, FIRST ADVANTAGE verbally agreed to pay $1.80 to PEI for each MVR that FIRST ADVANTAGE directly performed for CCE.  The agreement was reached to resolve a legal dispute between PEI and FIRST ADVANTAGE, and therefore valid consideration supports the agreement.  In or about October of 2006, FIRST ADVANTAGE agreed to

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

-7-

PRIVATE EYES, INC.'S COUNTER-CLAIM AGAINST FIRST ADVANTAGE BACKGROUND SERVICES
CORP.  Case No. C07-2424 SC

have all billings for the services that FIRST ADVANTAGE performed for CCE to go through PEI, so PEI could earn a profit on the services.  FIRST ADVANTAGE made this promise because it had improperly solicited business from CCE, wanted to continue its business relationship with PEI, and wanted to obtain payments for outstanding services.

34.    FIRST ADVANTAGE breached the aforementioned verbal agreements by not paying $1.80 for each and every MVR it performed for CCE and not allowing the billings to go through PEI. PEI did not learn that FIRST ADVANTAGE had not paid for each and every MVR until the summer of 2005, and to this day does not know how many MVR's FIRST ADVANTAGE did not actually pay the $1.80 on.  PEI is also informed and believes, and based thereon alleges, that ROES 1-20 materially contributed to the aforementioned breaches.

35.    As a direct and proximate result of the aforementioned mentioned breaches of contract, PEI has sustained damages in an amount to be proved at trial, but in no event less than $100,000, plus prejudgment interest at the legal rate.  Further, based on the aforementioned breaches of contract, PEI has incurred attorneys' fees and costs of bringing this action.  PEI will continue to incur such interest, fees and costs in amounts to be proven at trial.

WHEREFORE, PEI prays for relief as set forth below.

### THIRD CAUSE OF ACTION

### UNJUST ENRICHMENT

### [All Defendants]

36.    PEI repeats and re-alleges the allegations contained in paragraph 1 through 22, inclusive, above and incorporates the same by reference as though set forth in fill herein.

37.    FIRST ADVANTAGE has performed services for CCE that CCE had originally assigned to PEI.

38.    FIRST ADVANTAGE was only able to obtain such services by violating the terms of Exhibit A and Exhibit B, including the non-solicitation agreement.  Based on information and belief, ROES 1-20 materially contributed to the violations.

39.    As a result of the foregoing violations, FIRST ADVANTAGE and ROES 1-20 have been unjustly enriched in an amount equal to its net profits.  That amount will be proven at trial.

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

-8-

PRIVATE EYES, INC.'S COUNTER-CLAIM AGAINST FIRST ADVANTAGE BACKGROUND SERVICES
CORP.  Case No. C07-2424 SC

40.    FIRST ADVANTAGE and ROES 1-20 should therefore be disgorged of the amount of their profits that are attributable to services for CCE.  The profits should be transferred to PEI by way of a constructive trust.

WHEREFORE, PEI prays for relief as set forth below.


## FOURTH CAUSE OF ACTION

## INTENTIONAL INTERFERENCE WITH EXISTING

## CONTRACTUAL RELATIONSHIP

### [All Defendants]

41.    PEI repeats and re-alleges the allegations contained in paragraph 1 through 22, inclusive, above and incorporates the same by reference as though set forth in fill herein.

42.    There was a valid verbal contract between PEI and CCE for services that would last so long as PEI satisfactorily performed services for CCE.

43.    FIRST ADVANTAGE, and on information and belief ROES 1-20, knew of the contract.

44.    FIRST ADVANTAGE, and on information and belief, ROES 1-20 intended to disrupt the performance of the aforementioned contract by directly soliciting business from CCE that CCE had been assigning to PEI and by disclosing PEI's confidential and proprietary information to CCE.

45.    The conduct of FIRST ADVANTAG and ROES 1-20 prevented performance by PEI or made performance more expensive or difficult by PEI.

46.    As a direct and proximate result of the aforementioned conduct by FIRST ADVANTAGE and ROES 1-20, PEI has sustained damages in an amount to be proved at trial, but in no event less than $5 million, plus prejudgment interest at the legal rate.  Further, based on the aforementioned conduct, PEI has incurred attorneys' fees and costs of bringing this action.  PEI will continue to incur such interest, fees and costs in amounts to be proven at trial.

47.    FIRST ADVANTAGE and ROES 1-20, in doing the foregoing, acted with malice, fraud, and/or oppression and therefore punitive damages pursuant to Civil Code §3294 are

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX:  (925) 256-0679

-9-

PRIVATE EYES, INC.'S COUNTER-CLAIM AGAINST FIRST ADVANTAGE BACKGROUND SERVICES
CORP.  Case No. C07-2424 SC

1    appropriate.

2           WHEREFORE, PEI prays for relief as set forth below.

3    ///

4    ///

5    ///

6

7                              **FIFTH CAUSE OF ACTION**

8    **INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS**

9                                  **[All Defendants]**

10          48.    PEI repeats and re-alleges the allegations contained in paragraph 1 through 22,

11   inclusive, above and incorporates the same by reference as though set forth in fill herein.

12          49.    PEI and CCE were in an economic relationship that would have resulted in an

13   economic benefit to PEI.

14          50.    FIRST ADVANTAGE, and on information and belief ROES 1-20, knew of the

15   aforementioned economic relationship between PEI and CCE.

16          51.    FIRST ADVANTAGE, and on information and belief ROES 1-20, intended to disrupt

17   the aforementioned relationship.

18          52.    FIRST ADVANTAGE, and on information and belief ROES 1-20, engaged in

19   wrongful conduct  through (1) soliciting or assisting with the solicitation of business from CCE in a

20   manner that violated an agreement to not solicit such business and (2) disclosing PEI's confidential

21   and proprietary information despite an agreement to not do so.

22          53.    PEI's relationship with CCE was in fact disrupted because of the aforementioned

23   conduct by FIRST ADVANTAGE, and on information and belief ROES 1-20.

24          54.    As a direct and proximate result of the aforementioned conduct by FIRST

25   ADVANTAGE and ROES 1-20, PEI has sustained damages in an amount to be proved at trial, but in

26   no event less than $4-5 million, plus prejudgment interest at the legal rate.  Further, based on the

27   aforementioned conduct, PEI has incurred attorneys' fees and costs of bringing this action.  PEI will

28   continue to incur such interest, fees and costs in amounts to be proven at trial.

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

-10-
PRIVATE EYES, INC.'S COUNTER-CLAIM AGAINST FIRST ADVANTAGE BACKGROUND SERVICES
CORP.  Case No. C07-2424 SC

55.     FIRST ADVANTAGE, and on information and belief ROES 1-20, in doing the foregoing, acted with malice, fraud, and/or oppression and therefore punitive damages pursuant to Civil Code §3294 are appropriate.

WHEREFORE, PEI prays for relief as set forth below.

### SIXTH CAUSE OF ACTION

### FRAUD – FALSE PROMISE I

### [All Defendants]

56.     PEI repeats and re-alleges the allegations contained in paragraph 1 through 22, inclusive, above and incorporates the same by reference as though set forth in fill herein.

57.     FIRST ADVANTAGE (directly and through its predecessor in interest EIS) made a promise to PEI that it would not solicit from CCE certain business services. Those business services were the ones that PEI was performing for CCE. FIRST ADVANTAGE made these promises in writing on or about March 19, 2002 and October 8, 2003, and verbally at other times throughout the period of the business relationship between FIRST ADVANTAGE and PEI. The writings dated March 19, 2002 and October 8, 2003 are respectively attached as Exhibit A and Exhibit B.

58.     The aforementioned promise made by FIRST ADVANTAGE was material to the business transactions between EIS / FIRST ADVANTAGE and PEI, since it was one of the primary reasons that PEI selected EIS / FIRST ADVANTAGE to perform the services. Had EIS / FIRST ADVANTAGE not made such promises, PEI would not have subcontracted any of the work to EIS / FIRST ADVANTAGE and as a consequence EIS / FIRST ADVANTAGE would not have had an inside position with CCE. EIS / FIRST ADVANTAGE's inside position greatly facilitated its ability to entice CCE away from PEI for certain business services.

59.     FIRST ADVANTAGE did not intend to perform the aforementioned promise when it made it. Rather, FIRST ADVANTAGE intended to solicit business services from CCE, including the MVR's, as soon as it had showed CCE that it could adequately perform the services for less cost. FIRST ADVANTAGE would be able to do so, in part, because it would be cutting PEI ("the middleman") out of the process.

60.     FIRST ADVANTAGE intended that PEI rely on the aforementioned promise. It

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

1   intended such reliance so that PEI would subcontract the services to it.

2       61.    PEI actually relied on the aforementioned promise by FIRST ADVANTAGE by

3   subcontracting CCE business services, including MVR's, physicals, and drug testing, to EIS / FIRST

4   ADVANTAGE.  Had EIS / FIRST ADVANTAGE not made the aforementioned promise, PEI would

5   not have subcontracted the services to it.

6       62.    PEI reasonably relied on the aforementioned promise by FIRST ADVANTAGE since

7   non-solicitation agreements are common in these types of transactions and FIRST ADVANTAGE

8   represented itself to be an honest and ethical company.  PEI did not learn that FIRST ADVANTAGE

9   breached its promise until after EIS / FIRST ADVANTAGE convinced CCE to switch its business

10  for the MVR's.

11      63.    FIRST ADVANTAGE did not perform the aforementioned promise, in that sometime

12  in 2004 it solicited MVR's from CCE.

13      64.    PEI was harmed by FIRST ADVANTAGE's failure to perform its promise since CCE

14  failed to assign further MVR's to it.  PEI had a reasonable expectation that had EIS / FIRST

15  ADVANTAGE not solicited those services from CCE, CCE would have continued to make such

16  assignments to PEI so long as the services were performed satisfactorily.

17      65.    On information and belief, ROES 1-20 materially contributed to EIS / FIRST

18  ADVANTAGE's failure to comply with the aforementioned promise.

19      66.    As a direct and proximate result of FIRST ADVANTAGE's failure to perform the

20  aforementioned promise, PEI sustained monetary losses in an amount to be proven at trial, but in no

21  event less than $500,000.  Further, based on the aforementioned conduct, PEI has incurred attorneys'

22  fees and costs of bringing this action.  PEI will continue to incur such interest, fees and costs in

23  amounts to be proven at trial.

24      67.    FIRST ADVANTAGE, and on information and belief ROES 1-20, in doing the

25  foregoing, acted with malice, fraud, and/or oppression and therefore punitive damages pursuant to

26  Civil Code §3294 are appropriate.

27      68.    The period for the statute of limitations should be tolled to a date that is no earlier than

28  June 2005.  Until that time, PEI and FIRST ADVANTAGE had reached a verbal agreement that

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

-12-

PRIVATE EYES, INC.'S COUNTER-CLAIM AGAINST FIRST ADVANTAGE BACKGROUND SERVICES
CORP.  Case No. C07-2424 SC

1  FIRST ADVANTAGE would compensate PEI in the amount of $1.80 for each MVR it directly

2  performed for CCE.  PEI reasonably relied upon that agreement and therefore did not file the lawsuit.

3  The payments from FIRST ADVANTAGE did not cease until June 2005, and therefore that is the

4  earliest date that the limitations period should be deemed to have commenced for this cause of action.

5  It would be inequitable to allow FIRST ADVANTAGE to avoid the consequences of its false

6  promise because it made a further false promise to make periodic payments to compensate PEI for

7  the loss of the MVR's.

8          WHEREFORE, PEI prays for relief as set forth below.

9                          **SEVENTH CAUSE OF ACTION**

10                         **FRAUD – FALSE PROMISE II**

11                              **[All Defendants]**

12         69.    PEI repeats and re-alleges the allegations contained in paragraph 1 through 22,

13  inclusive, above and incorporates the same by reference as though set forth in fill herein.

14         70.    In or about October 2006, FIRST ADVANTAGE promised that all services it was

15  then performing for CCE would be billed through PEI.  FIRST ADVANTAGE made this promise

16  because it had violated the non-solicitation agreements attached as Exhibit A and Exhibit B and

17  wanted to continue a business relationship with PEI.  The promise was made by Eric Hess, Steve

18  Flack, and Bart Valdez on behalf of FIRST ADVANTAGE.

19         71.    FIRST ADVANTAGE never intended to perform the aforementioned promise.

20  FIRST ADVANTAGE had no intention at any time of having any of the billings run through PEI.

21  The promise was only made so PEI would forfeit its legal rights to set-off amounts it allegedly owed

22  to FIRST ADVANTAGE, due to FIRST ADVANTAGE's violation of the non-solicitation

23  agreements set forth at Exhibit A and Exhibit B.

24         72.    FIRST ADVANTAGE intended PEI to rely upon the aforementioned promise, so that

25  it would continue to make payments to FIRST ADVANTAGE on outstanding billings.

26         73.    PEI actually relied upon the aforementioned promise by tendering payment on some

27  outstanding billings.  PEI would have been legally entitled to not pay those billings, to reflect a set-

28  off on amounts that FIRST ADVANTAGE owed for violations of the non-solicitation agreements set

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

-13-

PRIVATE EYES, INC.'S COUNTER-CLAIM AGAINST FIRST ADVANTAGE BACKGROUND SERVICES
CORP.  Case No. C07-2424 SC

forth at Exhibit A and Exhibit B.

74.     PEI reasonably relied upon the aforementioned promise, since FIRST ADVANTAGE represented itself as being an honest and ethical company and had expressed an interest in continuing the business relationship on such terms.

75.     FIRST ADVANTAGE did not perform the promise, and did not allow any billings to be run through PEI.  On information and belief, ROES 1-20 materially contributed to this non-performance.

76.     PEI was harmed by the aforementioned failure to perform the promise, in that it failed to obtain its anticipated profits on the services it performed.

77.     As a direct and proximate result of FIRST ADVANTAGE's failure to perform the aforementioned promise, PEI sustained monetary losses in an amount to be proven at trial, but in no event less than $600,000.  Further, based on the aforementioned conduct, PEI has incurred attorneys' fees and costs of bringing this action.  PEI will continue to incur such interest, fees and costs in amounts to be proven at trial.

78.     FIRST ADVANTAGE, and on information and belief ROES 1-20, in doing the foregoing, acted with malice, fraud, and/or oppression and therefore punitive damages pursuant to Civil Code §3294 are appropriate.

WHEREFORE, PEI prays for relief as set forth below.

## EIGHTH CAUSE OF ACTION

## FRAUD – FALSE REPRESENTATION

### [All Defendants]

79.     PEI repeats and re-alleges the allegations contained in paragraph 1 through 22, inclusive, above and incorporates the same by reference as though set forth in fill herein.

80.     On June 21, 2005, FIRST ADVANTAGE represented to PEI that it had not "endeavored to directly sell its services to Coca Cola, or in anyway circumvent the relationship that Private Eyes has had with Coca Cola."  This representation was made by Bret Jardine, inside counsel for FIRST ADVANTAGE, in the letter attached as Exhibit D.

81.     That representation was false.  The true facts were that FIRST ADVANTAGE

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

-14-

PRIVATE EYES, INC.'S COUNTER-CLAIM AGAINST FIRST ADVANTAGE BACKGROUND SERVICES
CORP.  Case No. C07-2424 SC

continued to attempt to solicit business from CCE, including MVR's and other business services.

82.   FIRST ADVANTAGE knew that the aforementioned representation was false when it made it.  Alternatively, FIRST ADVANTAGE made the representation recklessly and without regard for its truth.  Prior to the time the representation was made, FIRST ADVANTAGE had actively solicited business from CCE.

83.   FIRST ADVANTAGE intended that PEI rely on the aforementioned representation, in that it wanted PEI to continue to subcontract CCE services until FIRST ADVANTAGE was able to entice CCE to assign all of them directly to FIRST ADVANTAGE.

84.   PEI actually relied upon the aforementioned representation by continuing to subcontract CCE services to FIRST ADVANTAGE.  Had PEI believed that FIRST ADVANTAGE was continuing to solicit services from CCE, it would have terminated the contractual relationship and sought alternative companies to perform the work.

85.   PEI reasonably relied upon the aforementioned representation since it was made by counsel for FIRST ADVANTAGE and at the time it had no reason to believe that FIRST ADVANTAGE would continued to solicit business from CCE.  At the time of the representation, PEI reasonably believed that FIRST ADVANTAGE would continue to make payments on the MVR's it was performing.

86.   PEI was harmed by the misrepresentation since it continued to assign services to FIRST ADVANTAGE, which allowed FIRST ADVANTAGE an inside opportunity to solicit additional business services from CCE.  If FIRST ADVANTAGE had not made such solicitations, PEI has every reason to believe that it would have continued to receive assignments from CCE.

87.   On information and belief, ROES 1-20 materially contributed to FIRST ADVANTAGE's aforementioned misrepresentation.

88.   As a direct and proximate result of FIRST ADVANTAGE's misrepresentation, PEI sustained monetary losses in an amount to be proven at trial, but in no event less than $5 million.  Further, based on the aforementioned conduct, PEI has incurred attorneys' fees and costs of bringing this action.  PEI will continue to incur such interest, fees and costs in amounts to be proven at trial.

89.   FIRST ADVANTAGE and ROES 1-20, in doing the foregoing, acted with malice,

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

PRIVATE EYES, INC.'S COUNTER-CLAIM AGAINST FIRST ADVANTAGE BACKGROUND SERVICES CORP.  Case No. C07-2424 SC

1  fraud, and/or oppression and therefore punitive damages pursuant to Civil Code §3294 are

2  appropriate.

3      WHEREFORE, PEI prays for relief as set forth below.

## NINTH CAUSE OF ACTION

## UNFAIR TRADE PRACTICES [CALIFORNIA BUSINESS AND PROFESSIONS CODE §17200 ET SEQ.]

### [All Defendants]

8      90.    PEI repeats and re-alleges the allegations contained in paragraph 1 through 22, and

9  paragraphs 41-89,  inclusive, above and incorporates the same by reference as though set forth in fill

10  herein.

11      91.    The foregoing conduct by FIRST ADVANTAGE is an unfair trade practice in

12  violation of California Business & Professions Code §17200 et seq.

13      92.    On information and belief, ROES 1-20 materially contributed to the unfair trade

14  practices committed by FIRST ADVANTAGE.

15      93.    FIRST ADVANTAGE should therefore be disgorged of any profits that it made as a

16  proximate result of the aforementioned conduct.

17      94.    PEI should be awarded any and all amounts deemed necessary to restore it to the

18  position it would have been in had FIRST ADVANTAGE not engaged in the aforementioned

19  conduct.

20      95.    PEI should be awarded its attorneys fees and costs as private attorney general,

21  pursuant to California Code of Civil Procedure §1021.5.

22      WHEREFORE, PEI prays for relief as set forth below.

## TENTH CAUSE OF ACTION

## ACCOUNT STATED

### [FIRST ADVANTAGE ONLY]

26      96.  PEI repeats and re-alleges the allegations contained in paragraph 1 through 22, inclusive,

27  above and incorporates the same by reference as though set forth in fill herein.

28      97.  Within the last two years, in Contra Costa County, California, an account was stated in

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

-16-

PRIVATE EYES, INC.'S COUNTER-CLAIM AGAINST FIRST ADVANTAGE BACKGROUND SERVICES
CORP.  Case No. C07-2424 SC

writing by and between PEI and FIRST ADVANTAGE wherein it was acknowledged that FIRST

ADVANTAGE was indebted to PEI in the amount of $1,023,683.37. This indebtedness represented

(1) MVR's that FIRST ADVANTAGE did for CCE's, (2) losses attributable to FIRST

ADVANTAGE not living up to its promise to allow billings for certain services to be done through

PEI, and (3) losses caused by PEI due to the termination its contract with CCE. A true and correct

copy of the evidence of this indebtedness is attached as Exhibit E.

98. Although demand has been made on FIRST ADVANTAGE, no part of said sum has been

paid, and there is now due, owing and unpaid to PEI from FIRST ADVANTAGE, the sum of at least

$1,023,683.37, plus interest on that amount at the legal rate from and after the date payment was due.

99. PEI has incurred and will continue to incur attorneys' fees and costs in connection with

this matter in an amount to be determined at trial. PEI is entitled to recover its attorneys' fees and

costs incurred pursuant to law, including under California Civil Code section 1717.5.

WHEREFORE, PEI prays for relief as set forth below.

<u>**ELEVENTH CAUSE OF ACTION**</u>

<u>**OPEN BOOK ACCOUNT (COMMON COUNT)**</u>

**[FIRST ADVANTAGE ONLY]**

100. PEI repeats and re-alleges the allegations contained in paragraph 1 through 22,

inclusive, above and incorporates the same by reference as though set forth in fill herein.

101. PEI and FIRST ADVANTAGE had financial transactions between them arising from

the CCE business services.

102. PEI kept an account of the debits and credits involved in the financial transactions.

103. FIRST ADVANTAGE owes money on the account in the amount of $1,023,683.37,

plus interest on that amount at the legal rate from and after the date payment was due.

104. PEI has incurred and will continue to incur attorneys' fees and costs in connection with

this matter in an amount to be determined at trial. PEI is entitled to recover its attorneys' fees and

costs incurred pursuant to law, including under California Civil Code section 1717.5.

WHEREFORE, PEI prays for relief as set forth below.

///

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

-17-

PRIVATE EYES, INC.'S COUNTER-CLAIM AGAINST FIRST ADVANTAGE BACKGROUND SERVICES
CORP. Case No. C07-2424 SC

1    ///

2    **PRAYER**

3    WHEREFORE, PEI prays for judgment against FIRST ADVANTAGE and ROES 1-20 as

4    follows:

5    1.    For compensatory damages in the sum of no less than $5 million;

6    2.    For punitive damages pursuant to Civil Code §3294;

7    3.    For disgorgement of profits from FIRST ADVANTAGE;

8    4.    For restitution from FIRST ADVANTAGE;

9    5.    For interest thereon as authorized by law;

10    6.    For reasonable attorneys' fees according to proof as authorized by law;

11    7.    For costs of suit incurred herein; and

12    8.    For such other and further relief as the Court deems just and proper.

13    **DEMAND FOR JURY TRIAL**

14    Pursuant to Federal Rule of Civil Procedure 38 and any other applicable law or rules,

15    PRIVATE EYES, INC. hereby demands trial by jury of all issues so triable.

16
17    Dated:  June 22, 2007                    LAW OFFICES OF MARK R. MITTELMAN

18

19                                             _____
20                                             Mark R. Mittelman
                                               Attorneys for Defendant
21                                             PRIVATE EYES, INC.

22

23

24

25

26

27

28

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

-18-
PRIVATE EYES, INC.'S COUNTER-CLAIM AGAINST FIRST ADVANTAGE BACKGROUND SERVICES
CORP.  Case No. C07-2424 SC

# EXHIBIT A



E m p l o y e e
Information
S e r v i c e s

[via email]

March 19, 2002

Ms. Sandra James
Private Eyes, Inc.
700 Ygnacio Valley Road #350
Walnut Creek, CA 94596

Dear Ms. James:

Thank you for taking time today to discuss the opportunities with Coca-Cola. I am biased, but I believe that Employee Information Services (EI) is uniquely able to partner with Private Eyes for this relationship and hopefully many others. Due to the relative speed in which this opportunity is developing, I believe it is worth documenting some of what has been discussed and agreed to at this point. Therefore, please consider this letter as a Letter of Understanding (LOU) and a work in process. For the purposes of this letter and in respect to time, this LOU applies for Coca-Cola but can be expanded at any time to address other prospects or current clients of Private Eyes and EI.

**Business Relationship:**

It is EI's understanding that Coca-Cola has contracted with Private Eyes for background screens and drug screening. Private Eyes is seeking a partner to provide drug screening services directly to Coca-Cola. Therefore, EI will provide complete support and services for drug screening directly to Coca-Cola.

As a result of this relationship and for the purposes of developing a partnership relationship with Private Eyes, Coca-Cola and possibly other clients, EI will agree not to directly solicit Coca-Cola for any of the services provided by Private Eyes unless EI receives the written consent of Private Eyes. In return, Private Eyes will agree not to directly solicit Coca-Cola for any of the services that are provided by EI unless Private Eyes receives the written consent of EI.

The parties realize that the success of the Coca-Cola relationship is dependant on the satisfactory performance of both of the service components of the contract. Private Eyes reserves the right to cancel subcontract with EIS if Coca-Cola expresses dissatisfaction with the performance of EIS and EIS is unable to correct any performance deficiencies within 30 days of formal or informal notice from Coca-Cola of such dissatisfaction.

## Invoicing

Since Coca-Cola's contract for services is with Private Eyes, Private Eyes will be responsible for unified invoicing to the client. Therefore, EI will agree to and provide data to Private Eyes to import into their financial package to generate appropriate invoicing. Specifications and methods of interfacing billing data will be agreed to at a later time.

## Pricing

EI offers Private Eyes the following pricing for services to be provided to Coca-Cola.

"In Network" Drug Screening                                  $23.00 per test

- Source in-network collection facilities
- Set up in-network collection facilities
- Complete urine specimen collection
- Set up laboratory accounts
- Order laboratory supplies
- Complete laboratory analysis
- Order pre-printed Custody and Control Forms
- Oversee Medical Review Officer services
- Report results
- Store records
- Consolidate urine collection, laboratory, MRO and program management fees

"Out of Network" Drug Screening                             $41.00 per test

- Source out of network collection facilities
- Set up out of network collection facilities
- Complete urine specimen collection
- Set up laboratory accounts
- Order laboratory supplies
- Complete laboratory analysis
- Order pre-printed Custody and Control Forms
- Oversee Medical Review Officer services
- Report results
- Store records
- Consolidate urine collection, laboratory, MRO and program management fees

Mobile/After-Hours Services:                                see below

- Coordination for the collection of mobile/post-accident tests performed at $100/hour (one-hour minimum) plus the actual cost of the collection
- Mobile charges (which are based on mileage, wait time, number of people tested, tests performed and other applicable charges) passed through at cost

Please note that EI has additional services that can be quoted at a future time including:

Ļ  DOT or Non-DOT physicals scheduling, review, and compliance
Ļ  Medical Consultation and return to duty evaluation
Ļ  Employee Assistance Programs (EAP)

Follow up testing / rehabilitation management
Policy development
Records Management (Driver files, compliance checks, etc)

**Payments and Rebates**

EI's billing data to Private Eyes will be at the rates listed above. Alternately, EI's bill to Private Eyes can be at a reduced rate and Private Eyes can "mark up" the amount for invoicing to the client.

It is EI's understanding that CocaCola will be offered a 3% discount (based on $23.00 actual cost of goods) for any invoices paid to Private Eyes less than net-15. Accordingly, EI will offer Private Eyes a 3% discount for any invoice paid to EI net-22 or less.

**Future Agreements**

It is understood and agreed to by both EI and Private Eyes that there may be additional agreements and / or contracts to formalize this or other business initiatives. Therefore, this LOU may be superceded.

Sandra, in the brief conversations that we have had to date, it is obvious that both of our companies have similar goals and priorities on service, value add, and mutually beneficial relationships. EI strives to infuse integrity and ingenuity into an industry that is plagued with border-line business practices. I am confident that as we continue to develop our abilities to partner together, our companies and our clients will benefit from our efforts.

Please do not hesitate to contact me. I look forward to working with you and your organization. To formalize our understandings and intents, if you find this LOU agreeable, please sign and return a copy to me.

Best Regards,                                          Agreed to by:

Todd Oliver                                           Sandra James
Employee Information Services                         Private Eyes Incorporated

                                                      Date 3/29/02

# EXHIBIT B



October 8, 2003

Sandra James
President
Private Eyes, Inc.
190 N. Wiget Lane #220
Walnut Creek, CA 94598

Dear Ms. James:

In connection with the pending transaction between First Advantage Corporation and Employee Information Systems, Inc. (EIS), First Advantage and Private Eyes desire to enter into this letter agreement ("Agreement") setting forth the parties understanding regarding Private Eyes customer information learned as a result of (i) Private Eyes' use EIS's drug screening services or (ii) future use of First Advantage's drug screening services, which may include EIS. For the purposes of this Agreement information Private Eyes discloses to First Advantage, including its client names, contacts and pricing, shall be deemed "Confidential Information."

Confidential Information disclosed by Private Eyes to First Advantage may only be used for the purpose of First Advantage providing drug screening services to Private Eyes' customers. First Advantage shall hold the Confidential Information in confidence and agrees to use the same degree of care it uses to protect its own confidential information, but in no event less than a reasonable standard of care.

First Advantage may not disclose Confidential Information to: (i) any of its employees or business representatives unless they have a need to know such information to carry out the pending transaction between First Advantage and EIS, (ii) any of its employees or agents for the purpose of providing employment background screening services, which shall exclude drug screening for the purpose of this Agreement, (iii) any third parties that are not providing consultation with regard to the pending transaction, (iv) any third parties unless they need the Confidential Information for the purpose of providing drug screenings services to Private Eyes.

First Advantage represents that it will not use Confidential Information obtained from Private Eyes to, intentionally solicit, endeavor to entice away from, or otherwise interfere with the relationship Private Eyes has with any of its employment background screening customers, clients, suppliers or other entity with whom they do business, based on the Confidential Information. First Advantage may not use the Confidential Information for sales and marketing efforts to its existing or prospective employment background screening customers.

In exchange for First Advantage's agreement not to use Confidential Information as stated, Private Eyes agrees to use First Advantage's drug screening services as its exclusive drug screening provider during the term of this Agreement. Additionally, in exchange for Private Eyes agreeing to use First Advantage as its sole drug screening provider, First Advantage agrees that it will not intentionally solicit, endeavor to entice away from, or otherwise interfere with the relationship Private Eyes has with Coca Cola, Inc.

In some cases, First Advantage or one of its subsidiary companies may have the need to disclose its confidential information to Private Eyes ("FADV Confidential Information"). FADV Confidential Information may include but is not limited to client lists, marketing or sales plans, methodologies, business plans, financial information, trade secrets, know-how and such other information as may be marked from time-to-time. Private Eyes shall hold FADV Confidential Information in confidence and shall not disclose it to any third parties without the express written consent of First Advantage. Private Eyes agrees to use the

same degree of care it uses to protect its own confidential information, but in no event less than a reasonable standard of care.

The term "Confidential Information" or "FADV Confidential Information" does not include any information which the receiving party can demonstrate: (i) is at the time of disclosure is in the public domain or which after such disclosure comes into the public domain through no fault First Advantage or its representatives; (ii) was available to First Advantage on a non-confidential basis from a source other than Private Eyes or EIS, or their respective officers, directors, employees, or advisors, provided that such source is not and was not bound by a confidentiality agreement with Private Eyes; (iii) has been released without restriction Private Eyes to another person not covered by an agreement similar in terms to this agreement; (iv) is required to be disclosed by applicable law or regulation, but only to the extent and for the purposes of such required disclosure; or (v) is required to be disclosed by a valid order of a court or government agency with appropriate jurisdiction over the parties and the subject matter of the information, but only to the extent of and for the purposes of such order and only after the other party is afforded a reasonable opportunity to oppose such order or seek protection for further disclosure of the information.

Each party's Confidential Information (which for the purpose of this paragraph shall include FADV Confidential Information) is and will remain its sole property. Neither party obtains any ownership or license interest in any of the other's Confidential Information by virtue of its disclosure under this Agreement. Each party will return to or destroy the other all of the other's Confidential Information in its possession or control upon the expiration or termination of this Agreement. The disclosure of Confidential Information hereunder shall not be construed as granting any license to or right or ownership in the Confidential Information.

The parties acknowledge that the harm caused by the wrongful disclosure of Confidential Information and/or FADV Confidential Information will be difficult, if not impossible, to assess on a monetary basis alone, and that legal damages may not be sufficient compensation for such wrongful disclosure. Therefore, either party may enforce this Agreement by equitable means, including, but not limited to, injunctive relief, in addition to any other remedies to which it is otherwise entitled.

The term of this Agreement shall be for three (3) years from the date written above.

Neither party will assign their respective rights or duties under this Agreement to another without the prior express written consent of the other party, which consent shall not be unreasonably withheld or delayed. Any other purported assignment will be void.

This Agreement will be governed by and construed in accordance with the laws of the State of California. The parties agree to resolve any disputes arising from the terms of this agreement by arbitration, with such arbitration to be held in Contra Costa County, California.

All billing for drug screening services will continue to be made directly through Private Eyes and processed solely by them.

This Agreement represents the entire understanding between the parties with respect to the subject matter herein. The terms of this Agreement shall be binding upon and inure to the benefit of the parties and to their legal representatives and successors. No waiver, alteration or modification of any of the provisions of this Agreement shall be binding unless in writing and signed by a duly authorized representative of the parties.

If these terms meet with your understanding than please acknowledge your acceptance by countersigning below.

Sincerely,

Richard Heitzmann
Vice President, Corporate Development Officer

Agreed to and Accepted by:

Sandra James

# EXHIBIT C

LAW OFFICES OF
### TERENCE DANIEL DOYLE
A PROFESSIONAL CORPORATION
571 Hartz Avenue
Danville, CA 94526
925-855-4330 (Telephone)
925-855-4344 (Facsimile)

WRITER'S DIRECT DIAL NUMBER
925-314-2320

Terence Daniel Doyle*‡ LL.M. Taxation
Michael LaMay
Ron Maidenberg
David J. Golde
R. Joseph Shatzko
Richard D. Grossman

‡ Licensed in California, Arizona and Hawaii

July 2, 2004

Bart Valdez
First Advantage Corporation
805 Executive Center Drive West, Suite 300
St. Petersburg, FL 33702

Re: *Private Eyes, Inc.*

Dear Mr. Valdez:

During a conference call on April 27, 2004 we reached an agreement regarding compensation payable to Private Eyes, Inc. (PEI) from First Advantage Corporation (FAC) resulting from PEI's loss of annual Coca Cola Enterprises (CCE) MVR business to FAC.

FAC was to pay PEI $1.80 for every MVR pulled by FAC for CCE monthly, payable within thirty (30) days of the end of the month, starting with the month of March 2004. FAC was also to provide PEI with regular reports showing CCE MVR activity. No payments have been received thus far and no reports have been shared.

Please ask whoever should be processing the payment and generating the reports to do so forthwith. Thank you for your intervention in this regard.

Very truly yours,

LAW OFFICES OF TERENCE DANIEL DOYLE

Terence Daniel Doyle, Esq.

cc: Sandra James, President, Private Eyes, Inc.

VIA Fed Ex

# EXHIBIT D



June 21, 2005


Sandra James
President
Private Eyes Inc.
190 North Wiget Lane Suite #220
Walnut Creek, CA 94598

      RE: First Advantage Corporation and Coca Cola Enterprises

Dear Ms. James:

As you are aware, Private Eyes and First Advantage have had an ongoing business relationship for the provision of background investigation and drug screening services to Coca Cola for a number of years. That relationship has been based on a trust and a pattern of business that Private Eyes would not endeavor to broker the sale of services of a competitor of First Advantage to Coca Cola, and likewise First Advantage has not endeavored to directly sell its services to Coca Cola, or in anyway circumvent the relationship that Private Eyes has had with Coca Cola.

However, it has come to our attention and knowledge that Private Eyes has now taken steps to breach that trusted business relationship it has had with First Advantage with regard to Coca Cola. We are informed that Private Eyes has arranged meetings and is orchestrating efforts to sell the services of competitors of First Advantage to Coca Cola. The results of these actions would severely damage First Advantage's business position and revenue for the services provided to Coca Cola. Consequently, First Advantage is compelled by Private Eye's recent actions to protect its business position with Coca Cola.

In fairness, First Advantage will provide Private Eyes an opportunity to refute and / or cure the breach of this business relationship by the close of business Thursday June 23, 2005. Private Eyes is hereby requested to cease and desist in any efforts with Coca Cola which work to the detriment of First Advantage. Private Eye's failure to respond to this notice and to cease and desist in its promotion of First Advantage competitors' products and services to Coca Cola will result in First Advantage taking steps to protect its own business interest which will include and may not be limited to the direct sale of its services to Coca Cola.

Please govern yourself accordingly.

Sincerely,

Bret Jardine
Senior Associate Counsel

MODE = MEMORY TRANSMISSION          START=JUN-13 11:40   END=JUN-13 11:45

          FILE NO.=075

STN NO.   COMM.   ABBR NO.   STATION NAME/TEL. NO.   PAGES   DURATION

  001      OK      ☎            14104805024        022/022 00:04:20

                                              -MARK MITTELMAN LAW OFFICE-

***************************** - -***** - -********



| | |
|---|---|
| 1 | Mark R. Mittelman (SBN 96598) |
| | LAW OFFICES OF MARK R. MITTELMAN |
| 2 | A Professional Corporation |
| | 190 North Wiget Lane, Suite 101 |
| 3 | Walnut Creek, California 94598 |
| | Telephone: (925) 256-0677 |
| 4 | Facsimile: (925) 256-0679 |
| 5 | Attorneys for Defendant / Counter-Claimant / |
| | Cross-Complainant |
| 6 | PRIVATE EYES, INC. |

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10

11
|   | FIRST ADVANTAGE BACKGROUND | Case No. C07-2424 |
|---|---|---|
| 12 | SERVICES CORP., a Florida corporation, | |
| 13 | Plaintiff, | **PRIVATE EYES, INC.'S COUNTERCLAIM AGAINST FIRST ADVANTAGE BACKGROUND** |
| 14 | vs. | **SERVICES CORPORATION AND CROSS-COMPLAINT AGAINST ROES 1-** |
| 15 | PRIVATE EYES, INC., a California corporation, DOES 1-10, | **20 FOR THE FOLLOWING CAUSES OF ACTION:** |
| 16 | | |
| 17 | Defendants. | **1. BREACH OF WRITTEN CONTRACT** |
| | | **2. BREACH OF ORAL CONTRACT** |
| | | **3. UNJUST ENRICHMENT** |
| 18 | | **4. INTENTIONAL INTERFENCE WITH** |
| | | **CONTRACTUAL RELATIONSHIP** |
| 19 | | **5. INTENTIONAL INTERFERENCE** |
| | | **WITH PROSPECTIVE ECONOMIC** |
| 20 | | **ADVANTAGE** |
| | | **6. FRAUD --FALSE PROMISE** |
| 21 | | **7. FRAUD -- INTENTIONAL** |
| | | **MISREPRESENTATION** |
| 22 | | **8. UNFAIR TRADE PRACTICES** |
| 23 | | **DEMAND FOR JURY TRIAL** |

24

25

26          PRIVATE EYES, INC. hereby counterclaims against FIRST ADVANTAGE

27  BACKGROUND SERVICES CORP. and cross-complains against ROES 1-20 and alleges as

28

# EXHIBIT E

All Transactions

| Type | Date | Num | Memo | Due Date | Open Balance | Amount |
|------|------|-----|------|----------|--------------|--------|
| **First Advantage Corporation** | | | | | | |
| Invoice | 5/31/2005 | 233 | | 5/31/2005 | 655.00 | 655.00 |
| Invoice | 6/30/2005 | 234 | | 6/30/2005 | 3,595.00 | 3,595.00 |
| Invoice | 7/31/2005 | 235 | | 7/31/2005 | 3,725.00 | 3,725.00 |
| Invoice | 7/31/2005 | 236 | | 7/31/2005 | 6,285.00 | 6,285.00 |
| Invoice | 7/31/2005 | 244 | JULY MVR | 7/31/2005 | 7,578.00 | 7,578.00 |
| Invoice | 8/31/2005 | 245 | | 8/31/2005 | 7,578.00 | 7,578.00 |
| Invoice | 9/30/2005 | 237 | | 9/30/2005 | 2,840.00 | 2,840.00 |
| Invoice | 9/30/2005 | 246 | SEPTEMBE... | 9/30/2005 | 7,578.00 | 7,578.00 |
| Invoice | 10/31/2005 | 238 | | 10/31/2005 | 4,170.00 | 4,170.00 |
| Invoice | 10/31/2005 | 247 | OCTOBER M... | 10/31/2005 | 7,578.00 | 7,578.00 |
| Invoice | 11/30/2005 | 239 | | 11/30/2005 | 3,805.00 | 3,805.00 |
| Invoice | 11/30/2005 | 248 | OCTOBER M... | 11/30/2005 | 7,578.00 | 7,578.00 |
| Invoice | 12/31/2005 | 240 | | 12/31/2005 | 3,515.00 | 3,515.00 |
| Invoice | 12/31/2005 | 249 | | 12/31/2005 | 7,578.00 | 7,578.00 |
| Invoice | 1/1/2006 | 262 | | 1/1/2006 | 4,350.00 | 4,350.00 |
| Invoice | 1/31/2006 | 241 | | 1/31/2006 | 4,580.00 | 4,580.00 |
| Invoice | 2/1/2006 | 263 | | 2/1/2006 | 4,350.00 | 4,350.00 |
| Invoice | 2/28/2006 | 242 | | 2/28/2006 | 4,080.00 | 4,080.00 |
| Invoice | 3/1/2006 | 264 | | 3/1/2006 | 4,350.00 | 4,350.00 |
| Invoice | 3/31/2006 | 243 | | 3/31/2006 | 3,700.00 | 3,700.00 |
| Invoice | 4/1/2006 | 265 | | 4/1/2006 | 4,350.00 | 4,350.00 |
| Invoice | 5/1/2006 | 266 | | 5/1/2006 | 4,350.00 | 4,350.00 |
| Invoice | 6/1/2006 | 268 | | 6/1/2006 | 4,350.00 | 4,350.00 |
| Invoice | 7/1/2006 | 269 | | 7/1/2006 | 4,350.00 | 4,350.00 |
| Invoice | 8/1/2006 | 270 | | 8/1/2006 | 4,350.00 | 4,350.00 |
| Invoice | 8/7/2006 | 220 | JULY 2006 | 8/7/2006 | 3,645.00 | 3,645.00 |
| Invoice | 8/7/2006 | 221 | JUNE 2006 | 8/7/2006 | 3,585.00 | 3,585.00 |
| Invoice | 8/7/2006 | 222 | JUNE 2006 | 8/7/2006 | 3,585.00 | 3,585.00 |
| Invoice | 8/7/2006 | 223 | MAY 2006 | 8/7/2006 | 4,195.00 | 4,195.00 |
| Invoice | 8/7/2006 | 224 | APRIL 2006 | 8/7/2006 | 5,250.00 | 5,250.00 |
| Invoice | 8/7/2006 | 225 | MARCH 2006 | 8/7/2006 | 3,700.00 | 3,700.00 |
| Invoice | 8/7/2006 | 226 | FEBRUARY ... | 8/7/2006 | 4,080.00 | 4,080.00 |
| Invoice | 9/1/2006 | 271 | | 9/1/2006 | 4,350.00 | 4,350.00 |
| Invoice | 9/6/2006 | 230 | August 2006 ... | 9/6/2006 | 4,230.00 | 4,230.00 |
| Invoice | 9/30/2006 | 261 | | 9/30/2006 | 3,970.00 | 3,970.00 |
| Invoice | 10/1/2006 | 272 | | 10/1/2006 | 4,350.00 | 4,350.00 |
| Invoice | 10/31/2006 | 260 | | 10/31/2006 | 3,400.00 | 3,400.00 |
| Invoice | 11/1/2006 | 273 | | 11/1/2006 | 4,350.00 | 4,350.00 |
| Invoice | 12/1/2006 | 278 | | 12/1/2006 | 4,350.00 | 4,350.00 |
| Invoice | 12/1/2006 | 279 | | 12/1/2006 | 3,805.00 | 3,805.00 |
| Invoice | 12/1/2006 | 282 | | 12/1/2006 | 294,122.87 | 294,122.87 |
| Invoice | 1/1/2007 | 277 | | 1/1/2007 | 4,350.00 | 4,350.00 |
| Invoice | 1/1/2007 | 280 | | 1/1/2007 | 3,515.00 | 3,515.00 |
| Invoice | 1/1/2007 | 281 | | 1/1/2007 | 243,021.99 | 243,021.99 |
| Invoice | 2/1/2007 | 274 | | 2/1/2007 | 4,350.00 | 4,350.00 |
| Invoice | 2/1/2007 | 275 | | 2/1/2007 | 4,595.00 | 4,595.00 |
| Invoice | 2/1/2007 | 276 | | 2/1/2007 | 287,685.51 | 287,685.51 |
| Total First Advantage Corporation | | | | | 1,023,683.37 | 1,023,683.37 |
| **TOTAL** | | | | | 1,023,683.37 | 1,023,683.37 |