EXHIBIT E

1  JEFFREY M. RATINOFF (SBN 197241)
   Email: jeffrey.ratinoff@bipc.com
2  KARINEH KHACHATOURIAN (SBN 202634)
   Email: karineh.khachatourian@bipc.com
3  BUCHANAN INGERSOLL & ROONEY, LLP
   333 Twin Dolphin Drive, Suite 700
4  Redwood Shores, CA 94065-1418
   Telephone: (650) 622-2300
5  Facsimile: (650) 622-2499

6  Attorneys for Plaintiff and Counter-Defendant,
   FIRST ADVANTAGE BACKGROUND SERVICES CORP.
7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10 FIRST ADVANTAGE BACKGROUND              Case No.: C 07-02424 SC
   SERVICES CORP., a Florida corporation,
11                                          **PLAINTIFF FIRST ADVANTAGE**
                      Plaintiff,            **BACKGROUND SERVICES CORP.'S**
12                                          **REPLY TO DEFENDANT PRIVATE**
           vs.                              **EYES, INC.'S OPPOSITION TO MOTION**
13                                          **TO DISMISS PRIVATE EYES, INC.'S**
   PRIVATE EYES, INC., a California         **COUNTERCLAIMS AGAINST**
14 corporation, DOES 1-10                   **PLAINTIFF**

15                      Defendants.         Date:  August 17, 2007
                                            Time:  10:00 a.m.
16
                                            Judge:  Honorable Samuel Conti
17 AND RELATED COUNTER-CLAIMS.              Dept.:  Courtroom 1

18                                          Complaint Filed:   May 4, 2007

19

20

21

22

23

24

25

26

27

28

Buchanan Ingersoll & Rooney LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ........................................................................................................ 1

II.   LEGAL DISCUSSION .............................................................................................. 1

    A.    PEI Cannot Use Its Opposition To Add Allegations To The Counterclaim. ............... 1

    B.    PEI Fails To Establish That Its Fourth And Fifth Causes Of Action Fall Within The
        Applicable Two-Year Statute Of Limitations. ........................................................... 2

        1.    It Is Undisputed That PEI's Claims For Intentional Interference Accrued Over
            Three Years Before Filing Its Counterclaim. ......................................................... 2

        2.    PEI's Attempt To Explain What "In Or About" Means Cannot Save Its
            Intentional Interference Counterclaims. ............................................................... 3

        3.    PEI's Position That The Alleged Acts Of Interference Constitute An
            Independent Wrong Are Inconsistent With Prevailing California Law. ........... 4

        4.    PEI Cannot Save Its Fifth Cause Of Action By Asserting A Trade Secret
            Misappropriation Counterclaim. ......................................................................... 5

    C.    The Court Should Dismiss PEI's Sixth Cause Of Action With Prejudice. ................... 7

        1.    The Verbal Settlement Agreement Extinguished PEI's Fraud Claim. .............. 7

        2.    PEI Cannot Invoke The Doctrine Of Equitable Tolling. ................................. 9

        3.    PEI Also Cannot Invoke The Doctrine Of Equitable Estoppel. ...................... 10

    D.    PEI Cannot Save Its Seventh Cause Of Action For Fraud From Dismissal. ............. 11

    E.    PEI's Eighth Cause Of Action For Fraud Remains Fatally Defective. ...................... 13

    F.    The Court Should Dismiss PEI's Unfair Trade Practices Claim. .............................. 14

III.  CONCLUSION ........................................................................................................ 15

Buchanan Ingersoll & Rooney LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*AccuImage Diagnostics Corp. v. Terarecon, Inc.,*
    260 F.Supp.2d 941 (N.D.Cal. 2003) ................................................................ 4, 5

*Ashton-Tate Corp. v. Ross,*
    728 F.Supp. 597 (N.D.Cal. 1989), *aff'd* 916 F.2d 516 (9th Cir. 1990) ................................. 7

*Atari Corp. v. Ernst & Whinney,*
    981 F.2d 1025 (9th Cir.1992) ................................................................ 12

*Blake v. Dierdorff,*
    856 F.2d 1365 (9th Cir.1988) ................................................................ 11

*Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc.,*
    318 F.Supp.2d 216 (D.Del. 2004) ................................................................ 6

*Cline v. Indus. Maint. Eng'g & Contracting Co.,*
    200 F.3d 1223 (9th Cir. 2000) ................................................................ 4, 8

*Digital Envoy, Inc. v. Google, Inc.,*
    370 F.Supp.2d 1025 (N.D.Cal. 2005) ................................................................ 6,15

*Guerrero v. Gates,*
    442 F.3d 697 (9th Cir. 2006) ................................................................ 9, 10

*HiRel Connectors, Inc. v. U.S.,*
    465 F.Supp.2d 984 (C.D.Cal. 2005) ................................................................ 7

*Hsu v. OZ Optics Ltd.,*
    211 F.R.D. 615 (N.D.Cal. 2002) ................................................................ 5

*In re Interactive Network, Inc. Securities Litigation,*
    948 F.Supp. 917 (N.D.Cal. 1996) ................................................................ 11

*In re Microsoft Corp. Antitrust Litigation,*
    274 F.Supp.2d 747 (D.Md. 2003) ................................................................ 15

*Moore v. Kayport Package Export,*
    885 F.2d 531 (9th Cir.1989) ................................................................ 11

*Morales v. Coop. of Am. Physicians, Inc., Mut. Protection Trust,*
    180 F.3d 1060 (9th Cir. 1999) ................................................................ 14

*Schneider v. Calif. Dept. of Corrections,*
    151 F.3d 1194 (9th Cir. 1998) ................................................................ 1

*Swartz v. KPMG LLP,*
    476 F.3d 756 (9th Cir. 2007) ................................................................ 11

*Tregenza v. Great Am. Commc'ns Co.,*
    12 F.3d 717 (7th Cir. 1993) ................................................................ 4

*Vess v. Ciba-Geigy Corp. USA,*
    317 F.3d 1097 (9th Cir. 2003) ............................................................... 11

*Watson Laboratories, Inc. v. Rhone-Poulenc Rorer, Inc.,*
    178 F.Supp.2d 1099 (C.D.Cal. 2001) ..................................................... 15

*Weisbuch v. County of Los Angeles,*
    119 F.3d 778 (9th Cir. 1997) ................................................................... 4

*Western Mining Counsel v. Watt,*
    643 F.2d 618 (9th Cir. 1981) ............................................................. 3, 13


**STATE CASES**

*65 Butterfield v. Chicago Title Ins. Co.,*
    70 Cal.App.4th 1047 (1999) ..................................................................... 9

*Aronson v. Kinsella,*
    58 Cal.App.4th 254 (1997) ..................................................................... 14

*Associated Gen. Contractors of Calif., Inc. v. Calif. State Council of Carpenters, Inc.,*
    459 U.S. 519 (1983); S.Ct. 897 (1983) ................................................... 9

*Atchison Topeka & Santa Fe Ry.,*
    267 Cal.App.2d 881 (1968) ................................................................... 12

*Bishop Creek Lodge v. Cira,*
    46 Cal.App.4th 1721 (1996) ................................................................. 12

*Cadence Design Sys., Inc. v. Avant! Corp.,*
    29 Cal.4th 215, 218 (2002) ..................................................................... 7

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,*
    20 Cal.4th 163 (1999) ........................................................................... 15

*Conrad v. Bank of Am.,*
    45 Cal.App.4th 133 (1999) ................................................................... 10

*Davis v. Rite-Lite Sales Co.,*
    8 Cal.2d 675 (1937) ................................................................................. 9

*Doran v. N. State Grocery, Inc.,*
    137 Cal.App.4th 484 (2006) ................................................................... 8

*Downs v. Dept. of Water & Power,*
    58 Cal.App.4th 1093 (1997) ................................................................... 9

*Edwards v. Centex Real Estate,*
    53 Cal.App.4th 15 (1997) ..................................................................... 14

*Faye v. Feldman,*
    128 Cal.App.2d 319 (1954) ..................................................................... 8

iii

Buchanan Ingersoll & Rooney LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418

*Folsom v. Butte County Assoc. of Governments*,
    32 Cal.3d 668 (1982) ................................................................................ 8

*Gorman v. Holte*,
    164 Cal.App.3d 984 (1985) ...................................................................... 8

*Grisham v. Philip Morris U.S.A., Inc.*,
    40 Cal.4th 623 (2007) ............................................................................ 12

*Guido v. Koopman*,
    1 Cal.App.4th 837 (1991) ....................................................................... 12

*Hofland v. Gustafson*,
    132 Cal.App.2d Supp. 907 (1955) ............................................................ 8

*JRS Products, Inc. v. Matsushita Elec. Corp. of America*,
    115 Cal.App.4th 168 (2004) ..................................................................... 4

*Khoury v. Maly's of California, Inc.*,
    14 Cal.App.4th 612 (1993) ...................................................................... 4

*Knoell v. Petrovich*,
    76 Cal.App.4th 164 (1999) .................................................................... 14

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal.4th 1134 (2003) ..................................................................... 4, 14

*Lantzy v. Centex Homes*,
    31 Cal.4th 363 (2003) ............................................................................ 10

*Lerette v. Dean Witter Org'n, Inc.*,
    60 Cal.App.3d 573 (1976) ...................................................................... 14

*Likewise, Whitely v. Phillip Morris, Inc.*,
    117 Cal.App.4th 635 (2005) ................................................................... 12

*Lobrovich v. Georgison*,
    144 Cal.App.2d 567 (1956) .................................................................... 10

*Mills v. Forestex Co.*,
    108 Cal.App.4th 625 (2003) ................................................................... 10

*Nelson v. Sperling*,
    270 Cal.App.2d 194 (1969) ...................................................................... 8

*Norgart v. Upjohn Co.*,
    21 Cal.4th 383 (1999) .............................................................................. 2

*Paige v. O'Neal*,
    12 Cal. 483 (1859) ................................................................................... 8

*Roland v. Hubenka*,
    12 Cal.App.3d 215 (1970) ...................................................................... 12

Buchanan Ingersoll & Rooney LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418

iv

*Rothman v. Jackson,*
    49 Cal.App.4th 1134 (1996) ................................................................................ 14

*Rubin v. Green,*
    4 Cal.4th 1187 (1993) ...................................................................................... 14

*Silberg v. Anderson,*
    50 Cal.3d 205 (1990) ....................................................................................... 14

*Stevenson Real Estate Services, Inc. v. CB Richard Ellis Real Estate,*
    138 Cal.App.4th 1215 (2006) ........................................................................... 15

*Textron Fin'l Corp. v. National Union Fire Ins. Co. of Pittsburgh,*
    118 Cal.App.4th 1061 (2004) ........................................................................... 15

*Wilhelm v. Pray, Price, Williams & Russell,*
    186 Cal.App.3d 1324 (1986) ............................................................................ 12

*Wilshire Westwood Associates v. Atlantic Richfield Co.,*
    20 Cal.App.4th 732 (1993) ................................................................................. 2

**STATE STATUTES**

Cal. Civ. Code § 3426.1 ........................................................................................... 5

California Civil Code § 3426.6 ............................................................................. 6, 7

California Civil Code § 3426.7 ................................................................................. 6

California Civil Code § 47 ...................................................................................... 13

Buchanan Ingersoll & Rooney LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418

v

## I.      INTRODUCTION

Private Eyes, Inc.'s ("PEI") Opposition fails to provide the Court with sufficient legal and factual grounds that would save its challenged counterclaims.  PEI improperly asks the Court to consider new allegations in its Opposition and simultaneously ignore the obvious incurable defects in its Counterclaim.  However, no matter how PEI spins the allegations supporting its tort counterclaims, it cannot escape the fact that they are barred by the statute of limitations, fail to meet the heightened pleading standards of Rule 9(b), do not give rise to cognizable claims, and simply do not make sense.  PEI's desperate attempt to save its doomed counterclaims by proposing to add a trade secret counterclaim is equally untenable.  This proposed trade secret claim is barred by the statute of limitations and would otherwise preempt the very counterclaims that PEI hopes to save.  PEI's complete failure to defend its counterclaims requires their dismissal with prejudice.

## II.      LEGAL DISCUSSION

### A.      PEI Cannot Use Its Opposition To Add Allegations To The Counterclaim.

Throughout its Opposition, PEI admits that "many of these facts are not set forth in the Counter-Claim".  PEI's Opposition ("Opp.") at 1:21-4:13; fn 1, fn 2, fn 3.  For example, PEI sets forth new allegations which purports to establish that its pricing information was a trade secret and further facts allegedly showing that First Advantage used it to solicit and obtain the MVR services from CCE.  Opp. at 2:12-21, 3:21-24.  PEI also embellishes the sparse allegations in its Counter-claim by adding "details" regarding the alleged resulting settlement agreement that the parties entered into.  *Id.* at 2:22-3:9.  PEI also asserts new allegations concerning its alleged discovery of further acts of interference and new allegations supporting its fraud claims.  *Id.* at 3:15-19.

PEI's request that the Court consider these new allegations in determining whether the counterclaims at issue can survive First Advantage's motion to dismiss is improper.  The Ninth Circuit makes clear that when ruling on a motion to dismiss, a court cannot consider new "facts" alleged in an opposition to a motion to dismiss.  *Schneider v. Calif. Dept. of Corrections*, 151 F.3d 1194, 1197, fn 1 (9th Cir. 1998).  The Court should therefore ignore these new facts in determining whether PEI's Counterclaim is sufficient.  Even if the Court could consider these "allegations" as proposed amendments, as discussed below, these allegations cannot save PEI's counterclaims.

Buchanan Ingersoll & Rooney LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418

**B.    PEI Fails To Establish That Its Fourth And Fifth Causes Of Action Fall Within The Applicable Two-Year Statute Of Limitations.**

**1.    It Is Undisputed That PEI's Claims For Intentional Interference Accrued Over Three Years Before Filing Its Counterclaim.**

PEI's interference claims are premised on First Advantage allegedly soliciting services directly to CCE and using PEI's confidential information to obtain its business. *See* Counterclaim, ¶¶ 14-16, 41-46, 48-53. In its moving papers, First Advantage argues PEI's intentional interference claims accrued at the time the wrongful act occurred and liability arose. *See Norgart v. Upjohn Co.*, 21 Cal.4th 383, 397 (1999). Based on this well-establish principle of law, First Advantage pointed out that PEI first learned of the alleged acts of interference with PEI's contractual and economic relationship with CCE in April 2004. *See* MPA at 6:20-9:5. PEI ***does not dispute*** this rule of law and reconfirms that it first discovered the alleged wrongful acts of interference at this time. Opp. at 2:12-21. Also, PEI does not dispute that it suffered appreciable harm in the form of lost business or that performance under its contract with CCE became costly or more burdensome in April 2004. Thus, there is no doubt that PEI's interference claims accrued at that time.

The only argument that PEI makes to escape the statute's obvious bar is attempting to explain what "in or about spring 2005" means in relation to its alleged discovery of additional acts of interference. PEI misses the point. The fact that PEI may have discovered additional acts of interference "in or about spring 2005" is inconsequential under California law because the statute begins to run from the time that first act of interference occurs and liability first arises, not when subsequent acts of interference might occur. *See Norgart*, 21 Cal.4th at 39; *see also Wilshire Westwood Associates v. Atlantic Richfield Co.*, 20 Cal.App.4th 732, 739 (1993). Since PEI's Counterclaim and its Opposition make clear that PEI first discovered the basis for its interference counterclaims in April 2004 and suffered damages at that time, the Court should dismiss these counterclaims in their entirety with prejudice.[1]

---

[1] Although First Advantage believes that the statute of limitations bars PEI' interference claims in their entirety, if the Court is inclined to allow PEI's interference claims to proceed in any manner, the Court should require PEI to amend its Counterclaim to omit the acts of interference and resulting damages that occurred outside of the statute of limitations.

PLAINTIFF'S REPLY TO PRIVATE EYES, INC.'S OPPOSITION TO MOTION TO DISMISS PRIVATE EYES, INC.'S COUNTERCLAIM AGAINST PLAINTIFF; CASE NO. C 07-02424 SC

Buchanan Ingersoll & Rooney LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418

**2.    PEI's Attempt To Explain What "In Or About" Means Cannot Save Its Intentional Interference Counterclaims.**

PEI does not dispute that if the Court were to interpret "in or about spring 2005" to mean that it learned of the additional acts of inference on or before June 20, 2005, its interference claims would be time barred.  Instead of simply conceding that this allegation bars its interference claims, PEI argues that a liberal interpretation of its alleged discovery of additional acts of interference "in or about spring 2005" is sufficient to avoid the statute of limitations.  Even assuming arguendo that the statute of limitations could be calculated from this time period rather than April 2004, PEI's interference claims still fail because PEI's suggested interpretation of "in or about spring of 2005" defies conventional logic.

While the Court is required to interpret the pleadings liberally on a motion to dismiss, the Court need not accept unreasonable inferences or unwarranted deductions of fact.  *Western Mining Counsel v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).  Nor need the Court assume that PEI can prove facts different from those it has alleged.  *Associated Gen. Contractors of Calif., Inc. v. Calif. State Council of Carpenters, Inc.* 459 U.S. 519, 526, 103 S.Ct. 897, 902 (1983).  Here, the most liberal and generous interpretation of this allegation *is* that PEI learned of First Advantage's additional acts of interference *during* spring of 2005, which means no later than June 20, 2005.  Offering the definition of "about" is simply a game of semantics.  Since PEI possesses the knowledge of when it discovered the alleged acts, it has the burden to plead facts establishing that the alleged wrongdoing occurred within the statute.  Other allegations in its Counterclaim make clear that PEI was aware of the consequences of the statute of limitations.  *See, e.g.*, Counterclaim, ¶ 68.  Nonetheless, PEI fails to explain (1) why it is so unsure of the exact time of discovery of First Advantage's subsequent acts of interference, and (2) why did it not assert a broader time period to ensure that it could survive an initial challenge based on the statute of limitations in the first place?

PEI does not adequately answer these questions or propose an appropriate amendment that would save its interference claims.  Rather than propose a more specific time frame within the statute of limitations, PEI offers to make the aforementioned time period more vague.  *See* Opp. at 7:7-11.  However, PEI cannot "un-ring the bell" by offering to re-plead its interference claims in a

- 3 -

1    more general fashion.  *See Cline v. Indus. Maint. Eng'ng & Contracting Co.,* 200 F.3d 1223, 1232

2    (9th Cir. 2000) (stating that a plaintiff can plead himself out of court by pleading facts contrary to his

3    claim); *Weisbuch v. County of Los Angeles*, 119 F.3d 778, 783, fn 1 (9th Cir. 1997); *see also*

4    *Tregenza v. Great Am. Commc'ns Co.,*12 F.3d 717, 718 (7th Cir. 1993).  Since PEI alleged that it

5    learned of the additional acts of interference "in or about spring 2005," it must live with the common

6    sense interpretation of what this means and the resulting consequences - that it failed to file its

7    interference claims before the expiration of the two-year statute of limitations.

8            **3.       PEI's Position That The Alleged Acts Of Interference Constitute An**
                        **Independent Wrong Are Inconsistent With Prevailing California Law.**
9

10           In a further attempt to save its intentional interference with prospective economic advantage

11   counterclaim, PEI argues that it has sufficiently alleged an independently wrongful act as required

12   by California law.  *See* Opp. at 8:18-9:4.  However, PEI fails to comprehend that the acts of

13   interference alleged in its Counterclaim ***cannot*** constitute an independent wrong as a matter of law.

14           Notably, PEI fails to cite any authority to support its position.  It also ***ignores*** that courts in

15   the Northern District recognize a learned interpretation of this requirement is "that conduct may be

16   wrongful if it is ***independently tortious or restrains trade***."  *Acculmage Diagnostics Corp. v.*

17   *Terarecon, Inc.*, 260 F.Supp.2d 941, 956 fn 7 (N.D.Cal. 2003) (emphasis added) (citing Justice

18   Mosk's concurring opinion in *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal.4th 376, 408-

19   409 (1995)); *see also Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1159 & fn. 11

20   (2003).  Thus, by definition, conduct that amounts to a breach of contract cannot be a tortious act or

21   a restraint on trade regardless of how egregious the breach.

22           PEI's attempt to distinguish the cases cited by First Advantage on the grounds that the types

23   of breaches of contract in those cases are different than those alleged in its Counterclaim is also

24   unavailing.  *See* Opp. at 9:2-10:10.  PEI fails to grasp that it is ***irrelevant*** whether the breach

25   amounts to a refusal to perform under a contract or an act of "intermeddling."  *See JRS Products,*

26   *Inc. v. Matsushita Elec. Corp. of America*, 115 Cal.App.4th 168, 180-83 (2004); *Khoury v. Maly's of*

27   *California, Inc.*, 14 Cal.App.4th 612, 618 (1993).  If the alleged act of interference constitutes a

28   breach of contract, as is the case here, it cannot give rise to tort liability and constitute an

Buchanan Ingersoll & Rooney LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418

- 4 -

1    independent wrong. *See id.*; *see also Acculmage*, 260 F.Supp.2d at 956-57.

2        PEI's attempt to distinguish *Accuimage* on the grounds that the holding therein relates to a

3    claim for negligent interference with economic relations also fails for at least two reasons. *See* Opp.

4    at 9:23-10:5. First, the portion of the holding pertaining to what constitutes an independent wrong

5    *does relate* to a claim for intentional interference with prospective economic advantage. *Acculmage*,

6    260 F.Supp.2d at 956-57. Second, the *Accuimage* court's holding regarding negligent interference is

7    equally applicable to PEI's counterclaim for intentional interference. The *Acculmage* court noted

8    that the defendant's breach of a confidentiality agreement was just that - a breach of contract - and

9    did not give rise to an interference claim. *Id.* at 957-58 (noting that the alleged breach of the

10   confidentiality agreement was alleged to be intentional and that plaintiff failed to establish an

11   intentional interference claim). The non-solicitation and confidentiality provisions that give rise to

12   First Advantage's alleged obligations owed to PEI are similar to the agreement at issue in

13   *Acculmage*. Thus, regardless of whether First Advantage negligently or intentionally breached those

14   obligations, PEI can only seek recovery on a breach of contract theory.

15       Finally, PEI's claim that *Hsu v. OZ Optics Ltd.*, 211 F.R.D. 615 (N.D.Cal. 2002) made clear

16   that a refusal to assist is not the same thing as active interference is incorrect. Relying on *Della*

17   *Penna,* the *Hsu* court did not make any distinction between passive or active breaches of contract.

18   *Id.* at 621. Thus, this case does support First Advantage's position that even "active breaches" of

19   contract, such as those alleged by PEI in the Counterclaim, cannot amount to an independent wrong.

20       **4.    PEI Cannot Save Its Fifth Cause Of Action By Asserting A Trade Secret**
             **Misappropriation Counterclaim.**

21

22       PEI argues that it can save its Fifth Cause of Action for intentional interference with

23   prospective economic advantage if the Court simply interprets paragraph 20 of its Counterclaim as a

24   trade secret misappropriation claim. Opp. at 10:28-11:6 However, even under the most creative

25   and liberal interpretation, this paragraph does not establish a trade secret claim. Absent from the

26   Counterclaim are any allegations that PEI's pricing information: (1) derives independent economic

27   value, actual or potential, from not being generally known; and (2) is the subject of reasonable

28   measures to maintain its secrecy. *See* Cal. Civ. Code § 3426.1(d) (definition of a trade secret). The

Buchanan Ingersoll & Rooney LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418

- 5 -

Buchanan Ingersoll & Rooney LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418

1  Counterclaim merely identifies the information and alleges First Advantage's disclosure of it.[2]

2  *Compare* Opp. at 2:12-21, 10:14-11:6 *and* Counterclaim, ¶¶ 13-14, 20.

3      Alternatively, PEI argues that it can amend its Counterclaim to include a trade secret claim,

4  which would constitute the independent wrong underlying its Fifth Cause of Action. *See* Opp. at

5  10:14-11:6. PEI's proposed amendment is futile. The assertion of a claim under California's

6  enactment of the Uniform Trade Secret Act ("CUTSA") would <u>preempt</u> PEI's intentional

7  interference claims. *Convolve, Inc. v. Compaq Computer Corp.*, 2006 WL 839022, *6-8 (S.D.N.Y.,

8  Mar. 31, 2006) (The CUTSA "preempts all claims based on misappropriation of trade secrets that

9  are not specifically exempted by its § 3426.7(b) savings clause"). California Civil Code § 3426.7 is

10  meant to eliminate all tort claims that are based on the same conduct that could support trade secret

11  claim, including intentional interference claims. *Convolve*, 2006 WL 839022, *7-8; *AirDefense, Inc.*

12  *v. AirTight Networks, Inc.* 2006 WL 2092053, *5; (N.D.Cal. July 16, 2006); *Digital Envoy, Inc. v.*

13  *Google, Inc.*, 370 F.Supp.2d 1025, 1033-34 (N.D.Cal. 2005); *Callaway Golf Co. v. Dunlop*

14  *Slazenger Group Americas, Inc.*, 318 F.Supp.2d 216, 219-20 (D.Del.2004).

15      Furthermore, PEI's proposed trade secret claim is time barred. Pursuant to California Civil

16  Code § 3426.6, "an action for misappropriation must be brought within three years after the

17  misappropriation is discovered…." For the purposes of determining the date of accrual, "a

18  continuing misappropriation constitutes a single claim." Cal. Civ. Code § 3426.6. To save its Fifth

19  Cause of Action, PEI asks the Court to infer, or otherwise allow PEI to amend its Counterclaim to

20  allege that First Advantage misappropriated its confidential pricing information and profit margins

21  by using such information to wrongfully solicit CCE, and in the process, disclosed such information

22  to CCE between January 2004 and April 2004. Opp. at 2:12-21; 10:14-11:6; Counterclaim, ¶¶ 14-

23  16. Because the initial alleged act of misappropriation occurred more than three years after filing its

24  Counterclaim, PEI cannot assert a trade secret claim and then rely upon it as the independent wrong

25

26  [2] This examination also reveals that PEI's attempt to establish a trade secret claim is entirely based
27  on new allegations asserted in its Opposition. As discussed above, the Court cannot consider
   allegations outside of the four corners of the Counterclaim when determining whether it sufficiently
28  states a claim for intentional inference with prospective economic advantage.

Buchanan Ingersoll & Rooney LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418

1  underlying its Fifth Cause of Action. *See Ashton-Tate Corp. v. Ross*, 728 F.Supp. 597, 603-604

2  (N.D.Cal. 1989), *aff'd* 916 F.2d 516, 523-24 (9th Cir. 1990).

3       Finally, PEI cannot salvage its proposed trade secret claim by arguing that the statute of

4  limitations should be calculated from First Advantage's disclosure of this same confidential

5  information to CCE "in or about spring 2005." Under California Civil Code § 3426.6, a continuing

6  misappropriation constitutes a single claim. This means that "[w]hen a plaintiff brings suit against

7  an individual defendant for separate misappropriations of related trade secrets, or for multiple

8  misappropriations of a single secret, the date of accrual is the date of the initial misappropriation."

9  *HiRel Connectors, Inc. v. U.S.*, 465 F.Supp.2d 984, 988 (C.D.Cal. 2005); *accord Ashton-Tate*, 916

10  F.2d at 603-604; *Cadence Design Sys., Inc. v. Avant! Corp.*, 29 Cal.4th 215, 218 (2002). Since First

11  Advantage allegedly first misappropriated PEI's proprietary pricing information between January

12  2004 and April 2004, the subsequent misappropriation of that same information in spring 2005 is

13  immaterial for the purposes of calculating the statute of limitations. *See, e.g.,* Opp. at 2:12-21;

14  Counterclaim, ¶¶ 14-16. The Court should therefore reject PEI's attempt to save its Fifth Cause of

15  Action with the assertion of a trade secret misappropriation claim or the assertion of new allegations

16  amounting to such a claim.

17      **C.**    **The Court Should Dismiss PEI's Sixth Cause Of Action With Prejudice.**

18       PEI does not dispute that it filed its Sixth Cause of Action for fraud based on an alleged false

19  promise that First Advantage would not solicit business from CCE outside the applicable three-year

20  statute of limitations. Opp. at 11:9-17. To save this counterclaim, PEI asserts several theories in the

21  hope of establishing that the statute was tolled from April 30, 2004 to sometime in June 2005. All of

22  PEI's attempts to save this fraud claim from being barred by the statute are untenable.

23      **1.**    **The Verbal Settlement Agreement Extinguished PEI's Fraud Claim.**

24       In its Counterclaim, PEI alleges that it learned of the alleged false promise in April 2004 and

25  the parties entered into a verbal agreement to settle a potential fraud claim, which First Advantage

26  performed for over a year. *See* Counterclaim, ¶¶ 16-18, 32-34, 56-68. PEI now claims that this

27  settlement agreement was not a contract at all, but simply a "process of <u>attempting</u> to resolve the

28  dispute between them." Opp. at 11:15-25. PEI's new "theory" is belied by the supporting

PLAINTIFF'S REPLY TO PRIVATE EYES, INC.'S OPPOSITION TO MOTION TO DISMISS PRIVATE EYES,
INC.'S COUNTERCLAIM AGAINST PLAINTIFF; CASE NO. C 07-02424 SC

allegations in its Counterclaim and the very exhibit attached thereto that purportedly establishes the

existence of this agreement. *See* Counterclaim, ¶ 17 ("[a]fter much negotiation, First Advantage

***verbally agreed*** that it would pay PEI $1.80") *and* Exhibit C ("on April 27, 2004, we reached ***an***

***agreement*** regarding compensation payable to [PEI] from [First Advantage] resulting from PEI's

loss of annual [CCE] MVR business") (emphasis added); *see also* Counterclaim, ¶¶ 18, 32-35.  PEI

must now accept the legal effect of these allegations, that by entering into a settlement agreement,

PEI extinguished any claim based on the alleged false promise.[3]  *See Cline,* 200 F.3d at 1232.

     In the alternative, PEI argues that First Advantage's failure to pay under the agreement

constitutes a failure of consideration.  Opp. at 13:6-17.  First Advantage's alleged part performance

for over a year pursuant to the agreement, however, constitutes a mere breach for which PEI can

seek to recover damages.[4]  It does not operate to negate PEI's prior release of its fraud claim.  *Paige*

*v. O'Neal*, 12 Cal. 483, 496 (1859) ("non-payment of the consideration did not affect the operative

effect of the instrument as a valid release"); *accord Faye v. Feldman*, 128 Cal.App.2d 319, 327

(1954); *Hofland v. Gustafson,* 132 Cal.App.2d Supp. 907, 909-910, 282 P.2d 1039 (1955).  Since

PEI accepted payment under the agreement and elected to sue on it, PEI cannot now avoid the

agreement's effect.  *Folsom v. Butte County Assoc. of Governments*, 32 Cal.3d 668, 677 (1982);

*accord Doran*, 137 Cal.App.4th at 492; *Gorman*, 164 Cal.App.3d at 988.

     PEI also argues that it is entitled to plead fraud in the alternative because First Advantage

may contest the validity of the oral agreement.   However, as discussed below, the unenforceability

of the settlement agreement is insufficient to toll the statute of limitations for PEI's fraud claim

where it learned of the failure of that agreement before the expiration of the statute of limitations.

------------------------

[3] PEI does not distinguish the cases cited by First Advantage in its moving papers that stand for the position that a compromise and/or settlement operates as a bar to reopening the controversy.  *See, e.g., Doran v. N. State Grocery, Inc.,* 137 Cal.App.4th 484, 492 (2006); *Gorman v. Holte,* 164 Cal.App.3d 984, 988 (1985).  PEI also does not dispute that the operative effect of the settlement agreement was to extinguish its fraud claim based on a false promise to not solicit CCE.

[4] Plaintiff's reliance on *Nelson v. Sperling*, 270 Cal.App.2d 194 (1969) is misplaced as it does not deal with part performance under a contract.  It is also consistent with First Advantage's argument that by accepting payment under the settlement agreement and electing to sue for breach, PEI cannot now seek to rescind the agreement and escape its release of its fraud claim. *See id.* at 195 (plaintiff was entitled to rescind agreement ***before*** any consideration had been received from defendant).

- 8 -

Buchanan Ingersoll & Rooney LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418

### 2.    PEI Cannot Invoke The Doctrine Of Equitable Tolling.

PEI argues that this settlement agreement (or its attempted negotiation of that agreement) and its reliance thereon equitably tolls the statute. *See* Opp. at 11:15-12:22. However, settlement negotiations do not toll the statute of limitations. *65 Butterfield v. Chicago Title Ins. Co.*, 70 Cal.App.4th 1047, 1062 (1999); *see also Davis v. Rite-Lite Sales Co.*, 8 Cal.2d 675, 682 (1937).

Furthermore, equitable tolling is only available where a plaintiff pursued an alternate <u>formal</u> legal action during the original limitations period. *65 Butterfield*, 70 Cal.App.4th at 1062-63; *accord Downs v. Dept. of Water & Power*, 58 Cal.App.4th 1093, 1100 (1997). Additionally, "equitable tolling only applies where the defendant receives notice, within the limitations period, of the plaintiff's pursuit of the alternative remedy, so that the defendant is aware of the need to begin investigating the matter." *65 Butterfield*, 70 Cal.App.4th at 1063. Here, PEI's Counterclaim establishes that even after learning of First Advantage's alleged breach of the settlement agreement in June 2005, PEI made no attempt to take <u>any</u> formal legal action during the statutory period that it could provide First Advantage notice of the need to prepare a defense. Even if PEI is granted leave to amend to allege that First Advantage never intended to comply with terms of that agreement, PEI still cannot establish that it pursued an alternative legal action because it is undisputed that PEI never took such steps during the statutory period.

To invoke the doctrine of equitable tolling, PEI must also demonstrate excusable ignorance of the limitations period. *Guerrero v. Gates,* 442 F.3d 697, 706 (9th Cir. 2006). PEI does not allege to have been ignorant of the three year statute of limitations. Instead, PEI alleges that it knew of the period. The doctrine of equitable tolling is therefore unavailable to PEI. *Guerrero,* 442 F.3d at 706.

Finally, PEI's conclusory assertion that First Advantage "was not prejudiced in any way" because it knew that "PEI intended to hold it responsible for the improper solicitation" not only defies logic, but is also contrary to the allegations in its Counterclaim. *Compare* Opp. at 12:11-13 *and* Counterclaim, ¶¶ 17-18, 32-35. If a party enters into a settlement agreement to resolve potential fraud and breach of contract claims, it logically follows that it would expect not to be sued on those claims, and that its only future potential liability would be a breach of that agreement. *See Doran*, 137 Cal.App.4th at 492; *Gorman*, 164 Cal.App.3d at 988. Since PEI elected to waive its right to

Buchanan Ingersoll & Rooney LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418

- 9 -

1   pursue its fraud claim, First Advantage had no reason to investigate and prepare a defense to a fraud

2   claim.  Thus, First Advantage will undoubtedly suffer prejudice if PEI is entitled to use the

3   agreement as a means of asserting the very claim it was meant to extinguish.

### 3.    PEI Also Cannot Invoke The Doctrine Of Equitable Estoppel.

5       PEI's reliance on the doctrine of equitable estoppel is equally flawed.  To allege equitable

6   estoppel, PEI must plead *with particularity in its Counterclaim* that: (1) First Advantage was aware

7   of the limitations period; (2) First Advantage intended that PEI rely on its conduct or statements; (3)

8   PEI was ignorant of the true state of facts; and (4) PEI justifiably relied on First Advantage's conduct

9   or statements to its detriment.  *Guerrero*, 442 F.3d at 706-707; *Glassman v. San Francisco City &*

10  *County*, 2006 WL 2644890, *4 (N.D.Cal. Sep 14, 2006).  This means that the operative pleading, not

11  an opposition to a motion to dismiss, *must* include specific facts indicating that the defendant's

12  conduct *directly* prevented the plaintiff from filing suit on time.  *Lantzy v. Centex Homes*, 31 Cal.4th

13  363, 383-385 (2003) (no equitable estoppel where plaintiff failed to adequately plead facts that

14  defendant's conduct actually and reasonably induced plaintiff to forebear suiting within the

15  limitations period); *accord Guerrero*, 442 F.3d at 706-707; *Glassman*, 2006 WL 2644890, *4.

16      PEI's Counterclaim does establish grounds for equitable estoppel.  PEI does not allege any

17  facts that PEI was fraudulently induced to enter into the settlement agreement or that First

18  Advantage directly prevented PEI from suing for fraud on time.  Counterclaim, ¶¶ 17-18, 32-35.

19  PEI also does not offer any such proposed facts in its Opposition, nor can it ask the Court to presume

20  that it could state such a claim.  *See Conrad v. Bank of Am.*, 45 Cal.App.4th 133, 156-57 (1999) ("a

21  claim for fraud cannot be permitted to serve simply as an alternative cause of action whenever an

22  enforceable contract is not formed").

23      In addition, PEI cannot amend its Counterclaim to establish equitable estoppel.  A party may

24  not invoke this doctrine when it learns of the conduct that allegedly induced it not to file suit *before*

25  the expiration of the statute of limitations.  *Lobrovich v. Georgison*, 144 Cal.App.2d 567, 573-574,

26  301 (1956); *Mills v. Forestex Co.*, 108 Cal.App.4th 625, 655 (2003).  PEI already *admits* that it first

27  learned of First Advantage's alleged breach of the settlement agreement (and now presumably

28  another alleged false promise) in "the summer of 2005."  Despite having two more years to assert

Buchanan Ingersoll & Rooney LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418

- 10 -

1   the original fraud claim before the statute expired, PEI waited until after its expiration to assert this

2   claim. *See* Opp. at 13:2-5; Counterclaim, ¶¶ 18, 34.  Given its prior knowledge of First Advantage's

3   breach and the length of delay, PEI's assertion that First Advantage allegedly did not disavow its

4   obligations under the verbal settlement until recently is immaterial.  Accordingly, PEI cannot use

5   equitable estoppel to save its untimely fraud claim.

6       **D.    PEI Cannot Save Its Seventh Cause Of Action For Fraud From Dismissal.**

7       PEI attempts to save its Seventh Cause of Action for promissory fraud by arguing that it is

8   not required to identify the specific individuals that made the alleged misrepresentations under Rule

9   9(b). Opp. at 15:5-12.  PEI's position is contrary to recent Ninth Circuit decisions that mandate that

10  a party asserting fraud claims ***must allege with particularity*** who said what, when, where and to

11  whom, and whether the alleged false promise was verbal and/or in writing as required by Rule 9(b).[5]

12  *See Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007); *accord Vess v. Ciba-Geigy Corp.*

13  *USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).  Other than PEI speculating that it "may be possible" to

14  identify the individuals that made the alleged misrepresentations, PEI fails to explain why it failed to

15  allege with particularity the remaining details of its fraud claim. *See* Opp. at 14:11-16:11.  Since PEI

16  also fails to enumerate how it can cure the lack of specificity by amending its Counterclaim, the

17  Court should dismiss PEI's Seventh Cause of Action without leave to amend.

18      PEI also does not adequately address First Advantage's arguments that PEI's Counterclaim

19  fails to establish the elements for a promissory fraud claim.  PEI ignores that under the facts alleged

20  in its Counterclaim, First Advantage's alleged promise to run future billings directly through PEI was

21  not material to the parties' business relationship. *See* MPA at 17:3-14.

22      Further, PEI asserts that the Court should not consider whether PEI establishes justifiable

23

24  [5] PEI cites to *Moore v. Kayport Package Export*, 885 F.2d 531 (9th Cir.1989) to support its
    argument that it is not required to identify the specific person that made the misrepresentations.
25  *Moore* is not applicable here because this is not a securities fraud case based on false statements
    made in a prospectus.  The requirement of specifically identifying individuals is relaxed in security
26  fraud cases under the group published information doctrine. *See. e.g., Blake v. Dierdorff*, 856 F.2d
    1365, 1369 (9th Cir.1988); *In re Interactive Network, Inc. Securities Litigation*, 948 F.Supp. 917,
27  920. (N.D.Cal. 1996).  Even if *Moore* were instructive, it actually supports First Advantage's
    position as the Moore court found that the plaintiff's failure to attribute particular fraudulent
28  statements or acts to individual defendants was fatal to its securities fraud claims. *Id*. at 540-41.

Buchanan Ingersoll & Rooney LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418

PLAINTIFF'S REPLY TO PRIVATE EYES, INC.'S OPPOSITION TO MOTION TO DISMISS PRIVATE EYES,
INC.'S COUNTERCLAIM AGAINST PLAINTIFF; CASE NO. C 07-02424 SC

Buchanan Ingersoll & Rooney LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418

1   reliance because it is "always a question of fact."  The California Supreme Court recently held

2   otherwise in *Grisham v. Philip Morris U.S.A., Inc.*, 40 Cal.4th 623, 638 (2007).  In that regard, PEI

3   fails to explain how reasonable minds could conclude that its reliance on the alleged false promise

4   was justified.  Instead, PEI attempts to dismiss First Advantage's arguments by mischaracterizing

5   them as seeking to establish a blanket rule that a party can never choose to ignore past fraudulent

6   conduct when relying on a subsequent promise.  *See* Opp. at 16:6-11.  This is not First Advantage's

7   argument.  *See* MPA at 17:15-19:13.  Rather, ***under the particular facts alleged by PEI in its***

8   ***Counterclaim***, it is disingenuous for PEI to allege that after learning of First Advantage's prior false

9   promises and its breach of an alleged agreement to remedy them, that PEI could justifiably rely on

10  another promise purportedly made to "rectify its past conduct."[6]  *See Atari Corp. v. Ernst &*

11  *Whinney*, 981 F.2d 1025, 1030-31 (9th Cir.1992); *Wilhelm v. Pray, Price, Williams & Russell*, 186

12  Cal.App.3d 1324, 1331-32 (1986); *Roland v. Hubenka*, 12 Cal.App.3d 215, 225 (1970); *see also*

13  *Guido v. Koopman*, 1 Cal.App.4th 837, 843 (1991).

14         Finally, PEI concedes that the Counterclaim fails to plead that PEI suffered damages as a

15  result of relying on the alleged false promise.  However, PEI cannot cure this defect by amending its

16  damages to include monies paid to First Advantage for past services.  *See* Opp. at 3:25-4:13, 14:15-

17  15:4.  Again, PEI's alleged reliance on the alleged false promise has no logical connection to paying

18  for past services under the circumstances alleged by PEI.  *See* MPA at 15:24-16:10.  If First

19  Advantage allegedly violated a non-solicitation clause and provided unsatisfactory services to CCE,

20  then why would PEI continue to allow First Advantage to provide services to CCE or otherwise pay

21  for those services?  It is also still unclear how the expected running of billing through PEI for future

22  services would materially change PEI's position of holding back payment for past services provided

23

24  [6] The cases cited by PEI do not excuse its willful ignorance in accepting the alleged false promise at
    face-value.  *Bishop Creek Lodge v. Cira*, 46 Cal.App.4th 1721 (1996) is inapplicable here because it
25  addressed the question of whether lis pendens puts a plaintiff on constructive notice in the context of a
    fraudulent real estate transaction.  Likewise, *Whitely v. Phillip Morris, Inc.*, 117 Cal.App.4th 635 (2005)
26  is distinguishable as it dealt with a cigarette manufacturer making misrepresentations concerning the
    risks of smoking to unsophisticated consumers addicted to cigarettes and the portion of the opinion cited
27  discussed the common knowledge doctrine, which is inapplicable in the instant case.  Finally, *Atchison
    Topeka & Santa Fe Ry.*, 267 Cal.App.2d 881 (1968) has nothing to do with fraud as alleged in the
28  Counterclaim, and instead deals with issues pertaining to joint tortfeasors and indemnification.

1  by First Advantage.  Simply put, PEI's Seventh Cause of Action is unsalvageable as it defies

2  conventional logic and established legal standards.

3         **E.      PEI's Eighth Cause Of Action For Fraud Remains Fatally Defective.**

4         PEI's Opposition also fails to address the fatal defects in its Eighth Cause of Action for fraud.

5  Taking the June 21, 2005 letter ("June 21 letter") as a whole and in a light most favorable to PEI, the

6  statement therein that First Advantage "had not endeavored to directly sell its services to Coca Cola,

7  or in anyway circumvent the relationship that Private Eyes has had with Coca Cola" cannot be

8  characterized as a material statement of fact that PEI could justifiably rely upon.  *See* Counterclaim,

9  Exhibit D.  On its face, the clear purpose of this letter was for First Advantage to notify PEI of its

10  breach of the parties' agreement.  *Id.*  PEI's attempt to explain that a letter demanding that PEI

11  discontinue soliciting other sub-contractors could somehow be reasonably understood by PEI, a

12  corporation that "is in the business of providing a diverse array of background checks… and similar

13  services," as being a representation that could be relied upon as suggested by PEI is absurd.  *See*

14  Opp. at 16:20-17:22; Counterclaim ¶ 1.  It is equally ridiculous to argue that PEI would understand

15  this letter as anything other than a threat to take legal action.  While the Court must make inferences

16  in favor of PEI, it need not, and should not accept as true, PEI's unreasonable "interpretation" of this

17  letter.  *See Western Mining*, 643 F.2d at 624.

18         PEI also glosses over the fact that there is no rational basis for it to justifiably rely on this

19  letter.  *See* MPA at 22:8-23:3.  Indeed, PEI loses all credibility by suggesting that it decided to

20  continue to do business with First Advantage when the letter accuses PEI of breaching the parties'

21  agreement and when PEI also alleges that it just discovered that First Advantage: (1) breached the

22  parties' settlement agreement concerning prior solicitations; (2) improperly disclosed confidential

23  information to CCE; and (3) offered additional services directly to CCE.  *See* Counterclaim, Exhibit

24  D *and* ¶¶ 14-20, 79.

25         Lastly, the statements made in the June 21 letter are absolutely privileged under California

26  Civil Code § 47(b).  To avoid this bar, PEI claims that the litigation privilege is inapplicable because

27  this letter does not expressly threaten a lawsuit.  This narrow view is inconsistent with California

28  law.  Courts favor a broad application of the litigation privilege to further public policy, and even on

Buchanan Ingersoll & Rooney LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418

Buchanan Ingersoll & Rooney LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418

1    a Rule 12(b)(6) motion, "any doubt as to whether the privilege applies is resolved in favor of

2    applying it."[7]   *Morales v. Coop. of Am. Physicians, Inc., Mut. Protection Trust*, 180 F.3d 1060, 1062,

3    (9th Cir. 1999).  To fall under the privilege, a pre-litigation communication need only "be in

4    furtherance of the objects of the litigation."  *Silberg v. Anderson*, 50 Cal.3d 205, 213-214 (1990).

5    This requirement is satisfied "by demand letters and like communications between litigants or their

6    attorneys which are directed towards settlement of a pending or anticipated lawsuit."  *Rothman v.*

7    *Jackson*, 49 Cal.App.4th 1134, 1148 (1996); *accord Rubin v. Green*, 4 Cal.4th 1187, 1194 (1993);

8    *Lerette v. Dean Witter Org'n, Inc.*, 60 Cal.App.3d 573, 575, 577-78 (1976).

9         In the instant case, the four corners of the June 21, 2005 letter can lead reasonable minds to

10   only one conclusion: that the litigation privilege applies.  The letter's express language and tone

11   demonstrate that First Advantage sent it to settle a potential legal dispute between the parties.  In that

12   regard, sending a letter to informally resolve what First Advantage viewed as a breach of the parties'

13   agreement, demanding a cure and informing PEI that First Advantage would take steps to preserve

14   its interests, is a classic example of a demand letter that falls within the litigation privilege.[8]

15        **F.    The Court Should Dismiss PEI's Unfair Trade Practices Claim.**

16        PEI's attempt to explain why the Court should not dismiss its Ninth Cause of Action for

17   unfair trade practices is unavailing.  First, PEI misconstrues First Advantage's position concerning its

18   failure to state a claim under Section 17200.  To be clear, none of the allegations incorporated by

19   reference, whether or not they are subject to dismissal on other grounds, can support a Section 17200

20   claim.  The allegations in its Counterclaim amount to nothing more than claims for breach of

21   contract and possibly intentional interference with a contract.  *Korea Supply Co. v. Lockheed Martin*

22   *Corp.*, 29 Cal.4th 1134, 1150 (2003) ("an action under the UCL is not an all-purpose substitute for a

23   tort or contract action") (internal quotes and citation omitted).  Second, PEI's unsupported

24   _____

25   [7] PEI's reliance on *Edwards v. Centex Real Estate*, 53 Cal.App.4th 15 (1997) to support this
     proposition is misplaced.  *See Aronson v. Kinsella*, 58 Cal.App.4th 254, 266-68 (1997) (noting that
26   the *Edwards* court was faced with "an extreme situation" where the statements were very remote in
     time from the actual litigation); *Knoell v. Petrovich*, 76 Cal.App.4th 164, 170-71 (1999) (same).

27   [8] The fact that litigation was not imminent and no lawsuit was filed is also irrelevant to whether the
28   statement was in the furtherance of the objections of litigation.  *Aronson*, 58 Cal.App.4th at 268.

Buchanan Ingersoll & Rooney LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418

1   interpretation of *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 187

2   (1999) is incorrect.  Since the *Cel-Tech* decision, courts have repeatedly rejected attempts by

3   competitors, such as PEI, to style common law contract and tort claims as "unfair" business

4   practices.  *See, e.g., Stevenson Real Estate Services, Inc. v. CB Richard Ellis Real Estate,* 138

5   Cal.App.4th 1215, 1224-25 (2006); *In re Microsoft Corp. Antitrust Litigation*, 274 F.Supp.2d 747

6   (D.Md. 2003); *see also Textron Fin'l Corp. v. National Union Fire Ins. Co. of Pittsburgh*, 118

7   Cal.App.4th 1061, 1072 (2004).  PEI cites no contrary authority which would establish that the acts

8   alleged in the Counterclaim amount to a ***significant*** threat or harm to competition.

9        Third, PEI's suggestion that the allegations in its Counterclaim support a claim for fraudulent

10  business practices is equally without merit.  Statements made during the course of dealing between

11  two competitors, such as the alleged false promises and representations, are not the type that are

12  "likely to deceive" the public.  *See, e.g., Watson Laboratories, Inc. v. Rhone-Poulenc Rorer, Inc.* 178

13  F.Supp.2d 1099, 1121, (C.D.Cal.  2001) (holding that a competitor may not sue under the UCL's

14  fraudulent prong claiming that the defendant misled the plaintiff); *accord Med. Instrument Dev.*

15  *Labs.  v. Alcon Labs.*, 2005 WL 1926673, *5 (N.D.Cal. Aug 10, 2005).

16       Lastly, PEI cannot plead a claim for unlawful business practices by amending its complaint

17  to include a trade secret claim.  Similar to its interference claims, the CUTSA preempts a claim for

18  unfair competition based on an alleged misappropriation of trade secrets.  *See, e.g, AirDefense*, 2006

19  WL 2092053, *5; *Convolve*, 2006 WL 839022, *7-8; *Digital Envoy*, 370 F.Supp.2d at 1033-34.

20  Accordingly, the Court should dismiss PEI's Ninth Cause of Action regardless of whether it

21  dismisses some or all of the other counterclaims at issue.

22                              **III.    CONCLUSION**

23       For the reasons set forth in its moving papers and herein, First Advantage respectfully

24  requests that the Court grant its motion to dismiss in its entirety and deny PEI leave to amend.

25  Dated:  August 3, 2007                   BUCHANAN INGERSOLL & ROONEY LLP

26                                          /s/ Jeffrey M. Ratinoff
                                           By:   JEFFREY M. RATINOFF
27                                               Attorneys for Plaintiff FIRST ADVANTAGE
                                                 BACKGROUND SERVICES CORP.
28

#1022315-v5

- 15 -

PLAINTIFF'S REPLY TO PRIVATE EYES, INC.'S OPPOSITION TO MOTION TO DISMISS PRIVATE EYES,
INC.'S COUNTERCLAIM AGAINST PLAINTIFF; CASE NO. C 07-02424 SC