3061-0001

1 | Mark R. Mittelman (SBN 96598)
Paul A. Kanter (SBN 194596)
2 | LAW OFFICES OF MARK R. MITTELMAN
A Professional Corporation
3 | 190 North Wiget Lane, Suite 101
Walnut Creek, California  94598
4 | Telephone: (925) 256-0677
Facsimile:  (925) 256-0679
5 | E-mail: mmittelman@mittellaw.com
Attorneys for Defendant / Counter-Claimant /
6 | Cross-Complainant
PRIVATE EYES, INC.

7

8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

SAN FRANCISCO DIVISION

11

12 | PRIVATE EYES, INC., a California corporation

13 |      Counterclaimant and Cross-Complainant,

14 | vs.

15 | FIRST ADVANTAGE BACKGROUND
SERVICES CORP., a Florida corporation;

16 |      Counterdefendant,.

17 | and

18 | ROES 1-20,

19 |      Cross-Defendants.

20

21

22

Case No. C07-2424 SC

**COUNTER-CLAIMANT PRIVATE EYES, INC.'S OPPOSITION TO COUNTER-DEFENDANT FIRST ADVANTAGE BACKGROUND SERVICES CORPORATION'S MOTION TO DISMISS THE FIFTH, SIXTH, AND SEVENTH CAUSES OF ACTION OF THE FIRST AMENDED COUNTER-CLAIM [F.R.C.P. 12(b)(6)]**

**Action Filed:  May 4, 2007**

| | |
|---|---|
| **Date:** | **December 14, 2007** |
| **Time:** | **10:00 A.M.** |
| **Dept:** | **Courtroom 1** |
| **Judge:** | **Hon. Samuel Conti** |

**Trial Date:     None**

23

24

25

26

27

28

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX:  (925) 256-0679

### I.     STATEMENT OF ISSUES TO BE DECIDED

1.     Whether PRIVATE EYES, INC. has adequately pled under F.R.C.P. 8(a) the "independent wrongful conduct" element of the tort of intentional interference with prospective economic relations?

2.     Whether PRIVATE EYES, INC. has adequately pled under F.R.C.P. 9(b) the necessary elements of a fraud claim for FADV's solicitation of business and disclosure of confidential information in violation of express representations not to do so?

3.     Whether PRIVATE EYES, INC. has adequately pled under F.R.C.P. 9(b) the necessary elements of a fraud claim for FADV's misrepresentation of its intention to "run its billings" through PEI so that PEI would earn a profit?

### II.     STATEMENT OF FACTS

PRIVATE EYES, INC. [PEI] is a California corporation that provides a diverse array of background checks, and similar services, for employers seeking to hire and retain personnel.  [FACC ¶1].  Among other services, PEI provides drug testing, physicals, motor vehicle records (MVR) checks, and employee background verifications.  [FACC ¶2].     FIRST ADVANTAGE BACKGROUND SERVICES CORPORATION [FADV] is a Florida corporation that performs some of the same services as PEI. [FACC ¶¶2 and 10].

In or about 2002, PEI entered into a verbal contract with COCA COLA ENTERPRISES, INC. [CCE] to provide employment background services, including but not limited to MVR checks, physicals, and drug testing. [FACC ¶8].  In March 2002, PEI subcontracted some of these services to FADV's predecessor interest, including MVR's, physicals, and drug testing. [FACC ¶10].  As part of this subcontract, FADV's predecessor in interest represented that it would not "directly solicit Coca-Cola for any of the [same] services …." [FACC ¶11].  On October 8 2003, FADV represented that it would not disclose PEI's confidential information to CCE without PEI's consent.  [FACC ¶13].  Both of these representations were false when made, as FADV always intended to solicit the services from CCE and always intended to disclose PEI's confidential information when it became advantageous to do so.  FADV in fact solicited business from CCE, and in fact disclosed confidential information to CCE, at various times from 2004 to 2006. [FACC ¶¶57-66].  FADV's conduct interfered with PEI's

OPPOSITION TO MOTION TO DISMISS FIFTH, SIXTH, AND SEVENTH CAUSES OF ACTION OF FIRST
AMENDED COUNTER-CLAIM  Case No. C07-2424 SC

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

1  business relationship with CCE, ultimately causing loss of business.  FADV's interference was

2  independently wrongful, since it was done through the misappropriation of trade secrets and breach

3  of the common law duty of confidence, as well as by making disparaging statements about PEI.

4  [FACC ¶¶49-54].  PEI was damaged by FADV's conduct, in that it (1) lost business from CCE and

5  (2) CCE used the confidential information to insist upon pricing concessions. [FACC ¶¶57-66].

6  At one point, FADV attempted to <u>partially</u> ameliorate the effects of its wrongful acquisition of

7  one of the services it had successfully obtained from CCE (the MVR's) by offering to pay $1.80 per

8  MVR to PEI.    However, FADV never intended to comply with that promise and terminated the

9  payments in June 2005.  FADV's fraudulent misrepresentation should toll the commencement of the

10  statute of limitations on the fraud claim related to the solicitation of the MVR's to no earlier than

11  June 2005. [FACC ¶¶68-69].  From 2004 to 2006, FADV continued to violate the non-solicitation

12  and non-disclosure agreements.  [FACC ¶63].  PEI did not learn of these violations until 2005 and

13  later. [FACC ¶¶62 and 63].

14  In the summer and fall of 2006, as it became clear that FADV owed substantial sums to PEI

15  for its past transgressions of the non-solicitation and non-disclosure agreements, PEI justifiably

16  refused to make payments on some invoices that FADV submitted to it.  In refusing to pay these

17  invoices, PEI was exercising its legal right to set-off its damages.  FADV then represented that if PEI

18  would pay the outstanding invoices, FADV would allow all of its billings to "run through" PEI.  That

19  would provide PEI a profit on the services.  FADV's promise was false when it was made, as it never

20  had any intention of running **all** of the billings through PEI.  Nevertheless, PEI justifiably relied upon

21  the representation, based on its assumption that FADV had "turned a new leaf" and wanted to

22  maintain a good business relationship through the end of the CCE contract.  PEI thus made payments

23  on the invoices, even though it had the legal right to withhold such payments.  After the invoices

24  were paid, FADV reneged on its promise to run all billings through PEI.  FADV had obtained what it

25  wanted, and had no reason to honor its commitments thereafter. [FACC ¶¶72-79].

26  In May 2007, FADV filed this lawsuit against PEI seeking about $500,000 for alleged unpaid

27  invoices.  PEI denies that it is liable for these invoices, since the work was not properly done and

28  since PEI has a legal right to set-off damages that FADV caused it through the course of the PEI-

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX:  (925) 256-0679

OPPOSITION TO MOTION TO DISMISS FIFTH, SIXTH, AND SEVENTH CAUSES OF ACTION OF FIRST
AMENDED COUNTER-CLAIM  Case No. C07-2424 SC

1    FADV business relationship.  On June 22, 2007, PEI filed its original Counter-Claim seeking

2    compensation for the damages that FADV caused it by improperly soliciting business and improperly

3    disclosing confidential information.  The Court granted FADV's motion to dismiss five of the causes

4    of action in the counter-claim, with leave to amend the fifth, sixth, and seventh causes of action.  PEI

5    has therefore filed its First Amended Counter-Claim.  FADV has once again filed a motion to

6    dismiss.  As will be discussed below, the claims in these causes of action are adequately pled under

7    the appropriate standards and FADV is attempting to improperly litigate questions of fact.

8                         **III.    ARGUMENT**

9       This case has been brought under this Court's diversity jurisdiction.[1]  Accordingly, under the

10    Erie doctrine this Court must apply federal procedural law and state substantive law.  See, e.g.,

11    Vacation Village, Inc. v. Clark County Nevada, 493 F.3d 902, 913-14 (9th Cir. 2007).  The parties

12    agree that the law of California is the applicable substantive state law.  Under federal procedure,

13    pleadings are to be construed liberally to effect "substantial justice" to the parties.  See, e.g.,

14    Charfauros v. Board of Elections, 249 F.3d 941, 956-57 (9th Cir. 2001).  Under FRCP 8(a), the

15    complaint must only set forth a "short and plain statement of the claim showing that the pleader is

16    entitled to relief."  This is commonly called "notice pleading." See, e.g., Empress LLC v. City and

17    County of San Francisco, 419 F.3d 1052,  1055 (9th Cir. 2005).  In order to effectuate the standard of

18    "notice pleading," the Court must assume the existence all specific evidentiary facts that are

19    necessary to support the claim for relief.  See, e.g., Peloza v. Capistrano Unified School District, 37

20    F.3d 517, 521 (9th Cir. 2003).  The only exception to "notice pleading" is set forth in FRCP 9(b),

21    which requires that fraud and mistake be stated "with particularity."  However, even under that more

22    exacting standard, the Ninth Circuit has recognized that the standard of particularity must be

23    dependent on the respective information known to the parties.  See, e.g., Concha v. London, 62 F.3d

24    1493, 1503 (9th Cir.1995) ("Even in cases where fraud is alleged, we relax pleading requirements

25    where the relevant facts are known only to the defendant").

26

27 _____

28 [1] 28 U.S.C. §1332.

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

1    A motion to dismiss a claim for relief is appropriate only when there is no possible claim for

2    relief under the facts set forth in the complaint. See, e.g., Gilligan v. Jamco Development Corp., 108

3    F.3d 246, 249 (9th Cir. 1997). The liberal pleading standard set forth at FRCP 8 establishes a

4    presumption against rejecting the complaint for insufficiency. Id. Even when a complaint is subject

5    to dismissal, leave to amend should be liberally granted. See, e.g., Eminence Capital LLC v. Aspeon,

6    Inc., 316 F.3d 1048, 1051 (9th Cir. 2003) (noting that leave to amend should be granted with "extreme

7    liberality," and holding that trial court had abused its discretion in dismissing complaint without leave

8    to amend even where the plaintiff already had one opportunity to amend the complaint). Leave to

9    amend is appropriate even if a new cause of action is necessary to "save" the complaint from

10   dismissal. See, e.g., DCP Properties Ltd. v. Leighton, 833 F.2d 183, 186 (9th Cir. 1987) ("This

11   liberality in granting leave to amend is not dependent on whether the amendment will add causes of

12   action or parties"). Leave to amend should be granted even if the request is contained in the

13   opposition to the motion to dismiss. See, e.g., Cook, Perkiss & Liche v. Northern California

14   Collection Service, Inc., 911 F.2d 242, 246 (9th Cir. 1990).

15   **A.    PEI HAS ADEQUATELY PLED UNDER F.R.C.P. 8 THE "INDEPENDENT WRONGFUL CONDUCT" ELEMENT FOR INTENTIONAL**
16   **INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE.**

17   PEI's Fifth Cause of Action is for Intentional Interference with Prospective Economic

18   Advantage (IIPEA). In order to establish a claim for IIPEA, a party must plead and prove the

19   following elements: (1) an economic relationship between the plaintiff and a third-party, (2)

20   defendant's knowledge of that relationship, (3) intentional acts by defendant intended to disrupt that

21   relationship, (4) actual disruption of the relationship, (5) damages to plaintiff proximately caused by

22   the disruption. See San Jose Construction, Inc. v. SBCC, 155 Cal.App.4[th] 1528, 1544 [67

23   Cal.Rptr.3d 54, 68] (2007). In addition to the foregoing, the California courts require the plaintiff to

24   establish that the defendant engaged in wrongful conduct that is "independent" from the interference

25   itself. Id. It is only that "independently wrongful conduct" element that is at issue in this motion.

26   Under California law, an act is "independently wrongful" if it is "wrongful by some legal

27   measure beyond the fact of interference itself." See Overstock.Com v. Gradient Analytics, Inc., 151

28   Cal.App.4[th] 688, 713 [61 Cal.Rptr.3d 29, 49] (2007). This means that the conduct is "proscribed by

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

-4-

OPPOSITION TO MOTION TO DISMISS FIFTH, SIXTH, AND SEVENTH CAUSES OF ACTION OF FIRST
AMENDED COUNTER-CLAIM  Case No. C07-2424 SC

1   some constitutional, statutory, regulatory, common law, or other determinable legal standard." Id.

2   While the courts have noted that the "wrongful conduct" must be "independently actionable," it need

3   not provide the plaintiff with an independent cause of action that could be separately brought in a

4   court of law.  See, e.g., Stevenson Real Estate Services, Inc. v. CB Richard Ellis Real Estate Services,

5   Inc., 138 Cal.App.4th 1215, 12224-25 [42 Cal.Rptr.3d 235, 242] (2006) (holding that internal

6   association rules were sufficient to establish "independently wrongful conduct" even though they

7   would not be actionable in a court of law).  The issue is whether there is a "determinable legal

8   standard" that can be evaluated, not whether the particular plaintiff asserting the claim for IIPEA

9   could bring a separate claim. Cf.  Korea Supply Co. v. Lockheed Martin Corp., 29 Cal.4th 134, 115

10  [31 Cal.Rptr.2d 29, 49] (2003) (holding that violation of a the Foreign Corrupt Practices Act, a

11  federal criminal statute, was "independently wrongful conduct").

### 1. PEI HAS SUFFICIENTLY PLED THE EXISTENCE OF INDEPENDENTLY WRONGFUL CONDUCT THROUGH MISAPPROPRIATION OF TRADE SECRETS.

14          PEI's first specification of "independently wrongful conduct" is FADV's misappropriation of

15  trade secrets in violation of the California Uniform Trade Secrets Act (CUTSA).  California Civil

16  Code §3246.1 et seq.  Specifically, PEI alleges that FADV disclosed confidential information,

17  including profit margins and business methods, to Coca Cola Enterprises (CCE). [FACC ¶52(a)].

18          FADV first argues that the trade secret has not been sufficiently pled.  However, general

19  pleading standards apply to this claim.  All that PEI is required to plead is the existence of a trade

20  secret.  See, e.g., Accuimage Diagnostics Corp. v. Terarecon, Inc., 260 F.Supp.2d 941, 950 (N.D.Cal.

21  2003).  The Ninth Circuit has made it clear that the court should deny a motion to dismiss a trade

22  secrets claim if it arguably states a claim for relief.  See, e.g., Duncan v. Stuetzle, 76 F.3d 1480,

23  1487-88 (9th Cir. 1996) (claim that the defendant revealed "proprietary information," including

24  "product's recent income" and the company's "marketing strategy," about "Footsie Wootsie" foot

25  massage machine sufficient to state a claim for misappropriation of trade secrets.)  Profit margins,

26  meaning the difference between revenues and expenses, are trade secrets.  See Whyte v. Schlage

27  Lock Co., 101 Cal.App.4th 1443, 1455-56 [125 Cal.Rptr.2d 277, 287-88] (2002) ("cost and pricing

28  data unique to the plaintiff is a protectible trade secret, although general price formulas are not");

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

OPPOSITION TO MOTION TO DISMISS FIFTH, SIXTH, AND SEVENTH CAUSES OF ACTION OF FIRST
AMENDED COUNTER-CLAIM  Case No. C07-2424 SC

1  Courtesy Temporary Service, Inc. v. Camacho, 222 Cal.App.3d 1278, 1288 [272 Cal.Rptr. 352, 358]

2  (1990) ("… the nature and character of the subject customer information, i.e. billing rates, key

3  contracts, specialized requirements and **mark-up rates**, is sophisticated information and irrefutably

4  of commercial value and not readily ascertainable to other competitors") (emphasis added).

5  Accordingly, PEI has adequately pled the existence of a trade secret, i.e. profit margins and internal

6  business methods.

7       FADV next argues that even if PEI has adequately pled the existence of a trade secret, the

8  CUTSA preempts its claim for IIPEA.  California Civil Code §3246.7 states that CUTSA "does not

9  affect (1) contractual remedies, whether or not based upon misappropriation of a trade secret, or (2)

10  other civil remedies that are not based upon misappropriation of a trade secret …"  The courts have

11  held that this statute implicitly preempts independent tort claims which are based on the

12  misappropriation of trade secrets.  However, the California Supreme Court has strongly suggested

13  that misappropriation of trade secrets may serve as the "independently wrongful conduct" that can

14  support a claim for IIPEA.  Reeves v. Hanlon, 33 Cal.4th 1140, 1155 [17 Cal.Rptr.3d 289, 300]

15  (2004) (noting that misappropriation of "confidential information," as further discussed in a separate

16  analysis of the CUTSA claims, was one basis upon which to find that the defendant engaged in

17  "independently wrongful conduct").

18       FADV cites three federal cases in support of its position that CUTSA preempts the IIPEA

19  claims.  Two of the cases do not even involve IIPEA claims.  Digital Envoy, Inc. v. Google, Inc., 370

20  F.Supp.2d 1025, 1035 (N.D.Cal. 2005) (plaintiff's claims involved unfair competition and unjust

21  enrichment) and Callaway Golf Company v. Dunlop Slazenger Group Americas, Inc. d/b/a Maxfli,

22  318 F.Supp.2d 216, 219 (D.Del. 2004) (plaintiff's claims involve conversion, unjust enrichment,

23  patent, and negligence).  That leaves us with the curious opinion of Convolve, Inc. v. Compaq

24  Computer Corp., 2006 WL 839022 (S.D.N.Y. 2006).  The district court judge in Convolve did find

25  that CUTSA preempted the plaintiff's claims for IIPEA.  However, Convolve did not even mention

26  the California Supreme Court's decision in Reeves v. Hanlon.  Under Erie principles, this Court is

27  obligated to determine how the California Supreme Court would decide the issue of substantive state

28  law.  See, e.g. Estrella v. Brandt, 682 F.2d 814, 817 (9th Cir. 1982).  This Court is not permitted to

1   substitute its view of the law with the view held by the California Supreme Court.  Cf. <u>Gravquick</u>

2   <u>A/S v. Trimble Navigation International Ltd</u>, 323 F.3d 1219, 1222 (9th Cir. 2003).  In <u>Reeves</u>, the

3   California Supreme Court squarely noted, if not squarely held, that the disclosure of trade secrets can

4   be the basis of the "independent wrongful conduct" element of the IIPEA tort.  <u>Reeves</u> makes

5   eminent sense, even in light of the "preemption" statute, because the "independent wrongful conduct"

6   requirement is just meant to ensure that the defendant's interference is measured by a  "determinable"

7   legal standard.  This Court must remember that the damages that are being sought by PEI for this

8   cause of action is for the interference with its future business relationship with CCE, not specific

9   damage related to the disclosure of the trade secrets.

10          FADV's <u>best case</u> to try and overcome <u>Reeves</u> is a decision that (1) is unpublished, (2)

11   decided by a district court judge in New York who presumably has relatively limited experience with

12   California law, and (3) does not even cite <u>Reeves</u>.  It is not even a close call for this Court to decide

13   which of the two cases, <u>Reeves</u> or <u>Convolve</u>, to follow.  Following <u>Reeves</u>, this Court should find

14   that FADV's violation of the CUTSA can be the basis of the "independently wrongful conduct"

15   element of IIPEA.

16          Finally, FADV argues **in a footnote** that even if the trade secret is adequately pled, and even

17   if the CUTSA does not preempt the claim for IIPEA, the claim is nevertheless barred by the three

18   year statute of limitations set forth at California Civil Code §3426.6.  That statute of limitations is

19   three years from the date of actual or constructive discovery of the misappropriation, not three years

20   from the date of the disclosure itself.  <u>Id.</u>  PEI's original counter-claim was filed on June 22, 2007, so

21   only disclosures that were <u>discovered</u> (or reasonably discoverable) on or before June 21, 2004 would

22   even be ***potentially*** barred by the three year statute of limitations.[2]  However, the First Amended

23

24   _____
     [2]    The statute of limitations on the counter-claim relates back to FADV's filing of the original complaint on **May 4,**
     **2007**.  The California courts have held that the statute of limitations on all claims arising from the same "transaction" or

25   "occurrence" relate back to the filing of the first complaint.  <u>See</u>, e.g., <u>Sidney v. Superior Court</u>, 198 Cal.App.3d 710 [244
     Cal.Rptr. 31] (1988); <u>Electronic Equipment Express, Inc. v. Donald H. Seiler & Co.</u>, 122 Cal.App.3d 834 [176 Cal.Rptr.

26   239] (1981).  Of course, under <u>Erie</u> principles the "relation back" doctrine is an issue of state substantive law in diversity
     cases.  <u>See</u>, e.g., <u>Lindley v. General Electric Co.</u>, 780 F.2d 797 (9th Cir. 1986).  FADV's tortious conduct arises from the

27   same contract that forms the basis of its claim for unpaid invoices.  In any event, for purposes of this motion there is no
     issue that depends on whether the date of filing is May 4, 2007 or June 22, 2007.  The issue therefore may be left for

28   another day.

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX:  (925) 256-0679

1  Counter-Claim does not state that all of the wrongful disclosures of confidential information were

2  discovered (or should have been discovered) by that date.  In fact, the counter-claim alleges that some

3  of the disclosures were discovered in the spring of 2005.  [FACC ¶20].  Accordingly, on the face of

4  the pleading, the claim cannot be dismissed.  Cf. London v. Coopers & Lybrand, 644 F.2d 811, 816

5  n.1 (9th Cir. 1981) ("A defendant may raise the time bar of the statute of limitations on a motion to

6  dismiss only if it is obvious on the face of the complaint that the claim is time-barred ….").  Given

7  the clarity of paragraph 20, this must be why FADV relegates its argument to a footnote.  FADV

8  attempts to get around paragraph 20 by arguing that PEI contended in its opposition papers to the

9  prior motion to dismiss that it discovered the disclosures in January or April 2004 when it discovered

10 that FADV wrongfully solicited the MVR business from CCE.  However, PEI never said that it had

11 discovered the wrongful disclosures at that time.  Furthermore, PEI never said that all of the

12 disclosures that are the subject of this claim were made at the time FADV wrongfully solicited the

13 MVR's.  Accordingly, the statute of limitations does not bar all claims based on violation of CUTSA.

14       Furthermore, even if for some reason all direct claims under CUTSA were barred by the three

15 year statute of limitations, that does not mean that the misappropriation can not be the basis for the

16 "independently wrongful conduct."  A claim is no less wrongful because it is barred by the statute of

17 limitations.  It is well-known that the fact that a claim is barred by the statute of limitations does not

18 mean the underlying claim was not meritorious.  Cf. Warren v. Wasserman, Comden, & Casselman,

19 220 Cal.App.3d 1297, 1302 [271 Cal.Rptr. 579, 582] (1990).  This is reflected by the fact that the

20 statute of limitations is an affirmative defense that can be waived, and not a jurisdictional bar to the

21 courthouse door.  Cf. Getz v. Wallace, 236 Cal.App.2d 212 [45 Cal.Rptr. 901] (1965).  Accordingly,

22 a time-barred misappropriation claim may form the basis for the "independent wrongful conduct" as

23 it remains a "determinable legal standard."  The three year statute of limitations applicable to direct

24 CUTSA claims is therefore irrelevant.

25       **2.  PEI HAS SUFFICIENTLY PLED THE EXISTENCE OF INDEPENDENTLY WRONGFUL CONDUCT THROUGH THE COMMON LAW BREACH OF CONFIDENCE.**

27 California recognizes a common law duty of confidence, the breach of which is an

28 independent tort.  See Tele-Count Engineers, Inc. v. Pacific Telephone and Telegraph Co., 168

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

-8-
OPPOSITION TO MOTION TO DISMISS FIFTH, SIXTH, AND SEVENTH CAUSES OF ACTION OF FIRST
AMENDED COUNTER-CLAIM  Case No. C07-2424 SC

Cal.App.3d 455 [214 Cal.Rptr. 276] (1985).  As the Court in <u>Tele-Count</u> stated, "in all cases the gravaman of the **tort** is an understanding between the parties that an idea is offered upon a condition of confidence …." <u>Tele-Count</u>, 168 Cal.App.3d at 455, 214 Cal.Rptr. at 281 (emphasis added). Although the breach of confidence claim is non-contractual, the terms of any express agreement are relevant to determining whether there was any "understanding" that the information would be kept confidential . <u>Tele-Count</u>, 168 Cal.App.3d at 466, 214 Cal.Rptr. at 282.

FADV first argues that the common law breach of confidence cannot be the basis of the "independent wrongful conduct" because the claim is preempted by CUTSA.  However, as noted above, IIPEA is not preempted by CUTSA.  Furthermore, even if CUTSA does preempt the claim to the extent it is explicitly based on the misappropriation of trade secrets, FACC ¶52(b) is not on its face limited to trade secrets.  As noted in <u>Tele-Count</u>, a claim for breach of confidence does not <u>require</u> that the information to be a protectible trade secret. <u>Tele-Count</u>, 168 Cal.App.3d at 463, 214 Cal.Rptr. at 280.

FADV secondly argues that the common law breach of confidence claim is no different than the breach of contract claim that this Court held to be insufficient to establish the "independently wrongful conduct."   FADV continues to cite such cases as <u>JRS Products, Inc. v. Matushita Electronics Corporation of America</u>, 115 Cal.App.4[th] 168 [8 Cal.Rptr.3d 840] (2004) for that proposition. While PEI continues to believe that a breach of a non-solicitation and non-disclosure agreement is sufficient to establish "independently wrongful conduct," the Court need not revisit that issue to reject FADV's claims in this second motion.  As noted above, the claim for breach of confidence is a <u>tort</u> claim, even though there must be an express understanding as to the terms of the confidential disclosure.  Accordingly, PEI is not relying upon a mere "breach of contract" to establish the "independently wrongful conduct."  As such, its claim for common law breach of confidence is sufficient to maintain its cause of action for IIPEA.

### 3. PEI HAS SUFFICIENTLY PLED THE EXISTENCE OF INDEPENDENTLY WRONGFUL CONDUCT THROUGH THE COMMISSION OF TRADE LIBEL AND DISPARAGEMENT.

Trade libel "is defined as an intentional disparagement of the quality of property, which results in pecuniary damage to plaintiff …"  Injurious falsehood, or disparagement, is defined as "the

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

-9-

OPPOSITION TO MOTION TO DISMISS FIFTH, SIXTH, AND SEVENTH CAUSES OF ACTION OF FIRST
AMENDED COUNTER-CLAIM  Case No. C07-2424 SC

1  publication of matter derogatory to the plaintiff's title to his property, or its quality, ***or to his business***

2  ***in general*** ....”   In order to establish the tort of trade libel, or its companions, the plaintiff must

3  establish special damage.  Special damage is usually “loss of prospective contracts with the plaintiff's

4  customers.”  <u>Atlantic Mutual Insurance Co. v. Lamb</u>, 100 Cal.App.4th 1017, 1035 [123 Cal.Rptr. 256,

5  270] (2002) (emphasis added).  The tort of trade libel, and its companion torts, are certainly sufficient

6  to establish the “independently wrongful conduct” element of IIPEA as they provide the requisite

7  “determinable legal standard.”

8  FADV first argues that PEI has not sufficiently pled an act of trade libel.  Perhaps recognizing

9  that FRCP 8 standards are quite minimal, it attempts to incorporate the heightened pleading standards

10  that are applicable to defamation.  <u>See</u>, e.g., <u>Jones v. ThyssenKrupp Elevator Corp.</u>, 2006 WL 680553

11  (N.D.Cal. 2006) (plaintiff asserted claim for defamation arising from comments made by the

12  defendant about her work history). However, the torts of defamation and trade libel are distinct.  <u>See</u>,

13  e.g., <u>Mann v. Quality Old Time Service, Inc.</u>, 139 Cal.App.4th 328, 340 [42 Cal.Rptr.3d  607, 615]

14  (2006) (“whereas defamation concerns injury to the reputation of a person or business, trade libel

15  involves disparagement of goods or services.”).   While it is arguable that heightened pleading

16  standards should apply to defamation, which involves a person's reputation, there is no reason to

17  apply such pleading standards to the entirely separate tort of trade libel, which involves the quality of

18  a business' goods and services.  Accordingly, it is sufficient for PEI to allege that FADV accused it

19  of “incompetence,” and of stating that it could do a “superior job,” to satisfy FRCP 8 standards of

20  pleading.   In any event, given that PEI is making a claim for IIPEA and not trade libel, any

21  heightened pleading standards that may apply to trade libel should not apply here.

22  FADV apparently concedes that calling a competitor “incompetent” is sufficient to establish

23  trade libel.  FADV does argue that the statement that it “could do a superior job” is non-actionable

24  opinion.  The California courts have held that the standard for whether a statement is non-actionable

25  opinion is “whether a reasonable fact finder could conclude the published statement declares or

26  implies a provably false assertion of fact.”  <u>Overstock.Com</u>, *supra*, 151 Cal.App.4th at 701, 61

27  Cal.Rptr.3d at 39.  Although the term “superior” is not capable of a quantitative analysis, it does

28  compare the qualifications of the two companies to do business for CCE.  In the context of the entire

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

1   factual situation, a reasonable trier of fact could conclude that the statement was trade libel.  Cf.

2   Overstock.Com, supra, 151 Cal.App.4th at 701 [61 Cal.Rptr.3d at 40] (noting that in determining

3   whether a statement is non-actionable opinion, the "context" of the statement must be considered);

4   Mullins v. Brando, 13 Cal.App.3d 409, 415 [91 Cal.Rptr. 796, 799] (1970) (in a slander lawsuit,

5   court noted that the "defendant's utterance must be judged as a whole and in the context in which it

6   was made").  Accordingly, it would be inappropriate to dismiss the claim at the pleading stage since

7   the Court cannot go beyond the four corners of the pleading.  In any event, FADV's statement that it

8   could do a "superior job" in servicing CCE's accounts lends context to its statement that PEI was

9   "incompetent."

10      Finally, FADV argues that PEI has not adequately pled "special damage" as required by

11   FRCP 9(g).  Under California law, "special injury" for trade libel means "pecuniary losses."  See,

12   e.g., Guess, Inc. v. Superior Court, 176 Cal.App.3d 473, 479 [222 Cal.Rptr. 79, 82] (1986).  It is

13   obvious from the context of the cause of action that the "special damage" is the pecuniary losses that

14   PEI suffered from the intentional interference.  [FACC ¶54].  FADV forgets that PEI is not making a

15   direct claim for trade libel at this time.  Rather, the claim right now is for IIPEA.  The interference led

16   to CCE's decision to terminate business dealings with PEI, proximately causing PEI harm in the

17   amount of $4-5 million.  PEI is not obligated to break these figures down further, as FADV seems to

18   want here.  FADV cannot benefit from its own multiple wrongs, by asking the Court to impose an

19   impossible standard at the pleading stage.  PEI has pled that it sustained pecuniary losses (not just a

20   general "loss of reputation"), and actually provided an approximation of the total damages, and

21   therefore it has more than satisfied the requirements of FRCP 9(g).

22      **B.    PEI HAS ADEQUATELY PLED A CLAIM FOR COMMON LAW FRAUD FOR FADV'S IMPROPER SOLICITATION OF BUSINESS AND DISCLOSURE OF CONFIDENTIAL INFORMATION TO COCA COLA ENTERPRISES.**

23

24

25      PEI's Sixth Cause of Action is for common law fraud, based on FADV's successful

26   solicitation of the MVR account and other accounts from CCE and multiple disclosures of

27   confidential information over the period 2004 to 2006.  A cause of action for common law fraud

28   requires the plaintiff to plead and prove the following elements: (1) false statement of fact, (2)

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

1    scienter, (3) materiality, (4) actual and justifiable reliance, (5) damages, and (6) a proximate causal

2    connection between the damages and the false statement.   See, e.g., Charnay v. Cobert, 145

3    Cal.App.4[th] 170, 184 [51 Cal.Rptr.3d 471, 482] (2006).

4            **1.    PEI HAS A VALID FRAUD CLAIM BASED ON THE WRONGFUL
                     SOLICITATION OF THE MVR'S.**
5

6            PEI alleges that FADV falsely represented that it would not solicit any business services from

7    CCE, if PEI was already doing those services.   In reliance upon that representation, PEI

8    subcontracted the MVR work to FADV.   FADV then used its new contacts within the CCE enterprise

9    to obtain the business directly for itself.   When PEI discovered that FADV had filched the account, in

10   April 2004, FADV agreed to pay $1.80 per MVR to make up for some of the losses that PEI

11   sustained.   However, FADV falsely represented its intention to make such payments, and in fact did

12   not intend to make such payments after a short period of time.   FADV cut-off the payments in June

13   2005.   That was the earliest time that PEI could have known that the promise to make the payments

14   was fraudulent.

15           FADV first contends that the "settlement agreement" between PEI and FADV, where FADV

16   represented that it would pay $1.80 for every MVR that FADV did for CCE, "extinguishes" the cause

17   of action for the underlying fraud.   However, to the extent that the "settlement agreement" does not

18   establish an enforceable contract, it cannot "extinguish" the fraud claim.   FADV has already

19   indicated that it intends to challenge the validity of that "settlement agreement," and therefore PEI is

20   entitled to plead alternatively.   If the "settlement agreement" did form a valid contract (which is the

21   basis of PEI's Second Cause of Action), then FADV can attempt to argue that the fraud claim is

22   barred.   But that is obviously not an issue for the pleadings stage.   It would be extremely unjust for

23   this Court to dismiss the fraud claim based on the "settlement agreement," and then later allow

24   FADV to challenge the validity of the very "settlement agreement" that justified the dismissal of the

25   fraud claim.   Furthermore, even if the Court were inclined to dismiss the fraud claim when it

26   considered the claim in connection with the prior motion to dismiss, there are new allegations in the

27   First Amended Counter-Claim that now justify denial of the motion.   PEI has not explicitly alleged

28   that it was fraudulently induced to enter into the "settlement agreement," and therefore it has the

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

1   option to avoid the agreement and sue on the underlying tort.  Cf.  <u>Engalla v. Permanente Medical</u>

2   <u>Group</u>, 15 Cal.4th 951, 979 [64 Cal.Rptr.2d 843, 861 ] (1997) ("A defrauded party has the right to

3   rescind a contract, even without a showing of pecuniary damages, on establishing that fraudulent

4   contractual promises inducing reliance have been breached.")  Contrary to FADV's argument, PEI is

5   entitled to litigate the validity of the agreement before it decides whether to avoid it or not.  <u>See</u>, e.g.,

6   <u>Jahn v. Brickey</u>, 168 Cal.App.3d 399, 406 [214 Cal.Rptr. 119, 123] (1985) (noting that a party may

7   wait until trial to elect between rescission and damages, since rescission alone may not make the

8   party whole).   In any event, the issue of whether PEI should have acted sooner to rescind the

9   fraudulent "settlement agreement" is generally a question of fact.  <u>See</u>, e.g., <u>Cameron v. Evans</u>

10  <u>Securities</u>, 119 Cal.App. 164, 172 [6 P.2d 272] (1931).[3]

11      FADV next argues that the fraud with respect to the settlement agreement has not been

12  specifically pled.  It first argues that PEI has not adequately pled justifiable reliance.  However, it is

13  clear from the context of the claim that the justifiable reliance was based on (1) the ongoing business

14  relationship between FADV and PEI and (2) the offer to make at least partial amends for the

15  misconduct.  FADV asserts that PEI's reliance on the "settlement agreement" could not possibly have

16  been justified because it had just found out that FADV had falsely represented that it would not

17  solicit any business from CCE.  However, justifiable reliance is generally a question of fact and a jury

18  could reasonably find that PEI was entitled to accept FADV's representations at face value since

19  FADV obviously wanted to continue the business relationship and was at least claiming it would

20  make some amends.

21      FADV finally argues that this specification of fraud is barred by the three year statute of

22  limitations set forth at California Code of Civil Procedure §338(d).  Since PEI obviously discovered

23  the fraud in April 2004, and the lawsuit was filed on June 22, 2007,[4] the claim is outside the three

24  year time period for such claims.  However, PEI has adequately pled a basis for the court to equitably

---

[3]   <u>LeClercq v. Michael</u>, 88 Cal.App.2d 700 [199 P.2d 343] (1948), cited by FADV, involved an appeal from a judgment against the party seeking the rescission.  Based on the facts presented at trial, there was substantial evidence to support the judgment.  LeClercq therefore has little value in connection with a motion to dismiss.

[4]   Or, as noted above, on May 4, 2007.

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX:  (925) 256-0679

OPPOSITION TO MOTION TO DISMISS FIFTH, SIXTH, AND SEVENTH CAUSES OF ACTION OF FIRST
AMENDED COUNTER-CLAIM  Case No. C07-2424 SC

toll the statute of limitations to at least June 2005.  The equitable tolling is based on FADV's <u>fraudulent</u> representation that it would make payments on the MVR's.  While this Court rejected the claim that equitable tolling could be based on the agreement itself, PEI has now added facts showing that the agreement was induced by fraud.  Accordingly, there is a sufficient basis, upon the facts pled, for the court to find equitable tolling.  The only requirements for equitable tolling are (1) timely notice, (2) lack of prejudice, and (3) reasonable and good faith conduct.  See Waterman Convalescent Hospital, Inc. v. State Department of Health Services, 101 Cal.App.4th 1433, 1441 [125 Cal.Rptr.2d 168, 174] (2002).[5]  PEI has met those requirements.  PEI confronted FADV about its wrongful solicitation of the business and FADV therefore had full knowledge that its conduct was discovered. FADV therefore had every opportunity to marshal whatever evidence it had to rebut PEI's allegations. Instead, FADV fraudulently represented that it would make payments to PEI to backstop some of the losses that PEI sustained.  PEI acted in good faith and reasonable reliance on that representation through June 2005.  Accordingly, the minimum requirements to apply equitable tolling are present here.  After the minimal requirements for equitable tolling are satisfied, tolling then becomes **a matter of equity** to be decided on a case by case basis.  See  Archdale v. American International Specialty Lines Co., 154 Cal.App.4th 449, 478-79 [64 Cal.Rptr.3d 632, 657] (2007) (applying equitable tolling to a situation where the insurer failed to accept a reasonable settlement offer, an act of bad faith, until the time there was an excess judgment, since the insured could not know if he would be harmed before that time).  In this matter, PEI could not know if it would be harmed by the underlying solicitation until FADV ceased payments to it and therefore the statute of limitations should be tolled to at least June 2005.

FADV argues that even if the statute of limitations is tolled by the "settlement agreement," PEI should not be able to utilize the tolling because it had sufficient time to file its claim after the payments ceased in June 2005.  However, equitable tolling (unlike equitable estoppel) does not

---

[5]    FADV, citing Guerrero v. Gates, 442 F.3d 697 (9th Cir. 2006), asserts that "excusable ignorance" of the statute of limitations period is an essential element of equitable tolling.  However, Guerrero mistakenly engrafted a federal requirement to the California statute of limitations.  The case Guerrero relied upon, Santa Maria v. Pacific Bell, 202 F.3d 1170 (9th Cir. 2000) dealt with equitable tolling under the ADA.  This Court must apply California law, not federal law.

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX:  (925) 256-0679

-14-

OPPOSITION TO MOTION TO DISMISS FIFTH, SIXTH, AND SEVENTH CAUSES OF ACTION OF FIRST
AMENDED COUNTER-CLAIM  Case No. C07-2424 SC

1   "vanish" simply because the party had an opportunity to timely file its lawsuit after the reason for the

2   tolling ended.  Rather, like any other form of tolling, equitable tolling simply extends the period of

3   the statute of limitations.  Archdale, 154 Cal.App.4th at 476, 64 Cal.Rptr.3d at 655 ("The effect of

4   equitable tolling is that the limitations period *stops running* during the tolling event, and begins to run

5   again only when the tolling event has concluded.")  Accordingly, the statute of limitations on the

6   MVR fraud claim should be tolled to no earlier than June 2005.  The June 22, 2007 filing of the

7   counter-claim is therefore well within the three-year statute of limitations.

8              **2.     PEI HAS A VALID FRAUD CLAIM BASED ON THE WRONGFUL
                        SOLICITATION OF OTHER SERVICES.**
9

10          When this Court granted leave to amend the Sixth Cause of Action, PEI added allegations that

11  would further support the claim.  Specifically, PEI alleged at paragraph 59 that FADV intended to

12  solicit business services from CCE, including the MVR's.  The claim was not limited to the

13  solicitation of the MVR's.  This is made clear by paragraph 64, which alleges that it was harmed "by

14  the solicitation of the other business services, because CCE stated that the friction generated [by]

15  FIRST ADVANTAGE trying to take business away from PEI was a factor in CCE's decision to

16  terminate its contractual relationship with PEI in September 2006."  FADV has not challenged this

17  aspect of the claim in its motion to dismiss, and therefore it would be inappropriate to grant the

18  motion to dismiss.  The Court should reject any attempt by FADV to address this aspect of the claim

19  in its reply brief.  See, e.g.. Sweet v. Pfizer, 232 F.R.D. 360, 364 n.7 (C.D.Cal. 2005) (noting that

20  legal arguments raised for first time in reply brief is improper).  In any event, if the Court does not

21  believe this claim has been adequately pled, then leave to amend should be allowed to insert any

22  necessary allegations.

23             **3.     PEI HAS A VALID FRAUD CLAIM BASED ON THE WRONGFUL
                        DISCLOSURE    OF    CONFIDENTIAL    AND    PROPRIETARY
24                      INFORMATION.**

25          As a third basis for its Sixth Cause of Action for common law fraud, PEI alleges that

26  throughout the period of 2004 to 2006 FADV disclosed PEI's confidential and proprietary

27  information to CCE in violation of the representations it made in 2002, 2003, and 2005.  FADV

28  spends the bulk of its arguments on this claim.  None of the arguments justify dismissal.

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

-15-

OPPOSITION TO MOTION TO DISMISS FIFTH, SIXTH, AND SEVENTH CAUSES OF ACTION OF FIRST
AMENDED COUNTER-CLAIM  Case No. C07-2424 SC

1    FADV first argues that the claims are barred by the three year statute of limitations.

2    However, as noted above, at least some of the disclosures were made well within the three year

3    period.  FADV attempts to avoid that obvious problem by asserting that PEI is judicially estopped

4    from amending its pleading since it supposedly argued in its opposition to the first motion to dismiss

5    that the disclosures all occurred between January and April 2004 in connection with the wrongful

6    solicitation of the MVR account.  However, PEI never made such a sweeping assertion.  PEI stated

7    that the Court could infer that some wrongful disclosures occurred during that time period (which is

8    consistent with the amended pleading), but that is entirely different than saying that all of the

9    disclosures occurred during that period.  Furthermore, the fact that disclosures occurred  in January to

10    April 2004 does not mean the statute of limitations on the fraud claim commenced at that time.  The

11    statute of limitations does not even commence until the fraud victim discovers, or should have

12    discovered, that the representations were false.  See, e.g., Brandon G. v. Gray, 111 Cal.App.4th 29, 35

13    [3 Cal.Rptr.3d 330, 334] (2003).  Nothing on the face of the pleadings suggests that PEI discovered,

14    or even should have discovered, that FADV made wrongful disclosures done at the same time of the

15    wrongful solicitation of the MVR's.  Cf.  Supermail Cargo, Inc. v. United States, 68 F.3d 1204, 1207

16    (9th Cir. 1995) (noting that dismissal of a complaint on grounds that the claim is barred by the statute

17    of limitations is only appropriate when plaintiff can present no set of facts that would bring the case

18    within the limitations period).  Furthermore, FADV's argument that disclosure of some type of

19    information commences the statute of limitations for future disclosure of different information is

20    nonsensical.  PEI has not alleged that the same information was repeatedly disclosed.

21    FADV next argues that CUTSA preempts its claim for common law fraud, based on the

22    notion that the trade secret claims and the fraud claims arise from the same "common nucleus of

23    facts."  However, the common law fraud claim is not limited to those items that are "trade secrets"

24    under California law.   The promises made by FADV were not limited to protectible trade secrets,

25    and therefore the claim cannot be dismissed.  In any event, there is no support for the sweeping

26    proposition that fraud claims are preempted by CUTSA.  While it is one thing to hold that preemption

27    applies to causes of action which wholly adopt the misappropriation claim (such as a claim for unfair

28    business practices), it is quite another to say that CUTSA insulates a party from its liability for fraud

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

-16-

OPPOSITION TO MOTION TO DISMISS FIFTH, SIXTH, AND SEVENTH CAUSES OF ACTION OF FIRST
AMENDED COUNTER-CLAIM  Case No. C07-2424 SC

1  simply because the subject of the fraud was a trade secret.  If this Court does decide that CUTSA

2  preempts the fraud claim, then leave to amend should be allowed so that PEI can state a claim

3  directly under CUTSA.

4        FADV last argues that the disclosure aspect of the common law fraud claim is insufficiently

5  pled under FRCP 9(b), at least the disclosure based on the false representation by **Hayley Hitchcock**

6  **in June 2005**.  In particular, FADV argues that PEI has not specifically pled the elements of (1)

7  materiality, (2) justifiable reliance, and (3) damages.  However, as stated below, each of these

8  elements is set forth in sufficient detail to enable FADV to understand the claim that is being made

9  connection with that representation.  It must be pointed out, however, that the fraud claim is not just

10  based on the Hayley Hitchcock representation.  FADV made representations in 2002 and 2003, in

11  writing, that it would not disclose confidential information.  PEI did not learn this until April 2005.

12  FADV has not challenged that aspect of the fraud claim, and may not do so in its reply brief.

13        The element of materiality is satisfied by proof that a "reasonable person would attach

14  importance to its existence or non-existence in determining his choice of action in the transaction in

15  question."  <u>See</u>, e.g., <u>Persson v. Smart Inventions, Inc.</u>, 125 Cal.App.4th 1141, 1163 [23 Cal.Rptr.3d

16  335, 352] (2005) (noting that "materiality is a question of fact for the jury unless the fact

17  misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable

18  man would have been influenced by it."); <u>Warner Construction Corp. v. City of Los Angeles</u>, 2

19  Cal.3d 285, 292-93 [466 P.2d 996, 1000) (1970).  FADV argues since it had already disclosed

20  confidential and proprietary information, and PEI knew that, the promise by Hitchcock could not

21  have been material.  However, FADV ignores that (1) there is nothing in the counter-claim that says

22  all disclosures after the promise were the same as the ones before the promise and (2) that PEI has

23  alleged that it specifically continued to do business with FADV at least in part because of that

24  promise by Hitchcock.  [FACC ¶58].  Accordingly, a reasonable person could find that Hitchcock's

25  promise was material.

26        Another element of common law fraud is that the plaintiff must have justifiably (reasonably)

27  relied upon the false promise.  The element of justifiable reliance is almost always a question of fact,

28  to be determined based on the plaintiff's own "knowledge and experience."  <u>See</u>, e.g., <u>Gray v. Don</u>

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

1   <u>Miller & Associates</u>, 35 Cal.3d 498, 503 [198 Cal.Rptr. 551, 554] (1984); <u>Balfour, Guthrie & Co. v.</u>

2   <u>Hansen</u>, 227 Cal.App.2d 173, 198 [38 Cal.Rptr. 525, 541] (1964) (affirming jury verdict in favor of

3   plaintiff on fraud claim).  Justifiable reliance is only a question of law when the plaintiff's reliance

4   can be deemed "manifestly unreasonable."    <u>See</u>, e.g., <u>Manderville v. PC&S Group, Inc.</u>, 146

5   Cal.App.4th 1486, 1499 [55 Cal.Rptr.3d 59, 69] (2007).  A person is does not act "manifestly

6   unreasonable" even when there is some basis to know that the representation may be false.  Cf. <u>Furla</u>

7   <u>v. Jon Douglas Co.</u>, 65 Cal.App.4th 1069, 1078 [76 Cal.Rptr.2d 911, 916] (1998) (reasonable reliance

8   was a question of fact for the jury, even though contract specifically stated that the defendant's

9   representations concerning square footage of real property were only "approximations").  FADV

10  argues that PEI could not justifiably rely upon Hitchcock's representations because it was aware of

11  "at least four false promises."  It is not clear how FADV arrives at four, but in any event it is curious

12  that a party would claim that it has a license to defraud once it exceeds a certain number.   One

13  seriously doubts that FADV would ever make such a claim to a jury, and it is equally inappropriate in

14  its motion.  FADV ignores that there was a longstanding relationship between PEI and FADV and

15  that it was in both parties' interests to try and maintain that relationship.  PEI was certainly entitled to

16  presume that if FADV represented a fact about their business, that it intended to comply with that.

17  Finally, even assuming arguendo that PEI should have exercised more caution in its <u>later dealings</u>

18  with FADV, California law prohibits a party from taking advantage of its own wrong. <u>See</u> California

19  Civil Code §3517; <u>Welch v. City of Oakland</u>, 91 Cal.App.4th 1421, 1429 [111 Cal.Rptr.2d 374,379]

20  (2001) ("A court of equity [or law] does not allow one to take advantage of his own fraud and will

21  refuse to lend its aid to assist in enforcing a fraudulent imposition upon … private individuals").

22  Here, FADV seeks to take advantage of its <u>own prior frauds</u> to shield it from its <u>own subsequent</u>

23  <u>frauds</u>.  Typically, the justifiable reliance element is destroyed only when the plaintiff had access to

24  independent information that would shed doubt on the representation.  Cf. <u>Atari Corp. v. Ernst &</u>

25  <u>Whinney</u>, 981 F.2d 1025, 1030 (9th Cir. 1992) (plaintiff did not justifiably rely upon "ridiculous

26  overvaluation" of company's assets, since it had access to "enough information to know" that the

27  valuation was incorrect by at least $15 million); <u>Roland v. Hubenka</u>, 12 Cal.App.3d 215, 225 [90

28  Cal.Rptr. 490, 496] (1970) (holding that substantial evidence supported trial court's factual finding

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

that the plaintiff did not reasonably rely upon defendant's misrepresentation about size of boundary, when the plaintiff had access to the dimensions on a plat map).[6]  Accordingly, the Court should preclude FADV from asserting that PEI did not act with justification on grounds that it knew that FADV was a malefactor.

Finally, FADV argues that PEI has not adequately pled the element of damages proximately caused by the fraudulent misrepresentation.  FADV asserts that any disclosures occurred before June 2005, when Hitchcock made the representation.  However, the counter-claim clearly states that the disclosures occurred from 2004 to 2006.  Furthermore, the complaint is specific enough for FADV to understand that there were additional disclosures from PEI throughout the period that they did business.

### C.  PEI HAS ADEQUATELY PLED A FRAUD CLAIM BASED ON THE OCTOBER / NOVEMBER 2006 PROMISE TO "RUN BILLINGS" THROUGH PEI.

PEI's Seventh Cause of Action is for common law fraud arising from FADV's promises in October and November 2006 to allow all of its billings to CCE "run through" PEI in exchange for PEI's agreement to make payments on past invoices.  FADV contends that this claim fails to satisfy FRCP 9(b) pleading standards and, in any event, is barred by the litigation privilege.  PEI will address each of these arguments below.

FADV first points out that the counter-claim states that the misrepresentation about the billings was made in October 2006, but then cites a November 10 representation to comply with the specific pleading requirements of FRCP 9(b).  FADV is correct that the counter-claim should state that these representations were made over the course of October and November 2006.  However, FADV's further argument that the November 10th e-mail from Sandra Waters, and attached letter, is the only statement by FADV that is at issue is incorrect.  One of the reasons that the November 10th e-mail was not incorporated into the counter-claim is that it would be taken out of context.  A series

---

[6]  Julrik Productions, Inc. v. Chester, 38 Cal.App.3d 807 [113 Cal.Rptr. 527] (1974), cited by FADV in its moving papers, presents the rather unique situation where the plaintiff subjectively doubts the veracity of the representations.  The Court understandably found that the plaintiff's subjective opinions of defendant's veracity (as reflected in a letter to his attorney) was a relevant consideration.  There is nothing before this Court reflecting that PEI subjectively doubted FADV's representations.

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX:  (925) 256-0679

-19-

OPPOSITION TO MOTION TO DISMISS FIFTH, SIXTH, AND SEVENTH CAUSES OF ACTION OF FIRST
AMENDED COUNTER-CLAIM  Case No. C07-2424 SC

1  of discussions, both before and after that November 10th e-mail, took place.  It is well-known that the

2  trier of fact must evaluate allegedly fraudulent representations <u>within the context that they are made</u>.

3  <u>See</u> e.g., <u>Stone v. Farnell</u>, 239 F.2d 750, 755 (9th Cir. 1957); <u>Geernaert v. Mitchell</u>, 31 Cal.App.4[th]

4  601, 608 [37 Cal.Rptr.2d 483, 488] (1995).  FRCP 9(b) does not require that each piece of the

5  evidentiary puzzle be specifically set forth in the complaint.  Specific pleading is designed to make

6  sure the defendant understands the alleged fraudulent representation and that the plaintiff is not

7  simply "fishing" for claims, not that it be told every single evidentiary fact that will be offered to

8  support the claim.  FRCP 9(b) was not meant to supplant the discovery process, and recognizes that

9  the plaintiff may need to conduct its own discovery before it can fully establish the cause of action.

10  Cf. <u>Neubronner v. Milken</u>, 6 F.3d 666, 671 (9th Cir. 1993) (noting that plaintiff had been given some

11  opportunity to conduct discovery to set forth in detail the nature of the alleged fraud).  PEI has clearly

12  notified FADV of the precise nature of the fraud claim, i.e. that FADV <u>falsely represented that it

13  would run all future billings through PEI if PEI paid past invoices</u>.  The representations were made

14  by Sandra Waters in October and November 2006.  The November 10th e-mail is one of the many

15  communications that makes up that representation.  Any interpretation of that e-mail is for the trier of

16  fact, not the Court on a motion to dismiss.

17      FADV next asserts that PEI has not sufficiently pled the element of materiality.  As noted

18  above, that element is an issue for the jury unless no reasonable person could find that it would have

19  influenced the conduct of the plaintiff.  FADV completely misunderstands the nature of the fraud

20  claim in the Seventh Cause of Action.  The claim in the Seventh Cause of Action, which is distinct

21  from the Sixth Cause of Action, is that FADV misrepresented its intention to "run billings" on future

22  work through PEI if PEI agreed to make payments on past invoices.  This representation was material

23  to PEI, since PEI did not have to make such payments because it had the legal right to withhold the

24  payments as a "set-off."  California law recognizes that a party can legally "set off" debts to the

25  extent the creditor has caused it pecuniary damages.  <u>See</u>, e.g., <u>Fassberg Construction Co. v. Housing

26  Authority of City of Los Angeles</u>, 152 Cal.App.4[th] 720, __ [60 Cal.Rptr.3d 375, 411] (2007).  PEI

27  had the legal right to "set off" since FADV had (1) not performed at least some of the services in a

28  satisfactory manner and (2) had not completely made PEI "whole" from the past transgressions.

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

1       FADV next argues that PEI has not specifically pled the element of justifiable reliance.

2   FADV reiterates its prior theme that PEI could not reasonably rely upon it because it had engaged in

3   a series of fraudulent misconduct up to that point in time.  For the reasons that have already been set

4   forth above, the Court should outright reject any position whereby FADV will be exonerated from its

5   misconduct simply because it engaged in a series of misconduct.  As noted above, that argument

6   turns California Civil Code §3517 on its head.  In any event, the issue of whether a person reasonably

7   relies upon a representation is a generally question of fact, and the standard of reasonableness is

8   lessened when the defendant engaged in intentional fraud.  See, e.g., Boeken v. Philip Morris, Inc.,

9   127 Cal.App.4[th] 1640, 1666-67 [96 Cal.Rptr.3d 638, 658-59] (2005).

10      FADV next argues that PEI has not established any connection between the misrepresentation

11  (the promise to "run billings" through PEI) and the damages.  It is not really clear what FADV's

12  interpretation of PEI's claim is,[7] but it is clearly off-base.  Specifically, the claim is that PEI made

13  payments on past invoices in reliance upon the fraudulent representation to run future billings

14  through it and thus allow PEI to earn a profit.  Of course, if PEI had absolutely no legal right to

15  withhold payment on those past invoices, then perhaps FADV could credibly argue that justifiable

16  reliance is not present.  However, as noted above, PEI has pled that it had the legal right to set-off

17  damages and therefore not pay for the past invoices.  FADV will obviously disagree with that **factual**

18  **position**, but there is no basis for the Court to dismiss the claim at this stage of the proceedings.

19      FADV next argues that PEI has not specifically pled the damages that it sustained as a result

20  of the fraudulent representation that FADV would run future billings through PEI.  Damages from

21  fraud is generally a question of fact.  See, e.g., Hart v. Browne, 103 Cal.App.3d 947, 958 [163

22  Cal.Rptr. 356, 367] (1980).  In the last motion, FADV was correct that PEI had not connected the

23  damages it sought with the representation.  PEI thus conceded that it would have to amend the claim.

---

[7]   FADV has set forth a chronology (based on a single e-mail and attached letter) that is not consistent with the facts as
PEI will present them.  That is one of the dangers of FADV's over-reliance upon a single e-mail when the fraudulent
representation was part of a broader series of communications.  PEI's evidence will show that it did not make the
payments on the past invoices until it was assured by FADV that the future billings would run through PEI.  PEI will
show that it did not make the payments simply because FADV threatened to terminate its work for CCE, as FADV asserts
in its moving papers.

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

OPPOSITION TO MOTION TO DISMISS FIFTH, SIXTH, AND SEVENTH CAUSES OF ACTION OF FIRST
AMENDED COUNTER-CLAIM  Case No. C07-2424 SC

1    PEI has done so here, and has clearly alleged that the damages are those amounts of monies that PEI

2    paid to FADV for past invoices.  These were payments made <u>after</u> FADV assured PEI that it would

3    run future billings through PEI.  Had FADV not made the representation, PEI would never have

4    made the payments under its legal right of set-off.  It is immaterial that the right to set-off arose a few

5    years before.  The right to set-off is an affirmative defense to a debt collection action, like the one

6    brought by FADV in this lawsuit.  <u>See</u>, e.g., <u>Construction Protective Services, Inc. v. TIG Specialty</u>

7    <u>Insurance Co.</u>, 29 Cal.4th 189, 195 [126 Cal.Rptr.2d 908, 911] (2002).    There is no "statute of

8    limitations" on the right to set-off, if that is what FADV is asserting.  <u>Id.</u>  Lastly, FRCP 9(b) does not

9    require the plaintiff to plead the precise dollar amount of damages.  Cf. <u>Cooper v. Pickett</u>, 137 F.3d

10   616, 627 (9th Cir. 1997) (holding that plaintiffs were not required to allege specific dollar amount of

11   "improperly recognized revenue" in order to comply with FRCP 9(b) heightened pleading standards).

12          Finally, FADV argues that even if the fraud claim satisfies FRCP 9(b) standards, it is barred

13   by the "litigation privilege" of California Civil Code §47(b).  While the core of this statute applies to

14   statements made during the course of actual litigation, it has been extended to "pre-litigation"

15   communications.  However, in order to ensure that all tortious conduct is not shielded from liability

16   under the guise of the privilege, the courts have held that Civil Code §47(b) only applies when the

17   following four elements have been established:

18          1.      The "communication must have been made preliminary to a proposed judicial or quasi

19   judicial proceeding."8

20          2.      The proposal of litigation must be made in serious, good faith.

21          3.      The contemplated litigation must be imminent.

22          4.      The litigation must be proposed in order to gain access to the courts to resolve the

23   dispute.

24   <u>Edwards v. Centex Real Estate Corp.</u>, 53 Cal.App.4th 15, 34-35 [61 Cal.Rptr.2d 518, 530-31] (1997).

25   In summarizing the foregoing, the <u>Edwards</u> court noted that "[t]he critical point of these four

26

27   _____

28   8    Not, as FADV argues in its moving papers, just because there is a "brewing legal dispute between the parties …."

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

-22-

OPPOSITION TO MOTION TO DISMISS FIFTH, SIXTH, AND SEVENTH CAUSES OF ACTION OF FIRST
AMENDED COUNTER-CLAIM  Case No. C07-2424 SC

1   elements is that the mere potential or 'bare possibility' that judicial proceedings 'might be instituted

2   in the future is insufficient to invoke the litigation privilege." Id. at 36; 61 Cal.Rptr.3d at 531. The

3   Edwards court went on to hold that the application of the litigation privilege was a question of fact

4   where the defendants made a series of misrepresentations during the time they were investigating and

5   repairing construction defects at the plaintiff's residence.  That is because there was no admission by

6   the plaintiffs that defendants were definitely committed to a lawsuit when they made the statements.

7   The Court expressly held that the defendants "cannot obtain the benefits of the privilege to protect

8   their own communications merely by establishing that they anticipated a potential for litigation

9   between themselves and [plaintiffs] arising out of some claim or dispute." Id. at 39.

10      Edwards has been followed by other courts.  See, e.g., Eisenberg v. Alameda Newspapers,

11  Inc., 74 Cal.App.4th 1359, 1380-81 [88 Cal.Rptr.2d 802, 819-20] (1999) (holding that a triable issue

12  of fact existed as to whether the "imminent litigation was seriously proposed and actually

13  contemplated in good faith as a means of resolving the dispute" when the subject of an allegedly

14  defamatory newspaper article demanded a retraction of the story) and; Mezzetti v. State Farm Mutual

15  Automobile Insurance Co., 346 F.Supp.2d 1058, 1065-66 (N.D.Cal. 2004) (holding that the presence

16  of attorneys involved in pre-litigation dispute between insurance company and insured did not

17  automatically trigger application of the litigation privilege, and finding there was no evidence that

18  litigation was seriously contemplated at time communications occurred);[9] Ruiz v. Harbor View

19  Community, 134 Cal.App.4th 1456, 1473-74 [37 Cal.Rptr.3d 133, 146] (2006) (holding that litigation

20  privilege did not apply to certain letters that were written after a legal "dispute" arose, since there was

21  no evidence that the dispute "had ripened into a proposed proceeding").[10]

22      It is clear that FADV cannot establish the foregoing elements based on the face of the

---

[9]   Mezzetti makes it clear that the involvement of an attorney does not magically shield all communications.  In this
respect, Mezzetti is in accord with Rothman v. Jackson, 49 Cal.App.4th 1134 [57 Cal.Rptr.2d 284] (1996), which rejected
application of the litigation privilege to allegedly defamatory statements made by an attorney at a press conference.

[10]   In the course of its last motion, FADV noted that Edwards was criticized by Aronson v. Kinsella, 58 Cal.App.4th 254
[68 Cal.Rptr.3d 305] (1997).  However, Aronson simply held that the litigation privilege does not require that a complaint
be drafted and ready to be filed before the privilege attaches to subsequent communications.  Aronson, 58 Cal.App.4th at
267; 68 Cal.Rptr.3d at 267-68. PEI's position here is not based on the mere fact that FADV had yet to draft its complaint.
It is based on the complete lack of reference to anticipated litigation.

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX:  (925) 256-0679

-23-

OPPOSITION TO MOTION TO DISMISS FIFTH, SIXTH, AND SEVENTH CAUSES OF ACTION OF FIRST
AMENDED COUNTER-CLAIM  Case No. C07-2424 SC

1    <u>November 10, 2006 e-mail and the attached letter</u>.  Nowhere does Ms. Waters state that litigation will

2    be brought unless PEI makes payments on the pat invoices.  The fact that as an attorney she had an

3    obligation to try and settle matters short of litigation, as FADV asserts, does not automatically mean

4    her overtures were made at a time that litigation was imminent.  While FADV may be able to produce

5    evidence at trial that supports its <u>affirmative defense</u>, it is not entitled to a dismissal.  <u>See Edwards</u>,

6    53 Cal.App.4th at 39-40; 61 Cal.Rptr.2d at 534 (party asserting litigation privilege has the burden of

7    proof).[11]

8                              **IV.    <u>CONCLUSION</u>**

9            PEI was damaged, to the extent of millions of dollars, by the ongoing conduct of its business

10   ally turned competitor, FIRST ADVANTAGE (FADV).  Although PEI's contract-based claims have

11   not been challenged, those claims will not fully make PEI whole from the damages inflicted upon it

12   by FADV'S conduct.  PEI submits that it has adequately set forth causes of action for intentional

13   interference with prospective economic advantage and common law fraud.  PEI therefore requests

14   that this Court deny the motion to dismiss in its entirety.  If the Court does grant any portion of the

15   motion, or all of it, PEI requests leave to amend as follows:

16           1.      To provide the further details necessary to support its claims for misappropriation of

17   trade secrets, breach of the common law duty of confidence, and trade libel.

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25

26   _____

      [11]  Ms. Waters' letter makes it clear that PEI and FADV were having a business dispute, not a legal dispute.  <u>Edwards</u>

27   made it clear that the litigation privilege was not meant to shield liability for any conduct that occurs after a business
     dispute arises.  <u>See Edwards</u>, 53 Cal.App.4th at 33; 61 Cal.Rptr.3d at 529 ("In order to ensure that the privilege does not

28   become merely a shield for fraud, the parameters of the privilege must be defined by reasons providing justification for its
     existence.")

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

-24-

OPPOSITION TO MOTION TO DISMISS FIFTH, SIXTH, AND SEVENTH CAUSES OF ACTION OF FIRST
AMENDED COUNTER-CLAIM  Case No. C07-2424 SC

1    2.    If the Court finds that CUTSA preempts any portion of PEI's claims, then leave to

2    amend to add a direct action under CUTSA.

3    3.    To provide further details to support its common law fraud claims against FADV.

4    DATED: November 21, 2007                    LAW OFFICES OF MARK R. MITTELMAN

5

6                                              /s/    Mark R. Mittelman
                                               Mark R. Mittelman
7                                              Paul A. Kanter
8                                              Attorneys for Defendant/Counter-Claimant/Cross-
                                               Complainant
9                                              PRIVATE EYES, INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

# TABLE OF CONTENTS

**Page(s)**

I.  STATEMENT OF ISSUES TO BE DECIDED ................................................................... 1

II. STATEMENT OF FACTS ............................................................................................... 1

III. ARGUMENT ................................................................................................................... 3

    A.  PEI HAS ADEQUATELY PLED UNDER F.R.C.P. 8 THE "INDEPENDENT WRONGFUL CONDUCT" ELEMENT FOR INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE ............... 4

        1.  PEI HAS SUFFICIENTLY PLED THE EXISTENCE OF INDEPENDENTLY WRONGFUL CONDUCT THROUGH MISAPPROPRIATION OF TRADE SECRETS. .......................................... 5

        2.  PEI HAS SUFFICIENTLY PLED THE EXISTENCE OF INDEPENDENTLY WRONGFUL CONDUCT THROUGH THE COMMON LAW BREACH OF CONFIDENCE. ........................................ 8

        3.  PEI HAS SUFFICIENTLY PLED THE EXISTENCE OF INDEPENDENTLY WRONGFUL CONDUCT THROUGH THE COMMISSION OF TRADE LIBEL AND DISPARAGEMENT ................. 9

    B.  PEI HAS ADEQUATELY PLED A CLAIM FOR COMMON LAW FRAUD FOR FADV'S IMPROPER SOLICITATION OF BUSINESS AND DISCLOSURE OF CONFIDENTIAL INFORMATION TO COCA COLA ENTERPRISES. ................................................................................................ 11

        1.  PEI HAS A VALID FRAUD CLAIM BASED ON THE WRONGFUL SOLICITATION OF THE MVR'S. ............................................... 12

        2.  PEI HAS A VALID FRAUD CLAIM BASED ON THE WRONGFUL SOLICITATION OF OTHER SERVICES. .................................... 15

        3.  PEI HAS A VALID FRAUD CLAIM BASED ON THE WRONGFUL DISCLOSURE OF CONFIDENTIAL AND PROPRIETARY INFORMATION ................................................................................. 15

    C.  PEI HAS ADEQUATELY PLED A FRAUD CLAIM BASED ON THE OCTOBER / NOVEMBER 2006 PROMISE TO "RUN BILLINGS" THROUGH PEI. ............................................................................................ 19

IV. CONCLUSION ............................................................................................................... 24

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

-i-

OPPOSITION TO MOTION TO DISMISS FIFTH, SIXTH, AND SEVENTH CAUSES OF ACTION OF FIRST AMENDED COUNTER-CLAIM  Case No. C07-2424 SC

1

## TABLE OF AUTHORITIES

Page(s)

2

3    **Cases**

4    Accuimage Diagnostics Corp. v. Terarecon, Inc.,
         260 F.Supp.2d 941, 950 (N.D.Cal. 2003) ................................................................................5

5

6    Archdale v. American International Specialty Lines Co.,
         154 Cal.App.4th 449, 478-79 [64 Cal.Rptr.3d 632, 657] (2007)............................14, 15

7    Aronson v. Kinsella,
         58 Cal.App.4th 254 [68 Cal.Rptr.3d 305] (1997) ..............................................23

8

9    Atari Corp. v. Ernst & Whinney,
         981 F.2d 1025, 1030 (9th Cir. 1992) ..................................................................18

10   Atlantic Mutual Insurance Co. v. Lamb,
         100 Cal.App.4th 1017, 1035 [123 Cal.Rptr. 256, 270] (2002) ...........................10

11

12   Boeken v. Philip Morris, Inc.,
         127 Cal.App.4th 1640, 1666-67 [96 Cal.Rptr.3d 638, 658-59] (2005) ...............21

13   Brandon G. v. Gray,
         111 Cal.App.4th 29, 35 [3 Cal.Rptr.3d 330, 334] (2003) ...................................16

14

15   Callaway Golf Company v. Dunlop Slazenger Group Americas, Inc. d/b/a Maxfli,
         318 F.Supp.2d 216, 219 (D.Del. 2004) ...............................................................6

16   Cameron v. Evans Securities,
         119 Cal.App. 164, 172 [6 P.2d 272] (1931)........................................................13

17

18   Charfauros v. Board of Elections,
         249 F.3d 941, 956-57 (9th Cir. 2001) ..................................................................3

19   Charnay v. Cobert,
         145 Cal.App.4th 170, 184 [51 Cal.Rptr.3d 471, 482] (2006) .............................12

20

21   Concha v. London,
         62 F.3d 1493, 1503 (9th Cir.1995) ......................................................................3

22   Construction Protective Services, Inc. v. TIG Specialty Insurance Co.,
         29 Cal.4th 189, 195 [126 Cal.Rptr.2d 908, 911] (2002)......................................22

23

24   Convalescent Hospital, Inc. v. State Department of Health Services,
         101 Cal.App.4th 1433, 1441 [125 Cal.Rptr.2d 168, 174] (2002) .......................14

25   Convolve, Inc. v. Compaq Computer Corp.,
         2006 WL 839022 (S.D.N.Y. 2006)....................................................................6, 7

26

27   Cook, Perkiss & Liche v. Northern California Collection Service, Inc.,
         911 F.2d 242, 246 (9th Cir. 1990) .......................................................................4

28   Cooper v. Pickett,
         137 F.3d 616, 627 (9th Cir. 1997) ......................................................................22

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

1

## TABLE OF AUTHORITIES

Page(s)

2

3

*Courtesy Temporary Service, Inc. v. Camacho,*
  222 Cal.App.3d 1278, 1288 [272 Cal.Rptr. 352, 358] (1990) ........................................6

4

*DCP Properties Ltd. v. Leighton,*
  833 F.2d 183, 186 (9th Cir. 1987) ........................................................................4

5

6

*Digital Envoy, Inc. v. Google, Inc.,*
  370 F.Supp.2d 1025, 1035 (N.D.Cal. 2005) ............................................................6

7

*Duncan v. Stuetzle,*
  76 F.3d 1480, 1487-88 (9th Cir. 1996) ..................................................................5

8

9

*Edwards v. Centex Real Estate Corp.,*
  3 Cal.App.4th 15, 34-35 [61 Cal.Rptr.2d 518, 530-31] (1997) ........................22, 23, 24

10

*Eisenberg v. Alameda Newspapers, Inc.,*
  74 Cal.App.4th 1359, 1380-81 [88 Cal.Rptr.2d 802, 819-20] (1999) ............................23

11

12

*Electronic Equipment Express, Inc. v. Donald H. Seiler & Co.,*
  122 Cal.App.3d 834 [176 Cal.Rptr. 239] (1981) ......................................................7

13

*Eminence Capital LLC v. Aspeon, Inc.,*
  316 F.3d 1048, 1051 (9th Cir. 2003) ....................................................................4

14

15

*Empress LLC v. City and County of San Francisco,*
  419 F.3d 1052, 1055 (9th Cir. 2005) ....................................................................3

16

*Engalla v. Permanente Medical Group,*
  15 Cal.4th 951, 979 [64 Cal.Rptr.2d 843, 861 ] (1997) ..............................................13

17

18

*Estrella v. Brandt,*
  682 F.2d 814, 817 (9th Cir. 1982) ........................................................................6

19

*Fassberg Construction Co. v. Housing Authority of City of Los Angeles,*
  152 Cal.App.4th 720, __ [60 Cal.Rptr.3d 375, 411] (2007) ........................................20

20

*Furla v. Jon Douglas Co.,*
  65 Cal.App.4th 1069, 1078 [76 Cal.Rptr.2d 911, 916] (1998) ......................................18

21

22

*Geernaert v. Mitchell,*
  31 Cal.App.4th 601, 608 [37 Cal.Rptr.2d 483, 488] (1995) ........................................20

23

24

*Getz v. Wallace,*
  236 Cal.App.2d 212 [45 Cal.Rptr. 901] (1965) ........................................................8

25

*Gilligan v. Jamco Development Corp.,*
  108 F.3d 246, 249 (9th Cir. 1997) ........................................................................4

26

27

*Gravquick A/S v. Trimble Navigation International Ltd,*
  323 F.3d 1219, 1222 (9th Cir. 2003) ....................................................................7

28

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

-iii-

OPPOSITION TO MOTION TO DISMISS FIFTH, SIXTH, AND SEVENTH CAUSES OF ACTION OF FIRST
AMENDED COUNTER-CLAIM  Case No. C07-2424 SC

1

**TABLE OF AUTHORITIES**

**Page(s)**

2

3    Gray v. Don Miller & Associates,
        35 Cal.3d 498, 503 [198 Cal.Rptr. 551, 554] (1984) .............................................16, 18

4

     Guerrero v. Gates,
5        442 F.3d 697 (9th Cir. 2006) ................................................................................14

6    Guess, Inc. v. Superior Court,
        176 Cal.App.3d 473, 479 [222 Cal.Rptr. 79, 82] (1986) ............................................11

7

8    Guthrie & Co. v. Hansen,
        227 Cal.App.2d 173, 198 [38 Cal.Rptr. 525, 541] (1964) ...........................................18

9    Hart v. Browne,
        103 Cal.App.3d 947, 958 [163 Cal.Rptr. 356, 367] (1980) .........................................21

10

11   Jahn v. Brickey,
        168 Cal.App.3d 399, 406 [214 Cal.Rptr. 119, 123] (1985) .........................................13

12   Jones v. ThyssenKrupp Elevator Corp.,
        2006 WL 680553 (N.D.Cal. 2006) ...........................................................................10

13

14   JRS Products, Inc. v. Matushita Electronics Corporation of America,
        115 Cal.App.4th 168 [8 Cal.Rptr.3d 840] (2004) .........................................................9

15   Julrik Productions, Inc. v. Chester,
        38 Cal.App.3d 807 [113 Cal.Rptr. 527] (1974) ..........................................................19

16

17   Korea Supply Co. v. Lockheed Martin Corp.,
        29 Cal.4th 134, 115 [31 Cal.Rptr.2d 29, 49] (2003) .....................................................5

18   LeClercq v. Michael,
        88 Cal.App.2d 700 [199 P.2d 343] (1948)..................................................................13

19

20   Lindley v. General Electric Co.,
        780 F.2d 797 (9th Cir. 1986) ...................................................................................7

21   London v. Coopers & Lybrand,
        644 F.2d 811, 816 n.1 (9th Cir. 1981) ...................................................................3, 8

22

23   Manderville v. PC&S Group, Inc.,
        146 Cal.App.4th 1486, 1499 [55 Cal.Rptr.3d 59, 69] (2007) .......................................18

24   Mann v. Quality Old Time Service, Inc.,
        139 Cal.App.4th 328, 340 [42 Cal.Rptr.3d 607, 615] (2006) .......................................10

25

26   Mezzetti v. State Farm Mutual Automobile Insurance Co.,
        346 F.Supp.2d 1058, 1065-66 (N.D.Cal. 2004)..........................................................23

27   Mullins v. Brando,
        13 Cal.App.3d 409, 415 [91 Cal.Rptr. 796, 799] (1970) .............................................11

28

-iv-

OPPOSITION TO MOTION TO DISMISS FIFTH, SIXTH, AND SEVENTH CAUSES OF ACTION OF FIRST
AMENDED COUNTER-CLAIM  Case No. C07-2424 SC

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

1

## TABLE OF AUTHORITIES

Page(s)

2

3

Neubronner v. Milken,
4    6 F.3d 666, 671 (9th Cir. 1993) ...............................................................................20

Overstock.Com v. Gradient Analytics, Inc.,
5    151 Cal.App.4th 688, 713 [61 Cal.Rptr.3d 29, 49] (2007) ...............................4, 5, 10, 11

6  Peloza v. Capistrano Unified School District,
7    37 F.3d 517, 521 (9th Cir. 2003) ..............................................................................3

Persson v. Smart Inventions, Inc.,
8    125 Cal.App.4th 1141, 1163 [23 Cal.Rptr.3d 335, 352] (2005) ...................................17

9  Reeves v. Hanlon,
10   33 Cal.4th 1140, 1155 [17 Cal.Rptr.3d 289, 300] (2004) ......................................6, 7

Roland v. Hubenka,
11   12 Cal.App.3d 215, 225 [90 Cal.Rptr. 490, 496] (1970) .......................................18

12 Rothman v. Jackson,
13   49 Cal.App.4th 1134 [57 Cal.Rptr.2d 284] (1996) ...............................................23

Ruiz v. Harbor View Community,
14   134 Cal.App.4th 1456, 1473-74 [37 Cal.Rptr.3d 133, 146] (2006).........................23

15 San Jose Construction, Inc. v. SBCC,
16   155 Cal.App.4th 1528, 1544 [67 Cal.Rptr.3d 54, 68] (2007) ................................4

Santa Maria v. Pacific Bell,
17   202 F.3d 1170 (9th Cir. 2000) ...............................................................................14

18 Sidney v. Superior Court,
19   198 Cal.App.3d 710 [244 Cal.Rptr. 31] (1988) ......................................................7

Stevenson Real Estate Services, Inc. v. CB Richard Ellis Real Estate Services, Inc.,
20   138 Cal.App.4th 1215, 12224-25 [42 Cal.Rptr.3d 235, 242] (2006)........................5

21 Stone v. Farnell,
22   239 F.2d 750, 755 (9th Cir. 1957) ...........................................................................20

Supermail Cargo, Inc. v. United States,
23   68 F.3d 1204, 1207 (9th Cir. 1995) .........................................................................16

24 Sweet v. Pfizer,
25   232 F.R.D. 360, 364 n.7 (C.D.Cal. 2005) ...............................................................15

Tele-Count Engineers, Inc. v. Pacific Telephone and Telegraph Co.,
26   168 Cal.App.3d 455 [214 Cal.Rptr. 276] (1985) .....................................................9

27 Vacation Village, Inc. v. Clark County Nevada,
28   493 F.3d 902, 913-14 (9th Cir. 2007) ........................................................................3

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

-v-

OPPOSITION TO MOTION TO DISMISS FIFTH, SIXTH, AND SEVENTH CAUSES OF ACTION OF FIRST
AMENDED COUNTER-CLAIM  Case No. C07-2424 SC

1

## TABLE OF AUTHORITIES

Page(s)

2

3

Warner Construction Corp. v. City of Los Angeles,
   2 Cal.3d 285, 292-93 [466 P.2d 996, 1000) (1970) ......................................................17

4

Warren v. Wasserman, Comden, & Casselman,
   220 Cal.App.3d 1297, 1302 [271 Cal.Rptr. 579, 582] (1990) ........................................8

5

6

Welch v. City of Oakland,
   91 Cal.App.4th 1421, 1429 [111 Cal.Rptr.2d 374,379] (2001) ......................................18

7

Whyte v. Schlage Lock Co.,
   101 Cal.App.4th 1443, 1455-56 [125 Cal.Rptr.2d 277, 287-88] (2002) ..........................5

8

9

<u>**Statutes**</u>

10

28 U.S.C. §1332 ....................................................................................................................3

11

California Civil Code §3246.1 et seq. ...................................................................................5

12

California Civil Code §3246.7 ..............................................................................................6

13

California Civil Code §3426.6 ..............................................................................................7

14

California Civil Code §3517 ...........................................................................................18, 21

15

California Civil Code §47(b) ................................................................................................22

16

California Code of Civil Procedure §338(d) ........................................................................13

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

OPPOSITION TO MOTION TO DISMISS FIFTH, SIXTH, AND SEVENTH CAUSES OF ACTION OF FIRST
AMENDED COUNTER-CLAIM  Case No. C07-2424 SC