1  JEFFREY M. RATINOFF. (SBN 197241)
   Email: jeffrey.ratinoff@bipc.com
2  KARINEH KHACHATOURIAN. (SBN 202634)
   Email: karineh.khachatourian@bipc.com
3  BUCHANAN INGERSOLL & ROONEY, LLP
   333 Twin Dolphin Drive, Suite 700
4  Redwood Shores, CA  94065-1418
   Telephone:  (650) 622-2300
5  Facsimile:   (650) 622-2499

6  Attorneys for Plaintiff and Counter-Defendant,
   FIRST ADVANTAGE BACKGROUND SERVICES CORP.

7

8

9                    UNITED STATES DISTRICT COURT

                    NORTHERN DISTRICT OF CALIFORNIA
10

11 FIRST ADVANTAGE BACKGROUND              Case No.: C 07-02424 SC
   SERVICES CORP., a Florida corporation,
12                                         **FIRST ADVANTAGE'S REPLY IN**
                      Plaintiff,           **SUPPORT OF MOTION TO DISMISS THE**
13                                         **FIFTH, SIXTH, AND SEVENTH CAUSES**
           vs.                             **OF ACTION OF PRIVATE EYE'S FIRST**
14                                         **AMENDED COUNTER-CLAIM**
   PRIVATE EYES, INC., a California
15 corporation, DOES 1-10                  [F.R.Civ.P. 9(b) and F.R.Civ.P. 12(b)(6)]

16                    Defendants.          Date:   December 14, 2007
                                           Time:   10:00 a.m.
17                                         Judge:  Honorable Samuel Conti
                                           Dept.:  Courtroom 1
18
   AND RELATED COUNTER-CLAIMS.
19                                         Complaint Filed:    May 4, 2007
                                           Trial Date: None
20

21

22

23

24

25

26

27

28

Buchanan Ingersoll & Rooney LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418

- 1 -

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION. ........................................................................................................1

II.  ARGUMENT. ............................................................................................................1

    A.   PEI Cannot Rely Upon Allegations Of Trade Secret Misappropriation As An Independent Wrongful Act to Support A Claim For Intentional Interference With Economic Advantage. ...................................................................................1

        1.   PEI Fails To Allege Facts Sufficient To Establish Trade Secret Misappropriation As An Independent Wrong. ..............................................1

        2.   PEI's Allegations Of Trade Secret Misappropriation Preempt All Common Law Claims Based Thereon. ........................................................2

        3.   PEI's Claims Based On Allegations Of Trade Secret Misappropriation Are Barred By The Statute Of Limitations. ..................................................3

    B.   First Advantage's Alleged Breach Of Confidence Cannot Constitute An Independent Wrong Supporting PEI's Intentional Interference Claim. ..................5

    C.   PEI's Allegations Of Trade Libel And Defamation Are Insufficient To Establish An Alleged Independent Wrong. ...........................................................6

    D.   PEI Cannot Maintain A Fraud Claim Based On First Advantage's Alleged False Promise Not To Directly Solicit CCE Under Any Given Set Of Facts. .........8

    E.   The Remaining Allegations Based On First Advantage's Alleged False Promises Not To Disclose Confidential Information Fails To Amount To A Claim For Promissory Fraud. ...............................................................................10

    F.   PEI's Opposition Further Demonstrates That Its Seventh Cause Of Action Is Unsustainable On Any Given Set Of Facts. ........................................................11

    G.   The November 10 Email And PEI's Allegations Demonstrate That Its Seventh Cause Of Action Is Barred By The Litigation Privilege. .........................14

III.  CONCLUSION. ......................................................................................................15

Buchanan Ingersoll & Rooney LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418

- i -

1

# TABLE OF AUTHORITIES

2

<u>Page</u>

3

FEDERAL CASES

4

*AccuImage Diagnostics Corp. v. Terarecon, Inc.*,

5

260 F.Supp.2d 941 (N.D.Cal. 2003) ............................................... passim

*Ashton-Tate Corp. v. Ross*,

6

728 F.Supp. 597 (N.D.Cal. 1989) .................................................................4

7

*Atari Corp. v. Ernst & Whinney*,

8

981 F.2d 1025 (9th Cir. 1992) .....................................................................11

*Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc.*,

9

318 F.Supp.2d 216 (D.Del. 2004) ....................................................2, 3, 5, 6

10

*Convolve, Inc. v. Compaq Computer Corp.*,

11

2006 WL 839022 (S.D.N.Y. Mar. 31, 2006) ................................... passim

*Digital Envoy, Inc. v. Google, Inc.*,

12

370 F.Supp.2d 1025 (N.D.Cal. 2005) .......................................... 2, 5, 10

13

*Eldorado Stone, LLC v. Renaissance Stone, Inc.*,

14

2005 WL 5517731 (S.D.Cal. 2005) ..........................................................7, 8

*Ernest Paper Prods., Inc. v. Mobil Chem. Co.*,

15

1997 WL 33483520 (C.D.Cal. Dec. 2, 1997) ...............................................2

16

*Films of Distinction, Inc. v. Allegro Film Productions, Inc.*,

17

12 F.Supp.2d 1068 (C.D.Cal. 1998) ............................................................7

*Garamendi v. SDI Vendome S.A.*,

18

276 F.Supp.2d 1030 (C.D.Cal. 2003) ........................................................10

19

*General Am. Life Ins. Co. v. Castonguay*,

20

984 F.2d 1518 (9th Cir. 1993) .....................................................................11

*HiRel Connectors, Inc. v. U.S.*,

21

465 F.Supp.2d 984 (C.D.Cal. 2005) ............................................................4

22

*Imax Corp. v. Cinema Tech., Inc.*,

23

152 F.3d 1161 (9th Cir. 1998) .......................................................................1

*Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*,

24

12 F.Supp.2d 1035 (C.D.Cal. 1998) ..........................................................7, 8

25

*Jones v. ThyssenKrupp Elevator Corp.*,

26

2006 WL 680553 (N.D. Cal. March 14, 2006) ............................................7

*Knievel v. ESPN*,

27

393 F.3d 1068 (9th Cir. 2005) ......................................................................7

28

Buchanan Ingersoll & Rooney LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418

FIRST ADVANTAGE'S REPLY ISO ITS MTN TO DISMISS THE FIFTH, SIXTH, AND SEVENTH CAUSES OF
ACTION OF PRIVATE EYE'S FIRST AMEND. COUNTERCLAIM; CASE NO.: C 07-02424 SC

*Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*,
    2007 WL 801886 (N.D.Cal. March 14, 2007) ................................................................2

*Morales v. Coop. of Am. Physicians, Inc., Mut. Protection Trust*,
    180 F.3d 1060 (9th Cir. 1999) ................................................................14

*Neubronner v. Milken*,
    6 F.3d 666 (9th Cir. 1993) ................................................................13

*New.Net, Inc. v. Lavasoft*,
    356 F.Supp.2d 1090 (C.D.Cal.2004) ................................................................7

*Nicosia v. De Rooy*,
    72 F.Supp.2d 1093 (N.D.Cal. 1999) ................................................................7

*Pacific MDF Prod., Inc. v. Bio-Mass Energy Concepts, LLC*,
    2006 WL 3359211 (E.D.Cal. Nov. 20, 2006) ................................................................11

*Perretta v. Prometheus Dev. Co., Inc.*,
    2006 WL 463533 (N.D.Cal. Feb 24, 2006) ................................................................12

*Russell v. Rolfs*,
    893 F.2d 1033 (9th Cir.1990) ................................................................12

*Schering Corp. v. First DataBank Inc.*,
    2007 WL 1176627 (N.D.Cal. Apr. 20, 2007) ................................................................7

*Schneider v. Calif. Dept. of Corrections*,
    151 F.3d 1194 (9th Cir. 1998) ................................................................12

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) ................................................................12

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ................................................................12

*Zito v. Steeplechase Films, Inc.*,
    267 F.Supp.2d 1022 (N.D.Cal. 2003) ................................................................11

STATE CASES

*65 Butterfield v. Chicago Title Ins. Co.*,
    70 Cal.App.4th 1047 (1999) ................................................................9

*Am. Credit Indem. Co. v. Sacks*,
    213 Cal.App.3d 622 (1989) ................................................................5, 6

*Archdale v. American Intern. Specialty Lines Ins. Co.*,
    154 Cal.App.4th 449 (2007) ................................................................9

*Aronson v. Kinsella*,
    58 Cal.App.4th 254 (1997) ................................................................15

Buchanan Ingersoll & Rooney LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418

FIRST ADVANTAGE'S REPLY ISO ITS MTN TO DISMISS THE FIFTH, SIXTH, AND SEVENTH CAUSES OF
ACTION OF PRIVATE EYE'S FIRST AMEND. COUNTERCLAIM; CASE NO.: C 07-02424 SC

*Constr. Protective Services, Inc. v. TIG Specialty Ins. Co.,*
     29 Cal.4th 189 (2002) ........................................................................14

*Cadence Design Sys., Inc. v. Avant! Corp.,*
     29 Cal.4th 215 (2002) .......................................................................3, 4

*Couch v. San Juan Unified Sch. Dist.,*
     33 Cal.App.4th 1491, 1500 (1995) ....................................................7

*Crocker Nat. Bank v. Rockwell Intern. Corp.,*
     555 F.Supp. 47, 50 (N.D. Cal. 1982) ...............................................14

*Doran v. N. State Grocery, Inc.,*
     137 Cal.App.4th 484, 492 (2006) ......................................................9

*Downs v. Dept. of Water & Power,*
     58 Cal.App.4th 1093 (1997) ..............................................................9

*Edwards v. Centex Real Estate,*
     53 Cal.App.4th 15 (1997) .................................................................15

*Engalla v. Permanente Med. Group, Inc.,*
     15 Cal.4th 951 (1997) ........................................................................8

*Fassberg Constr. Co. v. Housing Auth. of City of Los Angeles,*
     152 Cal.App.4th 720, 60 Cal.Rptr.3d 375, 411-412 (2007) ............14

*Getz v. Wallace,*
     236 Cal.App.2d 212 (1965) ...............................................................5

*Jahn v. Brickey,*
     168 Cal.App.3d 399 (1985) ...............................................................8

*JRS Prods., Inc. v. Matsushita Elec. Corp. of Am.,*
     115 Cal.App.4th 168 (2004) ..............................................................6

*Khoury v. Maly's of California, Inc.,*
     14 Cal.App.4th 612 (1993) ................................................................6

*Kline v. Turner,*
     87 Cal.App.4th 1369 (2001) ............................................................10

*Knoell v. Petrovich,*
     76 Cal.App.4th 164, 170-71 (1999) .................................................15

*Le Clercq v. Michael,*
     88 Cal.App.2d 700 (1948) .................................................................9

*Lerette v. Dean Witter Org'n, Inc.,*
     60 Cal.App.3d 573 (1976) ................................................................15

*Norgart v. Upjohn Co.,*
     21 Cal.4th 383 (1999) ......................................................................10

Buchanan Ingersoll & Rooney LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418

- iv -

Buchanan Ingersoll & Rooney LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418

*Oakland Raiders v. Oakland-Alameda County Coliseum, Inc.,*
    144 Cal.App.4th 1175 (2006) ................................................................9

*Paige v. O'Neal,*
    12 Cal. 483 (1859) ................................................................9

*Philipson & Simon v. Gulsvig,*
    154 Cal.App.4th 347 (2007) ................................................................11

*Reeves v. Hanlon,*
    33 Cal.4th 1140 (2004) ................................................................3

*Rothman v. Jackson,*
    49 Cal.App.4th 1134 (1996) ................................................................14

*Rubin v. Green,*
    4 Cal.4th 1187 (1993) ................................................................15

*Schlessinger v. Holland Am.,*
    120 Cal.App.4th 552 (2004) ................................................................2

*Silberg v. Anderson,*
    50 Cal.3d 205 (1990) ................................................................14

*Tele-Count Engineers, Inc. v. Pacific Tel. & Tel. Co.,*
    168 Cal.App.3d 455 (1985) ................................................................6

*Warren v. Wasserman, Comden & Casselman,*
    220 Cal.App.3d 1297 (1990) ................................................................5

*Waterman Convalescent Hosp., Inc. v. State Dep't of Health,*
    101 Cal.App.4th 1433 (2002) ................................................................9

**FEDERAL RULES**

Federal Rule of Civil Procedure 9 ................................................................8, 12, 13

Federal Rule of Civil Procedure 12 ................................................................7, 14

**STATE STATUTES**

Cal. Civ. Code § 3426................................................................1

Cal. Civ. Code § 3426.1 ................................................................1

Cal. Civ. Code § 3426.6................................................................4

Cal. Civ. Code § 3426.7................................................................2

Cal. Civ. Code § 3426.10................................................................6

Cal. Civ. Code § 47 ................................................................14

Cal. Civ. Proc. § 431.70 ................................................................14

Cal. Civ. Proc. Code § 338 ................................................................10

FIRST ADVANTAGE'S REPLY ISO ITS MTN TO DISMISS THE FIFTH, SIXTH, AND SEVENTH CAUSES OF
ACTION OF PRIVATE EYE'S FIRST AMEND. COUNTERCLAIM; CASE NO.:  C 07-02424 SC

# I.    INTRODUCTION.

Private Eyes, Inc. ("PEI") has once again failed to provide the Court with a sufficient legal or factual basis that saves its challenged counterclaims.  PEI must accept that all of its claims based on an alleged misappropriation of trade secrets are preempted by the CUTSA and are barred by the statute of limitations set-forth therein.  PEI must also accept that the statute of limitations has run on those claims.  Likewise, no matter how PEI spins the allegations supporting its fraud counterclaims, its prior conduct and the email referred to in its Amended Counterclaim make clear that PEI does not have a cognizable fraud claim as a matter of law.  Since PEI has had ample opportunity to plead facts to establish its Fifth, Sixth and Seventh Causes of Action and has demonstrated a convincing inability to do so, the Court should dismiss these causes of action with prejudice.

# II.    ARGUMENT.

**A.    PEI Cannot Rely Upon Allegations Of Trade Secret Misappropriation As An Independent Wrongful Act to Support A Claim For Intentional Interference With Prospective Economic Advantage.**

In its Opposition, PEI asserts several arguments explaining why the Court should allow it to rely on allegations of trade secret misappropriation to establish an independent wrong supporting its intentional interference with prospective economic advantage ("IIPEA") claim.  These arguments are neither persuasive, nor tenable.

**1.    PEI Fails To Allege Facts Sufficient To Establish Trade Secret Misappropriation As An Independent Wrong.**

PEI first argues that it has adequately plead the elements of trade secret misappropriation because the type of information alleged has been found to be a trade secret in other cases.  *See* Opp. at 5:18-6:6.  However, even under the liberal pleading standards of Rule 8, a party cannot simply conclude that information is a trade secret and then incorporate the CUTSA by reference to establish the existence of a trade secret and its misappropriation as PEI does in its Amended Counterclaim.  *See* FACC at 10:14-19.  Both federal pleading standards and California substantive law require sufficient allegations that establish ***each*** element of a CUTSA claim.  *See* Cal. Civ. Code § 3426.1(d); *see also AccuImage Diagnostics Corp. v. Terarecon, Inc.*, 260 F.Supp.2d 941, 951-52 (N.D.Cal. 2003); *Imax Corp. v. Cinema Tech., Inc.*, 152 F.3d 1161, 1164-65 (9th Cir. 1998).

Buchanan Ingersoll & Rooney LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores,  CA 94065-1418

Buchanan Ingersoll & Rooney LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418

2.    **PEI's Allegations Of Trade Secret Misappropriation Preempt All Common Law Claims Based Thereon.**

PEI also argues that allegations of trade secret misappropriation do not preempt its IIPEA claim.  PEI bases this argument, in part, on the erroneous assertion that the cases cited by First Advantage only "implicitly" hold that the CUTSA preempts all tort claims based on the misappropriation of trade secrets and that several of them do not specifically address whether IIPEA claims based on such allegations are preempted by the CUTSA.  Opp. at 6:7-23.

Courts in this District and other districts have expressly held that ***all*** common law tort claims sharing a common nucleus of facts with the alleged misappropriation of trade secrets are preempted by the CUTSA.  *See, e.g., AccuImage*, 260 F.Supp.2d at 953; *Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, 2007 WL 801886, *6 (N.D.Cal. March 14, 2007); *Digital Envoy, Inc. v. Google, Inc.*, 370 F.Supp.2d 1025, 1033-34 (N.D.Cal. 2005); *Convolve, Inc. v. Compaq Computer Corp.*, 2006 WL 839022, *6-8 (S.D.N.Y. Mar. 31, 2006); *Ernest Paper Prods., Inc. v. Mobil Chem. Co.*, 1997 WL 33483520 (C.D.Cal. Dec. 2, 1997); *Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc.*, 318 F.Supp.2d 216, 219 (D.Del. 2004).  In reaching this conclusion, none of these courts distinguished between the types of tort claims at issue or suggested that the analysis should go beyond determining whether each claim shares a common nucleus of facts with the alleged trade secret misappropriation.  Indeed, *Digital Envoy* rejected the notion that certain alternative claims for relief were not subject to preemption, noting that the provision in Cal. Civ. Code § 3426.7(b) would be "rendered meaningless if… claims which are based on trade secret misappropriation are not preempted by the [CUTSA]."  *Digital Envoy,* 370 F.Supp.2d at 1034-35.

In an attempt to reconcile the holding in *Convolve*, PEI argues that it is an unpublished decision by a court that is purportedly unfamiliar with California law.  Opp. at 7:10-15.  PEI's position is disingenuous given that *Convolve* was authorized for publication and citation, and that California courts have held that it is acceptable to cite to cases "published" only on Westlaw.  *See, e.g., Schlessinger v. Holland Am.*, 120 Cal.App.4th 552, 559, n. 4 (2004).  Moreover, the learned court in *Convolve* relied upon *Digital Envoy*, reaching the same conclusion that Cal. Civ. Code § 3426.7(b) "was meant to eliminate all common law claims that are based on the same conduct

1    which could support a UTSA cause of action." *Convolve*, 2006 WL 839022, *6-8.

2        PEI also attempts to distinguish the above-cited decisions on the grounds that the California

3    Supreme Court in *Reeves v. Hanlon*, 33 Cal.4th 1140, 1155 (2004) "suggested" that trade secret

4    misappropriation may serve as the independent wrong supporting an IIPEA claim.[1]  A "suggestion"

5    in dicta is insufficient to invoke the *Erie* doctrine or to deem the above cited-cases, which reviewed

6    various California court decisions, legislative history, and decisions from other jurisdictions as

7    interpretive aids, to reach the conclusion that the CUTSA preempts interference claims.

8        Furthermore, there is no such holding in *Reeves* concerning whether the alleged trade secret

9    misappropriation amounted to an independent wrongful act or whether allegations of

10   misappropriation would preempt an IIPEA claim.  Instead, the court merely addressed whether a

11   defendant may be held liable under an IIPEA theory for having induced an at-will employee to quit.

12   *Id*. at 1147-54.  In that regard, the alleged wrongful acts relating to defendants hiring plaintiffs'

13   employees were separate and distinct from plaintiffs' allegations of trade secret misappropriation,

14   which were based the theft of plaintiffs' confidential client list and the solicitation of those clients.

15   *Id*. at 1154-55.  The *Reeves* court stated that it was not addressing issues related to interference with

16   client relations and perspective client opportunities through the alleged misappropriation of trade

17   secrets.  *Id*. at 1147.  The court further noted that the confidential information at issue pertained to

18   plaintiffs' clients and not their employees.  *Id*. at 1155.  Thus, if anything, *Reeves* suggests that

19   because there were wrongful acts <u>independent</u> from the allegations of trade secret theft, the

20   interference claim relying on those allegations would not be preempted by the CUTSA.  The above-

21   cited cases that directly address the preemption issue are therefore consistent with *Reeves*.

22           **3.    PEI's Claims Based On Allegations Of Trade Secret Misappropriation
                     Are Barred By The Statute Of Limitations.**

23

24        In its Opposition, PEI attempts to evade the CUTSA's statute of limitations by ignoring the

25   law regarding when a trade secret claim accrues.  In doing so, PEI disavows its prior allegations that

26   _____

27   [1] As noted by *AccuImage* and *Callaway Golf*, another California Supreme Court decision suggests the
     contrary.  *AccuImage*, 260 F. Supp. 2d at 954 (citing *Cadence Design Sys., Inc. v. Avant! Corp.*, 29 Cal.4th

28   215 (2002)); *Callaway Golf*, 318 F.Supp.2d at 219 (citing same).

Buchanan Ingersoll & Rooney LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores,  CA 94065-1418

FIRST ADVANTAGE'S REPLY ISO ITS MTN TO DISMISS THE FIFTH, SIXTH, AND SEVENTH CAUSES OF
ACTION OF PRIVATE EYE'S FIRST AMEND. COUNTERCLAIM; CASE NO.:  C 07-02424 SC

Buchanan Ingersoll & Rooney LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418

1  conclusively establish that any such claims would be barred by the three-year statute of limitations

2  prescribed by Cal. Civ. Code § 3426.6.  PEI's efforts are futile.

3      PEI argues that it cannot be determined from its prior allegations that PEI had such

4  knowledge over three years prior to the filing of First Advantage's Complaint or PEI's

5  Counterclaim.  Opp. at 7:16-13.  However, PEI admitted that First Advantage misappropriated its

6  confidential pricing information and profit margins by using such information to wrongfully solicit

7  MVR services to CCE, and in the process, disclosed this allegedly confidential information to CCE

8  between January 2004 and February 2004.  Ratinoff Decl., Exh. D at 2:12-21; 10:14-11:6;

9  Counterclaim, ¶¶ 14-16; FACC, ¶¶ 16-17.  PEI further admitted that it had actual knowledge of the

10  alleged misappropriation when it "learned for the first time that [First Advantage] had solicited the

11  MVRs from CCE" in April 2004 and resolved the alleged solicitation, and use and disclosure of its

12  pricing information **no later than April 27, 2004** when it entered a settlement agreement with First

13  Advantage.  *See* Counterclaim, ¶¶ 16-17, Exh. C; FACC, ¶¶ 16-17, Exh. C.  Thus, regardless of

14  whether the statute is calculated from May 4, 2007 or June 22, 2007, PEI cannot claim that it did

15  not have at least constructive, if not actual, knowledge of the alleged misappropriation of its pricing

16  information and profit margins outside the three-year statute of limitations.  *See* Cal. Civ. Code. §

17  3426.6 ("action for misappropriation must be brought within three years after the misappropriation

18  is discovered or by the exercise of reasonable diligence should have been discovered").

19      PEI also argues that because it discovered some of the alleged disclosures and use of its

20  pricing information in spring of 2005 that it can still maintain a tort claim based on their alleged

21  misappropriation.  PEI's position is inconsistent with California law.  For the purposes of

22  determining the date of accrual of a trade secret claim, "a continuing misappropriation constitutes a

23  single claim." Cal. Civ. Code § 3426.6.  This means that "[w]hen a plaintiff brings suit against an

24  individual defendant for separate misappropriations of related trade secrets, or for multiple

25  misappropriations of a single secret, the date of accrual is the date of the initial misappropriation."

26  *HiRel Connectors, Inc. v. U.S.*, 465 F.Supp.2d 984, 988 (C.D.Cal. 2005); *accord Ashton-Tate Corp.*

27  *v. Ross*, 728 F.Supp. 597, 603-604 (N.D.Cal. 1989), *aff'd* 916 F.2d 516, 523-24 (9th Cir. 1990);

28  *Cadence Design Sys., Inc. v. Avant! Corp.*, 29 Cal.4th 215, 218 (2002).  Since PEI first learned that

- 4 -

1  First Advantage misappropriated PEI's confidential pricing information and profit margins no later

2  than April 27, 2004, the subsequent misappropriation of that same or related information in spring

3  2005 is immaterial for the purposes of calculating the statute of limitations.

4        Finally, PEI asserts that if the statute of limitations barred all direct claims based on

5  violation of the CUTSA, it still can rely on the alleged misappropriation of trade secrets as an

6  independent wrong.  Again, PEI ignores prevailing case law.  *Am. Credit Indem. Co. v. Sacks*, 213

7  Cal.App.3d 622, 630 (1989) ("purpose of the UTSA is to provide unitary definitions of trade secret

8  and trade secret misappropriation, and a single statute of limitations for the various property, quasi-

9  contractual, and violation of fiduciary relationship theories of non-contractual liability utilized at

10  common law") (internal quotes and citations omitted).  Accordingly, PEI's interference claim is

11  preempted, and as a result, is subject to and barred by the CUTSA's statute of limitations.[2]

12      **B.**    **First Advantage's Alleged Breach Of Confidence Cannot Constitute An Independent Wrong Supporting PEI's Intentional Interference Claim.**

13        PEI argues that because California law recognizes a common law claim for breach of

14  confidence that it should be allowed to rely upon that theory as an independent wrong.  Opp. at

15  8:27-9:24.  PEI is incorrect again.  The CUTSA preempts <u>all</u> common law claims that are based on

16  the same conduct that ***could*** support a CUTSA cause of action.  *See, e.g., Convolve*, 2006 WL

17  839022, *6-8 (citing *Digital Envoy*, 370 F.Supp.2d at 1035); *AccuImage*, 260 F.Supp.2d at 953;

18  *Callaway Golf*, 318 F.Supp.2d at 219-20.  In that regard, the *Convolve* court ***expressly*** held that the

19  CUTSA preempts breach of confidence claims that are based on the same common nucleus of facts

20  as an alleged misappropriation of trade secrets.  *Convolve*, 2006 WL 839022, *6-8.  Since it is

21  undisputed that PEI's claims for trade secret misappropriation and the alleged breach of confidence

22  are based on the same allegations and confidential information, PEI's allegations amounting to a

23  breach of confidence, along with its IIPEA claim, are preempted by the CUTSA.

24  _____

25  [2] PEI's reliance on *Warren v. Wasserman, Comden & Casselman*, 220 Cal.App.3d 1297 (1990) to support the
26  proposition that despite the trade secret claim being time-barred, it still can be an independent wrongful act,
     is mistaken.  *Warren* relates to determining whether an underlying claim terminated unfavorably on the
27  merits in the context of malicious prosecution claims.  Likewise, *Getz v. Wallace*, 236 Cal.App.2d 212
     (1965) provides no guidance on whether a court may dismiss a claim where it is obvious from the pleadings
28  that the claim is timed-barred.

Buchanan Ingersoll & Rooney LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418

Buchanan Ingersoll & Rooney LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418

PEI's reliance on *Tele-Count Engineers, Inc. v. Pacific Tel. & Tel. Co.*, 168 Cal.App.3d 455 (1985) does not change this result. *Tele-Count* does not address the issue of whether a breach of confidence constitutes an independent wrong that could support an IIPEA claim. Even if it did, the holding would not be applicable as the claim at issue in *Tele-Count* predates the enactment of the CUTSA. *See* Cal. Civ. Code § 3426.10 (applies to claims brought after January 1, 1985); *Am. Credit*, 213 Cal.App.3d at 630 ("in the event of a conflict between prior case law and the statute, the UTSA controls"). Thus, *Tele-Count* cannot apply to a post-CUTSA enactment breach of confidence claim that sounds in trade secret misappropriation, such as the one alleged by PEI.

PEI also misses the point by relying on *Tele-Count* for the proposition that a claim for breach of confidence does not require that the information at issue amounts to a protectable trade secret. Since the CUTSA was meant to occupy the space of various common law theories related to the wrongful disclosure of purportedly confidential information and violations of non-contractual duties of non-disclosure, any analysis of whether PEI's confidential information constitutes a protectable information that was wrongfully disclosed or used is within the exclusive purview of the CUTSA. *Am. Credit*, 213 Cal.App.3d at 630; *Convolve*, 2006 WL 839022, *6-8; *AccuImage*, 260 F.Supp.2d at 953; *Callaway Golf*, 318 F.Supp.2d at 219-20.

Finally, PEI's belief that a breach of confidence claim can co-exist with a breach of contract claim is immaterial. PEI is asserting such allegations as a basis for its IIPEA claim, not as a separate claim. Therefore, the holdings in *JRS Prods., Inc. v. Matsushita Elec. Corp. of Am.*, 115 Cal.App.4th 168 (2004) and *Khoury v. Maly's of California, Inc.*, 14 Cal.App.4th 612 (1993) are applicable. Accordingly, because the alleged act of interference amounting to First Advantage's alleged breach of confidence cannot be an independent wrongful act and also constitutes an alleged breach of contract, PEI cannot maintain a cause of action for IIPEA based thereon.

## C.    PEI's Allegations Of Trade Libel And Defamation Are Insufficient To Establish An Alleged Independent Wrong.

Apparently conceding that it is not asserting common law libel or slander as an independent wrong, PEI argues that it has sufficiently pled allegations amounting to trade libel. In doing so, PEI incorrectly assumes that because trade libel is distinct from libel and slander, it is not subject to

FIRST ADVANTAGE'S REPLY ISO ITS MTN TO DISMISS THE FIFTH, SIXTH, AND SEVENTH CAUSES OF ACTION OF PRIVATE EYE'S FIRST AMEND. COUNTERCLAIM; CASE NO.: C 07-02424 SC

heightened pleading standards applicable to those common law claims. Opp. at 10:8-21. It is well established, however, that trade libel claims are evaluated in the same manner under the First Amendment as defamation claims such as libel and slander. *Films of Distinction, Inc. v. Allegro Film Productions, Inc.*, 12 F.Supp.2d 1068, 1080-82 (C.D.Cal. 1998); *Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 12 F.Supp.2d 1035, 1047 (C.D.Cal. 1998). As with any defamation claim, a plaintiff must <u>specifically</u> plead the alleged statement verbatim, as well as the time and place of the publication, and identify the publisher and the recipient of the statements. *Eldorado Stone, LLC v. Renaissance Stone, Inc.*, 2005 WL 5517731, \*3 (S.D.Cal. 2005); *see also Jones v. ThyssenKrupp Elevator Corp.,* 2006 WL 680553, \*5 (N.D. Cal. March 14, 2006). In order to establish trade libel, a plaintiff must also plead and prove that the statement published to others ***in writing***. *Schering Corp. v. First DataBank Inc.*, 2007 WL 1176627, \*10 n. 8 (N.D.Cal. Apr. 20, 2007); *New.Net, Inc. v. Lavasoft*, 356 F.Supp.2d 1090, 1113 (C.D.Cal.2004). Here, PEI fails to allege the actual words constituting the alleged trade libel, the person(s) at First Advantage that allegedly published the alleged defamatory statement(s), the recipient(s), the manner in which it was communicated, when it was made, and the setting in which it took place. Consequently, PEI's attempt to establish trade libel as an independent wrong fails as a matter of law.

In defense of PEI's allegations that First Advantage's statement that it could do a superior job was defamatory, PEI incorrectly asserts that it is inappropriate for the Court to determine whether this statement is fairly susceptible of a defamatory meaning. Opp. at 10:22-11:9. Whether a statement is "reasonably susceptible of an interpretation which implies a provably false assertion of fact-the dispositive question in a defamation action-is a question of law for the court." *Couch v. San Juan Unified Sch. Dist.*, 33 Cal.App.4th 1491, 1500 (1995). In that regard, Courts routinely address this question on a Rule 12(b)(6) motion to dismiss. *See, e.g., Knievel v. ESPN*, 393 F.3d 1068, 1073-74 (9th Cir. 2005); *Nicosia v. De Rooy*, 72 F.Supp.2d 1093, 1101 (N.D.Cal. 1999). Thus, it is appropriate for the Court to determine whether First Advantage's statement that it could do a superior job over PEI is not actionable. *See Isuzu Motors,* 12 F.Supp.2d at 1044-46.

Lastly, PEI argues that it adequately plead special damages because the effects of the alleged statements obviously caused CCE to cancel its contract with PEI. Opp at 11:10-21. However, PEI

Buchanan Ingersoll & Rooney LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418

FIRST ADVANTAGE'S REPLY ISO ITS MTN TO DISMISS THE FIFTH, SIXTH, AND SEVENTH CAUSES OF ACTION OF PRIVATE EYE'S FIRST AMEND. COUNTERCLAIM; CASE NO.:  C 07-02424 SC

Buchanan Ingersoll & Rooney LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418

1  cannot rely on trade libel to support its intention interference claim unless it alleges a <u>direct</u>

2  connection between the alleged defamatory statements and a specific pecuniary loss of business

3  from CCE. *Eldorado Stone*, 2005 WL 5517731, *4; *Isuzu Motors,* 12 F.Supp.2d at 1047. Here,

4  PEI merely alleges that it suffered damages in the range of $4-5 million as a result of several

5  alleged acts of interference and does not allege specific facts that establish that the alleged trade

6  libel directly caused these damages. PEI therefore fails to meet Rule 9(g)'s pleading standards.

7  **D.    PEI Cannot Maintain A Fraud Claim Based On First Advantage's Alleged
        Promise Not To Directly Solicit CCE Under Any Given Set Of Facts.**

8

9  Despite learning as late as April 27, 2004 that First Advantage's promise to not solicit

10  services to CCE was purportedly false, PEI continues to maintain that it would be unjust to allow

11  First Advantage to avoid the consequences of its false promise not to solicit CCE because it made a

12  further false promise to make payments under the April 2004 settlement agreement. Opp. at 12:15-

13  12. PEI cannot continue to ignore that this Court previously ***rejected*** PEI's reliance on the

14  settlement agreement as grounds for excusing its late-filed fraud claim. Order at 6:6-25. PEI's

15  "new allegations" that it was fraudulently induced to enter the settlement agreement do not change

16  the fact that PEI's claims based on the alleged false promise not to solicit CCE were extinguished.[3]

17  As discussed in First Advantage's moving papers, the Amended Counterclaim fails to allege

18  facts sufficient to establish a second act of fraud under Rule 9(b)'s heightened pleading requirement.

19  Even if it had, PEI still cannot elect to rescind the settlement agreement and proceed on a claim

20  based on a false promise not to solicit because PEI entered into the agreement without mention of

21  any alleged fraud, benefited from new agreement by obtaining payments for over a year, and then a

22  waited over two years after those payments ceased to claim that the original promise not to solicit

23

---

24  [3] The cases cited by PEI in its Opposition do not refute the Court's prior ruling that PEI's settlement of its
25  claims relating to the solicitation of CCE and accepting payment operates as a bar to reopening the
     controversy. *See* Opp. at 12:27-13:8. None of these cases relate to the effects of a settlement agreement and
26  alleged part-performance there under. For example, *Engalla v. Permanente Med. Group, Inc.*, 15 Cal.4th
     951 (1997) is inapplicable because it only addressed whether a plaintiff could argue that it was fraudulently
27  induced to accept an arbitration provision in opposition to a motion to compel arbitration. Likewise, *Jahn v.
     Brickey*, 168 Cal.App.3d 399 (1985) merely addressed whether a plaintiff may be permitted to elect between
28  equitable and legal remedies after the jury has returned a verdict in relation to a real estate transaction.

FIRST ADVANTAGE'S REPLY ISO ITS MTN TO DISMISS THE FIFTH, SIXTH, AND SEVENTH CAUSES OF
ACTION OF PRIVATE EYE'S FIRST AMEND. COUNTERCLAIM; CASE NO.: C 07-02424 SC

was false. *Oakland Raiders v. Oakland-Alameda County Coliseum, Inc.*, 144 Cal.App.4th 1175, 1190-94 (2006) (defrauded party forfeits a fraud claim by entering into a new, substitute agreement with, or accepting extra-contractual benefits from, the defrauding party, with knowledge of the fraud); *see also Paige v. O'Neal*, 12 Cal. 483, 496 (1859); *Doran v. N. State Grocery, Inc.*, 137 Cal.App.4th 484, 492 (2006); *Le Clercq v. Michael*, 88 Cal.App.2d 700, 702 (1948).[4]

PEI's claim that these "new allegations" constitute a basis for the Court to equitably toll the statute of limitations to June 2005 is also incorrect.[5]  *See* Opp. at 13:21-14:21.  PEI still fails to comprehend that negotiating and entering into a settlement agreement does not toll the statute of limitations for claims extinguished by the agreement. *65 Butterfield v. Chicago Title Ins. Co.*, 70 Cal.App.4th 1047, 1062-63 (1999).  Further, PEI's failure to pursue an alternate <u>formal</u> legal or administrative remedy and provide First Advantage notice thereof during the original limitations period precludes it from invoking the doctrine. *Id.* at 1062-63; *accord Downs v. Dept. of Water & Power*, 58 Cal.App.4th 1093, 1100 (1997).  As a matter of law, confronting First Advantage about soliciting CCE and entering into a settlement agreement to resolve that dispute does not amount to notice of its intent to seek an alternate formal remedy and provide adequate notice for First Advantage to prepare its defense for claims that were ***extinguished*** by that agreement.[6]

Finally, PEI's assertion that subsequent alleged acts of solicitation somehow revive its time-barred fraud claim based on a false promise to not solicit CCE is not supported by any recognized tolling theory.  *See* Opp. at 15:8-22.  The statute of limitations began to run when PEI first discovered the facts constituting fraud on or before April 27, 2004 and was not "reset" by First Advantage's subsequent breaches of the non-solicitation provision that PEI already had notice of

---

[4] PEI's attempt to discount *Le Clercq* because it involved an appeal from a judgment is inconsequential. *See Oakland Raiders*, 144 Cal.App.4th at 1190-94 (implied waiver, especially where it is based on conduct manifestly inconsistent with the intention to enforce a known right, may be determined as a matter of law).

[5] PEI does not argue that it sufficiently pled facts sufficient to invoke the doctrine of equitable estoppel. Thus, PEI has abandoned that theory as grounds to save its Sixth Cause of Action.

[6] Even the cases cited by PEI to support its equitable tolling argument recognize the threshold requirement that a plaintiff pursue a formal remedy within the original statutory period. *See Waterman Convalescent Hosp., Inc. v. State Dep't of Health*, 101 Cal.App.4th 1433, 1441 (2002); *Archdale v. Am. Intern. Specialty Lines Ins. Co.*, 154 Cal.App.4th 449, 477-78 (2007).

FIRST ADVANTAGE'S REPLY ISO ITS MTN TO DISMISS THE FIFTH, SIXTH, AND SEVENTH CAUSES OF ACTION OF PRIVATE EYE'S FIRST AMEND. COUNTERCLAIM; CASE NO.:  C 07-02424 SC

Buchanan Ingersoll & Rooney LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418

1   being an alleged false promise.  *See* Cal. Civ. Proc. Code § 338(d); *see also Norgart v. Upjohn Co.,*

2   21 Cal.4th 383, 396 (1999); *Kline v. Turner,* 87 Cal.App.4th 1369, 1373-74 (2001).

> **E.**    **The Remaining Allegations Based On First Advantage's Alleged False Promises Not To Disclose Confidential Information Fails To Amount To A Claim For Promissory Fraud.**

5   PEI's new allegations of promissory fraud based on three promises by First Advantage not to

6   disclose confidential information suffer from the same shortcomings discussed above.  Nothing in

7   PEI's Opposition changes the inevitable result of them being time-barred and preempted.

8   PEI first argues that its fraud claim based on the 2002 and 2003 promises is not barred by

9   the statute of limitations because PEI never alleged that it discovered the falsity of those promises

10  prior to June 2005.  Opp. at 16:1-20.  This is simply not true.  PEI <u>admitted</u> that no later than April

11  27, 2004, it knew (or should have known) First Advantage had used and disclosed its confidential

12  information when it solicited the MVRs from CCE, and that First Advantage's promise to not solicit

13  was allegedly false.  *See* FACC at ¶¶ 14-16, 56, 63; Ratinoff Decl., Exh. D at 2:12-21.  PEI cannot

14  therefore contend that it lacked knowledge of these written false promises or had insufficient notice

15  and information of circumstances to put it on inquiry.  *See Kline,* 87 Cal.App.4th at 1373-74;

16  *accord Garamendi v. SDI Vendome S.A.,* 276 F.Supp.2d 1030, 1040 (C.D.Cal. 2003).

17  PEI then argues that all three of the alleged false promises not to disclose confidential

18  information are not preempted by the CUTSA because the promises were not limited to protectable

19  trade secrets.  Opp. at 16:21-17:3.  However, because the allegations in the Amended Counterclaim

20  make clear that PEI's promissory fraud claim shares a common nucleus of facts with the alleged

21  trade secret misappropriation underpinning PEI's interference claim, the only non-contract claim it

22  can assert for the damages resulting from the disclosure of its confidential information is under the

23  CUTSA.  *See Convolve,* 2006 WL 839022, *6-8; *Digital Envoy,* 370 F.Supp.2d at 1034-35.  The

24  fact that the confidential information at issue may not amount to a protectable trade secret is not

25  determinative preemption since the alleged tortious conduct could support a CUTSA cause of

26  action.  *See id.*  As a result of PEI's fraud claim being preempted, it is also subject to the same

27  statute of limitations analysis under the CUTSA detailed above and is therefore time-barred.

28  In addition, PEI asserts that it has sufficiently plead a promissory fraud claim based on

Buchanan Ingersoll & Rooney LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores,  CA 94065-1418

FIRST ADVANTAGE'S REPLY ISO ITS MTN TO DISMISS THE FIFTH, SIXTH, AND SEVENTH CAUSES OF ACTION OF PRIVATE EYE'S FIRST AMEND. COUNTERCLAIM; CASE NO.:  C 07-02424 SC

Buchanan Ingersoll & Rooney LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418

1   Hayley Hitchcock's June 2005 representation that First Advantage would not further disclose any

2   confidential pricing information to CCE.  Under the facts alleged, however, it cannot be said that

3   this was a material promise critical to the parties' continued relationship or that PEI justifiably relied

4   upon it.  PEI's alleged prior knowledge of multiple unauthorized disclosures and the two prior

5   allegedly false promises amount to reliance that is "manifestly unreasonable."   Under the facts

6   alleged, no reasonable juror could find a sophisticated investigative firm such as PEI to be blindly

7   trusting of First Advantage after its alleged indiscretions and justifiably rely on this promise as a

8   basis for continuing to do business with First Advantage.  *See, e.g., Atari Corp. v. Ernst & Whinney*,

9   981 F.2d 1025, 1030-31 (9th Cir. 1992); *General Am. Life Ins. Co. v. Castonguay*, 984 F.2d 1518,

10  1520-21 (9th Cir. 1993); *Pacific MDF Prod., Inc. v. Bio-Mass Energy Concepts, LLC*, 2006 WL

11  3359211 at *7-8 (E.D.Cal. Nov. 20, 2006); *Philipson & Simon v. Gulsvig*, 154 Cal.App.4th 347,

12  363-64 (2007).  Contrary to PEI's position, whether First Advantage should be allowed to benefit

13  from its prior false promises is irrelevant in determining whether PEI justifiably relied upon the

14  2005 promise.  *See id.*  Accordingly, PEI cannot as a matter of law establish justifiable reliance.

15      Lastly, PEI's insistence that alleging that disclosures of confidential information occurred

16  from 2004 and until 2006 somehow establishes that PEI suffered damages proximately caused by its

17  reliance on the false promise is without merit.  PEI must establish a <u>direct</u> causal connection

18  between its purported reliance on the 2005 promise and pricing concessions, which are the only

19  resulting damages alleged.  *See Zito v. Steeplechase Films, Inc.*, 267 F.Supp.2d 1022, 1027-28

20  (N.D.Cal. 2003).  Absent from the Amended Counterclaim are any allegations that PEI made any

21  such concessions *after* June 2005.  FACC at ¶¶ 20, 56, 64.  Thus, under the facts alleged PEI fails to

22  establish damages proximately caused by the alleged 2005 false promise.

23              **F.    PEI's Opposition Further Demonstrates That Its Seventh Cause Of**
                        **Action Is Unsustainable Under Any Given Set Of Facts.**
24

25      It is clear that PEI's Seventh Cause of Action has become an enigma, if not a violation of

26  Rule 11.  PEI originally alleged that in October 2006, Eric Hess, Steve Flack and Bart Valdez at

27  First Advantage made a <u>single</u> alleged false promise that billing for all services would be run

28  through PEI.  Counterclaim, ¶ 70.  The Court found the allegations supporting this claim to be

- 11 -

Buchanan Ingersoll & Rooney LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418

1   insufficient under Rule 9(b).  PEI amended this claim, alleging that in October 2006 First

2   Advantage made a <u>single</u> alleged false promise to run billings for all services provided to CCE

3   directly through PEI and "***that this representation was made by Julie Waters of First Advantage in***

4   ***an e-mail to Sandra James dated November 10, 2006***…."  FACC, ¶ 72 (emphasis added).

5         In response to First Advantage highlighting the inconsistencies between these allegations,

6   PEI now asserts that "Sandra Waters" (presumably it meant Julie Waters) made <u>multiple</u>

7   representations over the course of October <u>and</u> November 2006 to run all billings through PEI.

8   Opp. at 19:13-20:16.  In an attempt to explain why the November 10 email does not contain the

9   alleged false promise, PEI then claims that the email was one of "many" communications that make

10  up a <u>single</u> representation and it was afraid the email would be taken out of context.[7]  *Id.*  PEI's

11  latest "explanation" is not only internally inconsistent, but is also unsupported by the plain

12  allegations in the Amended Counterclaim that this email <u>contained</u> the alleged false promise, and

13  should therefore be disregarded by the Court.  *See Schneider v. Calif. Dept. of Corrections*, 151

14  F.3d 1194, 1197, n. 1 (9th Cir. 1998); *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir.1990); *Perretta*

15  *v. Prometheus Dev., Inc.*, 2006 WL 463533 at *5 (N.D.Cal. Feb 24, 2006).

16        The Court should also discredit PEI's attempt to escape the truth that the November 10 email

17  does not contain the alleged false promise.  Now that it is clear that Ms. Waters never made the

18  promise as alleged in the Amended Counterclaim, PEI regresses to relying on vague allegations

19  similar to those in its original claim dismissed by the Court and a convoluted explanation that there

20  were "discussions" both before and after the November 10 email that took place, which some how

21  amount to a series of false promises.  Opp. at 19:23-20:16.  If any such representations were made,

22  Rule 9(b) requires that PEI identify ***with particularity at the pleading stage*** the who, what, when,

23  where and circumstances of each promise.  *See Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir.

24  2007); *accord Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).  However,

25  neither PEI's Amended Counterclaim, nor its Opposition provides this critical information.

---

[7] In defense of excluding the email from the Amended Counterclaim, PEI argues that a jury must evaluate the representations within the context they are made. Opp. at 20:1-4. Since PEI has yet to sufficiently allege the particular facts concerning the alleged false promise, there is nothing for a trier of fact to decide.

FIRST ADVANTAGE'S REPLY ISO ITS MTN TO DISMISS THE FIFTH, SIXTH, AND SEVENTH CAUSES OF
ACTION OF PRIVATE EYE'S FIRST AMEND. COUNTERCLAIM; CASE NO.:  C 07-02424 SC

In further defense of its failure to allege such facts, PEI argues that Rule 9(b) is not meant to supplant the discovery process. Opp. at 11:20-14. PEI's reliance on *Neubronner v. Milken*, 6 F.3d 666 (9th Cir. 1993) to support this proposition is erroneous. This case merely recognized that a securities fraud plaintiff may need discovery to establish certain trading information to establish a claim for insider trading. *See id*. at 671. The present case does not involve insider trading and is not one where discovery could overcome the deficiencies in PEI's pleadings. PEI admittedly (and logically) had access to the missing information, such as who made the false promise, the substance of the promise, when it was made, and the manner in which it was communicated. Even the court in *Neubronner* recognized that in order to sufficiently plead a fraud claim, a plaintiff is required to specify such facts. *Id*. at 671-72. Based on PEI's pleadings and Opposition, it is now readily apparent that PEI cannot provide such critical information if given another opportunity. PEI cannot even make up its mind regarding who made the alleged false promise and whether there was one or multiple misrepresentations made over a constantly changing time period. As such, the Court should end PEI's fishing expedition for a fraud claim and dismiss it with prejudice.

In addition, the above-noted defects and inconsistencies demonstrate that PEI cannot maintain that it sufficiently alleged a material promise that it actually and justifiably relied upon. In that regard, PEI's mantra that it relied on this promise and paid First Advantage thereby forgoing the right to a set-off is belied by what was stated in the November 10 email and attached letter - that First Advantage would ***consider*** resuming services if PEI paid the outstanding invoices. It is also belied by what was <u>not</u> said in that communication. There is no mention of what billings would be run through PEI or an acknowledgement that the resumption of services would be different from the parties' prior arrangement. Thus, it is unclear how PEI could believe that it materially altered its position and suffered damages by allegedly giving up its purported right to a set-off.

Likewise, PEI's continued insistence that it suffered damages as a result of its reliance on a non-existent promise is without merit. Assuming *arguendo* that the alleged false promise was made and PEI justifiably relied upon it, under the facts alleged, PEI suffered no damages because it did not have an automatic right to withhold payments that it claimed it was induced to make as a "set-off." The right to a set-off is asserted as an affirmative defense and does not give a party the legal

Buchanan Ingersoll & Rooney LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418

FIRST ADVANTAGE'S REPLY ISO ITS MTN TO DISMISS THE FIFTH, SIXTH, AND SEVENTH CAUSES OF ACTION OF PRIVATE EYE'S FIRST AMEND. COUNTERCLAIM; CASE NO.:  C 07-02424 SC

1  right to unilaterally withhold payment of debt because it believed it was wronged.  Cal. Civ. Proc. §

2  431.70; *Fassberg Constr. Co. v. Housing Auth. of City of Los Angeles*, 152 Cal.App.4th 720, 60

3  Cal.Rptr.3d 375, 411-412 (2007).  Whether the doctrine applies and the amount of the set-off is

4  determined by a court in equity and is by no means automatic.  *See Crocker Nat. Bank v. Rockwell*

5  *Intern. Corp.* 555 F.Supp. 47, 50 (N.D. Cal. 1982) (under California law, right to set off is equitable

6  and not automatic).  Since PEI never had the legal right to withhold money in the first place and it

7  has asserted set-off as its Third Affirmative Defense in response to First Advantage's claims (which

8  is all that PEI is entitled to do at this juncture), PEI cannot assert that it suffered damages as a <u>direct</u>

9  result of its reliance on the alleged false promise.

10      Finally, PEI's promissory fraud claim violates the rule that a defendant may not seek

11  affirmative relief against a plaintiff by way of a set-off against a demand for money.  *See Constr.*

12  *Protective Services, Inc. v. TIG Specialty Ins. Co.*, 29 Cal.4th 189, 197-98 (2002).  Here, PEI's fraud

13  claim does not seeking damages separate from an alleged set-off.  Rather, PEI seeks recovery of

14  monies that it claims to have a right to withhold from payment of a debt and nothing more.

15  Consequently, PEI cannot use this affirmative claim to obtain a set-off.

16      **G.**    **The November 10 Email And PEI's Allegations Demonstrate That Its Seventh**

17          **Cause Of Action Is Barred By The Litigation Privilege.**

18      PEI cannot deny that the November 10 email and the attached letter conclusively establish

19  that its fraud claim is barred by the litigation privilege under Cal. Civ. Code § 47(b).  To avoid this

20  absolute bar, PEI asserts that the litigation privilege is inapplicable because this communication

21  does not expressly threaten a lawsuit.  This narrow view is inconsistent with California law.  Courts

22  favor a broad application of the litigation privilege to further public policy, and even on a Rule

23  12(b)(6) motion, "any doubt as to whether the privilege applies is resolved in favor of applying it."

24  *Morales v. Coop. of Am. Physicians, Inc., Mut. Protection Trust*, 180 F.3d 1060, 1062, (9th Cir.

25  1999).  To fall under the privilege, a pre-litigation communication need only "be in furtherance of

26  the objects of the litigation."  *Silberg v. Anderson*, 50 Cal.3d 205, 213-214 (1990).  This

27  requirement is satisfied "by demand letters and like communications between litigants or their

28  attorneys which are directed towards settlement of a pending or anticipated lawsuit."  *Rothman v.*

Buchanan Ingersoll & Rooney LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418

- 14 -

FIRST ADVANTAGE'S REPLY ISO ITS MTN TO DISMISS THE FIFTH, SIXTH, AND SEVENTH CAUSES OF
ACTION OF PRIVATE EYE'S FIRST AMEND. COUNTERCLAIM; CASE NO.:  C 07-02424 SC

Buchanan Ingersoll & Rooney LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418

1   *Jackson*, 49 Cal.App.4th 1134, 1148 (1996); *accord Rubin v. Green*, 4 Cal.4th 1187, 1194 (1993);

2   *Lerette v. Dean Witter Org'n, Inc.*, 60 Cal.App.3d 573, 575, 577-78 (1976).

3       In the instant case, the four corners of the November 10 email and attached letter can lead

4   reasonable minds to only one conclusion - that the litigation privilege applies.  Their express

5   language and tone demonstrate that Ms. Waters sent them in furtherance of resolving an <u>actual</u> legal

6   dispute between the parties.  In that regard, sending an email and demand to informally resolve

7   PEI's breach of the parties' agreement, demanding payment as a cure, and informing PEI that First

8   Advantage would take steps to preserve its interests, is a classic example of a demand letter that

9   falls within the litigation privilege.[8]   Further, the fact that First Advantage filed the present suit to

10  recover monies due and owing shortly after sending the email and letter further demonstrates that

11  they were made in contemplation of imminent litigation.  Finally, taking PEI's own allegations as

12  true, they also demonstrate that the email and letter were sent during the course a legal dispute and

13  that even PEI was contemplating asserting claims for First Advantage's alleged violations of the

14  non-solicitation agreements.  *See* FACC, ¶¶ 75-76.

### III.    CONCLUSION.

16      For the foregoing reasons and those set forth in its moving papers, First Advantage

17  respectfully requests that the Court grant this Motion in its entirety and dismiss PEI's Fifth through

18  Seventh Causes of Action with prejudice.

19  Dated:  November 30, 2007                Respectfully submitted,

20                                          BUCHANAN INGERSOLL & ROONEY LLP

21                                          ___/s/ Jeffrey M. Ratinoff_____

22                                          By:  JEFFREY M. RATINOFF
                                                 Attorneys for Plaintiff
23                                               FIRST ADVANTAGE BACKGROUND
                                                 SERVICES CORP.

24

25  [8] PEI's reliance on *Edwards v. Centex Real Estate*, 53 Cal.App.4th 15 (1997) for the proposition that the lack
    of express reference to litigation precludes the applicable of the privilege is still misplaced.  *See Aronson v.*
26  *Kinsella*, 58 Cal.App.4th 254, 266-68 (1997) (noting that the *Edwards* court was faced with "an extreme
    situation" where the statements were very remote in time from the actual litigation); *Knoell v. Petrovich*, 76
27  Cal.App.4th 164, 170-71 (1999) (same).  In the present case, there is no issue of the remoteness between the
    communications and the filing of the lawsuit, or the direct causal relationship between them.

28

#1030316-v3

FIRST ADVANTAGE'S REPLY ISO ITS MTN TO DISMISS THE FIFTH, SIXTH, AND SEVENTH CAUSES OF
ACTION OF PRIVATE EYE'S FIRST AMEND. COUNTERCLAIM; CASE NO.:  C 07-02424 SC