1  JEFFREY M. RATINOFF (SBN 197241)
   Email: jeffrey.ratinoff@bipc.com
2  KARINEH KHACHATOURIAN (SBN 202634)
   Email: karineh.khachatourian@bipc.com
3  BUCHANAN INGERSOLL & ROONEY, LLP
   333 Twin Dolphin Drive, Suite 700
4  Redwood Shores, CA  94065-1418
   Telephone:  (650) 622-2300
5  Facsimile:   (650) 622-2499

6  Attorneys for Plaintiff and Counter-Defendant,
   FIRST ADVANTAGE BACKGROUND SERVICES CORP.
7

8  Mark R. Mittelman (SBN 96598)
   LAW OFFICES OF MARK R. MITTELMAN
9  A Professional Corporation
   190 North Wiget Lane, Suite 101
10 Walnut Creek, California 94598
   Telephone: (925) 256-0677
11 Facsimile: (925) 256-0679

12 Attorneys for Defendant and Counterclaimant,
   PRIVATE EYES, INC.,
13

14                    UNITED STATES DISTRICT COURT

15                 NORTHERN DISTRICT OF CALIFORNIA

16

17 | FIRST ADVANTAGE BACKGROUND SERVICES CORP., a Florida corporation, | Case No.: C 07-02424 SC |
18 | Plaintiff, | **SECOND AMENDED JOINT CASE MANAGEMENT STATEMENT** |
19 | vs. | |
20 | PRIVATE EYES, INC., a California corporation, DOES 1-10 | Judge:  Honorable Samuel Conti |
21 | | Dept.:  Courtroom 1 |
22 | Defendants. | Conference Date:  January 25, 2008 |
23 | | Complaint Filed:  May 4, 2007 |
24 | AND RELATED COUNTERCLAIM. | |

25        Pursuant to Civil L.R. 16-9 and the August 16, 2007 Clerk's Notice, Plaintiff FIRST

26 ADVANTAGE BACKGROUND SERVICES CORP. ("First Advantage") and Defendant

27 PRIVATE EYES, INC. ("PEI") jointly submit this Amended Case Management Statement.  Unless

28 otherwise noted, the matters set forth herein were discussed and agreed upon by the parties during

                                  - 1 -

1  their Rule 26(f) conference.  Where one party sets forth a separate statement concerning one of the

2  required topics or indicates a disagreement with the other party's position, the signing of this

3  statement does not constitute a concession or agreement with such a statement or can be construed

4  as an admission.

5      **1.**          **Jurisdiction and Service**

6      The parties agree that the Court has subject matter jurisdiction over First Advantage's claims

7  and PEI's counterclaims under 28 U.S.C. § 1332, in that it is a civil action between citizens of

8  different states and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest

9  and costs.  No issues currently exist with respect to personal jurisdiction and venue.  Both parties

10  believe that venue in the Northern District of California is proper.  All named parties have appeared

11  and have been served with the Complaint and Counterclaim.

12      **2.**          **Facts**

13      *First Advantage's Statement:*

14      In or about 2002, Coca-Cola Enterprises Inc. ("CCE") contracted with PEI for background

15  screens and drug screening and testing for CCE's employees.  PEI did not have the capability to

16  provide drug screening and testing services to CCE as required.  As a result, PEI approached

17  Employment Information Services, Inc. ("EIS"), the predecessor-in-interest to First Advantage, to

18  provide drug screening and testing services directly to CCE.  In or about March 2002, PEI and EIS

19  negotiated a contract where EIS would provide drug screening and testing services directly to CCE.

20  This agreement was memorialized in a letter agreement, dated March 19, 2002 and executed by PEI

21  on or about March 29, 2002 ("the Agreement").

22      The parties agreed that since CCE's contract for services was with PEI, EIS would bill PEI

23  and PEI would, in turn, bill CCE for those services.  Further, because PEI indicated it would be

24  offering CCE a 3% "fast pay" discount for any invoices paid to PEI within fifteen days and, EIS

25  agreed to offer PEI a 3% "fast pay" discount for any invoice paid to EIS within twenty-two days.

26      After the parties executed the Agreement, EIS began providing CCE with the agreed-upon

27  testing and screening services and continued to perform such services under the terms of the

28  Agreement.  In turn, PEI began performing under the Agreement by allowing First Advantage to

1  perform those services and by paying for those services.

2      After First Advantage's acquisition of EIS in or about September 2003, where First

3  Advantage obtained EIS' rights and interest in the Agreement, First Advantage continued to provide

4  services to CCE as previously agreed by PEI and EIS under the Agreement.  In turn, PEI accepted

5  First Advantage as EIS' successor in interest by, among other things, allowing First Advantage to

6  continue to provide services to CCE and by paying for those services up to about June 2005 when

7  PEI began to repeatedly breach the Agreement.

8      Between January 2005 and June 2005, First Advantage learned that PEI had been secretly

9  disparaging First Advantage to CCE and solicited other sub-contractors to provide the services that

10  First Advantage had been providing to CCE.  Such solicitation was in direct violation of the

11  exclusivity provision in the Agreement.   First Advantage also learned that certain discounts that

12  First Advantage had been providing PEI, which were meant to be passed on by PEI to CCE, where

13  actually being wrongfully withheld by PEI.

14      Between June 2005 and through the present, PEI also repeatedly and materially breached the

15  Agreement by failing to pay in full for services rendered.  Beginning with the June 2005 invoice

16  and continuing through the June 2006 invoice, PEI unilaterally imposed the 3% "fast pay" discount

17  despite Private Eye's failure to pay any of those invoices within the agree-upon "fast-pay" period.

18  In some instances, the wrongfully applied "fast pay" discount exceeded 3% of the invoice amount.

19  PEI also wrongfully applied the "fast pay" discount to invoices sent by First Advantage where CCE

20  had paid the full amount of the corresponding invoice sent by PEI to CCE.  First Advantage

21  repeatedly demanded that PEI cease invoking the "fast pay" discount in an improper manner and to

22  reimburse First Advantage for the wrongfully withheld funds.  Between June 2005 and October

23  2006, PEI's payment of outstanding invoices also became more erratic and untimely.  By November

24  2006, PEI had failed to pay any amount towards the July 2006, August 2006, September 2006 and

25  October 2006 invoices.

26      In or about October and November 2006, First Advantage made several demands that PEI

27  immediately remit the amounts due and owing to First Advantage on the July 2006, August 2006,

28  and September 2006 invoices, as well as monies improperly withheld by PEI under the guise of the

1   "fast pay" discount.  Despite First Advantage's demands, PEI failed to pay the amounts due and

2   owing to First Advantage.

3        As a result of PEI's material breaches consisting of failures to timely pay and the wrongful

4   withholding of monies under the guise of the "fast pay" discount, in or about November 2006, First

5   Advantage was forced to terminate the Agreement and discontinue providing testing and screening

6   and other related services to CCE on PEI' behalf under the Agreement.

7        In or about November 2006, PEI acknowledged the amounts due and owing and indicated

8   that it would pay First Advantage these monies.  However, when PEI finally paid the July 2006,

9   August 2006, and September 2006 invoices, it again improperly applied the "fast pay" discount

10  despite these invoices being past due.  By the time that PEI paid these invoices, PEI had wrongfully

11  withheld at least $153,000 for the period of June 2005 through September 2006.  First Advantage

12  again demanded that PEI reimburse these monies due and owing to First Advantage.

13       On or about the end of October 2006, First Advantage issued its October 2006 invoice,

14  which totaled over $270,000.00, to Private Eyes.  First Advantage believes that PEI received

15  payment from CCE for at least the amount reflected in the October 2006 invoice for services

16  performed by First Advantage. Despite acknowledging and conceding that it now owed First

17  Advantage at least $439,891.62, PEI failed to pay the entire balance owed.

18       First Advantage made several attempts to informally resolve the matter.  In response, PEI

19  again acknowledged that it owed First Advantage at least $439,891.62, but now claimed that it was

20  entitled to an off-set for commissions allegedly owed for First Advantage providing motor vehicle

21  records services ("MVRs") to CCE.  When First Advantage requested that PEI provide

22  documentation and information supporting this claim, PEI was either unable or unwilling to provide

23  the information.   Consequently, First Advantage filed the present suit for breach of contract and

24  related claims.

25       It was only after First Advantage filed suit that PEI provided some information supporting

26  its belief that it was entitled to an off-set or credit.  This information, however, was insufficient to

27  support the alleged off-set.  As such, First Advantage denied that it owed the alleged off-set and

28  requested further information and documentation regarding the factual and legal basis for the

alleged off-set.  Instead of providing such information, PEI filed its Counterclaim against First Advantage, which included causes of action for: (1) Breach of Written Contract; (2) Breach of Oral Contract; (3) Unjust Enrichment; (4) Intentional Interference with Contractual Advantage; (5) Intentional Interference with Prospective Economic Advantage; (6) Fraud - False Promise I; (7) Fraud - False Promise II; (8) Fraud - Intentional Misrepresentation; (9) Unfair Trade Practices; (10) Account Stated; and (11) Open Book Account.

In response, First Advantage moved to dismiss the Fourth through Ninth Causes of Action. This Court denied the motion with respect to the Fourth Cause of Action.  However, the Court granted the motion to dismiss the Fifth, Sixth and Seventh Causes of Act without prejudice.  The Court also granted the motion to dismiss the Eighth and Ninth Causes of Action with prejudice.

After the Court's Order, PEI filed its First Amended Counterclaim wherein it attempted to re-allege its Fifth, Sixth and Seventh Causes of Action.  As discussed in First Advantage's pending motion to dismiss, the additional allegations in support of these counterclaims do not comply with the Court's prior rulings or simply fail to cure the defects identified by the Court.  In some instances, as discussed in First Advantage's pending motion to dismiss, they are barred by the applicable statute of limitations.  With respect to PEI's breach of contract claims, no enforceable agreement as alleged exists or no breach of such agreements occurred, and to the extent that any alleged breach occurred, it was excused by PEI's repeated breaches and misconduct.

***PEI's Statement:***

This case arises from a business dispute between PEI and First Advantage.  Both companies are in the business of providing employment background-check services.  In 2002, PEI entered into a verbal contract with CCE to provide certain background check services of applicants and employees.  These background check services included, but were not limited to, checks of MVRs. Although the verbal contract was not for any particular length of time, PEI reasonably believed that it would continue to receive assignments from CCE so long as it performed its work in a satisfactory manner.  The verbal contract permitted PEI to subcontract the services, as appropriate. Pursuant to this authority, in March 2002 PEI subcontracted certain employment background checks to First Advantage's predecessor in interest, EIS.  In two written contracts, one in March 2002 and

1   one in October 2003, First Advantage agreed that it would (1) not solicit any of the services directly

2   from CCE and (2) it would maintain the confidentiality of proprietary information it received from

3   PEI.

4         Despite the foregoing agreements, First Advantage directly solicited the services from CCE.

5   First Advantage also disclosed PEI's confidential pricing and other information to CCE.  Both of

6   these actions had a detrimental effect on PEI.  In April 2004, CCE directly assigned the MVRs to

7   First Advantage.  This meant that PEI was no longer receiving any profits on the MVR work.

8   When PEI learned that First Advantage had wrongfully solicited the MVR business from CCE, it

9   attempted to preserve the business relationship and work out a mutually-acceptable arrangement.

10  First Advantage agreed to pay $1.80 to PEI for each MVR it performed.  Because of that

11  arrangement, PEI did not completely terminate the business relationship and did not file a lawsuit.

12  While First Advantage did make some payments pursuant to the foregoing arrangement, it did not

13  fully account for all MVR's and ceased making payments by June 2005.

14        Sometime in 2005, PEI learned that First Advantage had disclosed confidential and

15  proprietary information to CCE, regarding its profit margin on applicant / employee physicals.  That

16  led to CCE pressuring PEI to reduce the amount it was charging for each physical.  Also, in 2005,

17  PEI learned that First Advantage had solicited from CCE the remaining services.

18        In September 2006, CCE terminated its verbal contract with PEI.  The final work was done

19  through January 2007.  PEI believes that CCE terminated the contract because (1) the work

20  performed by First Advantage towards the end of the contract was not satisfactory and (2) CCE was

21  wary of the friction that had been generated between PEI and First Advantage over the many

22  violations of the non-solicitation and non-disclosure agreements.

23        In October 2006, First Advantage agreed to allow all billings for services it was performing

24  for CCE to "run through" PEI.  First Advantage did that because it wanted to receive payments on

25  its past invoices.  PEI accepted the arrangement, even though it had the legal right to withhold

26  payment on the invoices because (1) the work had been done unsatisfactorily and (2) PEI had a

27  legal right to set-off the invoices due to the many violations of the non-solicitation and non-

28  disclosure agreements.

1    PEI contends that First Advantage always intended to solicit business from CCE and
2    intended to disclose confidential information to CCE.  Accordingly, PEI is asserting claims for
3    fraud as well as breach of contract.

4    The Court granted First Advantage's motion to dismiss the Fifth, Sixth, Seventh, Eighth, and
5    Ninth causes of action of the Counter-Claim.  It granted the first three without prejudice.
6    Accordingly, PEI filed an amended counter-claim setting forth additional facts to support its claims.
7    As noted above, First Advantage has filed a second motion to dismiss, which is set for hearing on
8    December 14, 2007.  PEI will be filing its opposition to that motion by November 21, 2007.  The
9    opposition will be based on grounds that each of the three causes of action states a claim for relief
10   with sufficient particularity.  If the Court grants any part of the motion, PEI will be seeking further
11   leave to amend.

12   PEI contends that the following factual issues are subject to dispute:

13   1.    Whether First Advantage wrongfully solicited business from CCE?  If so, what are
14   the damages?

15   2.    Whether First Advantage wrongfully disclosed confidential information to CCE?  If
16   so, what are the damages?

17   3.    Whether First Advantage intended to violate the non-solicitation and non-disclosure
18   agreements when it entered into them?  If so, what are the damages?

19   4.    Whether First Advantage is owed any money for its work for PEI?  If so, what
20   amount is owed?

21   5.    Whether PEI has a right to set-off any amounts it may owe to First Advantage?  If
22   so, how much may be set-off?

23   **3.    <u>Legal Issues</u>**

24   ***First Advantage's Statement***

25   Due to the fact that discovery has yet to commence, First Advantage cannot identify every
26   possible legal issue that may arise during this litigation.  However, First Advantage has identified
27   several legal issues in both its prior motion to dismiss and pending motion to dismiss PEI's
28   counterclaims as follows:

1    (1)    PEI's Fourth and Fifth Causes of Action for intentional interference are barred by the

2 applicable two-year statute of limitations proscribed in Cal. Civ. Proc. Code § 339(1) because it had

3 actual notice of the alleged acts of interference over three years prior to filing its Counterclaims.

4    (2)    PEI's Fifth Cause of Action fails to adequately state a claim for intentional

5 interference with prospective economic relations because PEI fails to allege an intentional act that is

6 "independently wrongful," i.e., "wrongful by some measure beyond the fact of the interference

7 itself." *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal.4th 376, 392-393 (1995).

8    (3)    PEI's Fifth and Sixth Causes of Action are preempted by California's enactment of

9 the Uniform Trade Secret Act.

10    (4)    PEI's Sixth Cause of Action for fraud is barred by the applicable statute of

11 limitations.

12    (5)    PEI's Sixth and Seventh Causes of Action fail to adequately state a claim for fraud

13 under the heightened pleading standards prescribed by Rule 9(b).  First Advantage contends that

14 under Ninth Circuit precedent, PEI's fraud claims are insufficiently plead.  *See Semegen v. Weidner*,

15 780 F.2d 727, 731 (9th Cir. 1985); *accord Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th

16 Cir. 2003).  The allegations supporting such claims are not specific enough to give First Advantage

17 notice of the particular misconduct which is alleged to constitute the fraud as they fail to set forth

18 the who, what, when, where, and how of the misconduct charged.  *See Swartz v. KPMG LLP*, 476

19 F.3d 756, 764 (9th Cir. 2007); *Vess*, 317 F.3d at 1106.

20    (6)    PEI's Sixth and Seventh Causes of Action do not establish a claim for fraud under

21 California law because they fail to set forth facts sufficient to establish the essential elements of

22 materiality, actual and justifiable reliance, and that the alleged fraud resulted in the alleged harm.

23 *See Lazar v. Superior Court*, 12 Cal.4th 631, 638 (1996); *Wilhelm v. Pray, Price, Williams &*

24 *Russel*, 186 Cal.App.3d 1324, 1331 (1986); *see also City Solutions, Inc. v. Clear Channel*

25 *Commc'ns*, 365 F.3d 835, 839 (9th Cir. 2004); *Dozier v. Maispace*, 2007 WL 518622 *4 (N.D.Cal.

26 Feb. 13, 2007).

27    (7)    PEI's Seventh Cause of Action fails to adequately state a claim because it is barred

28 by California's Litigation Privilege.

1        With respect to PEI's remaining counterclaims, First Advantage believes that there will be

2   legal issues concerning First Advantage's alleged breach of the Agreement, including contract

3   interpretation of the anti-solicitation and confidentiality provisions.  First Advantage also believes

4   that the alleged verbal settlement agreement as alleged in the Second Cause of Action may be

5   unenforceable, may be barred by the statute of frauds set forth in Cal. Civ. Code § 1624, and any

6   claims based on the agreement are barred by the two-year statute of limitations set forth in Cal. Civ.

7   Proc. Code § 339(1).  To the extent that such these alleged breaches occurred, there may legal

8   issues concerning whether such breaches were excused by PEI's prior breaches and related conduct.

9        Finally, with respect to First Advantage's contract claims and common counts, First

10  Advantage believes that there will likely be no dispute concerning PEI's alleged breaches of the

11  Agreement.  However, a legal dispute may arise with respect to whether PEI's breaches were

12  excused by First Advantage's alleged breaches of that agreement.

13       ***PEI's Statement:***

14       PEI contends that is entitled to recover damages on the following grounds:

15       (1)    PEI will contend that First Advantage breached its agreement to not solicit business

16  from CCE and to not disclose confidential information to CCE.  The claims will be based on

17  common law breach of written contract and violation of the Uniform Trade Secrets Act (California

18  Civil Code §3426 et seq.).  First Advantage is expected to dispute that its solicitation and disclosure

19  violated the written contract and the UTSA.

20       (2)    PEI will contend that First Advantage breached its verbal agreement to compensate

21  PEI at the rate of $1.80 per MVR.  First Advantage is expected to assert that this verbal agreement

22  is unenforceable.

23       (3)    PEI will contend that First Advantage is liable for intentionally interfering with its

24  contractual relationship and prospective economic advantage with CCE.  First Advantage is

25  expected to contend that it cannot be held liable for such interference, since it was a subcontractor

26  that did services for CCE.  PEI is alleging that there are three predicates for the "independent

27  wrongful act" requirement: (1) misappropriation of a trade secret, (2) breach of the common law

28  duty of confidence, and (3) trade libel / disparagement.  First Advantage contends that these

1  predicates are either inadequately pled or invalid as a matter of law.  PEI will be addressing those

2  contentions in its opposition to the motion to dismiss.

3      (4)    PEI will contend that First Advantage engaged in fraud in the following particulars:

4          a.    Falsely representing that it would not solicit business from CCE.

5          b.    Falsely representing that it would not disclose confidential information to

6  CCE.

7          c.    Falsely representing that it would run billings through PEI.

8      First Advantage is expected to assert that these common law fraud claims are barred by the

9  statute of limitations or lack facts to establish the essential elements of common law fraud.

10      (5)    PEI will also contend that First Advantage is liable for various miscellaneous claims,

11  including unjust enrichment and account stated.  These are claims that will ensure that PEI is

12  adequately compensated for the harm that has been done to it, even if traditional causes of action do

13  not provide sufficient relief.  First Advantage is expected to contend that it is not obligated to PEI

14  under any of these theories.

15      (6)    First Advantage will claim that it is entitled to recover a sum certain, based on

16  breach of contract, unjust enrichment, account stated, and other claims.  PEI contends that it does

17  not owe these sums to First Advantage.  PEI makes this contention since (a) First Advantage

18  materially breached the contract and (b) because PEI has a legal right to set-off the amounts it

19  allegedly owed to First Advantage.

20      **4.**    <u>**Motions**</u>

21      The only motion currently pending before the Court is First Advantage's motion to dismiss

22  PEI' Fifth through Seventh Causes of Action asserted in its Amended Counterclaim.  This motion

23  was set to be heard by this Court on December 14, 2007, but was taken under submission by the

24  Court without holding oral argument.  First Advantage also anticipates that it may have to file an

25  additional motion to dismiss if PEI is permitted to amend some or all of its counterclaims that are

26  subject to the pending motion to dismiss.

27      With respect to future motions, the parties anticipate that there will be a need for discovery

28  motions, such as motions to compel and motions for protective orders.  First Advantage also

1   anticipates that it will file a summary judgment motion supporting its contract claims and common

2   counts as PEI's breach of the Agreement and the amounts owed are not subject to dispute.  Further,

3   First Advantage anticipates that it will file several summary judgment motions with respect PEI's

4   counterclaims.  Depending on the outcome of its motion to dismiss, these motions may include full

5   or partial summary adjudication of PEI's breach of contract, fraud and interference with contract and

6   prospective economic advantage, and account stated counterclaims.

7        **5.**     **<u>Amendment of Pleadings</u>**

8        ***First Advantage's Statement:***

9        First Advantage believes that after conducting discovery, it may amend its Complaint to

10  include additional claims for breach of contract and for fraud.  Further, depending on how the Court

11  rules on First Advantage's pending motion to dismiss, PEI may have to amend its Counterclaim by

12  removing some or all of the above-counterclaims at issue in the motion and/or include additional

13  detailed factual allegations to support those counterclaims.  First Advantage further contends that

14  PEI cannot assert a claim under the CUTSA because it would be barred by the applicable statute of

15  limitations since PEI first learned of the alleged misappropriation of its trade secrets over three

16  years prior to filing its Counterclaim.

17       ***PEI's Statement***

18       If necessary, PEI intends to seek leave to amend to supply the necessary facts to support its

19  existing causes of action.  PEI also intends to seek leave to amend to add a claim for violation of the

20  Uniform Trade Secrets Act, if the Court accepts First Advantage's position that the CUTSA

21  preempts its claims for intentional interference with prospective economic advantage and common

22  law fraud.  This will be done at the hearing on First Advantage's FRCP 12(b)(6) motion to dismiss

23  on December 14, 2007.

24       **6.**     **<u>Evidence Preservation</u>**

25       First Advantage asserts that it has taken reasonable steps to preserve potentially relevant

26  evidence, including hard copy and electronic documents, and has ceasing any applicable document

27  retention policies that may result in the destruction or erasure of such evidence.

28       PEI asserts that it has taken reasonable steps to preserve potentially relevant evidence,

1   including hard copy and electronic documents, and has ceasing any applicable document retention

2   policies that may result in the destruction or erasure of such evidence.

3       **7.      Disclosures**

4       Per the Court's initial Case Management Order, the parties exchanged initial disclosures on

5   or about August 10, 2007.

6       **8.      Discovery**

7           **a.      Discovery Taken To Date.**

8       To date, no discovery has been taken by either First Advantage or PEI.

9           **b.      Scope Of Anticipated Discovery.**

10      The lists of topics provided below are in no way meant to be limiting.  First Advantage and

11  PEI retain the right to pursue discovery on any topic to which it is entitled to discovery under the

12  Federal Rules of Civil Procedure, the Local Rules for the Northern District of California, and the

13  Discovery Orders entered by this Court.

14      *First Advantage's Statement:*

15      First Advantage intends to propound written discovery and take the depositions of CCE and

16  PEI, as well as percipient party and non-party witnesses, relating to the following categories: (1)

17  PEI's business relationship and agreements with CCE to provide background check and related

18  services to CCE; (2) PEI's inability/ability to provide background check and related services to

19  CCE; (3) PEI's billings and submission of invoices to CCE; (4) PEI's processing of billing

20  statements and invoices submitted by First Advantage to PEI; (5) Meetings and communications

21  between PEI and CCE regarding background check and related services, and First Advantage; (6)

22  PEI's business relationship and agreement with EIS and First Advantage; and (7) PEI's

23  communications with EIS and First Advantage.

24      First Advantage also intends to take discovery concerning all facts, documents, and evidence

25  that support PEI's affirmative defenses and the counterclaims that survive First Advantage's motion

26  to dismiss.  First Advantage also intends to take discovery on all facts, documents, and evidence

27  that support PEI's damages claims.

28  */ / /*

SECOND AMENDED JOINT CASE MANAGEMENT STATEMENT; CASE NO. C 07-02424 SC

*PEI's Statement*:

PEI's discovery plan will include interrogatories, request for the production of documents, records subpoenas, and depositions. The information that PEI will seek during discovery is as follows:

(1)    Confirmation from CCE that First Advantage solicited business from it, including but not limited to the MVR's.

(2)    Confirmation from CCE that it learned confidential information from First Advantage about PEI, including the profit margin for the physicals, and then pressured PEI to reduce that margin.

(3)    Confirmation from CCE that it ceased assigning work to PEI because it was dissatisfied with First Advantage's work and because of the friction that was generated between PEI and First Advantage.

(4)    Discovery of all of the business dealings between CCE and First Advantage.

(5)    Discovery of the internal communications at First Advantage concerning its dealings with PEI and CCE. This discovery will be designed to elicit information concerning knowledge and intent at different courses of the transactions.

(6)    Confirmation from CCE that it took a 3% "fast pay" discount on all charges to a certain date, even though it did not make the payments within the proper time limits to do so.

(7)    Determination of the precise amounts that First Advantage contends that it is owed, including tracing those amounts to the work that was performed.

### c.    Limitations Or Modifications of The Discovery Rules.

Unless otherwise noted below, the parties agree that discovery will not be conducted in phases or be limited to or focused upon any particular issues. The parties further agree that discovery will be conducted as provided by the Federal Rules of Civil Procedure and do not believe that any limitations or modifications of the Discovery Rules are necessary at this time other than the minor departures discussed below.

*First Advantage's Position:*

In light of the allegations asserted in PEI's Counterclaim, First Advantage believes that the

1  departure from the 7 hour per deposition rule is necessary with respect to the deposition PEI's

2  president, Sandra James.  First Advantage estimates that it will need at least sixteen (16) hours to

3  conduct the deposition of Ms. James.  First Advantage further believes that during the 180 day time

4  period that the parties have to conduct mediation, the parties should consider limiting discovery to

5  document requests and interrogatories.  First Advantage does not believe that taking depositions

6  prior to mediation is necessary because it will not have an impact on mediation.

7       ***PEI's Position:***

8       PEI believes that during the 180 day time period to conduct mediation, the parties may agree

9  to limited discovery as follows: (1) one deposition each and (2) 10-15 special interrogatories.

10  Additional discovery may be appropriate, as agreed by the parties.  If the case does not settle at

11  mediation, then more extensive discovery will take place.  Such discovery will include

12  interrogatories, subpoenas to CCE, and depositions of personnel from First Advantage and CCE.

13           **d.      Electrically Stored Information.**

14       The parties anticipate that some relevant documents will include electronically stored

15  information, such as emails.  The parties however, have not yet reached an agreement on how such

16  information will be produced.

17       First Advantage believes that electronic information and documents should also be produced

18  on electronic media, and where possible in their native format.  Where it is not possible to produce

19  electronic documents in their native format, they should be produced as .TIFF files (or similar

20  formats) that are OCR searchable.

21       PEI has taken the position that where document requests call for the production of such

22  electronic documents, that the parties should produce such information in hard copy form.  In that

23  regard, PEI has taken the position that it will provide electronic copies of emails and other

24  electronic documents where First Advantage claims that the production of hard copy documents is

25  insufficient.

26           **e.      Other Orders That Should Be Entered Under Rule 26(c).**

27       Due to the sensitive nature of some of the materials subject to discovery, which may include

28  personal and private information of third parties, First Advantage and PEI believe that is necessary

1   for the parties to enter into a stipulated protective order governing confidentiality to ensure that the

2   disclosure of such materials is limited and will preserve their right to privacy.  Further, during the

3   course of discovery, the parties anticipate filing documents and things under seal, particularly those

4   items relating to financial information, trade secret information, and other business confidential

5   information.  The parties are in the process of negotiating a Stipulated Protective Order that will

6   govern the disclosure of materials and information in this case and will govern the confidentiality of

7   such materials and information.

8           **f.      Proposed Discovery Plan.**

9           *See* proposed case management schedule below.

10      **9.      Class Actions**

11          This case is not a class action suit.

12      **10.      Related Cases**

13          There are no related cases pending before this (or any other) Court.

14      **11.      Relief**

15          *Plaintiff's Statement:*

16          First Advantage estimates that its damages incurred in this action total over $430,000.00,

17  plus interest and attorney's fees.  Because the action is in its infancy, the total interest accrued and

18  the attorney's fees incurred are not known at this time.  There may be further damages resulting

19  from PEI's wrongful disclosure of First Advantage confidential information and PEI's

20  disparagement of First Advantage that First Advantage cannot calculate at this time because the

21  scope and extent of these disclosures is unknown at this time, which may be revealed after First

22  Advantage takes discovery.

23          *Defendant's Statement:*

24          PEI seeks the following damages:

25          (1)      Lost income from the MVRs that First Advantage improperly solicited from CCE.

26          (2)      Lost income from the "discounts" that PEI was compelled to provide to CCE,

27  because First Advantage disclosed PEI's confidential information (profit margins).

28          (3)      Lost income from the other services that First Advantage solicited from CCE.

PEI estimates that these three items exceed $1 million.

(4)    Recoupment of all amounts that PEI paid to First Advantage that it could have legally withheld.  This item is estimated to exceed $500,000.

(5)    Future loss of income, based on loss of the CCE account.  This item is estimated to range from $1.5 million to $3.5 million.

(6)    Disgorgement of First Advantage's profits from its solicitation of business services from CCE.  The amount of this claim is presently unknown.

(7)    Prejudgment interest.

(8)    Costs.

(9)    Attorneys' fees.

**12.    Settlement and ADR**

Per the Court's July 30, 2007 order, the parties were to complete mediation within 180 days from the date of that order.  On January 9, 2007 the parties participated in a mediation session at JAMS with the Hon. Eugene Lynch (Ret.).  However, the parties were not able to resolve their dispute during that session.  Additional mediation sessions may be appropriate after the Court hears and rules on First Advantage's pending motion to dismiss, after some discovery is taken, as well as after any motions for summary judgment filed by the parties.

**13.    Consent to Magistrate Judge For All Purposes**

The parties do not agree to consent to a Magistrate Judge for all purposes.  However, the parties are agreeable to the assignment of a Magistrate Judge for the limited purpose of hearing discovery disputes.

**14.    Other References**

The parties agree that this case is not suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.  As discussed above, the parties agree that non-binding mediation is the most appropriate form of ADR.

**15.    Narrowing of Issues**

Where appropriate, the parties agree to narrow factual issues by stipulation and/or through requests for admission.  In addition, the parties will streamline the presentation of evidence at trial

1  by stipulating to the authenticity of certain documents and exhibits.

2  **16.    Expedited Schedule**

3       At this time, the parties do not believe that this case may be handled on an expedited basis

4  with streamline procedures.

5  **17.    Scheduling**

6       The parties agree to and recommend that the Court adopt the following Case Management

7  Schedule:

8       Fact Discovery Cut-Off:                    January 30, 2009

9       Expert Witness Disclosures:                February 27, 2009

10      Rebuttal Expert Reports                    March 16, 2009

11      Expert Deposition Deadline                 April 16, 2009

12      Dispositive Motions (hearing deadline):    June 19, 2009

13      Pre-Trial Conference                       July 2009

14      Trial                                      August 2009

15      However, if there are any outstanding pleadings issues after the resolution of First

16  Advantage's pending motion to dismiss, i.e. the motion is denied or PEI is granted further leave to

17  amend, the parties acknowledge that these deadlines may need to be extended for a reasonable

18  period of time to allow for the necessary discovery to take place.  Such an extension will be the

19  subject of a future joint case management statement, or a stipulation and corresponding court order.

20  **18.    Trial**

21      This case will be tried by a jury to the extent a jury may decide issues associated with the

22  case.  All other issues will be decided by the Court.  The parties estimate that the trial will take

23  approximately seven (7) days if the Court grants First Advantage's motion to dismiss PEI's First

24  Amended Counterclaim without leave to amend and approximately fifteen (15) trial days if some or

25  all of the counterclaims subject to the motion to dismiss survive.

26  **19.    Disclosure of Non-party Interested Entities or Persons**

27      Both First Advantage and PEI have filed their respective "Certification of Interested Entities

28  or Persons" as required by Civil L.R. 3-16.  The parties re-state their certifications as follows:

1    ***First Advantage's Statement:***

2        Pursuant to Civil Local Rule 3-16, the undersigned counsel of record for Plaintiff First

3    Advantage Background Services Corp. certifies that the following listed persons and entities (i)

4    have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii)

5    have a non-financial interest in that subject matter or in a party that could be substantially affected

6    by the outcome of the proceeding:

| Person/Entity | Relationship/Interest |
|---|---|
| First Advantage Corporation | Financial interest in Plaintiff as its parent corporation. |

11    This certification is made to enable the Court to evaluate possible disqualification or recusal.

12    ***PEI's Statement:***

13        Pursuant to Northern District of California Civil Local Rule 3-16, the undersigned counsel

14    of record for Defendant / Counter-Claimant / Cross-Complainant PRIVATE EYES, INC. certifies

15    that the following listed persons and entities (i) have a financial interest in the subject matter of the

16    controversy or in a party to the proceeding, or (ii) have a non-financial interest in the subject matter

17    or in a party that could be substantially affected by the outcome of the proceeding:

| Person / Entity | Relationship/Interest |
|---|---|
| Private Eyes, Inc. | The proper party in interest for Defendant / Counter-Claimant / Cross-Complainant |
| Sandra James | Sole shareholder of Private Eyes, Inc. |

23    This certification is made to enable to Court to evaluate possible disqualification or recusal.

24    / / /

25    / / /

26    / / /

27    / / /

28    / / /

SECOND AMENDED JOINT CASE MANAGEMENT STATEMENT; CASE NO. C 07-02424 SC

1

**20.     <u>Other Matters</u>**

2

There are no other matters that the parties need to bring to the Court's attention with respect to

3

facilitating the just, speedy and inexpensive disposition of this matter.

4

5

Dated:  January  17, 2008                    BUCHANAN INGERSOLL & ROONEY LLP

6

/s/ Jeffrey M. Ratinoff

7

By:   JEFFREY M. RATINOFF
        Attorneys for Plaintiff

8

        FIRST ADVANTAGE BACKGROUND
        SERVICES CORP.

9

10

11

Dated:  January  17, 2008                    LAW OFFICES OF MARK R. MITTELMAN

12

/s/ Paul A. Kanter

13

By:   MARK R. MITTELMAN

14

        PAUL A. KANTER
        Attorneys for Defendant

15

        PRIVATE EYES, INC.

16

17

18

19

20

21

22

23

24

25

26

27

28