**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

FIRST ADVANTAGE BACKGROUND SERVICES )    No. C-07-2424 SC
CORP., a Florida corporation,      )
                         )
         Plaintiff,      )
                         )    ORDER GRANTING IN
     v.                 )    PART AND DENYING IN
                         )    PART PLAINTIFF'S
PRIVATE EYES, INC., a California    )    MOTION TO DISMISS
corporation, DOES 1-10          )    DEFENDANT'S FIRST
                         )    <u>AMENDED COUNTERCLAIM</u>
         Defendants.     )
_____ )
                         )
AND RELATED COUNTER-CLAIMS      )
_____ )

**I.**    **<u>INTRODUCTION</u>**

     Now before the Court is a motion by Plaintiff and
Counterclaim-Defendant First Advantage Background Services ("First
Advantage") to dismiss the Fifth, Sixth, and Seventh causes of
action in Defendant-Counterclaimant Private Eyes, Inc.'s ("Private
Eyes" or "PEI") First Amended Counterclaim. Docket Nos. 32
("Motion"), 31 ("1st Am. CC"). Private Eyes opposed the Motion,
and First Advantage replied. Docket Nos. 41, 42. Having
considered the parties' submissions, the Court hereby GRANTS IN
PART and DENIES IN PART First Advantage's Motion for the reasons
set forth below.

**II.**    **<u>BACKGROUND</u>**

     The following summary addresses only those facts alleged in

1    support of Private Eyes' First Amended Counterclaim, without

2    consideration or discussion of the facts presented by First

3    Advantage in its Complaint.

4        Private Eyes performs background checks, including drug

5    tests, physical exams, and motor vehicle record checks ("MVRs")

6    for employers looking to hire and retain personnel. 1st Am. CC ¶

7    1. In 2002, Private Eyes entered into a verbal contract with

8    Coca-Cola Enterprises ("CCE") to perform background checks,

9    including MVR verification on new CCE applicants. Id. ¶ 8.

10   Private Eyes was authorized by the verbal contract to subcontract

11   services to third-party vendors. Id. On March 29, 2002, Private

12   Eyes entered into a written contract with Employee Information

13   Services ("EIS"), First Advantage's predecessor. Id. ¶ 10. After

14   assuming the contract, First Advantage confirmed in writing that

15   it would not use any confidential information it received from

16   Private Eyes to solicit business from CCE. Id. ¶ 13, Exs. A, B.

17   First Advantage further promised that it would not disclose any

18   confidential information it learned from Private Eyes to existing

19   or potential customers. Id. ¶ 13, Ex. B.

20       Despite this agreement, Private Eyes alleges that in 2004,

21   First Advantage solicited MVR business from CCE. Id. ¶ 14. After

22   learning of this solicitation, rather than terminating the

23   relationship, Private Eyes negotiated with First Advantage and the

24   parties reached a settlement agreement pursuant to which First

25   Advantage would pay Private Eyes $1.80 for every MVR check it

26   conducted for CCE. Id. ¶ 17.

27       In spring 2005, Private Eyes learned that First Advantage was

28                                    -2-

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1    soliciting additional business from CCE, and had been disclosing

2    Private Eyes confidential and proprietary information to CCE.  Id.

3    ¶¶ 19-20.  In September 2006, CCE decided to terminate its

4    relationship with Private Eyes, purportedly because it was unhappy

5    with the quality of work First Advantage had performed as Private

6    Eyes' subcontractor and because it was wary of the friction

7    between First Advantage and Private Eyes.  Id. ¶ 21.

8         First Advantage sued Private Eyes in June 2007 alleging a

9    number of claims related to the same general business agreement.

10   See Compl., Docket No. 1.  Private Eyes filed a Counterclaim,

11   asserting eleven causes of action.  See Docket No. 12

12   ("Counterclaim" or "CC").  First Advantage moved to dismiss

13   certain causes of action in the Counterclaim, and the Court

14   granted that motion in part, allowing Private Eyes leave to amend

15   some of the claims.  See Docket No. 30 ("1st CC Order").  Private

16   Eyes subsequently filed the First Amended Counterclaim, and First

17   Advantage brought the present motion to dismiss.

18

19   **III.  LEGAL STANDARD**

20        A Federal Rule of Civil Procedure 12(b)(6) motion to dismiss

21   tests the sufficiency of the complaint.  Dismissal pursuant to

22   Rule 12(b)(6) is appropriate if the plaintiff is unable to

23   articulate "enough facts to state a claim to relief that is

24   plausible on its face."  Bell Atlantic Corp. v. Twombly, 127 S.

25   Ct. 1955, 1974 (2007).  When evaluating a motion to dismiss, the

26   court accepts the facts as stated by the nonmoving party and draws

27   all reasonable inferences in its favor.  See Everest & Jennings,

28                                  -3-

United States District Court
For the Northern District of California

1   Inc. v. Am. Motorists Ins. Co., 23 F.3d 226, 228 (9th Cir. 1994).

3   **IV.   DISCUSSION**

4
5       **A.   Fifth Cause of Action: Intentional Interference With
              Prospective Economic Advantage**

6       Private Eyes' fifth cause of action is for intentional

7   interference with prospective economic advantage.  1st Am. CC ¶¶

8   48-55.  To prevail on this claim, a plaintiff must show the

9   following elements:

10          (1) an economic relationship between the
            plaintiff and some third party, with the
11          probability of future economic benefit to the
            plaintiff; (2) the defendant's knowledge of
12          the relationship; (3) intentional acts on the
            part of the defendant designed to disrupt the
13          relationship; (4) actual disruption of the
            relationship; and (5) economic harm to the
14          plaintiff proximately caused by the acts of
            the defendant.
15

16  Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1153

17  (2003) (internal citation and quotation marks omitted).  To

18  satisfy the third element of this test — the only element First

19  Advantage challenges here — "a plaintiff must plead and prove that

20  the defendant's acts are wrongful apart from the interference

21  itself."  Id. at 1154 (citing Della Penna v. Toyota Motor Sales,

22  U.S.A., Inc., 11 Cal. 4th 376, 393 (1995)).  An act "is

23  independently wrongful if it is unlawful, that is, if it is

24  proscribed by some constitutional, statutory, regulatory, common

25  law, or other determinable legal standard."  Id. at 1159.

26      The Court dismissed this cause of action on the previous

27  motion, noting that Private Eyes had failed to "allege an

28                                  -4-

**United States District Court**
For the Northern District of California

1  independently wrongful act outside a simple breach of contract."

2  1st CC Order at 5.   Private Eyes amended its counterclaim and

3  alleged three specific wrongful acts as predicates to this claim.

4  See 1st Am. CC ¶ 52.   First Advantage argues none of these

5  allegations is sufficient.   The Court addresses each in turn.

6              1.   Misappropriation of Trade Secrets

7       Private Eyes alleges that First Advantage improperly

8  disclosed Private Eyes' confidential information, including

9  Private Eyes' profit margins, in violation of the California

10 Uniform Trade Secrets Act, California Civil Code section 3426, et

11 seq. ("CUTSA").   See 1st Am. CC ¶ 52(a).   First Advantage argues

12 that this allegation is deficient in three ways: first, Private

13 Eyes fails to adequately plead the existence of a trade secret;

14 second, CUTSA preempts Private Eyes' interference claim; and

15 third, the statute of limitations for a trade secret

16 misappropriation claim has already run.[1]   See Mot. at 5-6.

17 _____

18    [1]First Advantage addresses the statute of limitations in a
footnote.  See Mot. at 6 n.5.  Private Eyes calls the Court's
19 attention to this issue by mentioning in **bold text** that First
Advantage made the argument in a footnote, only to place
20 substantive argument of its own in a footnote on the same page.
See Opp'n at 7 & n.2.  Neither footnote is appropriate.  A footnote
21 is the wrong place for substantive arguments on the merits of a
motion, particularly where such arguments provide independent bases
22 for dismissing a claim not otherwise addressed in the motion.
    The Court can only assume that the parties placed the
23 arguments in question in footnotes because they lacked space in the
main text of their briefs.  The Court therefore reminds the parties
24 that they are bound to follow this District's Civil Local Rules.
Civil Local Rule 3-4(c)(2) governs the formatting of written text.
25 Under that rule, the text of a brief must be double-spaced and may
not be smaller than 12-point standard font.  The line-spacing
26 requirement has an exception for footnotes; the font-size
requirement does not.  The use of footnotes to circumvent these
27 rules is improper.  Both parties used the full 25 pages allotted in
their briefs, and if they had not squeezed their substantive

28                            -5-

**United States District Court**
For the Northern District of California

1    The Court addresses CUTSA preemption first, as it renders the

2    other two issues moot.  First Advantage argues that CUTSA preempts

3    any common law claim that is based on conduct which could support

4    a trade secret claim.  Mot. at 6.  Private Eyes responds that the

5    California Supreme Court, in <u>Reeves v. Hanlon</u>, 33 Cal. 4th 1140

6    (2004), suggested that misappropriation of trade secrets can form

7    the basis of intentional interference claim.  Opp'n at 6.  The

8    Court reads <u>Reeves</u> differently.  The defendants in <u>Reeves</u> were

9    found to have violated CUTSA for stealing a confidential client

10    list, and found to have committed intentional interference based

11    on wrongful acts including destruction of the plaintiffs' computer

12    files, misappropriation of confidential information, and improper

13    solicitation of plaintiffs' clients.  <u>Reeves</u>, 33 Cal. 4th at 1155.

14    Although the <u>Reeves</u> court acknowledged the misappropriation in its

15    discussion of interference, that decision does not foreclose

16    preemption here for a number of reasons.  First, nothing in <u>Reeves</u>

17    suggests that the defendant there raised the issue of preemption.

18    <u>See</u> <u>San Jose Constr., Inc. v. S.B.C.C., Inc.</u>, 155 Cal. App. 4th

19    1528, 1545 (Ct. App. 2007) (appellate court refused to rule on

20    CUTSA preemption of intentional interference claim where defendant

21    had not raised the issue below).  Second, the question in <u>Reeves</u>

22    was expressly limited to whether an employer could bring an

23    _____

24    arguments into single-spaced (and in Private Eyes' case, 10-point)
      footnotes, they would have run out of space.  It is counsel's
25    responsibility to prioritize arguments and edit briefs, not the
      Court's.  However, if the parties fail to abide by the Civil Local
26    Rules in future submissions, the Court will take on the editing
      task by striking any footnote containing substantive argument or
27    any footnote containing text smaller than 12-point standard font.

28

**United States District Court**
For the Northern District of California

1   intentional interference claim against a competitor that hired the

2   employer's former at-will employees.  See Reeves, 33 Cal. 4th at

3   1148.  Third, the wrongful acts beyond misappropriation were not

4   in dispute, so the preemption analysis would have had no impact on

5   the court's decision.  See id. at 1147, 1154-55; see also PostX

6   Corp. v. Secure Data In Motion, Inc., No. C 02-04483 SI, 2004 U.S.

7   Dist. LEXIS 24260, at *11-13 (N.D. Cal. Nov. 20, 2004)(finding no

8   preemption where unfair competition claim relied on facts not

9   related to trade secret misappropriation).

10       Other than Private Eyes' interpretation of Reeves, the

11  existing authority favors preemption.  The only other California

12  Supreme Court decision bearing on the issue suggests that

13  following the passage of CUTSA, common law claims based on

14  misappropriation of trade secrets are preempted.  See Cadence

15  Design Sys., Inc. v. Avant! Corp., 29 Cal. 4th 215, 224 (2002)

16  (plaintiffs are required to bring common law action for pre-CUTSA

17  misappropriation, and CUTSA action for subsequent

18  misappropriation).  California Civil Code section 3426.7(b)

19  identifies three categories of cases — those based on breach of

20  contract, criminal remedies, and anything not based on

21  misappropriation of trade secrets — that are not preempted by

22  CUTSA.  Courts have interpreted this to mean that all other claims

23  which are based on misappropriation of trade secrets are preempted

24  by CUTSA.  Digital Envoy, Inc. v. Google, Inc., 370 F. Supp. 2d

25  1025, 1033-35 (N.D. Cal. 2005); Callaway Golf Co. v. Dunlop

26  Slazenger Group Americas, Inc., 318 F. Supp. 2d 216, 219-20 (D.

27  Del. 2004) (applying California law); AccuImage Diagnostics Corp.

28

United States District Court
For the Northern District of California

1   <u>v. Terarecon, Inc.</u>, 260 F. Supp. 2d 941, 953-54 (N.D. Cal. 2003);

2   <u>Convolve, Inc. v. Compaq Computer Corp.</u>, 00 CV 5141 (GBD),

3   2006 U.S. Dist. LEXIS 13848, at *24-26 (S.D.N.Y. Mar. 29, 2006)

4   (applying California law).

5       Here, Private Eyes specifically alleged facts supporting a

6   CUTSA violation in the First Amended Counterclaim.  <u>See</u> 1st Am. CC

7   ¶ 52(a).  As such, this claim is a common law claim based on trade

8   secret misappropriation, and is therefore preempted by CUTSA.  The

9   Court need not consider the statute of limitations or the adequacy

10  of Private Eyes' pleading, as neither would affect the preemption

11  ruling, even if Private Eyes prevailed.

12          2.   <u>Breach of Confidence</u>

13      In further support of its intentional interference claim,

14  Private Eyes alleges that First Advantage engaged in wrongful

15  conduct by "[i]mproperly disclosing PEI's confidential and

16  proprietary information to CCE in violation of its agreement to

17  maintain the confidential nature of this information, a common law

18  breach of confidence."  1st Am. CC ¶ 52(b).  First Advantage

19  asserts two deficiencies with this claim: first, CUTSA preempts

20  this claim; second, the facts alleged give rise to a contract

21  claim, not a tort claim.  <u>See</u> Mot. at 7.  The Court agrees with

22  First Advantage.

23      The facts Private Eyes included in the First Amended

24  Counterclaim in support of its allegation of breach of confidence

25  are identical to those it offered in support of its

26  misappropriation claim.  <u>Compare</u> 1st Am. CC ¶ 52(a) ("Improperly

27  disclosing PEI's proprietary and confidential information to CCE

28                                  -8-

**United States District Court**
For the Northern District of California

in violation of [CUTSA]") <u>with</u> 1st Am. CC ¶ 52(b) ("Improperly

disclosing PEI's confidential and proprietary information to CCE

in violation of its agreement to maintain the confidential nature

of the information, a common law breach of confidence"). The only

difference alleged is the existence of a contract, which is

inadequate to avoid preemption. The intentional interference

claim based on these facts is still a common law claim based on

facts which would amount to the misappropriation of trade secrets,

and is thus preempted by CUTSA for the reasons outlined above.

<u>See</u> <u>supra</u> Section IV(A)(1).

 Even without CUTSA preemption, the claim would still fail.

The facts alleged in paragraph 52(b), supporting the breach of

confidence claim, are nearly identical to the facts alleged in the

first Counterclaim, which the Court previously found inadequate.

<u>Compare</u> 1st Am. CC ¶ 52(b) <u>with</u> CC ¶ 52 ("disclosing PEI's

confidential and proprietary information despite an agreement not

to do so"); <u>see</u> <u>also</u> 1st CC Order at 5. The central problem with

this claim remains that it alleges nothing beyond a simple breach

of contract, which is inadequate to support a claim for

intentional interference. <u>See</u> <u>JRS Prods., Inc. v. Matsushita</u>

<u>Elec. Corp. of Am.</u>, 115 Cal. App. 4th 168, 181-82 (Ct. App. 2004)

(party to a contract cannot recover on a claim for intentional

interference with prospective economic advantage based on conduct

that would otherwise amount to a breach of the parties' contract).

Private Eyes argues that a claim for breach of confidence is a

tort claim, and does not require a contract. Opp'n at 9. It is

irrelevant that in some other case, with different pleadings and

different facts, a claim for breach of confidence does not require a contract; here, Private Eyes has plead a contract, and has plead the breach of that contract as the basis for its interference claim.

### 3. Trade Libel

Private Eyes' final basis for satisfying the third element of its intentional interference claim is that First Advantage committed wrongful conduct by "[e]ngaging in common law trade libel, injurious falsehood, and/or disparagement by falsely stating to CCE that PEI was incompetent to perform the services for CCE and that First Advantage could do a superior job." 1st Am. CC ¶ 52(c). First Advantage argues that this claim falls short of the specificity required for pleading trade libel, that Private Eyes did not adequately plead special damages, and that the specific statements at issue are not actionable.

Private Eyes argues that trade libel is distinct from defamation, and that the former does not require the specific pleading that the latter does. Opp'n at 10. "Trade libel is more like unfair competition than true libel and is not actionable as defamation." Films of Distinction, Inc. v. Allegro Film Prods., Inc., 12 F. Supp. 2d 1068, 1081 (C.D. Cal. 1998). However, this difference does not diminish the pleading requirements in a trade libel claim. See, e.g., Eldorado Stone v. Renaissance Stone, Inc., No. 04-cv-2562 JM, 2005 U.S. Dist. LEXIS 45237, at *10-11 (S.D. Cal. Aug. 9, 2005) (dismissing trade libel claim where plaintiff failed to identify the author or speaker, recipient, time, and location of each allegedly libelous statement); Films of

-10-

United States District Court

For the Northern District of California

1  <u>Distinction</u>, 12 F. Supp. 2d at 1081 n.8 ("In the Ninth Circuit, a

2  product defamation or trade libel claim must be based on specific

3  statements, and the defamatory character of the language must be

4  apparent from the words themselves.")(citation and internal

5  quotation marks omitted).  Nothing in the First Amended

6  Counterclaim gives any indication of who from First Advantage made

7  the allegedly libelous statements, to whom they made those

8  statements, when they made the statements, or what exactly they

9  said.  Without this information, the claim is deficient.  This

10  alone is sufficient basis to grant the motion.

11      First Advantage also argues that Private Eyes did not

12  adequately plead special damages.  <u>See</u> Mot. at 8; <u>Isuzu Motors</u>

13  <u>Ltd. v. Consumers Union of United States, Inc.</u>, 12 F. Supp. 2d

14  1035, 1047 (C.D. Cal. 1998) ("under California law, 'a cause of

15  action for damages for trade libel requires pleading and proof of

16  special damages in the form of pecuniary loss.' <u>Leonardini [v.</u>

17  <u>Shell Oil Co.]</u>, 216 Cal. App. 3d [547,] 572 [Ct. App. 1990]").

18  Private Eyes merely alleges that the libelous statements "harmed

19  PEI's business relationship with CCE."  1st Am. CC ¶ 52(c).  It

20  does not allege the amount of business it had from CCE prior to

21  First Advantage allegedly making these statements, how much it had

22  after, or the value of the business.  Private Eyes alleges a total

23  loss of "$4-5 million" on the intentional interference claim as a

24  whole, including the two preempted acts, but never provides

25  specific damages for the claim based on trade libel.  This is the

26  same figure that Private Eyes alleges as total damages for all of

27  its claims.  <u>See</u> 1st Am. CC ¶ 22.  As such, it is impossible to

28                                    -11-

1  determine what, if any, damage to its relationship with CCE

2  Private Eyes claims to have suffered just as a result of the

3  libelous statements.

4       Finally, the parties dispute whether the allegedly libelous

5  statements are actionable as trade libel or are protected as

6  opinion under the First Amendment.  An assertion of incompetence

7  may be actionable.  See Kahn v. Bower, 232 Cal. App. 3d 1499, 1609

8  (Ct. App. 1991) ("Therefore the statements conveying an imputation

9  of incompetence appear actionable as against the objection that

10  they lack the requisite factual content.").  However, in order to

11  determine if the specific statements at issue here are actionable

12  or protected, the Court would need to consider the exact comments

13  in their full context.  See Opp'n at 10-11; Overstock.com v.

14  Gradient Analytics, Inc., 151 Cal. App. 4th 688, 701 (Ct. App.

15  2007).  By failing to provide the specific details of the alleged

16  trade libel, Private Eyes has also deprived the Court of the

17  details and context necessary to rule on this issue.  Private Eyes

18  suggests that the Court cannot reach this question at this stage

19  of the proceedings because the Court is limited to review of the

20  pleadings.  It is precisely for this reason, however, that Private

21  Eyes must include adequate detail in the pleadings.

22            4.   Ruling on Intentional Interference

23       To the extent Private Eyes' claim for intentional

24  interference with prospective economic advantage is based on

25  wrongful acts amounting to trade secret misappropriation, the

26  claim is preempted by CUTSA and is therefore dismissed with

27  prejudice.  The claim based on common law breach of confidence is

28

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1  dismissed with prejudice.  The claim based on trade libel is

2  dismissed without prejudice.  Private Eyes may amend its pleading

3  to address the deficiencies described above.  Private Eyes may

4  not, in amending its pleading, add new wrongful acts as possible

5  foundations for the intentional interference claim.  If Private

6  Eyes chooses to amend the claim, it shall be limited to the claim

7  based on trade libel.

8  **B.   <u>Sixth Cause of Action: Fraud - False Promise I</u>**

9  Private Eyes alleges in the Sixth Cause of Action that First

10  Advantage committed fraud by (1) falsely promising in 2002 and

11  2003 not to solicit business from CCE; and (2) falsely promising

12  in 2003 and 2005 not to disclose Private Eyes' confidential and

13  proprietary information to CCE.  1st Am. CC ¶¶ 56-70.  Under

14  California law, a cause of action for fraud based on a false

15  promise must allege: (1) a material misrepresentation, (2)

16  knowledge of its falsity, (3) intent to defraud or induce

17  reliance, (4) justifiable reliance, and (5) resulting damage.  <u>See</u>

18  <u>Lazar v. Superior Court</u>, 12 Cal. 4th 631, 638 (1996).

19  In addition to alleging the foregoing elements, a claim for

20  fraud must meet the heightened pleading requirements of Federal

21  Rule of Civil Procedure 9(b).  To satisfy Rule 9(b), "allegations

22  of fraud must be specific enough to give defendants notice of the

23  particular misconduct which is alleged to constitute the fraud

24  charged so that they can defend against the charge and not just

25  deny that they have done anything wrong." <u>Bly-Magee v. Cal.</u>, 236

26  F.3d 1014, 1019 (9th Cir. 2001) (internal quotations omitted).

27  "Averments of fraud must be accompanied by 'the who, what, when,

28  -13-

United States District Court

For the Northern District of California

1  where, and how' of the misconduct charged." <u>Vess v. Ciba-Geigy</u>

2  <u>Corp. USA</u>, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting <u>Cooper v.</u>

3  <u>Pickett</u>, 137 F.3d 616, 627 (9th Cir. 1997)).

4          1.  <u>Promise Not to Solicit CCE Business</u>

5          Private Eyes alleges that First Advantage repeatedly promised

6  not to solicit certain business from CCE, beginning when Private

7  Eyes and First Advantage's predecessor, EIS, first entered into a

8  contract. <u>See</u> 1st Am. CC ¶ 57, Ex. A.  This promise was made in

9  person at an August 2003 meeting, as well as in writing in March

10 2002 and October 2003.  <u>Id.</u> ¶ 57(a), Exs. A, B.  Despite this

11 promise, First Advantage allegedly solicited the MVR business from

12 CCE in 2004.  <u>Id.</u> ¶¶ 14, 63.  When Private Eyes learned that First

13 Advantage was soliciting the MVR business from CCE, the parties

14 negotiated a settlement, pursuant to which First Advantage would

15 pay Private Eyes a commission of $1.80 for each MVR search First

16 Advantage performed for CCE.  <u>Id.</u> ¶¶ 16, 17.  After purportedly

17 operating under this settlement for approximately one year,

18 Private Eyes learned that First Advantage had not paid the full

19 amount of the commissions due, and was soliciting additional

20 business from CCE.  <u>Id.</u> ¶¶ 18-19.  Private Eyes asserts that the

21 statute of limitations for this claim should be tolled until at

22 least June 2005, when it learned that First Advantage was again

23 soliciting business from CCE.  <u>Id.</u>  ¶¶ 68, 69.

24         First Advantage challenges this claim on a number of grounds.

25 First, the Court previously held that the 2005 settlement

26 "operates as a bar to reopening the controversy or tolling the

27 statute of limitations."  Mot. at 9-10; 1st CC Order at 6.

28                                  -14-

United States District Court

For the Northern District of California

Second, Private Eyes failed to plead justifiable reliance.  Mot. at 11.  Third, Private Eyes has not alleged the facts necessary for application of equitable estoppel.  Id. at 12.  Finally, First Advantage argues that Private Eyes cannot invoke the doctrine of equitable tolling.

Nothing in the First Amended Counterclaim resolves the central problem the Court previously identified.  The parties settled the dispute relating to First Advantage's solicitation of the MVR business from CCE in 2005.  See 1st CC Order at 6.  With regard to the settlement agreement, Private Eyes asserts in its Opposition that First Advantage "falsely represented its intention to make such payments, and in fact did not intend to make such payments after a short period of time."  Opp'n at 12.  That purportedly false representation may form the basis of a separate claim, but it does not allow Private Eyes to revive a dispute that the parties settled.  See Oakland Raiders v. Oakland-Alameda County Coliseum, Inc., 144 Cal. App. 4th 1175, 1192-93 (Ct. App. 2006); Doran v. N. State Grocery, Inc., 137 Cal. App. 4th 484, 492 (Ct. App. 2006).  Similarly, Private Eyes asserts that because First Advantage at least partially complied with the settlement terms until June 2005, Private Eyes could not have known First Advantage's promise was false until that time.  Opp'n at 12.  That may be true with regard to the promise to pay $1.80 per MVR (i.e., the settlement), but not with regard to the original promise not to solicit.  Private Eyes knew that the promise not to solicit was false before it entered into the settlement (else there would have been nothing to settle), so the settlement has no bearing on when

-15-

United States District Court
For the Northern District of California

1  Private Eyes learned of the solicitation.

2      Private Eyes next argues that it has the right to choose

3  between rescission and damages. Id. at 13. If Private Eyes were

4  alleging that the promise to pay $1.80 per MVR were fraudulent,

5  this might be the case. See Engalla v. Permanente Med. Group, 15

6  Cal. 4th 951, 979 (1997); but see Le Clerq v. Michael, 88 Cal.

7  App. 2d 700, 702 (Ct. App. 1948) ("A delay in rescission is

8  evidence of a waiver of the fraud and an election to treat the

9  contract as subsisting."). The false promise alleged here is the

10  agreement not to solicit business from CCE. The parties already

11  settled that issue, so Private Eyes cannot raise it again.

12      However, Private Eyes alleges that after the parties settled

13  the dispute and agreed to payments for the MVR business, it

14  discovered that First Advantage was soliciting other businesses

15  from CCE, violating the non-solicit agreement anew. 1st Am. CC ¶¶

16  18-19. In its Motion, First Advantage only addresses the MVR

17  solicitation. On Reply, First Advantage asserts that the statute

18  of limitations for any violation of the non-solicitation agreement

19  began to run as soon as Private Eyes knew about the solicitation

20  of the MVRs, in April 2004. Reply at 9-10.

21      The Court agrees with First Advantage. The wrongful act

22  alleged in this claim is the making of a false promise, not the

23  solicitation of business from CCE or the breach of a non-

24  solicitation agreement. 1st Am. CC ¶¶ 56-70; see also Lazar, 12

25  Cal. 4th at 638 (elements of false promise fraud). If First

26  Advantage committed fraud, it did so at the time it made a false

27  promise with the intent that Private Eyes would rely on that

28                             -16-

**United States District Court**
For the Northern District of California

promise.  If the promise not to solicit business from CCE was not
false when made, subsequent solicitation does not make it false,
even if that solicitation might support other claims, such as
breach of contract.  If the promise was false at the time it was
made, it is not more false for having been broken repeatedly.
Even if the MVR solicitation and the non-MVR solicitation are
separate violations of the parties' prior agreement, they do not
constitute separate acts of fraud.  Private Eyes knew, or had
reason to know, that the promise not to solicit was false before
it entered into the settlement agreement.

Having considered the issue twice, the Court sees no reason
to do so a third time, as no new facts consistent with those in
the First Amended Counterclaim could cure this defect.  Private
Eyes' claim for false promise fraud based on First Advantage's
alleged promise not to solicit business from CCE is therefore
dismissed with prejudice.

    2.   Promise Not To Disclose Private Eyes' Confidential
         Information

As a second part of the Sixth Cause of Action, Private Eyes
alleges that First Advantage falsely promised not to disclose
Private Eyes' confidential and proprietary information to CCE.
1st Am. CC ¶ 57.  According to Private Eyes, First Advantage made
this promise in writing in October 2003, then broke the promise,
and then renewed the promise during a conference call in June
2005.  Id. ¶ 57(b), Ex. B.  First Advantage moves to dismiss this
claim because it falls outside the statute of limitations, because
it is preempted by CUTSA, and because Private Eyes failed to

United States District Court
For the Northern District of California

1   satisfy the requirements of Federal Rule of Civil Procedure 9(b).

2       The fraud claim accrued as soon as Private Eyes knew, or had

3   reason to suspect, that First Advantage was disclosing

4   confidential information to CCE.  Kline v. Turner, 87 Cal. App.

5   4th 1369, 1373-74 (Ct. App. 2001); Garamendi v. SDI Vendome S.A.,

6   276 F. Supp. 2d 1030, 1040 (C.D. Cal. 2003).  As above, the claim

7   here is for making a false promise, not for disclosing

8   confidential information.  Thus, the question is when First

9   Advantage made the allegedly false promise, and when Private Eyes

10  became aware of that falsity, not when First Advantage allegedly

11  disclosed the proprietary and confidential information.

12      Private Eyes alleges it did not learn of the alleged

13  disclosures of confidential information until after June 2004,

14  which would bring its claims within the statute of limitations.

15  1st Am. CC ¶ 70.  On the face of the pleading, that would be

16  sufficient.  But First Advantage argues that Private Eyes knew of

17  at least some of the disclosures prior to April 2004, and thus

18  knew of the allegedly false promise at that time.  Reply at 15.

19  Specifically, First Advantage claims that because Private Eyes

20  alleges that it learned of the solicitation in April 2004, and

21  subsequently argued that the disclosure of confidential

22  information happened at the same time as the solicitation, that

23  Private Eyes must have known about the disclosure.  See Mot. at

24  10; 1st Am. CC ¶ 16; Opp'n to Mot. to Dismiss CC, Docket No. 25

25  ("First Opposition") at 2.[2]  There is no basis for this conclusion

26  _____

27      [2]The Court grants First Advantage's Request for Judicial
    Notice.  Docket No. 36.

28                                  -18-

**United States District Court**
For the Northern District of California

1   in any of the pleadings or briefs Private Eyes has submitted.

2   That Private Eyes now knows the solicitation and disclosure were

3   simultaneous does not necessarily mean it knew this in April 2004.

4   Whether Private Eyes should have known is not something that can

5   be determined solely from the pleadings.  The parties will need to

6   offer evidence on this issue either at summary judgment or at

7   trial.  See Kline, 87 Cal. App. 4th at 1374 ("Generally, statute

8   of limitations issues raise questions of fact that must be tried;

9   however, when the uncontradicted facts are susceptible of only one

10  legitimate inference, summary judgment is proper.").  The Court

11  therefore concludes that the claim for false promise fraud based

12  on the agreement not to disclose confidential information is

13  within the statute of limitations.

14      First Advantage next argues that because the claim is based

15  on disclosure of confidential information, it is preempted by

16  CUTSA.  Mot. at 16; Reply at 10.  Private Eyes responds that the

17  First Amended Counterclaim alleges disclosure of "confidential and

18  proprietary information" which is not limited to protectible trade

19  secrets.  Opp'n at 16-17.  First Advantage interprets CUTSA

20  preemption to extend to any common law claim sharing a common

21  nucleus of fact with a CUTSA claim for misappropriation, even if

22  the misappropriated information is not a protectible trade secret.

23  Contrary to First Advantage's arguments, nothing in Digital Envoy

24  or Convolve supports expanding preemption that far.  In Digital

25  Envoy, claims sharing an "identical nucleus of facts" with a trade

26  secret misappropriation claim were preempted.  370 F. Supp. 2d at

27  1034-35.  The court explicitly distinguished its holding from that

-19-

United States District Court

For the Northern District of California

of <u>PostX</u> because the claims at issue in <u>PostX</u> shared facts with a trade secret claim, but also had other, non-identical facts. <u>Compare</u> <u>id.</u> <u>with</u> <u>PostX</u>, 2004 U.S. Dist. LEXIS 24260 at *11-13. Similarly, <u>Convolve</u> only extends its holding to those cases that could have been brought under CUTSA. <u>See</u> 2006 U.S. Dist. LEXIS 13848 at *22-26 ("The California UTSA, like other UTSAs, preempts all claims <u>based on misappropriation of trade secrets</u> that are not specifically exempted by its § 3426.7(b) savings clause.") (emphasis added). By its own terms, however, CUTSA only provides remedies for misappropriation of <u>trade secrets</u>, not of any confidential information, and defines that term specifically. <u>See</u> Cal. Civ. Code. §§ 3426.1(b),(d), 3426.2, 3426.3.

If the confidential information First Advantage allegedly disclosed was in fact a protectible trade secret, the claim will be preempted. At least some of the confidential information in question comprised protectible trade secrets. Private Eyes argued this very point in support of its interference claim. <u>See</u> <u>supra</u> Section IV.A.2; Opp'n at 5-6. The confidential information at issue included "pricing information and profit margins", which are protectible trade secrets. 1st Am. CC ¶ 59; <u>see</u> Opp'n at 5-6 (citing <u>Whyte v. Schlage Lock Co.</u>, 101 Cal. App 4th 1443, 1455-56 (Ct. App. 2002); <u>Courtesy Temporary Serv., Inc. v. Camacho</u>, 222 Cal. App. 3d 1278, 1288 (Ct. App. 1990)). To the extent the claim is based on these trade secrets, it cannot go forward. However, Private Eyes may continue to pursue the claim for false promise, so long as the confidential information at the foundation of the claim is not a trade secret, as that term is defined in CUTSA.

-20-

United States District Court

For the Northern District of California

1    If, in subsequent pleadings or briefs, or at trial, it is

2    established that the disclosures on which Private Eyes bases this

3    claim were trade secrets, the claim will be dismissed with

4    prejudice.

5        Finally, First Advantage asserts that the claim is

6    inadequately pled, both in terms of the specificity required for

7    Rule 9(b) and in terms of the elements of false promise.  The

8    Court disagrees.  As noted above, see supra Section IV.B, the

9    purpose of the Rule 9(b) pleading requirements is to ensure that

10   the pleadings are specific enough to put defendants on notice of

11   precisely what the alleged wrongful conduct is, so that they may

12   prepare a defense.  See Bly-Magee, 236 F.3d at 1019.  Here,

13   Private Eyes has specifically pled the "who, what, when, where,

14   and how" of the allegedly false promise.  Cooper, 137 F.3d at 627.

15   In an October 8, 2003, letter from Richard Heitzman of First

16   Advantage to Sandra James of Private Eyes, First Advantage agreed

17   that it may not disclose Private Eyes' confidential information to

18   (1) First Advantage employees, unless such disclosure is necessary

19   to complete the parties' transaction; (2) any First Advantage

20   employees for the purpose of providing background checks; (3) any

21   third parties not providing consulting services related to this

22   transaction between the parties; or (4) any third parties, unless

23   they are performing drug screening services on behalf of Private

24   Eyes.  See 1st Am. CC Ex. B.  This detail is sufficient for First

25   Advantage to understand the misconduct it is alleged to have

26   committed.

27       Addressing the elements of a claim for false promise, First

28                                   -21-

United States District Court
For the Northern District of California

1    Advantage challenges the allegations of material promise,

2    justifiable reliance, and damages.  The Court considers each in

3    turn.  With regard to materiality of the promise, First Advantage

4    claims that nothing in the First Amended Counterclaim supports the

5    conclusion that the promise not to disclose proprietary

6    information in June 2005 was material when made.  See Mot. at 17;

7    Reply at 10-11.

8         As a threshold matter, the Court notes the parties'

9    distressing lack of precision in discussing which promises are at

10   issue.  The Court focuses, as should the parties, on the claims

11   set forth in the First Amended Counterclaim.  The promises

12   underlying the claims for false promise fraud are those made at

13   the outset of the parties' business relationship in 2002 and 2003.

14   See 1st Am. CC ¶ 57.  The crux of the claim as pled is that First

15   Advantage falsely promised not to solicit business from CCE and

16   not to disclose information to CCE in 2003, and based on those

17   promises, Private Eyes agreed to enter business with First

18   Advantage.  Both parties repeatedly stray from these promises in

19   their briefs.  Other promises, discussions, and negotiations may

20   be relevant, but do not form the basis of the claims in the

21   pleading.  For example, the promise to pay for MVR business after

22   the settlement is not the false promise at the core of the claim —

23   as pled, even if false, it was only a basis for tolling the

24   statute of limitations on the fraud claim.  See 1st Am. CC ¶ 68.

25   Going forward, the Court encourages the parties to focus on the

26   actual claims.

27        Returning to the question of whether or not Private Eyes has

28
                                  -22-

United States District Court

For the Northern District of California

1    alleged a material promise, the Court finds that it has.  Private

2    Eyes bases its claim on the original promise not to disclose,

3    which was made as early as October 2003.  See Opp'n at 17; 1st Am.

4    CC ¶ 57, Ex. B.  Private Eyes clearly alleges that, absent this

5    promise, it would not have entered into the business relationship

6    with First Advantage.  1st Am. CC ¶ 58.

7        First Advantage next argues that by the June 2005 conference

8    call, Private Eyes was aware of other numerous misrepresentations

9    First Advantage had made, so it was unreasonable to rely on that

10   promise.  Mot. at 18; Reply at 11. This argument fails.  First, as

11   above, it does not address the actual promise that is the

12   foundation of the claim.  Second, Private Eyes explains in the

13   First Amended Counterclaim the basis for its reliance: First

14   Advantage had represented itself as an honest and ethical business

15   partner, and at the time of the reliance, Private Eyes was not yet

16   aware of First Advantage having broken other promises.  1st Am. CC

17   ¶ 62.  First Advantage may later provide evidence that the

18   reliance was not justified, but without going beyond the pleading,

19   the claim is adequate.

20       Finally, First Advantage argues that Private Eyes fails to

21   allege damages as a result of its reliance on the promise not to

22   disclose.  Mot. at 19.  Yet again, the argument focuses solely on

23   the June 2005 reaffirmation of the promise and ignores the

24   original promise which is part of the claim.  In the First Amended

25   Counterclaim, Private Eyes alleges that it was harmed by the

26   disclosure of confidential information because CCE used that

27   information to gain concessions from Private Eyes, which

28                                 -23-

**United States District Court**
For the Northern District of California

1  diminished Private Eyes' profit margins and cost Private Eyes at

2  least $500,000.  1st Am. CC ¶¶ 64-66.

3      Private Eyes has adequately pled a counterclaim for fraud

4  based on First Advantage's allegedly false promise not to disclose

5  Private Eyes' confidential and proprietary information.

6      **C.    Seventh Cause of Action: Fraud - False Promise II**

7      In the Seventh Cause of Action, Private Eyes alleges that

8  First Advantage falsely promised that it would go through Private

9  Eyes to bill CCE.  1st Am. CC ¶¶ 71-80.  First Advantage argues

10  that this claim falls short of the Rule 9(b) requirements, that

11  Private Eyes failed to plead all of the elements of false promise

12  fraud, and that the claim is barred by the litigation privilege.

13  The Court agrees that the claim does not satisfy Rule 9(b), and

14  dismisses the claim without reaching the other two issues.

15      Private Eyes offers the following limited description of the

16  alleged promise in the First Amended Counterclaim:

17          In or about October 2006, FIRST ADVANTAGE
            promised that all services it was then
18          performing for CCE would be billed through
            PEI.  The representation was made by Julie
19          Waters of FIRST ADVANTAGE in an e-mail to
            Sandra James dated November 10, 2006, wherein
20          she agreed to resume the normal practice of
            billing for services through PEI, thus
21          allowing PEI to collect a profit on the
            services, if PEI paid for all outstanding
22          invoices.

23  1st Am. CC ¶ 72.  This paragraph contains the entire description

24  of "the who, what, when, where, and how" of the alleged false

25  promise.  Cooper, 137 F.3d at 627.  This description is far from

26  sufficient.

27      To begin with, it is internally inconsistent as to whether

28                              -24-

United States District Court

For the Northern District of California

1  the promise was made in October or November of 2006.   In its

2  Opposition, Private Eyes claims that the representations were made

3  over the course of that two month period.  Opp'n at 19.  The Court

4  will draw favorable inferences on Private Eyes' behalf, but there

5  must be a limit.   Nothing on the face of the pleading describes an

6  ongoing discussion or course of communication.  Even if the Court

7  were to infer such a dialog, the Court could not infer the

8  specific details necessary to satisfy Rule 9(b).

9       Moving from the pleading to the specific email alleged as the

10 basis of the claim, the Court still finds the claim deficient.[3]

11 Attached to the email in question is a letter which states that if

12 Private Eyes pays First Advantage receipts already due, First

13 Advantage is willing to discuss resuming services under the terms

14 of the parties' agreement.  See Ratinoff Decl. Exs. F, G.  Even if

15 the Court were to assume that "resuming our services under the

16 terms of our agreement" meant that First Advantage would bill its

17 services to CCE through Private Eyes (an assumption not actually

18 supported in the pleading), Private Eyes has not alleged that it

19 paid the money due, that the parties had the subsequent

20 discussion, or that First Advantage actually agreed to process its

21 billing in that manner.

22      Private Eyes asserts that it did not attach the email to its

23

24      [3]Where a plaintiff alleges the contents of a document in the
   complaint, but does not attach the document, the defendant may
25 provide that document to the court, and the court may consider it
   on a Rule 12(b)(6) motion to dismiss.  See, e.g., Branch v.
26 Tunnell, 14 F.3d 449, 453-54 (9th Cir. 1994).  First Advantage has
   provided the email to the Court as Exhibits F and G to the Ratinoff
27 Declaration.

28                              -25-

United States District Court

For the Northern District of California

1    pleading out of fear that the email would be taken out of the

2    context of the ongoing discussions between the parties.  Opp'n at

3    19-20.   Essentially, Private Eyes chose to give the Court no

4    context for the allegedly false promise, rather than the full

5    context.   Private Eyes is responsible for its own pleading.

6    Filling in an entire narrative of facts that supposedly support a

7    claim for fraud is not the responsibility of the Court or First

8    Advantage.   Private Eyes correctly notes that Rule 9(b) does not

9    require it to set forth every fact in support of its claim, or to

10   have all of the necessary evidence prior to conducting discovery.

11   However, while discovery may be necessary to provide evidence

12   supporting the claim, discovery should not be necessary for

13   Private Eyes to state, with particularity, what First Advantage

14   supposedly promised.

15        Private Eyes states that First Advantage "misunderstands" the

16   nature of the Seventh Cause of Action.  This is not surprising

17   since it is unclear in the pleading what the Seventh Cause of

18   Action alleges.  This same deficiency led the Court to dismiss the

19   claim once before.  See 1st CC Order at 8.  Despite having had the

20   opportunity to fix the ambiguities and allege, with specificity,

21   who promised what to whom, and when, Private Eyes has failed to do

22   so.  Rather than supplementing the allegations, Private Eyes

23   removed some facts, added new ones, and alleged that the promise

24   in question was made in a letter that it now admits does not

25   contain the full promise.  The Court will not indulge Private Eyes

26   in a third attempt to satisfy Rule 9(b), as doing so might lead to

27   a claim based on an entirely new, third set of ambiguous facts.

28

United States District Court

For the Northern District of California

1    The Seventh Cause of Action is therefore dismissed with prejudice.

2

3    **V.    CONCLUSION**

4        For the reasons set forth above, First Advantage's Motion to

5    Dismiss Private Eyes' First Amended Counterclaim is GRANTED IN

6    PART and DENIED IN PART.  The Court ORDERS as follows:

7        1.    With respect to the Fifth Cause of Action, Private Eyes'
              claim for intentional interference with prospective
8              economic advantage based on wrongful acts of trade
              secret misappropriation and breach of confidence is
9              dismissed with prejudice.  The claim for intentional
              interference based on a wrongful act of trade libel is
10             dismissed without prejudice.  Private Eyes may amend its
              pleading no later than thirty days from the date of this
11             order.  Private Eyes may not allege a new wrongful act
              as a basis for this claim.

12

13       2.    With respect to the Sixth Cause of Action, Private Eyes'
              claim for false promise fraud based on the promise not
14             to solicit business from CCE is dismissed with
              prejudice.  The claim for false promise fraud based on
15             the promise not to disclose confidential and proprietary
              information survives, only to the extent that the
16             confidential and proprietary information in question is
              not a trade secret, as defined in CUTSA.

17       3.    The Seventh Cause of Action for false promise fraud
              based on First Advantage's promise to bill CCE through
18             Private Eyes is dismissed with prejudice.

19

20       IT IS SO ORDERED.

21       Dated: March 5, 2008

22                                              UNITED STATES DISTRICT JUDGE

23

24

25

26

27

28
                                    -27-