# EXHIBIT B

Case 3:07-cv-02424-SC    Document 47-3    Filed 04/04/2008    Page 1 of 3


*First Advantage*
C O R P O R A T I O N

October 8, 2003

Sandra James
President
Private Eyes, Inc.
190 N. Wiget Lane #220
Walnut Creek, CA 94598

Dear Ms. James:

In connection with the pending transaction between First Advantage Corporation and Employee Information Systems, Inc. (EIS), First Advantage and Private Eyes desire to enter into this letter agreement ("Agreement") setting forth the parties understanding regarding Private Eyes customer information learned as a result of (i) Private Eyes' use EIS's drug screening services or (ii) future use of First Advantage's drug screening services, which may include EIS. For the purposes of this Agreement information Private Eyes discloses to First Advantage, including its client names, contacts and pricing, shall be deemed "Confidential Information."

Confidential Information disclosed by Private Eyes to First Advantage may only be used for the purpose of First Advantage providing drug screening services to Private Eyes' customers. First Advantage shall hold the Confidential Information in confidence and agrees to use the same degree of care it uses to protect its own confidential information, but in no event less than a reasonable standard of care.

First Advantage may not disclose Confidential Information to: (i) any of its employees or business representatives unless they have a need to know such information to carry out the pending transaction between First Advantage and EIS, (ii) any of its employees or agents for the purpose of providing employment background screening services, which shall exclude drug screening for the purpose of this Agreement, (iii) any third parties that are not providing consultation with regard to the pending transaction, (iv) any third parties unless they need the Confidential Information for the purpose of providing drug screenings services to Private Eyes.

First Advantage represents that it will not use Confidential Information obtained from Private Eyes to, intentionally solicit, endeavor to entice away from, or otherwise interfere with the relationship Private Eyes has with any of its employment background screening customers, clients, suppliers or other entity with whom they do business, based on the Confidential Information. First Advantage may not use the Confidential Information for sales and marketing efforts to its existing or prospective employment background screening customers.

In exchange for First Advantage's agreement not to use Confidential Information as stated, Private Eyes agrees to use First Advantage's drug screening services as its exclusive drug screening provider during the term of this Agreement. Additionally, in exchange for Private Eyes agreeing to use First Advantage as its sole drug screening provider, First Advantage agrees that it will not intentionally solicit, endeavor to entice away from, or otherwise interfere with the relationship Private Eyes has with Coca Cola, Inc.

In some cases, First Advantage or one of its subsidiary companies may have the need to disclose its confidential information to Private Eyes ("FADV Confidential Information"). FADV Confidential Information may include but is not limited to client lists, marketing or sales plans, methodologies, business plans, financial information, trade secrets, know-how and such other information as may be marked from time-to-time. Private Eyes shall hold FADV Confidential Information in confidence and shall not disclose it to any third parties without the express written consent of First Advantage. Private Eyes agrees to use the

same degree of care it uses to protect its own confidential information, but in no event less than a reasonable standard of care.

The term "Confidential Information" or "FADV Confidential Information" does not include any information which the receiving party can demonstrate: (i) is at the time of disclosure is in the public domain or which after such disclosure comes into the public domain through no fault First Advantage or its representatives; (ii) was available to First Advantage on a non-confidential basis from a source other than Private Eyes or EIS, or their respective officers, directors, employees, or advisors, provided that such source is not and was not bound by a confidentiality agreement with Private Eyes; (iii) has been released without restriction Private Eyes to another person not covered by an agreement similar in terms to this agreement; (iv) is required to be disclosed by applicable law or regulation, but only to the extent and for the purposes of such required disclosure; or (v) is required to be disclosed by a valid order of a court or government agency with appropriate jurisdiction over the parties and the subject matter of the information, but only to the extent of and for the purposes of such order and only after the other party is afforded a reasonable opportunity to oppose such order or seek protection for further disclosure of the information.

Each party's Confidential Information (which for the purpose of this paragraph shall include FADV Confidential Information) is and will remain its sole property. Neither party obtains any ownership or license interest in any of the other's Confidential Information by virtue of its disclosure under this Agreement. Each party will return to or destroy the other all of the other's Confidential Information in its possession or control upon the expiration or termination of this Agreement. The disclosure of Confidential Information hereunder shall not be construed as granting any license to or right or ownership in the Confidential Information.

The parties acknowledge that the harm caused by the wrongful disclosure of Confidential Information and/or FADV Confidential Information will be difficult, if not impossible, to assess on a monetary basis alone, and that legal damages may not be sufficient compensation for such wrongful disclosure. Therefore, either party may enforce this Agreement by equitable means, including, but not limited to, injunctive relief, in addition to any other remedies to which it is otherwise entitled.

The term of this Agreement shall be for three (3) years from the date written above.

Neither party will assign their respective rights or duties under this Agreement to another without the prior express written consent of the other party, which consent shall not be unreasonably withheld or delayed. Any other purported assignment will be void.

This Agreement will be governed by and construed in accordance with the laws of the State of California. The parties agree to resolve any disputes arising from the terms of this agreement by arbitration, with such arbitration to be held in Contra Costa County, California.

All billing for drug screening services will continue to be made directly through Private Eyes and processed solely by them.

This Agreement represents the entire understanding between the parties with respect to the subject matter herein. The terms of this Agreement shall be binding upon and inure to the benefit of the parties and to their legal representatives and successors. No waiver, alteration or modification of any of the provisions of this Agreement shall be binding unless in writing and signed by a duly authorized representative of the parties.

If these terms meet with your understanding than please acknowledge your acceptance by countersigning below.

Sincerely,

Richard Heitzmann
Vice President, Corporate Development Officer

Agreed to and Accepted by:

Sandra James