1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

## (to Declaration of Mark R. Mittelman in Support of Motion for Leave to File Third Amended Counter-Claim)

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

[PROPOSED] THIRD AMENDED COUNTERCLAIM                    C07-2424 SC

3061-0001

Mark R. Mittelman (SBN 96598)
Paul A. Kanter (SBN 194596)
LAW OFFICES OF MARK R. MITTELMAN
A Professional Corporation
190 North Wiget Lane, Suite 101
Walnut Creek, California 94598
Telephone: (925) 256-0677
Facsimile: (925) 256-0679
Email: mmittelman@mittellaw.com
Email: pkanter@mittellaw.com

Attorneys for Defendant / Counter-Claimant /
Cross-Complainant
PRIVATE EYES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| FIRST ADVANTAGE BACKGROUND SERVICES CORP., a Florida corporation,<br><br>Plaintiff,<br><br>vs.<br><br>PRIVATE EYES, INC., a California corporation, DOES 1-10,<br><br>Defendants.<br><br>PRIVATE EYES, INC., a California corporation<br><br>Counterclaimant and Cross-Complainant,<br><br>vs.<br><br>FIRST ADVANTAGE BACKGROUND SERVICES CORP., a Florida corporation;<br><br>Counter-defendant,<br><br>and<br><br>ROES 1-20,<br><br>Cross-Defendants. | Case No. C07-2424 SC<br><br>**[PROPOSED] THIRD AMENDED COUNTERCLAIM**<br><br>**1. BREACH OF WRITTEN CONTRACT**<br>**2. BREACH OF ORAL CONTRACT**<br>**3. UNJUST ENRICHMENT**<br>**4. INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONSHIP**<br>**5. INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**<br>**6. FRAUD - FALSE PROMISE I**<br>**7. FRAUD - FALSE PROMISE II**<br>**8. ACCOUNT STATED [FIRST ADVANTAGE ONLY]**<br>**9. OPEN BOOK ACCOUNT (COMMON COUNT) [FIRST ADVANTAGE ONLY]**<br>**10. .FRAUD – FALSE PROMISE III**<br>**11. VIOLATION OF CALIFORNIA UNIFORM TRADE SECRETS ACT [CIVIL CODE §3246 et seq.]**<br><br>**DEMAND FOR JURY TRIAL** |

PRIVATE    EYES,    INC.    hereby    counterclaims    against    FIRST    ADVANTAGE

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

-1-

[PROPOSED] THIRD AMENDED COUNTERCLAIM                    C07-2424 SC

1  BACKGROUND SERVICES CORP. and cross-complains against ROES 1-20 and alleges as

2  follows:

3  **PARTIES**

4  1.    PRIVATE EYES, INC. (hereinafter "PEI") is, and at all relevant times mentioned

5  herein was, a corporation organized and existing under the laws of the State of California with its

6  principal place of business in Walnut Creek, California.  PEI is in the business of providing a diverse

7  array of background checks, and similar services, for employers seeking to hire and retain personnel.

8  Among other services, these include drug testing, physicals, motor vehicle records (MVR) checks,

9  and employee background verifications.  On occasion, PEI subcontracts such services to third-party

10  vendors.

11  2.    PEI is informed and believes, and on that basis alleges, that FIRST ADVANTAGE

12  BACKGROUND SERVICES CORP. (hereinafter "FIRST ADVANTAGE") is a Florida corporation

13  with its principal place of business in St. Petersburg, Florida.  PEI is further informed and believes,

14  and on that basis alleges, that FIRST ADVANTAGE is the successor in interest to EMPLOYEE

15  INFORMATION SERVICES, INC. (hereinafter "EIS").   As successor in interest, FIRST

16  ADVANTAGE is legally responsible for all obligations, arising from contract, tort, statute, or

17  otherwise, incurred by EIS.  FIRST ADVANTAGE is sometimes referred to herein as "EIS / FIRST

18  ADVANTAGE" to make it clear that it is responsible for both its own obligations and conduct as

19  well as the obligations and conduct of its predecessor in interest EIS.  However, no matter how

20  denominated in this pleading, FIRST ADVANTAGE is liable for all of the obligations and conduct

21  of EIS.

22  3.    PEI is ignorant of the true names and capacities of cross-defendants ROES 1 through

23  20, inclusive, and sues cross-defendants by fictitious names herein.  PEI prays leave to amend this

24  Cross-Complaint to allege their true names and capacities when the same have been ascertained.

25  4.    That at all times herein mentioned, FIRST ADVANTAGE and ROES 1 through 20,

26  inclusive, were the agents, servants, employees, or independent contractors of each of the remaining

27  cross-defendants and at all times herein relevant were acting within the course and scope of said

28  relationship.

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

-2-

[PROPOSED] THIRD AMENDED COUNTERCLAIM                    C07-2424 SC

**JURISDICTION AND VENUE**

5.    The Court has original jurisdiction over this action under 28 U.S.C. §1332, in that it is a civil action between citizens of different states and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

6.    Venue for this counter-claim is proper in the United States District Court for the Northern District of California pursuant to 28 U.S.C. §1391 since PEI has a substantial presence in the Northern District of California and FIRST ADVANTAGE has elected to bring its Complaint in this venue.  Venue for a counter-claim is proper in the federal district court where the Complaint is brought.

7.    Venue for the cross-complaint is proper in the United States District Court for the Northern District of California pursuant to 28 U.S.C. §1391 on one or more of the following grounds: (1) ROES 1-20 have a substantial presence in the district, (2) a substantial part of the events and omissions, which gave rise to this action, including the place where at least part of the contracts were to be performed and where the breaches occurred took place, were in this district, and (3) a substantial portion of the tortious actions took place within this district.

**COMMON ALLEGATIONS**

8.    In or about 2002, PEI entered into a verbal contract with Coca Cola Enterprises, Inc. (hereinafter "CCE") to provide various pre-employment screening background investigations  and drug testing services for personnel that CCE was considering for employment, retention, and/or promotion in its company.  Such services included, but were not limited to, MVR's, applicant / employee physicals, and drug testing.  The verbal contract between PEI and CCE provided that CCE would assign the services to PEI on an as-needed basis, and PEI would perform such services at a stated price.  The verbal contract permitted, but did not require, that PEI could subcontract the performance of some or all of the services to third-party vendors.

9.    PEI had a reasonable expectation that it would periodically receive assignments from CCE for the services mentioned above, so long as it performed the services in a satisfactory manner.

10.    In or about March 2002, PEI subcontracted some of the services referenced above to EIS, the predecessor in interest to FIRST ADVANTAGE.  The services included driver qualification

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

-3-

[PROPOSED] THIRD AMENDED COUNTERCLAIM                                      C07-2424 SC

1    file maintenance, applicant / employee physicals, and drug testing.  A true and correct copy of the

2    written contract between PEI and EIS, which was drafted by EIS and signed by PEI's authorized

3    agent Sandra James on March 29, 2002, is attached as Exhibit A.

4        11.    As part of the written contract attached as Exhibit A, EIS represented and agreed that

5    it would not "directly solicit Coca-Cola for any of the services provided by Private Eyes unless it

6    receives the written consent of Private Eyes."

7        12.    PEI and EIS both agreed that only PEI had a contractual relationship with CCE for the

8    services that were subcontracted in the written contract attached as Exhibit A.  Accordingly, only PEI

9    would invoice CCE for the services.  In turn, PEI agreed to pay EIS within a reasonable amount of

10   time of receiving payment from CCE.  If CCE took any payment discounts, or otherwise reduced its

11   payments, EIS agreed that its own invoice would be discounted / reduced to the same extent.

12       13.    In or about September 2003, FIRST ADVANTAGE acquired EIS and became its legal

13   successor in interest for all rights and liabilities, including all rights and liabilities that EIS had under

14   the written contract attached as Exhibit A.  In an agreement dated October 8, 2003, drafted by FIRST

15   ADVANTAGE and signed by Sandra James as officer for PEI, FIRST ADVANTAGE reiterated its

16   prior agreement to not use any confidential information "obtained from Private Eyes to intentionally

17   solicit, endeavor, to entice away from, or otherwise interfere with the relationship Private Eyes has

18   with any of its employment background screening customers, clients, suppliers, or other entity with

19   whom they do business, based on the Confidential Information."    Furthermore, FIRST

20   ADVANTAGE agreed that it "may not use the Confidential Information for sales and marketing

21   efforts to its existing or prospective employment background screening customers."  A true and

22   correct copy of the Agreement is attached as Exhibit B.

23       14.    In or about January or February 2004, FIRST ADVANTAGE solicited CCE to obtain

24   the contract for MVR's.  These are the same services that CCE had been assigning to PEI pursuant to

25   their verbal contract.  This solicitation was a direct violation of the terms set forth Exhibit A and

26   Exhibit B, which prohibited such solicitation.

27       15.    As a direct result of FIRST ADVANTAGE'S solicitation, and for no other reason,

28   CCE ceased assigning motor vehicle records to PEI and began assigning them to FIRST

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

-4-

[PROPOSED] THIRD AMENDED COUNTERCLAIM                                    C07-2424 SC

1  ADVANTAGE.    PEI was therefore deprived of all profits it had been making on the MVR

2  assignments.

3     16.    In or about April of 2004, PEI learned for the first time that FIRST ADVANTAGE

4  had solicited the MVR's from CCE and was now doing such work directly for CCE.

5     17.    PEI attempted to negotiate a reasonable resolution of FIRST ADVANTAGE'S

6  violation of the non-solicitation agreements set forth in Exhibit A and Exhibit B.    After much

7  negotiation, FIRST ADVANTAGE verbally agreed that it would pay PEI $1.80 for each MVR that it

8  performed directly for CCE.    These were labeled "commissions," although they were really

9  reimbursement for at least some of the lost profits that PEI had sustained in the past and would

10 continue to sustain in the future.  The $1.80 was a compromise, and not necessarily the actual amount

11 of <u>lost profits</u> that PEI was actually sustaining.  The lost profit calculation did not reimburse PEI for

12 the loss in value the company would sustain because of the reduction in the revenue stream from

13 CCE services.  A true and correct copy of a letter from PEI's counsel, to Bart Valdez of FIRST

14 ADVANTAGE, is attached as Exhibit C.  Exhibit C confirms the verbal agreement that the parties

15 entered into.

16     18.    Pursuant to the verbal agreement. FIRST ADVANTAGE made payments to PEI for

17 the MVR's it was now performing directly for CCE.  FIRST ADVANTAGE paid $1.80 for some of

18 the MVR's it performed directly for CCE.  PEI later learned that it did not pay for all of them.  The

19 number of MVR's that FIRST ADVANTAGE did not pay for are unknown to PEI at this time, and

20 will be the subject of discovery.  FIRST ADVANTAGE made partial payments on the MVR's for

21 some months, and then cease making payments entirely.

22     19.    In or about spring 2005, PEI learned for the first time that FIRST ADVANTAGE was

23 soliciting all remaining services from CCE.  These were other services, such as physicals and drug

24 testing, that CCE had been assigning to PEI and that PEI had in turn subcontracted to FIRST

25 ADVANTAGE.  The solicitation was in direct violation of the terms of Exhibit A and Exhibit B.

26     20.    In or about the spring of 2005, PEI learned for the first time that FIRST

27 ADVANTAGE had disclosed confidential and proprietary information to CCE.  This confidential and

28 proprietary information included the profits that PEI earned on the physicals that CCE assigned to it.

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

-5-

[PROPOSED] THIRD AMENDED COUNTERCLAIM                    C07-2424 SC

1   CCE used this confidential and proprietary information to insist that PEI charge less for the services.

2   FIRST ADVANTAGE only obtained access to PEI's profit margin on the physicals because it had

3   subcontracted to perform the work for PEI.  As such, FIRST ADVANTAGE's disclosure was in

4   violation of the terms of Exhibit B.

5        21.    On or about September 28, 2006, CCE informed PEI that it would be assigning all of

6   the services to different vendors.  PEI is informed and believes, and based thereon alleges, that CCE

7   made this decision for the following two reasons: (1) it was not satisfied with the quality and

8   timeliness of the services that PEI had subcontracted to EIS / FIRST ADVANTAGE and (2) it was

9   wary of the friction that had been created between PEI and EIS / FIRST ADVANTAGE which arose

10  from FIRST ADVANTAGE's direct solicitation of CCE services.

11       22.    As a direct and proximate result of the foregoing, PEI has sustained damages in the

12  amount of past and future lost profits that will be determined by expert testimony, but which is

13  expected to amount to no less than $5 million dollars plus interest.

14                          **FIRST CAUSE OF ACTION**

15                          **BREACH OF WRITTEN CONTRACT**

16                              **[All Defendants]**

17       23.    PEI repeats and re-alleges the allegations contained in paragraph 1 through 22,

18  inclusive, above and incorporates the same by reference as though set forth in fill herein.

19       24.    On or about March 29, 2002, PEI and EIS entered into the contract attached as Exhibit

20  A.

21       25.    On or about September 2003, FIRST ADVANTAGE became the successor in interest

22  to EIS, and therefore assumed responsibility for all of its legal obligations, including those set forth in

23  Exhibit A.

24       26.    On or about October 2003, PEI and FIRST ADVANTAGE entered into the contract

25  attached as Exhibit B.

26       27.    PEI complied with all conditions precedent under Exhibits A and B, and performed all

27  of its obligations that were not legally suspended, excused, or extinguished.

28       28.    FIRST ADVANTAGE breached the terms of Exhibits A and B by directly soliciting

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

-6-

[PROPOSED] THIRD AMENDED COUNTERCLAIM                    C07-2424 SC

1  MVR's from CCE. PEI is also informed and believes, and based thereon alleges, that ROES 1-20

2  materially contributed to the breach.

3      29.    FIRST ADVANTAGE further breached the terms of Exhibit B by disclosing

4  confidential and proprietary information to CCE, including but not limited to the profit margins that

5  PEI earned on the physicals. PEI is also informed and believes, and based thereon alleges, that

6  ROES 1-20 materially contributed to the breach.

7      30.    FIRST ADVANTAGE further breached the terms of Exhibits A and B by failing to

8  perform the services it subcontracted to perform in a manner that was satisfactory to CCE.

9  Satisfactory performance was an implied term of Exhibit A and Exhibit B. PEI is also informed and

10  believes, and based thereon alleges, that ROES 1-20 materially contributed to the breach.

11      31.    As a direct and proximate result of the aforementioned mentioned breaches of

12  contract, PEI has sustained damages in an amount to be proved at trial, but in no event less than $5

13  million, plus prejudgment interest at the legal rate. Further, based on the aforementioned breaches of

14  contract, PEI has incurred attorneys' fees and costs of bringing this action. PEI will continue to incur

15  such interest, fees and costs in amounts to be proven at trial.

16      WHEREFORE, PEI prays for relief as set forth below.

17          **SECOND CAUSE OF ACTION**

18          **BREACH OF ORAL CONTRACT**

19          **[All Defendants]**

20      32.    PEI repeats and re-alleges the allegations contained in paragraph 1 through 22,

21  inclusive, above and incorporates the same by reference as though set forth in fill herein.

22      33.    In or about the summer of 2004, FIRST ADVANTAGE verbally agreed to pay $1.80

23  to PEI for each MVR that FIRST ADVANTAGE directly performed for CCE. The agreement was

24  reached to resolve a legal dispute between PEI and FIRST ADVANTAGE, and therefore valid

25  consideration supports the agreement. In or about October of 2006, FIRST ADVANTAGE agreed to

26  have all billings for the services that FIRST ADVANTAGE performed for CCE to go through PEI, so

27  PEI could earn a profit on the services. FIRST ADVANTAGE made this promise because it had

28  improperly solicited business from CCE, wanted to continue its business relationship with PEI, and

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

-7-

[PROPOSED] THIRD AMENDED COUNTERCLAIM        C07-2424 SC

wanted to obtain payments for outstanding services.

34.    FIRST ADVANTAGE breached the aforementioned verbal agreements by not paying $1.80 for each and every MVR it performed for CCE and not allowing the billings to go through PEI. PEI did not learn that FIRST ADVANTAGE had not paid for each and every MVR until the summer of 2005, and to this day does not know how many MVR's FIRST ADVANTAGE did not actually pay the $1.80 on.  PEI is also informed and believes, and based thereon alleges, that ROES 1-20 materially contributed to the aforementioned breaches.

35.    As a direct and proximate result of the aforementioned mentioned breaches of contract, PEI has sustained damages in an amount to be proved at trial, but in no event less than $100,000, plus prejudgment interest at the legal rate.  Further, based on the aforementioned breaches of contract, PEI has incurred attorneys' fees and costs of bringing this action.  PEI will continue to incur such interest, fees and costs in amounts to be proven at trial.

WHEREFORE, PEI prays for relief as set forth below.

### THIRD CAUSE OF ACTION

### UNJUST ENRICHMENT

### [All Defendants]

36.    PEI repeats and re-alleges the allegations contained in paragraph 1 through 22, inclusive, above and incorporates the same by reference as though set forth in fill herein.

37.    FIRST ADVANTAGE has performed services for CCE that CCE had originally assigned to PEI.

38.    FIRST ADVANTAGE was only able to obtain such services by violating the terms of Exhibit A and Exhibit B, including the non-solicitation agreement.  Based on information and belief, ROES 1-20 materially contributed to the violations.

39.    As a result of the foregoing violations, FIRST ADVANTAGE and ROES 1-20 have been unjustly enriched in an amount equal to its net profits.  That amount will be proven at trial.

40.    FIRST ADVANTAGE and ROES 1-20 should therefore be disgorged of the amount of their profits that are attributable to services for CCE.  The profits should be transferred to PEI by way of a constructive trust.

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

-8-

[PROPOSED] THIRD AMENDED COUNTERCLAIM                    C07-2424 SC

WHEREFORE, PEI prays for relief as set forth below.

## FOURTH CAUSE OF ACTION

## INTENTIONAL INTERFERENCE WITH EXISTING

## CONTRACTUAL RELATIONSHIP

### [All Defendants]

41.     PEI repeats and re-alleges the allegations contained in paragraph 1 through 22, inclusive, above and incorporates the same by reference as though set forth in fill herein.

42.     There was a valid verbal contract between PEI and CCE for services that would last so long as PEI satisfactorily performed services for CCE.

43.     FIRST ADVANTAGE, and on information and belief ROES 1-20, knew of the contract.

44.     FIRST ADVANTAGE, and on information and belief, ROES 1-20 intended to disrupt the performance of the aforementioned contract by directly soliciting business from CCE that CCE had been assigning to PEI and by disclosing PEI's confidential and proprietary information to CCE.

45.     The conduct of FIRST ADVANTAG and ROES 1-20 prevented performance by PEI or made performance more expensive or difficult by PEI.

46.     As a direct and proximate result of the aforementioned conduct by FIRST ADVANTAGE and ROES 1-20, PEI has sustained damages in an amount to be proved at trial, but in no event less than $5 million, plus prejudgment interest at the legal rate.  Further, based on the aforementioned conduct, PEI has incurred attorneys' fees and costs of bringing this action.  PEI will continue to incur such interest, fees and costs in amounts to be proven at trial.

47.     FIRST ADVANTAGE and ROES 1-20, in doing the foregoing, acted with malice, fraud, and/or oppression and therefore punitive damages pursuant to Civil Code §3294 are appropriate.

WHEREFORE, PEI prays for relief as set forth below.

///

///

///

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

-9-

[PROPOSED] THIRD AMENDED COUNTERCLAIM                              C07-2424 SC

## FIFTH CAUSE OF ACTION

## INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS

### [All Defendants]

48.    PEI repeats and re-alleges the allegations contained in paragraph 1 through 22, inclusive, above and incorporates the same by reference as though set forth in fill herein.

49.    PEI and CCE were in an economic relationship that would have resulted in an economic benefit to PEI.

50.    FIRST ADVANTAGE, and on information and belief ROES 1-20, knew of the aforementioned economic relationship between PEI and CCE.

51.    FIRST ADVANTAGE, and on information and belief ROES 1-20, intended to disrupt the aforementioned relationship.

52.    FIRST ADVANTAGE, and on information and belief ROES 1-20, engaged in wrongful conduct through the following specific conduct:

    a.    Improperly disclosing PEI's confidential and proprietary information to CCE in violation of the Uniform Trade Secrets Acts, California Civil Code §3426 et seq.  Such confidential and proprietary information included, but was not necessarily limited to, PEI's profit margins.  Such disclosure constitutes a misappropriation of a trade secret, as that term is defined at Civil Code §3426.1, since FIRST ADVANTAGE acquired the information only because it agreed to maintain its secrecy.

    b.    Improperly disclosing PEI's confidential and proprietary information to CCE in violation of its agreement to maintain the confidential nature of the information, a common law breach of confidence.  Such confidential and proprietary information included, but was not necessarily limited to, PEI's profit margins and business methods.  Such information was novel since it had value to PEI in being kept secret from its clients, such as CCE.  Clients could potentially use such information to negotiate deals that would be more favorable to the client and less favorable to PEI.

    c.    Engaging in common law trade libel, injurious falsehood, defamation, and/or disparagement as follows:

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

[PROPOSED] THIRD AMENDED COUNTERCLAIM                                    C07-2424 SC

1.      **Injurious Statement:**  Steven Flack of FADV told Teresa Higdon of CCE that Sandra James, in her capacity as President of Private Eyes, Inc., "is a liar and cannot be trusted."  Steve Flack falsely stated during the same conversation that Sandra James had offered to pass along to CCE "all discounts" that FADV provided to PEI for services.  When Teresa Higdon told Steve Flack that PEI had not done so, Steven Flack made the statement that Sandra James of PEI "is a liar and cannot be trusted."  The true facts are that Sandra James never told anyone at FADV, including Steven Flack, that PEI would pass along "all discounts."  The statement was solely made in the context of the PEI-CCE and PEI-FADV business relationships, including application of various discounts.  The statement about Sandra James, as president of PEI, is therefore attributable to PEI.

2.      **Reason the Statement is Injurious:**  The statement that Sandra James of PEI "is a liar and cannot be trusted" is injurious because it charges dishonesty to PEI.  Specifically, it charges that PEI provided its services to CCE in a dishonest manner since PEI allegedly refused to pass along "all discounts" as it had allegedly promised to do.

3.      **Form of Statement:**  The statement from Steven Flack of FADV to Teresa Higdon of CCE was made verbally, over the telephone.

4.      **Identity of Speaker:**  Steven Flack of FADV made the injurious statement.

5.      **Identity of Recipient:**  Teresa Higdon of CCE was the recipient of the injurious statement.

6.      **Time of Statement:**  June 13, 2005 at approximately 11:00 A.M. EST.  Although this is when the statement was made, it did not cause any actual injury to PEI until CCE terminated its business relationship with PEI in late 2006.  Accordingly, the tort was not completed until that time.  Furthermore, PEI did not learn of the injurious statement until on or about June 27, 2005, when Teresa Higdon reported it to Sandra James on that day.  PEI had no reason to know of the statement prior to the time that Teresa Higdon disclosed it to Sandra James.  Accordingly, even assuming that there was actual injury on June 13, 2005, which is denied, the Statute of Limitations was tolled until at least June 27, 2005.

7.      **Location of Statement:**  Steven Flack made the statement while in St.

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

-11-

[PROPOSED] THIRD AMENDED COUNTERCLAIM                    C07-2424 SC

1    Petersburg, Florida. Teresa Higdon was in Atlanta, Georgia. The verbal statement was made over

2    the telephone.

3    　　　　　8.    **Special Injury:**    As a direct and proximate result of the injurious

4    statement, CCE terminated its business relationship with PEI. The amount of damage specifically

5    related to the injurious statement is $1,800,000.00**.** This is a sub-set of the total damages that PEI

6    sustained from its loss of the CCE account.

7    　　53.    PEI's relationship with CCE was in fact disrupted because of the aforementioned

8    conduct by FIRST ADVANTAGE, and on information and belief by ROES 1-20.

9    　　54.    As a direct and proximate result of the aforementioned conduct by FIRST

10    ADVANTAGE and ROES 1-20, PEI has sustained damages in an amount to be proved at trial, but in

11    no event less than $4-5 million, plus prejudgment interest at the legal rate. Further, based on the

12    aforementioned conduct, PEI has incurred attorneys' fees and costs of bringing this action. PEI will

13    continue to incur such interest, fees and costs in amounts to be proven at trial.

14    　　55.    FIRST ADVANTAGE, and on information and belief ROES 1-20, in doing the

15    foregoing, acted with malice, fraud, and/or oppression and therefore punitive damages pursuant to

16    Civil Code §3294 are appropriate.

17    　　WHEREFORE, PEI prays for relief as set forth below.

18    　　　　　　**SIXTH CAUSE OF ACTION**

19    　　　　　　**FRAUD – FALSE PROMISE I**

20    　　　　　　**[All Defendants]**

21    　　56.    PEI repeats and re-alleges the allegations contained in paragraph 1 through 22,

22    inclusive, above and incorporates the same by reference as though set forth in fill herein.

23    　　57.    FIRST ADVANTAGE (directly and through its predecessor in interest EIS) made a

24    promise to PEI that it would not solicit from CCE certain business services and would not disclose

25    confidential and proprietary information. Those business services were the ones that PEI was

26    performing for CCE. The confidential and proprietary information was information, such as profit

27    margins and business methods that PEI of necessity would have to disclose to FIRST ADVANTAGE

28    so that it could perform its subcontracted services. FIRST ADVANTAGE made these promises in

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

-12-

[PROPOSED] THIRD AMENDED COUNTERCLAIM    C07-2424 SC

1   writing on or about March 19, 2002 and October 8, 2003, and verbally at other times throughout the

2   period of the business relationship between FIRST ADVANTAGE and PEI.  The writings dated

3   March 19, 2002 and October 8, 2003 are respectively attached as Exhibit A and Exhibit B.  The

4   verbal representations were made as follows:

5               a.    On August 22, 2003, Todd Oliver of FIRST ADVANTAGE represented to

6   Sandra James of PEI, at an in-person meeting at PEI's office in Walnut Creek, California, that FIRST

7   ADVANTAGE would not directly solicit any business from CCE.  This representation was made at

8   about the time FIRST ADVANTAGE acquired EIS.  At that time, Bart Valdez of FIRST

9   ADVANTAGE, who instructed Mr. Oliver to make those representations, knew them to be false.

10              b.    In approximately June 2005, Hayley Hitchcock represented during a

11  conference call with Sandra James, Nenita Reyes, and Chris Joaquin of PEI that FIRST

12  ADVANTAGE would never again disclose confidential and proprietary information to CCE.  She

13  made these representations because FIRST ADVANTAGE had just disclosed confidential pricing

14  information to CCE.  At the time she made these representations, FIRST ADVANTAGE knew them

15  to be false.

16       58.    The aforementioned promises made by FIRST ADVANTAGE was material to the

17  business transactions between FIRST ADVANTAGE and PEI, since they were one of the primary

18  reasons that PEI selected FIRST ADVANTAGE to perform the services.  Had FIRST

19  ADVANTAGE not made such promises, PEI would not have subcontracted any of the work to

20  FIRST ADVANTAGE and as a consequence FIRST ADVANTAGE would not have had an inside

21  position with CCE.  FIRST ADVANTAGE's inside position greatly facilitated its ability to entice

22  CCE away from PEI for certain business services.

23       59.    FIRST ADVANTAGE did not intend to perform the aforementioned promises when

24  they made them.  Rather, FIRST ADVANTAGE intended to solicit business services from CCE,

25  including the MVR's, as soon as it had showed CCE that it could adequately perform the services for

26  less cost.  FIRST ADVANTAGE would be able to do so, in part, because it would be cutting PEI

27  ("the middleman") out of the process.  Furthermore, FIRST ADVANTAGE intended to disclose

28  PEI's confidential and proprietary information, including pricing information and profit margins, as

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

-13-

[PROPOSED] THIRD AMENDED COUNTERCLAIM                    C07-2424 SC

1    soon as it could obtain some benefit or advantage from CCE by doing so.

2        60.    FIRST ADVANTAGE intended that PEI rely on the aforementioned promises.    It

3    intended such reliance so that PEI would subcontract the services to it.

4        61.    PEI actually relied on the aforementioned promise by FIRST ADVANTAGE by

5    subcontracting CCE business services, including MVR's, physicals, and drug testing, to FIRST

6    ADVANTAGE.  Had FIRST ADVANTAGE not made the aforementioned promises, PEI would not

7    have subcontracted the services to it.

8        62.    PEI reasonably relied on the aforementioned promises by FIRST ADVANTAGE since

9    non-solicitation agreements are common in these types of transactions and FIRST ADVANTAGE

10   represented itself to be an honest and ethical company.   PEI did not first learn that FIRST

11   ADVANTAGE breached its promise to not solicit business from CCE until after FIRST

12   ADVANTAGE convinced CCE to switch its business for the MVR's.   PEI did not first learn that

13   FIRST ADVANTAGE had solicited the other business services, including background checks, drug

14   screening, physicals, and driver qualifications, until 2005.   PEI did not first learn that FIRST

15   ADVANTAGE breached its promise to not disclose confidential and proprietary information until

16   2005.

17       63.    FIRST ADVANTAGE did not perform the aforementioned promises, in that sometime

18   in 2004 it solicited MVR's from CCE and at various times between 2004 and 2006 it disclosed

19   confidential and proprietary information, including profit margins and business methods, to CCE.

20       64.    PEI was harmed by FIRST ADVANTAGE's failure to perform its promise to not

21   solicit business since CCE failed to assign further MVR's to it.  PEI had a reasonable expectation that

22   had FIRST ADVANTAGE not solicited those services from CCE, CCE would have continued to

23   make such assignments to PEI so long as the services were performed satisfactorily.  PEI was harmed

24   by the solicitation of the other business services, because CCE stated that the friction generated

25   FIRST ADVANTAGE trying to take business away from PEI was a factor in CCE's decision to

26   terminate its contractual relationship with PEI in September 2006.   CCE was concerned that such

27   solicitation would cause disharmony, and therefore cause a reduction in the quality of the services

28   that it was being provided.   PEI was harmed by FIRST ADVANTAGE's disclosure of proprietary

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

-14-

[PROPOSED] THIRD AMENDED COUNTERCLAIM                    C07-2424 SC

1   and confidential information to CCE, since CCE used such data to obtain unduly favorable

2   concessions from PEI which had the effect of reducing, or entirely eliminating, PEI's profit margins.

3       65.   On information and belief, ROES 1-20 materially contributed to EIS / FIRST

4   ADVANTAGE's failure to comply with the aforementioned promise.

5       66.   As a direct and proximate result of FIRST ADVANTAGE's failure to perform the

6   aforementioned promise, PEI sustained monetary losses in an amount to be proven at trial, but in no

7   event less than $500,000.  Further, based on the aforementioned conduct, PEI has incurred attorneys'

8   fees and costs of bringing this action.  PEI will continue to incur such interest, fees and costs in

9   amounts to be proven at trial.

10      67.   FIRST ADVANTAGE, and on information and belief ROES 1-20, in doing the

11  foregoing, acted with malice, fraud, and/or oppression and therefore punitive damages pursuant to

12  Civil Code §3294 are appropriate.

13      68.   The period for the statute of limitations should be tolled to a date that is no earlier than

14  June 2005.  Until that time, PEI and FIRST ADVANTAGE had reached a verbal agreement that

15  FIRST ADVANTAGE would compensate PEI in the amount of $1.80 for each MVR it directly

16  performed for CCE.  PEI reasonably relied upon that agreement and therefore did not file the lawsuit.

17  The payments from FIRST ADVANTAGE did not cease until June 2005, and therefore that is the

18  earliest date that the limitations period should be deemed to have commenced for this cause of action.

19  It would be inequitable to allow FIRST ADVANTAGE to avoid the consequences of its false

20  promise because it made a further false promise to make periodic payments to compensate PEI for

21  the loss of the MVR's.

22      69.   The aforementioned verbal agreement does not operate to bar this cause of action, as

23  PEI was fraudulently induced to enter into it.  When FIRST ADVANTAGE promised to pay the

24  $1.80 per MVR, it had no intention of complying with the agreement in its entirety.  Nevertheless,

25  PEI actually and reasonably relied upon the representation and therefore accepted the agreement as a

26  reasonable resolution of the dispute.  FIRST ADVANTAGE's fraudulent misrepresentation as to its

27  intent to make the payments permits PEI to enforce the agreement and sue for breach of contact or, at

28  its sole option, to rescind the agreement and sue for fraud.  PEI will make such an election after the

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

-15-

[PROPOSED] THIRD AMENDED COUNTERCLAIM                    C07-2424 SC

1    judgment is rendered after trial.

2         70.     Even if the statute of limitations is not tolled by the existence of the verbal agreement,

3    the statute of limitations only applies to disclosures that PEI learned about more than three years

4    before the filing of this lawsuit on June 22, 2007.  It did not learn of such disclosures as of that date.

5    PEI did not, and reasonably could not, learn of FIRST ADVANTAGE's disclosure of confidential

6    and proprietary information, including but not limited to disclosure of profit margin information, until

7    on or after June 22, 2004.

8         WHEREFORE, PEI prays for relief as set forth below.

9    **<u>SEVENTH CAUSE OF ACTION</u>**

10   **<u>FRAUD – FALSE PROMISE II</u>**

11   **[All Defendants]**

12        71.     PEI repeats and re-alleges the allegations contained in paragraph 1 through 22,

13   inclusive, above and incorporates the same by reference as though set forth in fill herein.

14        72.     In or about October 2006, FIRST ADVANTAGE promised that all services it was

15   then performing for CCE would be billed through PEI.  The representation was made by Julie Waters

16   of FIRST ADVANTAGE in an e-mail to Sandra James dated November 10, 2006, wherein she

17   agreed to resume the normal practice of billing for services through PEI, thus allowing PEI to collect

18   a profit on the services, if PEI paid for all outstanding invoices.  FIRST ADVANTAGE made this

19   promise because it wanted to continue a business relationship with PEI through the time that PEI still

20   serviced CCE, which was through February 2007.  FIRST ADVANTAGE originally obtained the

21   work through PEI, and the regular practice of billing through PEI was in consideration of the fact that

22   PEI had the contract with CCE and had the right to select its vendors.

23        73.     FIRST ADVANTAGE never intended to perform the aforementioned promise.

24   FIRST ADVANTAGE had no intention at any time of having any of the billings run through PEI,

25   except for the one month where PEI would make the outstanding payment.  The promise was only

26   made so PEI would forfeit its legal rights to set-off amounts it allegedly owed to FIRST

27   ADVANTAGE, due to FIRST ADVANTAGE's violation of the non-solicitation agreements set forth

28   at Exhibit A and Exhibit B.

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

-16-

[PROPOSED] THIRD AMENDED COUNTERCLAIM     C07-2424 SC

74.     FIRST ADVANTAGE intended PEI to rely upon the aforementioned promise, so that it would continue to make payments to FIRST ADVANTAGE on outstanding billings.

75.     PEI <u>actually relied</u> upon the aforementioned promise by tendering payment on some outstanding billings.  PEI would have been legally entitled to not pay those billings, to reflect a set-off on amounts that FIRST ADVANTAGE owed for violations of the non-solicitation agreements set forth at Exhibit A and Exhibit B, and because FIRST ADVANTAGE did not satisfactorily perform services it had been subcontracted to perform.

76.     PEI <u>justifiably relied</u> upon the aforementioned promise, since FIRST ADVANTAGE represented itself as being an honest and ethical company and had at least attempted, on some matters, to compensate for its past transgressions.   PEI further <u>justifiably relied</u> upon the aforementioned promise because FIRST ADVANTAGE had a demonstrable interest in continuing the business relationship, if PEI continued to receive work from CCE, and therefore could be reasonably expected to cease and desist any further conduct that would damage the relationship between PEI and FIRST ADVANTAGE.

77.     FIRST ADVANTAGE did not perform the promise, and did not allow any billings to be run through PEI.  On information and belief, ROES 1-20 materially contributed to this non-performance.

78.     PEI was harmed by the aforementioned failure to perform the promise, in that it paid FIRST ADVANTAGE certain amounts of money, to be established at trial, that FIRST ADVANTAGE was not legally entitled to receive or that PEI could have applied to set-off damages. The set-off would be appropriate in order to remedy the amount of losses that PEI sustained from FIRST ADVANTAGE's violation of its agreement to not solicit business or disclose confidential and proprietary information.

79.     As a direct and proximate result of FIRST ADVANTAGE's failure to perform the aforementioned promise, PEI sustained monetary losses in an amount to be proven at trial, but is approximately $800,000.  Further, based on the aforementioned conduct, PEI has incurred attorneys' fees and costs of bringing this action.  PEI will continue to incur such interest, fees and costs in amounts to be proven at trial.

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

80.     FIRST ADVANTAGE, and on information and belief ROES 1-20, in doing the foregoing, acted with malice, fraud, and/or oppression and therefore punitive damages pursuant to Civil Code §3294 are appropriate.

WHEREFORE, PEI prays for relief as set forth below.

### EIGHTH CAUSE OF ACTION

### ACCOUNT STATED

### [FIRST ADVANTAGE ONLY]

81.     PEI repeats and re-alleges the allegations contained in paragraph 1 through 22, inclusive, above and incorporates the same by reference as though set forth in fill herein.

82.     Within the last two years, in Contra Costa County, California, an account was stated in writing by and between PEI and FIRST ADVANTAGE wherein it was acknowledged that FIRST ADVANTAGE was indebted to PEI in the amount of $1,023,683.37.  This indebtedness represented (1) MVR's that FIRST ADVANTAGE did for CCE's, (2) losses attributable to FIRST ADVANTAGE not living up to its promise to allow billings for certain services to be done through PEI, and (3) losses caused by PEI due to the termination its contract with CCE.  A true and correct copy of the evidence of this indebtedness is attached as Exhibit E.

83.     Although demand has been made on FIRST ADVANTAGE, no part of said sum has been paid, and there is now due, owing and unpaid to PEI from FIRST ADVANTAGE, the sum of at least $1,023,683.37, plus interest on that amount at the legal rate from and after the date payment was due.

84.     PEI has incurred and will continue to incur attorneys' fees and costs in connection with this matter in an amount to be determined at trial.  PEI is entitled to recover its attorneys' fees and costs incurred pursuant to law, including under California Civil Code section 1717.5.

WHEREFORE, PEI prays for relief as set forth below.

### NINTH CAUSE OF ACTION

### OPEN BOOK ACCOUNT (COMMON COUNT)

### [FIRST ADVANTAGE ONLY]

85.     PEI repeats and re-alleges the allegations contained in paragraph 1 through 22,

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

1    inclusive, above and incorporates the same by reference as though set forth in fill herein.

2        86.    PEI and FIRST ADVANTAGE had financial transactions between them arising from

3    the CCE business services.

4        87.    PEI kept an account of the debits and credits involved in the financial transactions.

5        88.    FIRST ADVANTAGE owes money on the account in the amount of $1,023,683.37,

6    plus interest on that amount at the legal rate from and after the date payment was due.

7        89.    PEI has incurred and will continue to incur attorneys' fees and costs in connection

8    with this matter in an amount to be determined at trial.  PEI is entitled to recover its attorneys' fees

9    and costs incurred pursuant to law, including under California Civil Code section 1717.5.

10       WHEREFORE, PEI prays for relief as set forth below.

11                        **TENTH CAUSE OF ACTION**

12                      **FRAUD – FALSE PROMISE III**

13                           **[All Defendants]**

14       90.    PEI repeats and re-alleges the allegations contained in paragraph 1 through 22, and 33

15   through 35, inclusive, above and incorporates the same by reference as though set forth in fill herein.

16       91.    The representation that FADV would pay PEI $1.80 for <u>every</u> MVR that it performed

17   for CCE was made by Bart Valdez, an officer authorized to make such representations by FADV.

18   Bart Valdez made the promise during a telephone conference call on April 27, 2004 with Terence

19   Daniel Doyle, an attorney representing PEI.  Mr. Doyle confirmed the promise in the letter dated July

20   2, 2004, which is attached as **Exhibit C**.

21       92.    When he made the representation that FADV would pay PEI $1.80 for every MVR it

22   performed for CCE, Bart Valdez knew that the representation was false or he had a reckless disregard

23   for the truth of the statement.  At the time, Bart Valdez knew that FADV only intended to make

24   payments on <u>some</u> of the MVR's it performed.  At the time, Bart Valdez also knew that FADV

25   intended to terminate the payments to FADV even though it would continue to perform the services

26   directly for CCE.  Neither Sandra James, nor any other employee of PEI, knew of Bart Valdez's true

27   intentions.

28       93.    When Bart Valdez made the aforementioned representations, they were made with the

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

-19-

[PROPOSED] THIRD AMENDED COUNTERCLAIM                    C07-2424 SC

1    specific intent to deceive PEI into believing that FADV intended to make-up for the damage that was

2    caused by the solicitation of the MVR services from CCE.  Bart Valdez's intent was to stop PEI from

3    terminating its business relationship with FADV and filing a lawsuit to recover compensation for the

4    underlying fraudulent representation.  The underlying fraudulent representation was the promise to

5    not solicit any business services from CCE.  By making the false representation, Bart Valdez

6    intended to induce the reliance set fort in paragraph 94.

7         94.    PEI actually relied upon the aforementioned representation by not filing a lawsuit to

8    recover damages for the underlying fraudulent representation.  Had PEI known that FADV did not

9    intend to honor its promise to pay $1.80 for every single MVR it ever did for CCE, it would have

10   filed a lawsuit for breach of contract and fraud within the time period of the Statute of Limitations.

11   PEI also would have terminated its business relationship with FADV.  If PEI had terminated its

12   business relationship with FADV in April 2004, CCE would never have terminated its business

13   relationship with PEI.

14        95.    PEI's reliance upon FADV's representation that it would pay $1.80 for every MVR it

15   performed for CCE was justified.  At the time, PEI believed that FADV was a reputable company

16   that truly regretted its wrongful solicitation of the MVR services from CCE.  It was not until the fall

17   of 2006 that PEI learned that FADV's intention all along had been to steal the entire CCE account,

18   and that FADV never intended to make full payment on the MVR's.

19        96.    The aforementioned representation was material to PEI since it was the primary reason

20   that it did not immediately terminate its business relationship with FADV and file a lawsuit for the

21   underlying fraudulent representation.

22        97.    PEI was damaged by the aforementioned representations as follows:  (1) this Court

23   found that it did not file its lawsuit for the underlying fraudulent representation until after the Statute

24   of Limitations had expired and (2) it did not terminate its business relationship with FADV until the

25   fall of 2006.

26        98.    The aforementioned representation directly and proximately caused the damages as

27   follows:  (1) PEI would have timely filed its lawsuit for the underlying fraud claim within the Statute

28   of Limitations and would have successfully recovered both compensatory and punitive damages and

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

[PROPOSED] THIRD AMENDED COUNTERCLAIM                    C07-2424 SC

1   (2) CCE would not have terminated its business relationship with PEI in late 2006 since FADV

2   would not have had the chance to further meddle in the PEI-FADV relationship.  The combined

3   damages will be proven at trial, but are at least $2 million.

4        99.    On information and belief, ROES 1-20 materially contributed to FADV's

5   aforementioned false representation.

6        100.    FIRST ADVANTAGE, and on information and belief ROES 1-20, in doing the

7   foregoing, acted with malice, fraud, and/or oppression and therefore punitive damages pursuant to

8   Civil Code §3294 are appropriate.

9        WHEREFORE, PEI prays for relief as set forth below.

10                   **ELEVENTH CAUSE OF ACTION**

11        **VIOLATION OF CALIFORNIA UNIFORM TRADE SECRETS ACT**

12                        **[ALL DEFENDANTS]**

13        101.    PEI repeats and re-alleges the allegations contained in paragraph 1 through 22,

14   inclusive, above and incorporates the same by reference as though set forth in fill herein.

15        102.    In the course of its business, PEI maintains a number of trade secrets which are

16   protectable under California law.  Among such trade secrets that PEI maintains are the costs of

17   providing services and the profit margins it earns on its services to its customers.  The cost

18   information and profit margin information has independent economic value, actual or potential, to

19   customers because if a customer learns of such information it can insist upon a reduced rate for the

20   services because it knows the precise cost incurred to supply the service or if it believes the profit

21   margin is excessive and it has the market power to take its business elsewhere without a concession.

22   PEI took reasonable steps to maintain the secrecy of such cost information and profit margins by (1)

23   only disclosing such information to persons with a "need to know" it for its business purposes and (2)

24   requiring that any third parties who receive such information sign non-disclosure agreements.  The

25   cost information and profit margins is information that is not generally known in the industry, as it

26   represents internal accounting data.

27        103.    As part of its business relationship, PEI's cost information and profit margins on the

28   CCE services was disclosed to FADV.  FADV had agreed to maintain the secrecy of such

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX:  (925) 256-0679

-21-

[PROPOSED] THIRD AMENDED COUNTERCLAIM                    C07-2424 SC

1  information in the non-disclosure agreements set forth at **Exhibits A and B**.

2  104.  Sometime in 2005, FADV wrongfully disclosed PEI's cost information and profit

3  margins on the CCE account to representatives of CCE.  Such disclosure was in knowing violation of

4  the written non-disclosure agreements attached as **Exhibits A and B** and therefore also a violation of

5  the California Uniform Trade Secrets Act, specifically Civil Code §3426.1(b)(2)(B)(ii)..  Until 2005,

6  FADV had not disclosed PEI's profit margins to CCE, at least to PEI's knowledge and belief.  At no

7  time did anyone at PEI consent, expressly or implicitly, to FADV's disclosure of the cost information

8  and profit margins to CCE.

9  105.  FADV's misappropriation (improper disclosure) of the trade secrets (cost information

10  and profit margins) damaged PEI, because CCE used the information to insist that PEI reduce its

11  profit margins on the drug testing services.  The reduction in the profits was $5 per drug test.

12  106.  As a direct and proximate result of the aforementioned improper disclosure of trade

13  secrets, PEI was damaged in an amount to be proven at trial.

14  107.  In addition, PEI seeks recoupment of all benefits that PEI gained through its direct

15  dealings with CCE, since such benefits were at least partially obtained because it disclosed trade

16  secret information to CCE.  FADV was therefore unjustly enriched, and PEI is entitled to recover for

17  that unjust enrichment pursuant to Civil Code §3426.3(a).

18  108.  FADV's conduct in misappropriating the aforementioned trade secrets was willful and

19  malicious, and therefore exemplary damages in the amount of two times the award for actual

20  damages and unjust enrichment should be imposed, pursuant to Civil Code §3426.3(c).  Furthermore,

21  PEI is entitled to recovery of its reasonable attorneys' fees pursuant to Civil Code §3426.4.

22  109.  ROES 1-20 materially contributed to the disclosure of the cost information and profit

23  margins and therefore are also liable for the violation of the California Uniform Trade Secrets Act.

24  WHEREFORE, PEI prays for relief as set forth below.

25  ///

26  ///

27  ///

28  ///

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

-22-

[PROPOSED] THIRD AMENDED COUNTERCLAIM    C07-2424 SC

1

**PRAYER**

2      WHEREFORE, PEI prays for judgment against FIRST ADVANTAGE and ROES 1-20 as

3  follows:

4          1.      For compensatory damages in the sum of no less than $5 million;

5          2.      For punitive damages pursuant to Civil Code §3294;

6          3.      For disgorgement of profits from FIRST ADVANTAGE;

7          4.      For restitution from FIRST ADVANTAGE;

8          5.      For all amounts that FIRST ADVANTAGE was unjustly enriched because of its

9  improper disclosure of trade secrets;

10         6.      For two times the amount of actual damages and unjust enrichment, as exemplary

11  damages for the improper disclosure of trade secrets, pursuant to Civil Code §3426.3(c);

12         7.      For interest thereon as authorized by law;

13         8.      For reasonable attorneys' fees according to proof as authorized by Civil Code §3426.4

14  and other law;

15         9.      For costs of suit incurred herein; and

16         10.     For such other and further relief as the Court deems just and proper.

17

**DEMAND FOR JURY TRIAL**

18      Pursuant to Federal Rule of Civil Procedure 38 and any other applicable law or rules,

19  PRIVATE EYES, INC. hereby demands trial by jury of all issues so triable.

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

-23-

[PROPOSED] THIRD AMENDED COUNTERCLAIM                                    C07-2424 SC

1

**PRESERVATION OF RIGHTS**

2        PRIVATE EYES, INC. acknowledges that on March 5, 2008 the Court issued an order

3 dismissing with prejudice some of the claims that are set forth above. PRIVATE EYES, INC. has not

4 removed those claims from this amended cross-complaint because current Ninth Circuit case law

5 holds that when a party amends a pleading it may not appeal the dismissal of any claims in the prior

6 pleading.   <u>See</u>, e.g., <u>Marx v. Loral Corporation</u>, 87 F.3d 1049, 1055-56 (9th Cir. 1994).   The

7 inclusions of the claims that have been dismissed is solely intended to preserve the appellate options

8 of PRIVATE EYES, INC. and is not meant to convey any disobedience of the Court's March 8, 2008

9 order.

10 DATED:  May 15, 2008                  LAW OFFICES OF MARK R. MITTELMAN

11

12                           /s/       Mark R. Mittelman

13                           Mark R. Mittelman
Paul A. Kanter

14                           Attorneys for Defendant / Counter-Claimant / Cross-Complainant

15                           PRIVATE EYES, INC.

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

-24-