3061-0001

Mark R. Mittelman (SBN 96598)
Paul A. Kanter (SBN194596)
LAW OFFICES OF MARK R. MITTELMAN
A Professional Corporation
190 North Wiget Lane, Suite 101
Walnut Creek, California 94598
Telephone: (925) 256-0677
Facsimile:  (925) 256-0679
E-mail: mmittelman@mittellaw.com, pkanter@mittellaw.com

Attorneys for Defendant
PRIVATE EYES, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| FIRST ADVANTAGE BACKGROUND SERVICES CORP., a Florida corporation,<br><br>　　　　Plaintiff,<br><br>　　　　vs.<br><br>PRIVATE EYES, INC., a California corporation, DOES 1-10,<br><br>　　　　Defendants. | Case No. C07-2424 SC<br><br>**DEFENDANT / COUNTER-CLAIMANT PRIVATE EYES, INC.'S OPPOSITION TO PLAINTIFF / COUNTER-DEFENDANT FIRST ADVANTAGE BACKGROUND SERVICE CORPORATION'S MOTION TO DISMISS AND MOTION TO STRIKE PORTIONS OF SECOND AMENDED COUNTER-CLAIM**<br>**[F.R.C.P. 12(b)(6) and 12(f)]** |
| PRIVATE EYES, INC., a California corporation<br><br>　　　　Counterclaimant and Cross-Complainant,<br><br>　　　　vs.<br><br>FIRST ADVANTAGE BACKGROUND SERVICES CORP., a Florida corporation;<br><br>　　　　Counter-defendant,<br><br>and<br><br>ROES 1-20,<br><br>　　　　Cross-Defendants. | DATE:　　June 13, 2008<br>TIME:　　10:00 a.m.<br>DEPT:　　Courtroom 1<br>JUDGE:　　Hon. Samuel Conti<br><br><br><br><br><br><br><br><br><br>Trial Date:　　December 8, 2008 |

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

DEFENDANT/COUNTERCLAIMANT'S OPPOSITION TO PLAINTIFF/COUNTER-DEFENDANT'S MOTION TO DISMISS AND MOTION TO STRIKE PORTIONS OF SECOND AMENDED COUNTER-CLAIM

# TABLE OF CONTENTS                                                                 Page(s)

I.   STATEMENT OF ISSUES TO BE DECIDED ................................................................... 1

II.  STATEMENT OF FACTS AND PROCEDURAL HISTORY............................................. 1

III. ARGUMENT ..................................................................................................................... 2

    A.   PEI IS ENTITLED TO PRESERVE ITS APPELLATE RIGHTS, BUT DOES NOT OPPOSE AN ORDER THAT APPLIES THE PRIOR ORDER TO THE CURRENT CLAIMS................................................................................................ 2

    B.   PEI HAS ADEQUATELY PLED A CLAIM FOR INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE BASED ON THE INDEPENDENT WRONGFUL ACT OF TRADE LIBEL........... 5

       1.   The Amendments to the Fifth Cause of Action Were Allowed by this Court. ........................................................................................................ 5

       2.   PEI has adequately pleaded elements of Trade Libel, and thus it has a proper basis to assert that FADV engaged in independently wrongful conduct. ................................................................................................... 6

    C.   COURT HAS NO BASIS TO STRIKE ALLEGATIONS IN FIRST AND SECOND CAUSES OF ACTION FOR BREACH OF CONTRACT. ....................... 9

IV. CONCLUSION................................................................................................................ 11

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

-i-

DEFENDANT/COUNTERCLAIMANT'S OPPOSITION TO PLAINTIFF/COUNTER-DEFENDANT'S MOTION TO DISMISS AND MOTION TO STRIKE PORTIONS OF SECOND AMENDED COUNTER-CLAIM

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Atlantic Mutual Insurance Company v. J. Lamb, Inc.
  100 Cal.App.4th 1017 (2002) ...........................................................................................6, 8

Barnes-Hind v. Superior Court,
  181 Cal.App.3d 377 (1986) ..................................................................................................7

Colaprico v. Sun Microsystems, Inc.,
  758 F.Supp. 1335 (N.D.Cal. 1991) .....................................................................................10

Culinary & Service Employees Union, AFL-CIO Local 555 v.
  Hawaii Employment Benefit Administration,
  688 F.2d 1228 (9th Cir. 1982) ..............................................................................................9

Davis v. TXO Production Corp.,
  929 F.2d 1515 (10th Cir. 1991) ............................................................................................2

Global Telemedia International, Inc. v. Doe 1
  132 F.Supp.2d 1261 (C.D.Cal. 2001) ...................................................................................6

Guess, Inc. v. Superior Court,
  176 Cal.App.3d 473 (1985) ..............................................................................................6, 7

Haley v. Casa Del Rey Homeowners Association,
  153 Cal.App.4th 863 (2007) .................................................................................................8

Krinsky v. DOE 6,
  159 Cal.App.4th 1154 (2007) ...............................................................................................8

Leonardini v. Shell Oil Co.,
  216 Cal.App.3d 547 (1989) ..................................................................................................8

Lombardo v. Huysentruyt,
  91 Cal.App.4th 656, 665-66 (2001) .....................................................................................9

Marx v. Loral Corporation,
  87 F.3d 1049 (9th Cir. 1994) ................................................................................................2

Melaleuca, Inc. v. Clark,
  66 Cal.App.4th 1344 (1998) .................................................................................................7

Miller v. Continental Airlines,
  WL 21557678 (2003) ...........................................................................................................4

New.net v. Lavasoft,
  356 F.Supp.2d 1090 (C.D.Cal. 2004) ...................................................................................8

Nichols v. Great American Ins. Companies
  169 Cal.App.3d 766 (1985) ..................................................................................................6

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

-ii-
DEFENDANT/COUNTERCLAIMANT'S OPPOSITION TO PLAINTIFF/COUNTER-DEFENDANT'S
MOTION TO DISMISS AND MOTION TO STRIKE PORTIONS OF SECOND AMENDED
COUNTER-CLAIM

**TABLE OF AUTHORITIES: (continued)**                                                           **Page(s)**

OptinRealBig.Com LLC v. Ironport Systems, Inc.,
   323 F.Supp.2d 1037 (N.D.Cal. 2004) ..................................................................................6

Polygram Records, Inc. v. Superior Court
   170 Cal.App.3d 543 (1985) ...................................................................................................8

Schering Corp. v. First DataBank Inc.,
   2007 WL 1176627 (N.D.Cal. Apr. 20, 2007) .......................................................................8

USS-POSCO Industries v. Contra Costa County Building & Construction Trades Council,
   AFL-CIO, 31 F.3d 800 (9th Cir. 1994)..............................................................................3, 4

**Statutes**

28 U.S.C. §1292(b) ........................................................................................................................4

Defendant / Counter-Claimant PRIVATE EYES, INC. hereby respectfully submits the following memorandum in opposition to Plaintiff / Counter-Defendant FIRST ADVANTAGE BACKGROUND SERVICE CORPORATION'S Motion to Dismiss and Motion to Strike portions of the Second Amended Counter-Claim:

## I. STATEMENT OF ISSUES TO BE DECIDED

1. Whether PEI is entitled to re-plead causes of action that have been dismissed if the only reason it has done so is to preserve the claims for appeal?

2. Whether PEI has adequately pled a claim for Intentional Interference with Prospective Economic Advantage based on the independent wrongful conduct of trade libel?

3. Whether the Court should strike portions of claims in other causes of action just because the Court dismissed certain causes of action?

## II. STATEMENT OF FACTS AND PROCEDURAL HISTORY

As PRIVATE EYES, INC.'s Counter-Claim has now come before this Court twice, PEI will not set forth an extensive recitation of the facts of the Counter-Claim. In its March 5, 2008 order, this Court held as follows:

1. That PEI had not pled sufficient facts to support its Fifth Cause of Action for Intentional Interference with Prospective Economic Advantage. This Court did allow leave to amend to provide facts to support its claim for trade libel. The Court precluded PEI from alleging a "new wrongful act as a basis for this claim."

2. That PEI's Sixth Cause of Action for Fraud was dismissed with prejudice, except to the extent that "the confidential and proprietary information in question is not a trade secret, as defined in CUTSA."

3. That PEI's Seventh Cause of Action for Fraud was dismissed with prejudice.

PEI's Second Amended Counter-Claim includes new factual allegations to support its claim for trade libel. Specifically, the SACC alleges that on June 13, 2005, at 11:00 AM EST, Steve Flack of FADV told Teresa Higdon of CCE that Sandra James, in her capacity as President of Private Eyes, Inc., "is a liar and cannot be trusted." The SACC further alleges that this statement was made in the context of the discounts that FADV provided to PEI. Specifically, that Mr. Flack falsely reported to

- 1 -
DEFENDANT/COUNTERCLAIMANT'S OPPOSITION TO PLAINTIFF/COUNTER-DEFENDANT'S MOTION TO DISMISS AND MOTION TO STRIKE PORTIONS OF SECOND AMENDED COUNTER-CLAIM

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

Ms. Higdon that Sandra James agreed to pass along all discounts to CCE. The SACC makes it crystal clear that the representations were made solely in the context of Ms. James' capacity as president of PEI. The SACC alleges that the statement that Sandra James "is a liar and cannot be trusted" imputed dishonesty to PEI and as a direct and proximate cause of the statement CCE terminated its business relationship with PEI. The SACC specifically alleges that PEI sustained damages in the amount of $1.8 million as a result of the statement. The SACC specifically notes that is a sub-set of the total damages that PEI has sustained as a result of FADV's conduct.

In its motions, FADV seeks an order striking the claims that have been re-pleaded and dismissing the Fifth Cause of Action in its entirety.

### III. ARGUMENT

#### A. PEI IS ENTITLED TO PRESERVE ITS APPELLATE RIGHTS, BUT DOES NOT OPPOSE AN ORDER THAT APPLIES THE PRIOR ORDER TO THE CURRENT CLAIMS.

FADV is seeking an order striking and/or dismissing portions of the Fifth Cause of Action and all of the Sixth and Seventh Causes of Action. As an initial matter, it would be improper to dismiss the entire Sixth Cause of Action since the Court only dismissed that claim to the extent that it was based on trade secrets. The Court expressly allowed the claim to proceed if it was not based on a trade secret. Accordingly, the Court should deny the Motion to Dismiss the Sixth Cause of Action for that reason alone.

With respect to all claims that FADV seeks to dismiss / strike for being in violation of the March 6, 2008, that would not be a fair and just result given the situation that PEI was faced with. The Court's order expressly allowed PEI the opportunity to amend its Fifth Cause of Action to set forth additional facts showing the existence of trade libel. In most circuits, PEI could have deleted the claims that had been dismissed with prejudice and nevertheless appealed the dismissal when there was a final judgment. Cf. Davis v. TXO Production Corp., 929 F.2d 1515, 1517-18 (10th Cir. 1991) (rejecting the Ninth Circuit's strict waiver rule as "formalistic" and a "trap for unsuspecting plaintiffs"). However, the Ninth Circuit has adopted a strict waiver rule that a party may not appeal the dismissal of a cause of action that is not included in the operative pleading. See, e.g., Marx v. Loral Corporation, 87 F.3d 1049, 1055-56 (9th Cir. 1994). This strict waiver rule, of course, created a

-2-

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

DEFENDANT/COUNTER-CLAIMANT'S OPPOSITION TO PLAINTIFF/COUNTER-DEFENDANT'S MOTION TO DISMISS AND MOTION TO STRIKE PORTIONS OF SECOND AMENDED COUNTER-CLAIM

1  dilemma for PEI. PEI could abstain from amending the Fifth Cause of Action, but then it would be
2  deprived of its opportunity to supply the additional facts that the Court requested in its order.
3  Alternatively, PEI could amend the Fifth Cause of Action and delete all claims that the Court
4  dismissed, but then it would be forever barred from appealing the dismissal of those claims. PEI did
5  not believe that it was compelled to make such a Hobson's choice. Rather, PEI followed the
6  example of the plaintiff in USS-POSCO Industries v. Contra Costa County Building & Construction
7  Trades Council, AFL-CIO, 31 F.3d 800 (9th Cir. 1994). The plaintiff in USS-POSCO had the same
8  dilemma that faces PEI. The district court dismissed some of the claims on summary judgment with
9  prejudice, but allowed leave to amend others. Eventually, the case reached the Ninth Circuit. The
10  Ninth Circuit ultimately found that the waiver rule does not apply to claims dismissed on summary
11  judgment and did not affect the plaintiff's claims. However, the Court notably did not criticize
12  Plaintiff's counsel and in fact specifically stated that "Counsel were not required to risk forfeiting
13  their client's right to appeal in order to avoid sanctions." Id. at 811-12. By so stating, the Ninth
14  Circuit strongly suggested that the safest way to avoid the waiver rule is to re-plead the dismissed
15  causes of action. (Otherwise, the Ninth Circuit would have affirmed the sanctions award). PEI
16  therefore re-pleaded all of the claims from the First Amended Counter-Claim, but noted at paragraph
17  20 its reasons for doing so.

18  PEI does not assert any right to ignore this Court's March 5, 2008 order. Rather, PEI's sole
19  goal is to ensure that its right to appeal the dismissed claims is preserved. Accordingly, PEI will
20  accept an order that applies the March 5, 2008 order to the Second Amended Counter-Claim. In that
21  way, FADV will not have to respond to the allegations and PEI's right to appeal the dismissal will be
22  preserved.

23  It is not clear exactly what FADV seeks in its motion. If it only seeks application of the
24  March 5, 2008 order to the Second Amended Counter-Claim, then PEI does not oppose that request.
25  If it agrees that the waiver rule does not apply to claims like this one (as it appears to argue), then it
26  should have no problem PEI's request that the Court simply order that the March 5, 2008 order

27
28

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

-3-
DEFENDANT/COUNTER-CLAIMANT'S OPPOSITION TO PLAINTIFF/COUNTER-DEFENDANT'S
MOTION TO DISMISS AND MOTION TO STRIKE PORTIONS OF SECOND AMENDED
COUNTER-CLAIM

applies to the Second Amended Counter-Claim.[1] If FADV's motion seeks to eliminate the claims in such a way that an appeal may not be brought, that would not be appropriate. As the Ninth Circuit strongly suggested in USS-POSCO, the waiver rule is not meant to preclude legitimate appeals. Rather, the Ninth Circuit's waiver rule seems to be designed to ensure that only one pleading is before the Court.

FADV's off-handed comments that PEI could have requested reconsideration or sought interlocutory review notably sets forth no facts or law that would permit PEI to do so. Motions for Reconsideration usually require (1) a material difference in facts or law from what was in the original motion, (2) emergence of new facts or law since the order, or (3) a manifest failure by the district court to consider material facts or dispositive legal arguments in the motion papers. See N.D.Cal. Local Rule 7-9(b). PEI does not contend that any of these circumstances are present, and thus would not even have a good faith basis to file a motion under Rule 7-9(a) for leave to file a motion for reconsideration. Interlocutory review is not generally available for dismissals of causes of action when there are other claims in the case, and PEI does not believe that grounds for interlocutory review apply here.[2]

Since PEI only seeks to preserve its rights to appeal the dismissal of the claims in the First Amended Counter-Claim, and does not seek to "evade" this Court's orders, it only seeks an order that applies the March 5, 2008 order to the Second Amended Counter-Claim.

---

[1] PEI would not be surprised if on appeal FADV were to argue that the Ninth Circuit's waiver rule applies to claims dismissed with prejudice and that the district courts that have suggested otherwise are incorrect. Cf. Miller v. Continental Airlines, 2003 WL 21557678 (seeming to suggest that only dismissals with leave to amend are subject to the Ninth Circuit's waiver rule, but not making any such holding). That is why PEI cannot accept at face value FADV's statement at this stage that the waiver rule would not apply to the dismissed claims.

[2] The only potential basis for interlocutory review would be 28 U.S.C. §1292(b), pertaining to orders on a "controlling question of law as to which there is a substantial ground for difference of opinion," but this Court has provided no indication that it would certify the dismissals for such review and PEI does not believe in good faith that the order meets this standard. If this Court were to certify the review, then perhaps the SACC can be held in abeyance pending appellate review of the dismissals.

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

**B. PEI HAS ADEQUATELY PLED A CLAIM FOR INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE BASED ON THE INDEPENDENT WRONGFUL ACT OF TRADE LIBEL.**

**1. The Amendments to the Fifth Cause of Action Were Allowed by this Court.**

In this Court's March 5, 2008, it dismissed the Fifth Cause of Action for Intentional Interference with Prospective Economic Advantage because there insufficient facts showing the existence of trade libel. PEI had, in part, relied upon trade libel to support its cause of action. As one example of trade libel, PEI alleged that FADV accused PEI of incompetence. The Court stated in its order that PEI was permitted to amend its pleading within thirty days. The only restriction on the leave to amend was that PEI "may not allege <u>a new wrongful act</u> as a basis for this claim." (Emphasis added).

PEI's Second Amended Counter-Claim sets forth detailed facts concerning FADV's wrongful act of trade libel. Specifically, PEI alleges that Steve Flack of FADV told Teresa Higdon of CCE that Sandra James, President of PEI, "is a liar and cannot be trusted." FADV argues that this Court did not allow the leave to amend to extent beyond acts of incompetence, and therefore the claim should be dismissed for that reason alone. However, the March 5, 2008 order did not limit the leave to amend to acts of incompetence. <u>It limited leave to amend to the wrongful act of trade libel.</u> While PEI possibly should have pled in the First Amended Counter-Claim that FADV accused it of "dishonesty" (instead of "incompetence"), that is no reason to deny PEI the opportunity to amend its pleadings to state a valid claim. Leave to amend must be liberally granted if the party can set forth a viable cause of action, even if the prior pleading used possibly inaccurate terminology. Upon reviewing all of the elements that this Court identified in its order, PEI determined that its strongest case for trade libel was allegations of dishonesty. Given the scope of the leave to amend, PEI believes it has the right to plead all facts that would establish trade libel, regardless of what it had generally pled in its prior pleading. And despite FADV's dictionary quotes of the words "incompetence" and "dishonesty," the two terms are not <u>necessarily</u> mutually exclusive. A person who is dishonest in his business dealings can certainly be said to be "incompetent," since the work to be performed will not be done in a satisfactory manner to the client. Incompetence does not always

-5-

DEFENDANT/COUNTER-CLAIMANT'S OPPOSITION TO PLAINTIFF/COUNTER-DEFENDANT'S MOTION TO DISMISS AND MOTION TO STRIKE PORTIONS OF SECOND AMENDED COUNTER-CLAIM

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

1  equate to negligence. The Court should therefore not dismiss the IIPEA claim based on trade libel

2  with prejudice, simply because the FACC did not use precise terminology.

### 2. PEI has adequately pleaded elements of Trade Libel, and thus it has a proper basis to assert that FADV engaged in independently wrongful conduct.

FADV asserts that trade libel is limited to allegations about the quality of a product. While the term "trade libel" may have originated with such claims, <u>it is not limited to them</u>. The Courts have expanded the cause of action for trade libel to cover all types of disparaging comments about another business. In <u>Atlantic Mutual Insurance Company v. J. Lamb, Inc.</u> 100 Cal.App.4th 1017, 1035 (2002), the California Court of Appeal summarized the tort as follows:

> "The term "**trade libel**" was defined in *Nichols v. Great American Ins. Companies* (1985) 169 Cal.App.3d 766, 215 Cal.Rptr. 416, where the court discussed **trade libel** in depth. As the *Nichols* court explained it: " '**Trade libel** is defined as an intentional disparagement of the quality of property, which results in pecuniary damage to plaintiff.... " *Injurious falsehood, or disparagement, then, may consist of the publication of matter derogatory to the plaintiff's title to his property, or its quality, or to his business in general,....* [T]he plaintiff must prove in all cases that the publication has played a material and substantial part inducing others not to deal with him, and that as a result he has suffered special damages .... Usually, ... the damages claimed have consisted of loss of prospective contracts with the plaintiff's customers." (Emphasis added).

<u>Global Telemedia International, Inc. v. Doe 1</u>, 132 F.Supp.2d 1261 (C.D.Cal. 2001), <u>cited by FADV</u>, supports a broad definition of trade libel. The Court noted that trade libel "requires that Reader and King [the defendants] published a false statement which induced others not to deal with Plaintiffs, knowing it was false or acting with reckless disregard of its falsity, and caused Plaintiff monetary damages. <u>Id.</u> at 1266. The Court went on to find that when the parties are business competitors, trade libel can be established through comments that imply dishonesty or incompetence. <u>Id.</u> FADV's other cited case, <u>OptinRealBig.Com LLC v. Ironport Systems, Inc.</u>, 323 F.Supp.2d 1037 (N.D.Cal. 2004) does apparently state that trade libel requires disparagement of the quality of the product. However, there was no issue in that case about the breadth of trade libel since the claims in that case involved bulk emails and were therefore indisputably "products." The Court did not even analyze that element of trade libel in its opinion. The California case that the Court cited for its proposition, <u>Guess, Inc. v. Superior Court</u>, 176 Cal.App.3d 473, 479 (1985) does not hold that trade libel is limited to statements about the quality of a product. <u>Guess, Inc.</u>, rather, states that trade libel

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

applies to statements about "goods" or "[the] business, as such." Guess, Inc., 176 Cal.App.3d at 479. It is thus clear that under California law trade libel has an expansive definition that covers all disparaging comments about a business, and not just comments that relate to the quality of the goods or services themselves.

Here, PEI alleges that Steve Flack accused Sandra James, President of PEI, of being a "liar." Given the context of this statement (in connection with PEI's alleged promise to pass along discounts to CCE), it is attributable to PEI. The statement, taken in context, accuses PEI of dishonest business practices. While that may not relate to the quality of goods or services per se, it clearly relates to PEI's business practices in general. That is all that California requires to state a claim for trade libel.

FADV next argues that Mr. Flack's statement is defamation, not trade libel. While it is true that Mr. Flack's comments name Sandra James, the SACC sets forth extensive facts showing that the statement is attributable to PEI as a business entity. The SACC alleges that Mr. Flack made the commends about "Sandra James, in her capacity as President of Private Eyes, Inc." The SACC further alleges the context of the statement. Specifically, the SACC alleges that Mr. Flack falsely told Teresa Higdon of CCE that Sandra James agreed to pass along all discounts to CCE. The only context of the statement was PEI's business practices. The statement does not relate to Sandra James in her personal capacity. Accordingly, there is no difference between Mr. Flack's comment and a less specific comment that "PEI is dishonest." None of the cases cited by FADV compel an opposite conclusion. See, e.g., Melaleuca, Inc. v. Clark, 66 Cal.App.4th 1344 (1998) (disparaging comments about product containing benzene were trade libel); Barnes-Hind v. Superior Court, 181 Cal.App.3d 377 (1986) (disparaging comments about an eye-care product were trade libel). Although the courts have indeed held that a businessperson may have a defamation claim arising from certain allegations of trade libel, the claims are not mutually exclusive. At times, the business entity may have a claim for trade libel and the individual may have a claim for defamation. It is therefore irrelevant that Sandra James, as an individual, <u>could</u> also have a defamation claim as well. This makes sense, since the damages that each sustained would be quite distinct. Ms. James' damages would be for her personal reputation. PEI's damages are for its loss of business income.

FADV next argues that trade libel requires a writing. However, California law has expressly

-7-

DEFENDANT/COUNTER-CLAIMANT'S OPPOSITION TO PLAINTIFF/COUNTER-DEFENDANT'S MOTION TO DISMISS AND MOTION TO STRIKE PORTIONS OF SECOND AMENDED COUNTER-CLAIM

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

1  disavowed that trade libel (like personal libel) must be in writing.  Rather, trade libel is a generic term
2  that covers both written and oral statements.  See, e.g., Polygram Records, Inc. v. Superior Court 170
3  Cal.App.3d 543, 548 (1985): "The Restatement view is that, like slander of title, what is commonly
4  called 'trade libel' is particular form of the tort of injurious falsehood and need not be in writing."
5  The Polygram Records Court went on to note that " … false statements simply indicating that
6  plaintiff's business goods 'were of inferior quality,' though conceivably tortious as injurious
7  falsehoods, [are not] defamatory."  Id. at 550.  Since Polygram Records involved statements by a
8  comedian in a live performance, it is thus reasonably clear that the Court adopted the Restatement
9  view and that under California law there does not need to be a writing to establish trade libel.  FADV
10 cites two cases for the proposition that trade libel must be in writing:  New.net v. Lavasoft, 356
11 F.Supp.2d 1090, 1113 (C.D.Cal. 2004) and Schering Corp. v. First DataBank Inc., 2007 WL 1176627
12 (N.D.Cal. Apr. 20, 2007).  New.net cited the Atlantic Mutual case, quoted above for its definition of
13 trade libel, but New.Net obviously misinterpreted Atlantic Mutual's term "publication" to mean
14 "writing."  The technical term "publication" in trade libel means that the statement was made to a
15 third party.  See, e.g., Leonardini v. Shell Oil Co., 216 Cal.App.3d 547, 573 (1989) (for publication
16 purposes, trade libel and personal libel are identical); Krinsky v. DOE 6, 159 Cal.App.4th 1154, 1173
17 (2007) (for personal libel, publication means that it was communicated to at least one third party).
18 The element of publication does not require a written statement.  See, e.g., Haley v. Casa Del Rey
19 Homeowners Association, 153 Cal.App.4th 863, 877-78 (2007).  Schering simply relied upon
20 New.Net for its writing requirement.  Since California law rejects the proposition that trade libel must
21 be written, Mr. Flack's oral comments are sufficient to state a claim under this tort.
22      FADV next argues that PEI has not adequately pleaded special damages.  This Court, in its
23 March 5, 2008 order, stated that it needed to see the precise special damages that PEI attributes to the
24 interference claim based on trade libel.  PEI has set forth the precise figure of $1.8 million in the
25 SACC.  That allegation fully complies with this Court's order that the "special damages" be
26 specifically pled.  FADV now insists upon a level of pleading that only applies to fraud claims.
27 FADV insists that PEI must specifically plead all facts showing the causal connection between the
28 trade libel and the special damage.  However, the special pleading requirements for trade libel do not

-8-

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

DEFENDANT/COUNTER-CLAIMANT'S OPPOSITION TO PLAINTIFF/COUNTER-DEFENDANT'S
MOTION TO DISMISS AND MOTION TO STRIKE PORTIONS OF SECOND AMENDED
COUNTER-CLAIM

require proximate causation to be specifically pled, like it would have to be for fraud claims. PEI has pled that as a result of the acts of trade libel, CCE terminated its services with PEI. That is sufficient for pleading purposes. FADV's argument that the 17 month gap in time between Mr. Flack's comments and the termination of the CCE contract necessarily establishes, as a matter of law, the lack of a causal connection is meritless. PEI does not have to show that CCE only terminated CCE because of the comments. PEI must only show that the comments were a <u>substantial factor</u> in the termination and that no rule of law relieves FADV from liability. <u>See</u>, e.g., <u>Lombardo v. Huysentruyt</u>, 91 Cal.App.4th 656, 665-66 (2001) (discussing definition of "proximate cause" under California law). By segregating out the $1.8 million, PEI has distinguished the damages that are reasonably attributable to the trade libel from the other damages.

Finally, FADV argues that PEI's other allegations demonstrate that the trade libel was not a factor in the termination, as a matter of law. PEI has alleged, and continues to allege, that CCE terminated the account because of the wrongful solicitations / disclosures and because of the ongoing friction between PEI and FADV. Mr. Flack's comment about Sandra James obviously occurred as part of FADV's ongoing improper solicitations of the business from CCE, <u>as it is the basis for the Intentional Interference with Prospective Economic Advantage cause of action</u>.[3] There is absolutely nothing inconsistent with PEI's allegations that would justify dismissal.

### C. COURT HAS NO BASIS TO STRIKE ALLEGATIONS IN FIRST AND SECOND CAUSES OF ACTION FOR BREACH OF CONTRACT.

For the first time, FADV has set its sights on the First Cause of Action for Breach of Written Contract and Second Cause of Action for Breach of Oral Contract, asserting that this Court has made rulings that are now "law of the case." FADV's attempt to do so is improper. Motions to strike are waived if not set forth in the first motion. <u>See</u>, e.g., <u>Culinary & Service Employees Union, AFL-CIO Local 555 v. Hawaii Employment Benefit Administration</u>, 688 F.2d 1228, 1232 (9th Cir. 1982). FADV should have, but did not, file a motion to strike when it filed its motion to dismiss. The

---

[3] And it was obviously made <u>after</u> the alleged settlement of the MVR claim, which was in April 2004.

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

-9-
DEFENDANT/COUNTER-CLAIMANT'S OPPOSITION TO PLAINTIFF/COUNTER-DEFENDANT'S MOTION TO DISMISS AND MOTION TO STRIKE PORTIONS OF SECOND AMENDED COUNTER-CLAIM

motion could have sought the relief requested in this motion, if the motion to dismiss was granted. Accordingly, this motion is untimely. In any event, it is also meritless. The Court's rulings were in the specific context of the causes of action that were at issue and dealt with pleading requirements for fraud claims. The Court has not, and cannot, decide the certain facts have been established as a matter of law. Rather, in deciding the motion to strike, the Court must lend all reasonable inferences to support the claims. See, e.g., California v. United States, 512 F.Supp. 36, 39 (N.D.Cal. 1981). And as a general principal, motions to strike are disfavored because of the limited role that pleadings play in federal practice. Cf. Colaprico v. Sun Microsystems, Inc., 758 F.Supp. 1335, 1339 (N.D.Cal. 1991). Accordingly, any and all doubts should be resolved in favor of letting the claim proceed.

With respect to the claim for Breach of Written Contract, FADV alleges that as a matter of law the "settlement" agreement extinguished any claim for breach of contract for the MVR's. However, there are no allegations in the First Cause of Action about the agreement. And even if the Court were to consider the issues pertaining to the fraud cause of action, <u>there has been no finding other than that the alleged settlement agreement extinguished the potential fraud claim</u>. FADV is improperly attempting to bootstrap a holding with respect to one cause of action to an entirely separate cause of action. While PEI may have been bound by the "agreement" with respect to the fraud cause of action, it is entitled to pursue alternative claims in the event that the "agreement" is determined to be unenforceable or is determined to extend for only a limited duration. There are many issues about the breach of contract and the alleged "settlement" agreement that must be decided before this Court can rule, as a matter of law, that the breach of contract claim for the underlying MVR's are barred. It would be extremely prejudicial to PEI for this Court to hold that the breach of contract claim for the MVR's is barred as a matter of law because of the "settlement" agreement, but then on the other hand allow FADV to contest the validity of the very "settlement" agreement that forms the basis for the legal bar. These issues require factual development before any rulings can be made. Accordingly, the Court should deny the motion to strike paragraph 28 of the SACC.

With respect to the Second Cause of Action for Breach of Oral Contract, FADV seeks an order from this Court dismissing the breach of contract claim for the promise to run billings through PEI. Although PEI disagrees with this Court's dismissal of the Seventh Cause of Action for Fraud,

-10-

DEFENDANT/COUNTER-CLAIMANT'S OPPOSITION TO PLAINTIFF/COUNTER-DEFENDANT'S MOTION TO DISMISS AND MOTION TO STRIKE PORTIONS OF SECOND AMENDED COUNTER-CLAIM

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

that dismissal does not operate to bar a claim for breach of contract. All the Court held was that PEI did not sufficiently explain, **to satisfy the particularity standards required for fraud claims**, the mechanics of the claim. PEI, of course, does not have to meet heightened pleading standards to establish a claim for breach of contract. PEI has adequately stated a claim for breach of contract based on the promise to run the billings through them, and this Court may not decide that a claim cannot be made just because it held that PEI did not plead sufficient facts to proceed with a fraud claim. Furthermore, given that this is a new assertion raised by FADV, the Court must provide leave to amend to correct any deficiencies since PEI has not been placed on notice that it needs to bolster its Second Cause of Action. Accordingly, the Court should either deny the motion to strike paragraph 33 of the SACC, or at the very least allow leave to amend to supply any facts that the Court considers necessary to state a valid claim.

## IV.    CONCLUSION

PEI requests that this Court deny the motions and rule as follows:

1.    That the March 5, 2008 order applies to the Second Amended Counter-Claim. That will allow PEI to appeal the dismissed claims in due course and at the same time remove them from further proceedings at the district court level.

2.    That PEI has adequately pled a claim for Intentional Interference with Prospective Economic Advantage, based on trade libel. The comments made by Steve Flack accuse PEI of dishonest business practices. It is irrelevant that Mr. Flack literally said "Sandra James," since the SACC makes it clear that the comments were only related her capacity as President of PEI.

3.    That the First and Second Causes of Action are not subject to a motion to strike, since the determinations made in connection with the fraud causes of action are not applicable, as a matter of law, to the separate claims for breach of contract.

///
///
///
///
///

-11-

DEFENDANT/COUNTER-CLAIMANT'S OPPOSITION TO PLAINTIFF/COUNTER-DEFENDANT'S MOTION TO DISMISS AND MOTION TO STRIKE PORTIONS OF SECOND AMENDED COUNTER-CLAIM

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

4. That if the Court grants any aspect of FADV's motion, that PEI be granted leave to amend to cure any deficiencies in the counter-claim.

Dated: May 22, 2008                          LAW OFFICES OF MARK R. MITTELMAN

/s/ Mark R. Mittelman
Mark R. Mittelman
Paul A. Kanter
Attorneys for Defendant / Counter-Claimant
PRIVATE EYES, INC.

LAW OFFICES OF
MARK R. MITTELMAN
A Professional Corporation
190 NORTH WIGET LANE
SUITE 101
WALNUT CREEK, CA 94598
Phone: (925) 256-0677
FAX: (925) 256-0679

-12-
DEFENDANT/COUNTER-CLAIMANT'S OPPOSITION TO PLAINTIFF/COUNTER-DEFENDANT'S MOTION TO DISMISS AND MOTION TO STRIKE PORTIONS OF SECOND AMENDED COUNTER-CLAIM