1  RICHARD J. BAYLESS (SBN 153516)
   Email: richard.bayless@bipc.com
2  BUCHANAN INGERSOLL & ROONEY LLP
   707 Broadway, Suite 800
3  San Diego, CA 92101-5386
   Telephone: (619) 239-8700
4  Facsimile: (619) 702-3898

5  CRAIG D. MILLS  (*PRO HAC VICE*)
   Email: craig.mills@bipc.com
6  SAMANTHA L. SOUTHALL (*PRO HAC VICE*)
   Email: samantha.southall@bipc.com
7  BUCHANAN INGERSOLL & ROONEY PC
   1835 Market Street, 14th Floor
8  Philadelphia, PA  19103-2985
   Telephone: (215) 665-8700
9  Facsimile: (215) 665-8760

10 Attorneys for Plaintiff and Counter-Defendant,
   FIRST ADVANTAGE BACKGROUND SERVICES CORP.

11

12

13                 UNITED STATES DISTRICT COURT

14               NORTHERN DISTRICT OF CALIFORNIA

15

16 FIRST ADVANTAGE BACKGROUND          Case No.:  C 07-02424 SC
   SERVICES CORP., a Florida corporation,
17                                       **PLAINTIFF AND COUNTER-**
                  Plaintiff,             **DEFENDANT FIRST ADVANTAGE'S**
18                                       **REPLY IN FURTHER SUPPORT OF ITS**
         vs.                             **MOTION TO DISMISS AND STRIKE**
19                                       **PORTIONS OF THE SECOND AMENDED**
   PRIVATE EYES, INC., a California      **COUNTERCLAIM**
20 corporation, DOES 1-10
                                         DATE: June 13, 2008
21                Defendants.            TIME: 10:00 a.m.
                                         JUDGE:  Honorable Samuel Conti
22 ─────────────────────────────        DEPT.:  Courtroom 1
23 AND RELATED COUNTER-CLAIMS.           Complaint Filed:  May 4, 2007
                                         Trial Date:  December 8, 2008
24

25

26

27

28

1

**TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................................1

II.     ARGUMENT ........................................................................................................2

        A.      The Ninth Circuit's "Waiver Rule" Does Not Apply to Claims
                Dismissed with Prejudice...........................................................................2

        B.      The New Bad Acts Alleged in PEI's Fifth Cause of Action Violate
                the Order. ...................................................................................................4

        C.      The Fifth Cause Of Action Does Not State A Claim for Trade
                Libel. ..........................................................................................................6

                1.      PEI Has Not Alleged the Disparagement of Its Products or
                        Services.............................................................................................6

                2.      PEI Has Not Adequately Pled Special Damages. ............................8

        D.      Paragraphs 28 and 33 of the SACC Are Inconsistent With the
                March 5 Order.............................................................................................9

III.    CONCLUSION.....................................................................................................12

1

# TABLE OF AUTHORITIES

2

**Federal Cases**

3

*Aetna Cas. and Surety Co. v. Centennial Ins. Co.*, 838 F.2d 346 (9th Cir. 1988) ........................ 6

4

*Culinary & Service Employees Union, AFL-CIO Local 555 v. Hawaii Employment Benefit*
5
    *Admin.*, 688 F.2d 1228 (9th Cir. 1982) ........................................................................... 9, 10

6

*Global Telemedia Int'l, Inc. v. Doe 1*, 132 F. Supp. 2d 1261 (C.D. Cal. 2001)............................ 7

7

*Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035 (C.D. Cal. 1998) ........ 8

8

*Miller v. Cont'l Airlines, Inc.*, No. C-02-1693 VRW, C-02-2997 VRW, 2003 WL 21557678
9
    (N.D. Cal. July 1, 2003) ..................................................................................... 3, 4, 10

10

*New.net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090 (C.D. Cal. 2004)............................................ 8, 9

11

*Parrino v. FHP, Inc.*, 146 F.3d 699 (9th Cir. 1998) ................................................................ 2, 3

12

*Thomas v. Housing Auth. of the County of Los Angeles*, No. CV 04-6970 MMM (RCx), 2005
    WL 6136322 (C.D. Cal. Sept. 22, 2005) ........................................................................... 3

13

**State Cases**

14

*Atlantic Mutual Ins. Co. v. J. Lamb, Inc.*, 100 Cal. App. 4th 1017 (2002)...................................7
15

*Barnes-Hind, Inc. v. Superior Court of Santa Clara Cty.*, 181 Cal. App. 3d 377 (1986) .......... 6, 7
16

*Guess, Inc. v. Superior Court*, 176 Cal. App. 3d 473 (1986) .....................................................7
17

*Leonardini v. Shell Oil Co.*, 216 Cal. App. 3d 547 (1989) .........................................................6
18

*Rosenberg v. J.C. Penney Co.*, 30 Cal. App. 2d 609 (1939)........................................................7
19

**Federal Rules**

20

21

Fed. R. Civ. P. 12(f) .................................................................................................................. 4
22

23

Fed. R. Civ. P. 15 ...................................................................................................................... 6
24

Fed. R. Civ. P. 9(g) ................................................................................................................... 8

25

26

27

28

1

**Other Authorities**

2

*Black's Law Dictionary* (6th ed. 1990) ........................................................................... 5

3

Comment, *Development in the Law, Competitive Torts*, 77 Harv. L. Rev. 888 (1964) ................. 6

4

Christopher A. Goelz & Meredith J. Watts, *Cal. Practice Guide:  Federal Ninth Circuit Civil*

5

        *App. Practice* § 7:125(3)(b) (2008)…………………………………………………………….3

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Plaintiff and Counter-Defendant First Advantage's Reply In Further Support of Its Motion to Dismiss and
Strike Portions of the Second Amended Counterclaim, Case No. C 07-02424 SC**

Plaintiff and Counter-Defendant First Advantage Background Service Corp. ("First Advantage") submits the following memorandum of law in further support of its Motion to Dismiss and Strike Portions of the Second Amended Counterclaim (the "Motion"), and in reply to the Opposition to that Motion filed by Defendant Private Eyes, Inc. ("PEI").

## I.    <u>INTRODUCTION</u>

As First Advantage stated in its Motion, parts of the Second Amended Counterclaim ("SACC") run afoul of both this Court's prior Orders and relevant precedent, and so should be stricken or dismissed.  Nothing in PEI's Opposition changes this conclusion.

The Motion noted that the SACC re-pleads claims that were dismissed with prejudice by this Court's Order of March 5, 2008 (the "March 5 Order").  PEI admits as much, but argues that that it must re-plead these claims to preserve its appellate rights.  This argument ignores Ninth Circuit precedent holding that the waiver rule on which PEI relies does not apply where, as here, a claim has been dismissed without leave to re-plead.

The Motion also argued that PEI's new Fifth Cause of Action violates the express limitations of the March 5 Order, which gave PEI leave to re-plead its claim for tortious interference based on trade libel in order to correct its failure to aver who made and heard the alleged statements, when they were made, and exactly what was said, but expressly barred PEI from averring "new wrongful acts as possible foundations for the intentional interference claim." The SACC does just what this Court ordered it not to do, changing the basis for the underlying trade libel claim from an allegation that First Advantage falsely stated to Coca-Cola Enterprises ("CCE") that PEI was "incompetent to perform the services for CCE and that First Advantage could do a superior job," to a claim that a First Advantage representative stated to CCE that Sandra James, PEI's President, "is a liar and cannot be trusted."   PEI's response that allegations of business incompetence and personal mendacity are "not *necessarily* mutually exclusive" is

half-hearted in spirit and untrue in fact.  In any case, PEI's new factual allegations cannot support a claim for trade libel because they concern the personal character of an individual, not the quality of goods or services.

Finally, the Motion sought to dismiss the allegations of paragraphs 28 and 33 of the SACC as contradicting findings in the March 5 Order that are now law of the case.  PEI argues that First Advantage's request is untimely and meritless.  As a matter of procedure, First Advantage's request is not untimely because the Motion *was* the "first motion" that First Advantage filed (or could have filed) after it was served with the SACC, and so could see the contradictions between this most recent attempted amendment and the Order dismissing portions of the prior attempt.  As a matter of substance, the allegations in paragraphs 28 and 33 directly contradict the March 5 Order and therefore should be stricken.

## II.    ARGUMENT

### A.    The Ninth Circuit's "Waiver Rule" Does Not Apply to Claims Dismissed with Prejudice.

PEI concedes that this Court dismissed with prejudice portions of the Fifth and Sixth Cause of Action and the entire Seventh Cause of Action of its First Amended Counterclaim.  The SACC nevertheless restates these dismissed claims in their entirety.  PEI justifies its resurrection of dead claims by arguing that it must re-plead them in order to preserve its right of appeal.  This is not the law.

The Ninth Circuit Court of Appeals held in *Parrino v. FHP, Inc.*, 146 F.3d 699, 704 (9th Cir. 1998), that a plaintiff did not waive his right to appeal the dismissal of claims by failing to re-plead them in his amended complaint.  The court reasoned that:

> A plaintiff waives all claims dismissed *with leave to amend* by failing to reallege those claims in his amended complaint.  However, we have declined to extend this rule to claims disposed of by way of summary judgment.  If the plaintiff were required to reallege claims dismissed on summary judgment to avoid waiving them, plaintiff's counsel would be forced to bear

2

1    the risk of sanctions to preserve his client's right to appeal. Because this
2    concern applies with equal force to claims dismissed *without leave to amend*,
3    we decline to apply the waiver rule set forth in *London* to [claims dismissed
     without leave to re-plead].

4    *Id.* (emphasis added; internal citations omitted); *see Miller v. Cont'l Airlines, Inc.*, No. C-02-

5    1693 VRW, C-02-2997 VRW, 2003 WL 21557678, at *2 (N.D. Cal. July 1, 2003) (striking

6    portions of amended complaint containing the same state law claims previously dismissed with

7    prejudice), Christopher A. Goelz & Meredith J. Watts, *Cal. Practice Guide:  Federal Ninth*

8    *Circuit Civil App. Practice* § 7:125(3)(b) (2008); *see also Thomas v. Housing Auth. of the*

9    *County of Los Angeles*, No. CV 04-6970 MMM (RCx), 2005 WL 6136322 (C.D. Cal. Sept. 22,

10   2005) (noting that where the court has not granted leave to reallege dismissed claims, "the

11   waiver rule enunciated [by the Ninth Circuit] is inapposite").

12

13        Here, the Court dismissed the Fifth Cause of Action for interference with prospective

14   economic advantage "with prejudice" to the extent that the cause of action was based upon either

15   trade secret appropriation or breach of confidence. Document No. 46 at 12:23-13:1. The Court

16   dismissed the Sixth Cause of Action for fraud "with prejudice" to the extent it alleged fraud

17   based on First Advantage's alleged promise not to solicit business from CCE. Document No. 46

18   at 17:11-16. Finally, the Court dismissed the Seventh Cause of Action, based on First

19   Advantage's allegedly false promise that it would bill CCE through PEI,  "with prejudice."

20   Document No. 46 at 27:1. The Order did not grant PEI leave to amend any of these claims. By

21   contrast, the Order dismissed PEI's tortious interference claim "without prejudice" to the extent

22   that it was based on a claim of trade libel, and expressly granted PEI leave to amend that claim,

23   so long as it did so without adding "new wrongful acts" as the foundation for such a claim.

24   Document No. 46 at 13:1-7.

25

26

27

28                                                   3

Because the three resurrected claims that are the subject of First Advantage's Motion were all dismissed with prejudice and without leave to amend, PEI's belief that it was required to re-plead them in the SACC is contrary to law.  These claims should be stricken pursuant to Fed. R. Civ. P. 12(f).  *See Miller*, 2003 WL 21557678, at *2.

**B.    The New Bad Acts Alleged in PEI's Fifth Cause of Action Violate the Order.**

In dismissing the intentional interference claim set out in PEI's First Amended Counterclaim ("FACC"), the Court identified two deficiencies with that Fifth Cause of Action to the extent it was based on trade libel.  First, the March 5 Order found that the FACC failed to allege "who from First Advantage made the allegedly libelous statements, to whom they made those statements, when they made the statements, or what exactly they said."  Document No. 46 at 11:5-9.  The March 5 Order noted that this lack of specific factual allegations not only fell short of the standard for pleading a claim of trade libel, but also made it impossible for the Court to determine whether the language of the alleged statement was actionable as trade libel or protected as opinion under the First Amendment.  Document No. 46 at 12:4-21.  While the Court permitted PEI to amend its pleading to address these deficiencies, it specifically prohibited PEI from adding "new wrongful acts as possible foundations for the intentional interference claim."  Document No. 46 at 13:2-5.

The SACC did remedy some of the defects in the FACC by specifically alleging facts concerning the "who, what, and when" of the supposedly libelous statement.  However, PEI violated the March 5 Order by alleging a "new wrongful act" as the basis for its intentional interference claim.  Where the FACC accused First Advantage of falsely stating to CCE that "PEI was incompetent to perform the services for CCE," and that First Advantage "could do a superior job," the SACC claimed that a First Advantage representative had stated to CCE that Sandra James, PEI's President, "is a liar and cannot be trusted."  *Compare* Document No. 31-2 at

4

¶ 52(c) *with* Document 47 at ¶ 52(c)(1). Although PEI claims to have learned of this alleged

statement "on or about June 27, 2005" -- two years before it filed its initial Counterclaim, some

two and a half years before it filed the FACC, and almost three years before it filed the SACC --

this factual allegation has never appeared in any prior pleading. *See* Document No. 47 at ¶

52(c)(6); Document No. 31-2; Document No. 12.

PEI's Opposition admits that this new allegation of personal dishonesty is a different and

hopefully stronger theory of recovery than its previous allegation of business incompetence.

Specifically, PEI explains that it altered the basis for its trade libel claim because, "[u]pon

reviewing all of the elements that this Court identified in its order, PEI determined that its

strongest case for trade libel was allegations of dishonesty." Document No. 69 at 5:21-23. PEI

goes on to state that the FACC used "possibly inaccurate terminology," but that "PEI believes it

has the right to plead all facts that would establish trade libel, regardless of what it has generally

pled in its prior pleading," because "leave to amend must be liberally granted if a party can set

forth a viable cause of action." Document No. 69 at 5:20-25. Finally, and with considerably less

force, PEI argues that its new factual basis for liability is not really new at all by claiming

without benefit of citation that "despite FADV's dictionary quotes of the words 'incompetence'

and 'dishonesty,' the two terms are not <u>necessarily</u> mutually exclusive." Document No. 69 at

5:25-26 (emphasis in original).

The equivocal nature of PEI's arguments and the utter lack of citation to any authority in

support of these arguments simply underscores the naked absurdity of PEI's position. Common

English, common human experience and, most importantly, the common law make a clear

distinction between incompetence, which constitutes misfeasance, and dishonesty, which is

punishable as malfeasance. *See generally Black's Law Dictionary* (6th ed. 1990) ("'misfeasance'

is the improper doing of an act which a person might lawfully do; and 'malfeasance' is the doing

5

of an act which a person ought not to do at all").  The history of American business is replete

with figures who were utterly dishonest yet fiendishly competent (such as Ivan Boesky and Mike

Milken of Wall Street, Charles Keating of Lincoln Savings and the savings and loan disaster; and

Jeffery Skilling of Enron), or, less famously, scrupulously honest yet incompetent.  Because

PEI's allegations regarding dishonesty are admittedly different from its prior, "possibly

inaccurate" claims concerning incompetence, and because PEI has never alleged any such facts

before despite having had two opportunities to do so, the SACC undeniably does "add new

wrongful acts as possible foundations for the intentional interference claim" in violation of the

March 5 Order.  Document No. 46 at 13:4-5.  Further, while it is true that Fed. R. Civ. P. 15 does

set a liberal standard for amendment as a general matter, in this specific instance the March 5

Order expressly and quite properly barred PEI from changing its story yet again on this, its third

attempt to state a cause of action for intentional interference.  The Fifth Cause of Action alleged

in the SACC should be stricken as contrary to the Court's Order.

### C.    The Fifth Cause Of Action Does Not State A Claim for Trade Libel.

In any event, PEI's attempt to plead its newly-articulated "strongest case for trade libel"

still fails to state a claim as a matter of law because PEI has not alleged that First Advantage

made a statement disparaging the quality of its product or services and has not provided

sufficient detail to support its claim for special damages.

### 1.    PEI Has Not Alleged the Disparagement of Its Products or Services.

"Trade libel has [] been defined as encompassing all false statements concerning the

quality of services or product of a business which are intended to cause that business financial

harm and in fact do so." *Leonardini v. Shell Oil Co.*, 216 Cal. App. 3d 547, 572 (1989) *citing*

Comment, *Development in the Law, Competitive Torts*, 77 Harv. L. Rev. 888, 893 (1964).  By

contrast, an action for defamation is designed to protect the plaintiff's reputation and the

6

judgment vindicates that reputation. *Leonardini*, 216 Cal. App. 3d at 573; *see Aetna Cas. and Surety Co. v. Centennial Ins. Co.*, 838 F.2d 346, 351 (9th Cir. 1988); *Barnes-Hind, Inc. v. Superior Court of Santa Clara Cty.*, 181 Cal. App. 3d 377, 381 (1986) ("Trade libel is generally distinguished from common law defamation and is said to connote 'an intentional disparagement of the quality of property, which results in pecuniary damage to plaintiff.' Libel per se . . . is based in common law defamation, and thus relates to the standing and reputation of the businessman as distinct from the quality of his or her goods.") *citations omitted.*

PEI has not cited any authority for its contention that statements made about an individual employee can constitute trade libel. Indeed, the cases cited by PEI demonstrate that the term trade libel only encompasses disparaging statements made about a business or the business's products and services. *See, e.g., Global Telemedia Int'l, Inc. v. Doe 1*, 132 F. Supp. 2d 1261 (C.D. Cal. 2001) (statements posted in an anonymous internet chat room about a publicly traded company); *Atlantic Mutual Ins. Co. v. J. Lamb, Inc.*, 100 Cal. App. 4th 1017, 1035 (2002) (statements made to a competitor's customers falsely accusing customer of patent infringement); *Guess, Inc. v. Superior Court*, 176 Cal. App. 3d 473 (1986) (statements made about a corporation that it manufactured inferior goods, was not a rightful licensee, used defendant's label without right or justification, was soon to be insolvent and would be unable to pay its debts). Although PEI claims that *Global Telemedia* actually supports its argument that attacks on the personal integrity of businesspeople necessarily and impliedly attack the quality of their business, an examination of the case shows that exactly the reverse is true. *Global Telemedia* cites to *Rosenberg v. J.C. Penney Co.*, 30 Cal. App. 2d 609, 613-14 (1939), in which the allegedly libelous statement criticized the quality of the gym shorts that the plaintiff was selling as being, among other things, "slovenly made," of "shoddy appearance," and "either a poorly made second or prison-made merchandise."

7

The alleged statement that Sandra James "is a liar and cannot be trusted" does not relate directly or indirectly to any goods or services provided by PEI, or even to "the business" of PEI as a corporate entity. Rather, this alleged statement focuses solely on the personal qualities of Sandra James, a non-party individual who happens to work for PEI. No amount of mental gymnastics and no chain of "if-then" suppositions and tacit assumptions can convert this simple personal criticism into actionable trade libel. If this were so, every business in California would have a claim for trade libel anytime anyone said anything critical of any of its employees' personal characteristics. This is not the law, nor would it be a fair extension of the law.

### 2.    PEI Has Not Adequately Pled Special Damages.

In the March 5 Order, the Court found that PEI did not adequately plead special damages arising from its claim for trade libel. Document No. 46 at 11:24-25. Specifically, the Court found that the FACC did not "allege the amount of business prior to First Advantage allegedly making these statements, how much it had after, or the value of the business." Document No. 46 at 11:19-22. PEI contends that it has adequately pled special damages because it "has set forth the precise figure of $1.8 million" allegedly arising from First Advantage's single statement about Sandra James's veracity and trustworthiness, as part of an overall claim of $4 to $5 million in damages. Document No. 69 at 8:22-25.

These allegations are insufficient to cure the deficiencies previously identified by this Court and required by the Federal Rules of Civil Procedure. Fed. R. Civ. P. 9(g) provides that, "[i]f an item of special damage is claimed, it must be specifically stated." The "bare allegation of the amount of pecuniary loss is insufficient for the pleading of a trade libel claim." *Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1047 (C.D. Cal. 1998). Rather, as this Court noted in pointing out the deficiencies in PEI's prior version of this claim, a plaintiff must allege facts "showing an established business, the amount of sales for a substantial period

8

preceding the publication, the amount of sales subsequent to the publication, [and] facts showing that such loss in sales were the natural and probable result of such publication."  *New.net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090, 1113 (C.D. Cal. 2004).

The SACC has not cured any of the deficiencies noted in the March 5 Order.  While PEI has now claimed the ballpark number of $1.8 million in special trade libel damages as a "sub-set" of its total damages of $4 or $5 million, Document No. 47 at ¶ 52(c)(8), simply pinning a round dollar figure on the claim without stating any of the requisite facts to support it this number is insufficient as a matter of law.  Specifically, PEI offers no facts to show:  1) that it had an "established business" with CCE[1]; 2) the amount of its sales to CCE for any period prior to the alleged libel, let alone "a substantial period;" 3) its sales to CCE after the alleged publication; or 4) facts showing "that such loss in sales were the natural and probable result of such publication."  Because PEI has failed to correct the deficiencies noted in its attempt to plead special damages for trade libel, the Fifth Cause of Action should be dismissed.

### D. Paragraphs 28 and 33 of the SACC Are Inconsistent With the March 5 Order.

PEI's Opposition first contends that First Advantage's motion to strike paragraphs 28 and 33 of the SACC is untimely because "motions to strike are waived if not set forth in the first motion."  Document No. 69, at 9:22-23.  This argument ignores that obvious fact that First Advantage's Motion *was* the "first motion" filed after it received the SACC and could discern the contradictions between the rulings in the Court's March 5 Order and the claims in PEI's April 4 SACC that formed the basis for First Advantage's April 24 Motion.  In any case, the Court can strike a pleading in whole or in part until a responsive pleading is filed.  *Culinary & Service*

---

[1]     On the contrary, the SACC merely alleges that PEI merely had a "verbal contract" with CCE for certain services on an "as-needed basis," and that PEI had a "reasonable expectation that it would periodically receive assignments from CCE for the services mentioned above so long as it performed the services in a satisfactory manner."  Document No. 47, ¶¶ 8, 9.

*Employees Union, AFL-CIO Local 555 v. Hawaii Employment Benefit Admin.*, 688 F.2d 1228, 1232 (9th Cir. 1982). Such a motion is not only timely but appropriate where, as here, an amended pleading fails to conform to a prior Order of court. *Miller v. Cont'l Airlines, Inc.*, 2003 WL 21557678, at *2 (striking portions of amended complaint containing the same state law causes of action previously dismissed with prejudice). Thus, PEI's timeliness defense is without merit.

PEI also argues that it is inappropriate to strike paragraph 28 of the SACC, which claims that First Advantage breached two contracts with PEI by soliciting motor vehicle registration verifications ("MVRs") from CCE, because "there has been no finding other than that the alleged settlement agreement extinguished the potential fraud claim." Document No. 69 at 10:13-14. On the contrary, this Court specifically found in two parts of the Order that "[t]he parties settled the dispute relating to First Advantage's solicitation of the MVR business from CCE in 2005." Document No. 46 at 15:7-9; Document No. 33 at 6:17-18. This finding is confirmed by PEI's own allegations in the SACC, which state that PEI discovered First Advantage's allegedly improper solicitation in April 2004; that the parties then negotiated "a reasonable resolution of First Advantage's violation of the non-solicitation agreements" in 2005; and that this agreement was intended "to resolve a legal dispute between PEI and First Advantage." Document No. 47 at ¶¶ 16, 17, 33. Because paragraph 28 alleges a breach of contract dispute that PEI admits and the Court has ruled was previously settled between the parties, PEI's continued allegation that this same conduct still constitutes a breach of contract is contrary to the March 5 Order and the law of the case. It should be stricken.

Finally, PEI contends that the Court should not strike paragraph 33 of the SACC, in which PEI claims that First Advantage "agreed to have all billings for the services that First Advantage performed for CCE to go [sic] through PEI," because the March 5 Order only found

10

1    that the allegation that First Advantage broke its promise to run billings through PEI failed to

2    state a claim for fraud for lack of particularity, such that PEI should still be able to claim that this

3    same conduct constitutes a breach of contract.  Document No. 69 at 10:26-11:3.  This argument

4
     ignores the specific language of the March 5 Order, which found that no such contract existed:

5

6            Moving from the pleading to the specific email alleged as the basis of the
             claim, the Court still finds the claim deficient.  Attached to the email in
7            question is a letter which states that if Private Eyes pays First Advantage
             receipts already due, First Advantage is willing to dismiss resuming
8            services under the terms of the parties' agreement.  See Ratinoff Decl. Exs.
             F, G.  Even if the Court were to assume that "resuming our services under
9            the terms of our agreement," meant that First Advantage would bill its
             services to CCE through Private Eyes (an assumption not actually
10           supported in the pleading), Private Eyes has not alleged that it paid the
             money due, that the parties had the subsequent discussion, or that First
11           Advantage actually agreed to process its billing in that manner.

12
     Document No. 46 at 25:9-21; see Document No. 33, Exs. F, G.  Because the Court has ruled that
13
     PEI's claim of some agreement under which First Advantage would bill its services to CCE
14
     through PEI is contradicted by the documents that PEI claims document this supposed
15
     agreement, lines 23 through 27 of paragraph 33 of the SACC should be stricken, together with
16
     any related allegations concerning the supposed agreement that First Advantage would bill all
17
     work for CCE through PEI.
18

19

20

21

22

23

24

25

26

27

28
                                              11

1

## III.    <u>CONCLUSION</u>

2

3
            For the foregoing reasons and those set forth in its moving papers, First Advantage

4
Background Services Corp. respectfully requests that this Court grant this motion in its entirety

5
and dismiss and/or strike Private Eyes, Inc.'s Fifth through Seventh Causes of action with

6
prejudice.

7
Dated:  May 30, 2008                         Respectfully submitted,

8
                                             **BUCHANAN INGERSOLL & ROONEY LLP**

9

10
                                             By:  <u>/s/ Craig D. Mills</u>
11
                                                  Craig D. Mills
                                                  Samantha L. Southall
12
                                                  Richard J. Bayless
                                                  Attorneys for Plaintiff and Counter-Defendant
13
                                                  FIRST ADVANTAGE BACKGROUND
                                                  SERVICES CORP.
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

#2083485-v1