CRAIG D. MILLS (admitted *pro hac vice*)
Email:  craig.mills@bipc.com
SAMANTHA L. SOUTHALL (admitted *pro hac vice*)
Email:  samantha.southall@bipc.com
CYRIL J. DANCHTEV (SBN 129585)
Email:  cyril.danchtev@bipc.com
**BUCHANAN INGERSOLL & ROONEY LLP**
707 Broadway, Suite 800
San Diego, California  92101
Telephone:     (619) 239-8700
Facsimile:     (619) 702-3898

Attorneys for Plaintiff and Counter-Defendant
FIRST ADVANTAGE BACKGROUND SERVICES CORP.

### UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FIRST ADVANTAGE BACKGROUND SERVICES CORP., a Florida corporation,<br><br>              Plaintiff,<br><br>     vs.<br><br>PRIVATE EYES, INC., a California corporation, DOES 1-10,<br><br>              Defendants.<br><br>_____<br><br>AND RELATED COUNTERCLAIM.<br>_____ | Case No. 07-cv-02424 SC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO COUNTERCLAIMANT PRIVATE EYES, INC.'S AMENDED MOTION FOR LEAVE TO FILE A THIRD AMENDED COUNTERCLAIM**<br><br>DATE: July 25, 2008<br>TIME: 10:00 a.m.<br>DEPT: Courtroom 1<br>JUDGE: Hon. Samuel Conti<br><br>Complaint Filed:  May 4, 2007<br>Original Counterclaim Filed:  June 22, 2007 |

**Memorandum of Points and Authorities in Opposition to Counterclaimant Private Eyes, Inc.'s Amended Motion for Leave to File a Third Amended Counterclaim**

CASE NO. 07-cv-02424 SC

1

# <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ..................................................................................................1

II.   STATEMENT OF THE ISSUES TO BE DECIDED.........................................2

III.  PROCEDURAL BACKGROUND.......................................................................3

IV.   ARGUMENT .......................................................................................................4

      A.    PEI Has Unduly Delayed Asserting Its New Claims................................5

      B.    PEI Has Repeatedly Failed to Correct Deficiencies In Prior Amendments............6

      C.    PEI's Proposed Amendments Prejudice First Advantage .......................7

      D.    PEI's Proposed Amendments Are Futile..................................................8

            1.    Count One Alleges That First Advantage Breached A Contractual "Term" That Does Not Exist In The Contract ..............................8

            2.    The Fifth Count Does Not State A Claim For Trade Libel.........................9

            3.    The Sixth Count Does Not Adequately Plead A Claim for Fraud............11

            4.    PEI Has Not Stated A Claim For Common Law Misappropriation .........13

V.    CONCLUSION...................................................................................................15

---

## <u>TABLE OF AUTHORITIES</u>

**FEDERAL CASES**

*Aetna Cas. and Surety Co. v. Centennial Ins. Co.*, 838 F.2d 346 (9th Cir. 1988) ........................ 10

*Chodos v. West Pub'lg Co.*, 292 F.3d 992 (9th Cir. 2002) ........................................................ 5

*City Solutions, Inc. v. Clear Channel Comms., Inc.*, 365 F.3d 835 (9th Cir. 2004) .................... 11

*Edwards Lifesciences LLC v. Cook Inc.*, No. C 03-0317 JSW, 2008 WL 913328,
    (April 2, 2008) ............................................................................................................... 5

*Forman v. Davis*, 371 U.S. 178 (1962) ........................................................................................ 4

*Frome v. Renner*, No. 97 CIV 5641, 1997 WL 33308718 (N.D. Cal. Oct. 1, 1997) .................... 11

*Grosz v. Lassen Cmty. Coll. Dist.*, No. CIV. S-07-697 FCD/CMK, 2008 WL 2119923
    (E.D. Cal. May 20, 2008) ............................................................................................. 6, 7

*In re Fritz Cos. Secs. Litig.*, 282 F. Supp. 2d 1105 (N.D. Cal. 2003) .......................................... 5

*In re Textainer P'shp. Secs. Litig.*, No. C-05-0969, 2007 WL 108320 (N.D. Cal. Jan.
    10, 2007) ...................................................................................................................... 7

*In re Wash. Trust Deed Serv. Corp.*, 224 B.R. 109 (9th Cir. BAP 1998) .................................... 12

*Johnson v. Pacific Gas Elec.*, No. C 95-1374 MEJ, 1997 WL 273854 (N.D. Cal. May
    13, 1997) ...................................................................................................................... 7

*Loehr v. Ventura Co. Comm. College Dist.*, 743 F.2d 1310 (9th Cir. 1984) ................................ 4

*McAfee v. Ca.*, No. 1:07-cv-00577 OWW GSA, 2008 WL 1901338 (E.D. Cal. April
    28, 2008) ...................................................................................................................... 4

*Mir v. Fosburg*, 646 F.2d 342 (9th Cir. 1980) ............................................................................ 7

*Nicolosi Distrib. Co. v. Finishmaster, Inc.*, No. C 99-0927 MJJ, 2000 WL 41222
    (N.D. Cal. Jan. 13, 2000) ............................................................................................... 7

*Roderick v. Mazzetti & Assocs., Inc.*, No. C 04-2436 MHP, 2006 WL 1883328 (N.D.
    Cal. July 7, 2006) .......................................................................................................... 4

**STATE CASES**

*Balboa Ins. Co. v. Trans Global Equities*, 218 Cal. App. 3d 1327 (1990) ............................ 13, 14

*Barnes-Hind, Inc. v. Superior Ct. Santa Clara Cty.*, 181 Cal. App. 3d 377 (1986) .................... 10

*Conrad v. Bank of Am.*, 45 Cal. App. 4th 133 (1996) ................................................................ 11

*Leonardini v. Shell Oil Co.*, 216 Cal. App. 3d 547 (1989) ........................................................ 10

*Lesperance v. North Am. Aviation*, 217 Cal. App. 2d 336 (1963) .............................................. 11

*Service By Medallion, Inc. v. Clorox Co.*, 44 Cal. App. 4th 1807, 1816 (1996) .......................... 11

*U.S. Golf Ass'n v. Arroyo Software Corp.*, 69 Cal. App. 4th 607 (1999) ..................................... 13

*Williams v. Wraxall*, 33 Cal. App. 4th 120 (1995) ....................................................... 12

*Zumbrun v. Univ. of Southern Ca.*, 25 Cal. App. 3d 1 (1972)................................................. 11, 12

**OTHER AUTHORITIES**

Comment, *Development in the Law, Competitive Torts*, 77 Harv. L. Rev. 888 (1964) ............... 10

1    Plaintiff First Advantage Background Services Corp. ("First Advantage") submits this

2  memorandum of law in opposition to Defendant Private Eyes, Inc.'s ("PEI") Amended Motion for

3  Leave to File a Third Amended Counterclaim.

4  **I.    INTRODUCTION**

5    This case has been pending for fourteen months.  In that time, PEI has filed a total of five

6  different actual or proposed Counterclaims:  an original Counterclaim, a First Amended

7  Counterclaim ("FAC"), Second Amended Counterclaim ("SAC"), and two different versions of a

8  proposed Third Amended Counterclaim ("TAC 1" and "TAC 2").  In its prior Orders, the Court

9  dismissed large portions of the original Counterclaim and the FAC, but twice allowed PEI leave to

10  further amend its claims.  In the midst of the briefing on First Advantage's motion to dismiss the

11  SAC, PEI sought permission to file TAC 1 to add claims to the SAC.  PEI has now withdrawn the

12  proposed TAC 1, conceding that it suffered from multiple legal defects.  At the same time, PEI

13  seeks leave to file TAC 2 in order to correct more admitted defects in TAC 1.  Notably, none of

14  PEI's four actual or proposed amendments to its original Counterclaim have been based upon the

15  alleged discovery of new facts.  Rather, all have been based on the same events first alleged by PEI

16  in June 2007.

17    Rule 15 gives this Court broad discretion to allow amendment "where justice so requires."

18  First Advantage respectfully submits that justice does <u>not</u> require that a party who has already had

19  three chances to amend its pleadings be given a fourth chance, particularly where the underlying

20  facts have not changed and where the proposed fourth amendment merely adds supplemental claims

21  for relief based on the same conduct for which PEI already seeks millions in damages under other

22  legal theories.  On the contrary, justice requires that First Advantage be protected from the

23  unnecessary costs and inordinate delay that it has already suffered in responding to PEI's four prior

24  counterclaims.  Thus, PEI's motion for leave to amend should be denied based on PEI's undue delay

25  in bringing its fifth proposed amendment, and the prejudice to First Advantage from further delay

26  and expense in resolving this matter.

27

28

-1-
**Memorandum of Points and Authorities in Opposition to Counterclaimant Private Eyes, Inc.'s Amended Motion
for Leave to File a Third Amended Counterclaim**

CASE NO. 07-cv-02424 SC

1    PEI's motion for leave to amend its Counterclaim for a fourth time also should be denied

2    because many of the proposed causes of action <u>still</u> fail to state a claim.  PEI's claim for breach of

3    contract (First Count) fails in part because it alleges that First Advantage breached a "term" of the

4    contract that simply does not exist as such in it.  PEI's revised claim for intentional interference with

5    prospective economic relations (Fifth Count) fails because PEI still has not stated a claim for trade

6    libel.  PEI's revised claim for fraud (Sixth Count) fails because PEI has not alleged any legal

7    causation between the alleged fraudulent statement and its purported damages.  Similarly, PEI's

8    newly articulated claim for common law misappropriation or unfair competition (Tenth Count) fails

9    because the payment and invoicing procedures at issue are not admittedly not confidential, nor has

10   PEI stated how the alleged disclosure of its supposedly "confidential" (but yet commonly-known)

11   invoicing and payment procedures injured it.

12        Because PEI has unduly delayed in attempting to add claims to its Counterclaim; because it

13   has repeatedly failed to correct deficiencies in prior versions of the Counterclaim despite express

14   direction from the Court; because of the undue prejudice to First Advantage from the continued

15   delay and increased expense occasioned by PEI's unending amendments; and because PEI's most

16   recent attempt at amendment still contains substantial legal deficiencies; First Advantage

17   respectfully requests that the Court exercise its broad discretion to deny the proposed TAC 2, rule

18   on the sufficiency of the SAC as the current live pleading in the case and allow the parties to finally

19   move toward a resolution on the merits.

20   **II.     STATEMENT OF THE ISSUES TO BE DECIDED**

21        1.     Whether this Court should deny PEI's amended motion for leave to file the proposed

22   TAC 2 because of PEI's undue delay and the undue prejudice to First Advantage.

23        2.     Whether PEI's proposed First Count is futile in part because it alleges breach of a

24   term that was not included in either the March 29, 2002 letter of agreement or October 2003

25   agreement.

26        3.     Whether PEI's proposed Fifth Count is futile in part because the supporting claim of

27   trade libel is deficient in that PEI has not alleged the disparagement of its goods and services.

28

-2-
**Memorandum of Points and Authorities in Opposition to Counterclaimant Private Eyes, Inc.'s Amended Motion
for Leave to File a Third Amended Counterclaim**

1       4.     Whether PEI's proposed Sixth Count is futile in part because fails to state a claim or

2   plead a claim for fraud with sufficient particularity.

3       5.     Whether PEI's proposed Tenth Count is futile in part because it fails to state a claim.

4   **III.    PROCEDURAL BACKGROUND**

5       First Advantage commenced this action in May 2007 for breach of contract. PEI filed its

6   original Counterclaim on June 22, 2007, asserting eleven separate causes of action: (1) breach of

7   written contract; (2) breach of oral contract; (3) unjust enrichment, (4) intentional interference with

8   contractual advantage, (5) intentional interference with prospective economic advantage; (6) fraud -

9   false promise I; (7) fraud - false promise II; (8) fraud - intentional misrepresentation; (9) unfair

10  trade practices; (10) account stated; and (11) open book account. *See* Document No. 12. After First

11  Advantage moved to dismiss the fourth through ninth causes of action, this Court dismissed the

12  fifth, sixth and seventh causes of action without prejudice in its September 5, 2007 order (the

13  "September 2007 Order"). Document No. 30 at 11:8-14. This Court also dismissed the eighth and

14  ninth causes of action with prejudice. *Id*.

15      PEI then filed the FAC, in which it attempted to re-allege the fifth, sixth and seventh causes

16  of action raised in the original Counterclaim. Document No. 31. First Advantage moved to dismiss

17  the FAC for failure to cure the defects identified by the September 2007 Order.

18      In its March 5, 2008 order (the "March 2008 Order"), this Court dismissed the FAC's fifth

19  cause of action for intentional interference with prospective economic advantage with prejudice to

20  the extent it was based on misappropriation of a trade secret and a breach of confidence. Document

21  No. 46 at 4:3-10:4, 12:23-13:7. To the extent that the claim was based on trade libel, this Court

22  granted PEI leave to amend to assert facts sufficient to establish the alleged trade libel. *Id*. at 10:5-

23  12:21, 12:23-13:7. This Court also dismissed the sixth cause of action for fraud with prejudice to

24  the extent that it was based on an alleged false promise not to solicit, but found that PEI had

25  sufficiently alleged a fraud claim for a false promise not to disclose confidential information so long

26  as such information did not arise to the level of a trade secret. *Id*. at 13:8-24:5. In addition, this

27

28

-3-

**Memorandum of Points and Authorities in Opposition to Counterclaimant Private Eyes, Inc.'s Amended Motion for Leave to File a Third Amended Counterclaim**

CASE NO. 07-cv-02424 SC

1   Court dismissed the seventh cause of action for promissory fraud in its entirety with prejudice. *Id.*

2   at 24:6-27:1.

3          PEI then filed the SAC, which was nearly identical to the FAC and contained causes of

4   action that had been dismissed with prejudice. Document No. 47. Contrary to the Court's March

5   2008 Order, PEI also introduced a new independent wrongful act supporting its fifth cause of action

6   for intentional interference with prospective economic advantage. *Id.* First Advantage moved to

7   dismiss and strike portions of the SAC for continuing legal insufficiency and for being in violation

8   of the March 2008 Order. This motion is currently pending before the Court.

9          During the parties' briefing on the validity of the SAC, PEI filed a motion for leave to file

10  TAC 1. Shortly thereafter, PEI retained new counsel. PEI subsequently withdrew the proposed

11  TAC 1, citing legal deficiencies in that pleading, and now seeks leave to file TAC 2. In its

12  proposed TAC 2, PEI seeks to bolster its claims for intentional interference with prospective

13  economic advantage (Fifth Count) and fraud (Sixth Count). It also seeks to assert a claim for

14  violation of the CUTSA (Ninth Count) and for common law unfair competition (Tenth Count).

15         Discovery in this case will close on October 8, or approximately 60 working days from now.

16  Trial is set for December 8, 2008. Document No. 45.

17  **IV.    ARGUMENT**

18         The Ninth Circuit has identified four factors relevant to whether a motion for leave to amend

19  a pleading should be denied: undue delay, bad faith, prejudice to the opponent and whether the

20  proposed amendment would be futile. *Loehr v. Ventura Co. Comm. College Dist.*, 743 F.2d 1310,

21  1319 (9th Cir. 1984) . The court also can consider whether the movant has repeatedly failed to cure

22  deficiencies in previously allowed amendments. *See McAfee v. Ca.*, No. 1:07-cv-00577 OWW

23  GSA, 2008 WL 1901338, at *3 (E.D. Cal. April 28, 2008) *quoting Forman v. Davis*, 371 U.S. 178,

24  182 (1962). If, after examining these factors, "the district court has 'a substantial reason to deny the

25  motion,'" the court will deny leave to amend a pleading. *Roderick v. Mazzetti & Assocs., Inc.*, No.

26  C 04-2436 MHP, 2006 WL 1883328, at *3 (N.D. Cal. July 7, 2006) *citations omitted*.

27

28

---

-4-

**Memorandum of Points and Authorities in Opposition to Counterclaimant Private Eyes, Inc.'s Amended Motion for Leave to File a Third Amended Counterclaim**

1        **A.        PEI Has Unduly Delayed Asserting Its New Claims**

2        PEI filed its first counterclaim over a year ago, in June 2007.  In this, its fourth attempt at

3    amending that initial Counterclaim, PEI seeks to assert an additional claim for fraud, as well as new

4    claims for common law unfair competition and violation of CUTSA.  PEI does not contend that it

5    only recently learned of the facts supporting these claims; indeed, many of these facts have been

6    included in PEI's earlier pleadings.

7        PEI's motion for leave to amend does not explain why it failed to include these new claims

8    in its earlier amendments, particularly where they are based on facts previously alleged.  Neither

9    does the record reflect any likely explanation for this extended lapse.  Indeed, even if PEI did not

10   for some reason independently discern a basis for a CUTSA claim when it filed its original

11   Counterclaim, this Court very plainly alerted PEI to the potential availability of such a claim nine

12   months ago, in its September 2007 Order.  *See also* Document No. 30 at 10:23-11:5.

13       Under these circumstances, PEI's delay is undue.  The delay is particularly undue because

14   the facts supporting the proposed claims have been available to PEI since before it filed its first

15   counterclaim and PEI has given no reason for their exclusion from the earlier counterclaims.  *See In*

16   *re Fritz Cos. Secs. Litig.*, 282 F. Supp. 2d 1105, 1110 (N.D. Cal. 2003).  "Courts do not look

17   favorably upon the assertion of new legal theories, when the factual basis of those legal theories was

18   known to the party for a significant amount of time prior to filing a motion for leave to amend."

19   *Edwards Lifesciences LLC v. Cook Inc.*, No. C 03-0317 JSW, 2008 WL 913328, at *2 (April 2,

20   2008) (citation omitted); *see Chodos v. West Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) (court

21   did not abuse its discretion in denying leave to file a second amended complaint when the facts had

22   been available to the plaintiff since before he filed the first amended complaint).

23       Neither is the undue and unreasonable nature of the delay here mitigated by the appearance

24   of new counsel, as PEI may attempt to argue.  First Advantage readily acknowledges that new

25   counsel is not responsible for the four prior versions of PEI's counterclaim.  However, the conduct

26   of PEI's several counsel is not at issue on this motion for leave to amend, just as it is not First

27   Advantage's counsel who has suffered from the delay and expense caused by PEI's unending search

28

-5-

**Memorandum of Points and Authorities in Opposition to Counterclaimant Private Eyes, Inc.'s Amended Motion**
**for Leave to File a Third Amended Counterclaim**

CASE NO. 07-cv-02424 SC

1  for a well-pleaded counterclaim. Rather, it is the conduct of and the prejudice to the *parties*, by

2  whomever represented, that is relevant.

3  Because PEI has inexplicably and unduly delayed its attempt to bring its claims for fraud,

4  unfair competition, and violation of the CUTSA, this Court should deny PEI's request for leave to

5  file TAC 2.

6  **B.    PEI Has Repeatedly Failed to Correct Deficiencies In Prior Amendments**

7  Since filing its first counterclaim, PEI has sought to amend the counterclaim four times. Yet

8  as of today, PEI has not filed a counterclaim that has withstood -- or, by PEI's own admission, could

9  have withstood -- a motion to dismiss. PEI's repeated failures to correct deficiencies in its prior

10  amendments is even more striking because this Court has taken pains in its prior Orders to point out

11  what PEI should do to correct these deficiencies.

12  For example, PEI failed to state a claim for fraud based upon First Advantage's alleged false

13  promise not to solicit business from CCE and false promise to go through PEI to bill CCE even

14  though this Court granted it two opportunities to do so. Document No. 46 at 17, 24. Similarly, the

15  SAC re-alleged two causes of action that this Court dismissed with prejudice in its March 2008

16  Order. PEI also ignored the Court's instructions by alleging a new wrongful act in the SAC to

17  support its claim for intentional interference with prospective economic advantage, even though the

18  Court's March 2008 Order expressly stated that "Private Eyes may not, in amending its pleading,

19  add new wrongful acts as possible foundations for the intentional interference claim." Document

20  No. 46 at 12-13.

21  In *Grosz v. Lassen Cmty. Coll. Dist.*, No. CIV. S-07-697 FCD/CMK, 2008 WL 2119923, at

22  *12-13 (E.D. Cal. May 20, 2008), the court dismissed plaintiff's third amended complaint and

23  denied leave to amend the complaint a fourth time. In language strikingly reminiscent of the facts

24  and circumstances here, the *Grosz* court stated:

25  > [P]laintiffs have failed four times over a one-year period to properly plead
   > their claims for relief. The court, in two prior orders, dismissed plaintiffs'
26  > complaint . . . . In granting plaintiffs leave to amend, the court provided
   > plaintiffs ample guidance for curing the deficiencies in their complaints.
27  > However, plaintiffs ignored the court's instruction and failed, again, to
   > plead the essential facts necessary to state their claims. Granting leave to
28

-6-
**Memorandum of Points and Authorities in Opposition to Counterclaimant Private Eyes, Inc.'s Amended Motion for Leave to File a Third Amended Counterclaim**

amend in this instance would, therefore, likely prove futile and cause undue delay in the court's docket. Plaintiff's [third amended complaint] frustrates the aim of the federal rules to bring about just, speedy, and inexpensive resolutions of cases. Plaintiffs' complaints are obviously not readily curable with guidance from the court, as plaintiffs have been given several opportunities to amend with court instruction and still fail to allege substantive claims for relief. ...Finally, plaintiffs' complaint prejudices defendants. . . . Defendants have a right to be free from costly and harassing litigation, such as plaintiffs' four failed attempts to state a claim.

*Id* at \*13. *Accord In re Textainer P'ship. Secs. Litig.*, No. C-05-0969, 2007 WL 108320, at \*10 (N.D. Cal. Jan. 10, 2007) (dismissing portions of a fourth amended complaint and denying leave to re-plead); *Nicolosi Distrib. Co. v. Finishmaster, Inc.*, No. C 99-0927 MJJ, 2000 WL 41222, at \*4 (N.D. Cal. Jan. 13, 2000) (dismissing a second amended complaint and denying leave to file a third amended complaint). Similarly, this Court should refuse to grant PEI yet another chance to cure the deficiencies in its counterclaim when it has had ample opportunity to do so.

### C.    PEI's Proposed Amendments Prejudice First Advantage

For the past fourteen months, this case has been mired in motion practice while PEI attempts to plead its counterclaims. PEI's latest attempt is not based upon new or different facts. Indeed, it only adds additional claims for relief that are based on the same conduct for which PEI already seeks millions in damages on other legal theories. PEI would not be prejudiced if this Court denied this motion to amend and ruled upon the sufficiency of the SAC, allowing the parties to finally advance this case.

By contrast, First Advantage is significantly prejudiced by the latest proposed amendments. Courts routinely find prejudice where, as here, a litigant has been granted numerous opportunities to cure the deficiencies in its claim, but has failed to do so. *See Grosz*, 2008 WL 2119923, at \*13 (noting that parties "have a right to be free from costly and harassing litigation, such as plaintiffs' four failed attempts to state a claim."); *Johnson v. Pacific Gas Elec.*, No. C 95-1374 MEJ, 1997 WL 273854, at \*7 (N.D. Cal. May 13, 1997); *see also Mir v. Fosburg*, 646 F.2d 342, 347 (9th Cir. 1980). PEI has been granted three chances to state its claims. It should not be granted another.

Moreover, because PEI has repeatedly changed its theories of recovery, First Advantage "has been placed in the precarious position of guessing the substance of [PEI's] claims for relief." *Grosz*, 2008 WL 2119923, at \*13. This has prevented First Advantage from taking any meaningful

-7-

**Memorandum of Points and Authorities in Opposition to Counterclaimant Private Eyes, Inc.'s Amended Motion for Leave to File a Third Amended Counterclaim**

1   written discovery or depositions to move this case forward.  Discovery closes in approximately 60

2   working days and trial is set to commence on December 8, 2008.  Permitting PEI to amend its

3   counterclaims a fourth time will result in additional motion practice, expense and delay.  Indeed, it

4   will be virtually impossible to conduct and complete discovery on a $5 million counterclaim by

5   October 8, 2008.

6       Because this Court has granted PEI multiple chances to bring its claims and because

7   granting the motion will prevent this case from moving forward expeditiously, this Court should

8   exercise its broad discretion to deny PEI's motion to amend.

9       **D.**     **PEI's Proposed Amendments Are Futile**

10          **1.**    **Count One Alleges That First Advantage Breached A Contractual
                      "Term" That Does Not Exist In The Contract**

11

12      In the first count of the proposed TAC 2, PEI claims that First Advantage breached a "term"

13  of the parties' agreements that simply does not appear as such in the contracts.  PEI alleges that First

14  Advantage breached the 2002 letter of understanding and 2003 agreement by "failing to perform the

15  services it subcontracted to perform in a manner that was satisfactory to CCE."  TAC 2 at ¶ 33.  PEI

16  also alleges that "satisfactory performance was an explicit and implied term of both the 2002 letter

17  of understanding and 2003 agreement.  *Id.*  These allegations are belied by the agreements

18  themselves.

19      The 2003 agreement does not include this "term" -- it only addresses the use of and access to

20  PEI's confidential information.  TAC 2, Ex. 3.  Similarly, the 2002 letter of understanding states

21  only that: "The parties realize that the success of the Coca-Cola relationship is dependent on the

22  satisfactory performance of both of the service components of the contract."  TAC 2, Ex. 2.  This is

23  merely a prefatory background statement, not an affirmative obligation.  Neither party pledges to

24  the other that it will provide "satisfactory performance," whatever that vague phrase may be

25  interpreted to mean.  Neither does the letter of understanding say that "satisfactory performance" of

26  services rendered to Coca-Cola is essential to the parties' own contract.  It is merely a stray remark

27  in a letter agreement that contains a number of similar background statements, stating that the

28  satisfactory performance of the services that the parties will render to Coca-Cola is necessary to the

-8-
**Memorandum of Points and Authorities in Opposition to Counterclaimant Private Eyes, Inc.'s Amended Motion
for Leave to File a Third Amended Counterclaim**

CASE NO. 07-cv-02424 SC

1    "success" (whatever that may mean) of the "Coca-Cola relationship" (whatever *that* may mean).  A

2    "realization" is not an undertaking.  Even if it were, this "realization" is too vague to allow

3    enforcement.

4            In further proof of this, the TAC 2 indicates that the 2002 letter of understanding also

5    provides that "Private Eyes reserves the right to cancel the subcontract with EIS if Coca-Cola

6    expresses dissatisfaction with the performance of EIS and EIS is unable to correct any performance

7    deficiencies within 30 days of formal or informal notice from Coca-Cola of such dissatisfaction."

8    *Id.*  PEI, however, does not allege that CCE expressed dissatisfaction with First Advantage's

9    performance and that First Advantage was unable to correct any performance deficiencies, or that it

10   ever exercised its right to cancel the subcontract on that basis.  Rather, the complaint only vaguely

11   alleges that, in September 2006, CCE informed PEI that it would be assigning all of the services to

12   different vendors and PEI believes CCE made this decision because "(1) it was not satisfied with the

13   quality and timeliness of the services that PEI subcontracted to [First Advantage] and (2) it was

14   wary of the friction between PEI and [First Advantage], as a result of [First Advantage's] direct

15   solicitation of CCE services."  TAC 2 at ¶ 24.

16           Because the contracts to which PEI refers do not require "satisfactory performance," or

17   indeed even define it, and because PEI does not adequately plead the existence of "unsatisfactory"

18   performance, First Advantage cannot be held liable for this portion of PEI's proposed TAC 2.

19                   **2.      The Fifth Count Does Not State A Claim For Trade Libel**

20           This Court permitted PEI in its March 2008 Order to restate its claim for intentional

21   interference with prospective economic advantage to the extent it could articulate a supporting

22   claim for trade libel.  In the TAC 2, PEI has added facts to the portions of its claim describing why

23   the alleged statement is injurious and identifying the special damages.  *Compare* TAC 2 at

24   ¶ ¶ 56(a)(1), (8) and SAC (Document No. 47) at ¶ ¶ 52(c)(2)(8).  These revisions fall short because

25

26

27

28

**Memorandum of Points and Authorities in Opposition to Counterclaimant Private Eyes, Inc.'s Amended Motion for Leave to File a Third Amended Counterclaim**

CASE NO. 07-cv-02424 SC

1  PEI still has not alleged that First Advantage made a statement disparaging the quality of its product

2  or services.[1]

3      "Trade libel has [] been defined as encompassing all false statements concerning the quality

4  of services or product of a business which are intended to cause that business financial harm and in

5  fact do so." *Leonardini v. Shell Oil Co.*, 216 Cal. App. 3d 547, 572 (1989) *citing* Comment,

6  *Development in the Law, Competitive Torts*, 77 Harv. L. Rev. 888, 893 (1964). By contrast, an

7  action for defamation is designed to protect the plaintiff's reputation and the judgment vindicates

8  that reputation. *Leonardini*, 216 Cal. App. 3d at 573; *see Aetna Cas. and Surety Co. v. Centennial*

9  *Ins. Co.*, 838 F.2d 346, 351 (9th Cir. 1988); *Barnes-Hind, Inc. v. Superior Court of Santa Clara*

10  *Cty.*, 181 Cal. App. 3d 377, 381 (1986) ("Trade libel is generally distinguished from common law

11  defamation and is said to connote 'an intentional disparagement of the quality of property, which

12  results in pecuniary damage to plaintiff.' Libel per se . . . is based in common law defamation, and

13  thus relates to the standing and reputation of the businessman as distinct from the quality of his or

14  her goods.") *citations omitted.*

15      PEI has not cited any authority to support its position that statements made about an

16  individual employee can constitute trade libel. Moreover, the alleged statement that Sandra James

17  "is a liar and cannot be trusted" does not relate directly or indirectly to any goods or services

18  provided by PEI, or even to "the business" of PEI as a corporate entity. This alleged statement

19  focuses solely on the personal qualities of Sandra James, a non-party who happens to work for PEI.

20  PEI's allegations that PEI's customers "rely on the quality and integrity of PEI, as a Woman Owned

21  Business and Sandra James, as the woman in charge of PEI" cannot convert this personal criticism

22  into actionable trade libel. TAC 2 at ¶ 56(a)(2).

23      This Court should deny PEI's amended motion to file a third amended counterclaim.

24

25  _____

26  [1]    First Advantage incorporates its memoranda in support of its Motion to Dismiss the Second

27  Amended Counterclaim in their entirety. Document Nos. 53, 74.

28
-10-
**Memorandum of Points and Authorities in Opposition to Counterclaimant Private Eyes, Inc.'s Amended Motion for Leave to File a Third Amended Counterclaim**

CASE NO. 07-cv-02424 SC

3.    **The Sixth Count Does Not Adequately Plead A Claim For Fraud**

Once again, PEI has changed the theory of its fraud claim.  It now alleges that, in 2005, PEI was fraudulently induced into continuing to do business with First Advantage because First Advantage promised it would not disclose PEI's "confidential and proprietary information to CCE," but never intended to honor this promise.  Specifically, PEI alleges that First Advantage improperly disclosed to CCE that: (a) it would charge less than PEI and (b) there was a twelve day delay between the time when CCE paid PEI and PEI paid First Advantage.  These new averments fail to state a claim for fraud.  They also fail to plead each element of fraud with the required specificity.

To state a claim for fraud, PEI "must plead and prove in full, factually and specifically, all of the elements of the cause of action." *Conrad v. Bank of Am.*, 45 Cal. App. 4th 133, 156 (1996) (citation omitted); *see Frome v. Renner*, No. 97 CIV 5641, 1997 WL 33308718, at *1 (N.D. Cal. Oct. 1, 1997).  That is, PEI must specifically plead (1) a misrepresentation; (2) knowledge of falsity; (3) intent to defraud; (4) justifiable reliance; and (5) resulting damage.  *Conrad v. Bank of Am.*, 45 Cal. App. 4th 133, 156 (1996) (citations omitted); *see Service by Medallion, Inc. v. Clorox Co.*, 44 Cal. App. 4th 1807, 1816 (1996).  Moreover, under California law, a complete causal relationship between the alleged fraud and damages is required.  *City Solutions, Inc. v. Clear Channel Comms., Inc.*, 365 F.3d 835, 840 (9th Cir. 2004); *see Frome*, 1997 WL 33308718, at *2 ("a plaintiff claiming fraud must plead and prove 'the detriment proximately caused' by the defendant's conduct.  Plaintiff must plead both the damage itself and its causal connection to [the] misrepresentation."); *Lesperance v. North Am. Aviation*, 217 Cal. App. 2d 336, 345 (1963).

For example, the court in *Zumbrun v. Univ. of Southern Ca.*, 25 Cal. App. 3d 1, 12-13 (1972), found that plaintiff failed to state a claim for fraud where she alleged that the failure of a professor to give all of his lectures in a course and to give a final examination deprived plaintiff of her education and, among other things, resulted in lost income.  Reasoning that "We are not told how the failure to complete 'Sociology 200' as originally scheduled prevented plaintiff from consummating the purposes for which she was enrolled as a student," the court held that the plaintiff failed to plead a cause and effect relationship between the alleged fraud and damages

1   sought.  *Id.*; *accord*, *In re Wash. Trust Deed Serv. Corp.*, 224 B.R. 109, 113 (9th Cir. BAP 1998);

2   *Williams v. Wraxall*, 33 Cal. App. 4th 120 (1995).

3          Here, PEI alleges that First Advantage promised it in June 2005 that First Advantage "would

4   never again disclose confidential and proprietary information to CCE."  TAC 2 at ¶ 61(a).  PEI also

5   alleges that, in reliance upon this promise, it agreed to continue to do business with First Advantage.

6   TAC 2 at ¶ 62.  PEI further alleges that First Advantage did not intend to perform the promise at the

7   time it was made.  TAC 2 at ¶ 63.  PEI alleges that First Advantage did not perform its promise not

8   to disclose PEI's "confidential and proprietary information" because, in March 2006, First

9   Advantage revealed the following to CCE:

10
11          ●       First Advantage would charge less than PEI for drug testing, alcohol tests and
            exams and

12          ●       CCE paid PEI on the 10th of each month and PEI paid First Advantage on the
            22nd of each month.
13

14   TAC 2 at ¶ 67.

15          PEI alleges that, although CCE was generally aware of PEI's invoicing practices and its

16   payment and invoicing practices were readily known within the industry, CCE did not know about

17   the twelve day delay in payment.  *Id.*  PEI avers that, as a result of this disclosure of "proprietary

18   and confidential information," CCE obtained "unduly favorable concessions from PEI that had the

19   effect of reducing, or eliminating, PEI's profits."  TAC 2 at ¶ 68.  PEI further alleges that, as a result

20   of First Advantage's disclosures, it suffered damages in the amount of $5 million.  TAC 2 at ¶ 70.

21          Reduced to its essence, PEI asserts that it was fraudulently induced to continue to do

22   business with First Advantage because First Advantage falsely promised it would not reveal PEI's

23   "proprietary and confidential information."  The information that First Advantage is alleged to

24   reveal, however, is neither proprietary nor confidential.  First Advantage's statements about what it

25   would charge for its services and stating that it would charge less than CCE cannot be confidential

26   or proprietary to PEI.  Similarly, PEI admits that general information about its invoicing and

27   payment procedures were readily known to CCE and within the industry.

28

-12-
**Memorandum of Points and Authorities in Opposition to Counterclaimant Private Eyes, Inc.'s Amended Motion
for Leave to File a Third Amended Counterclaim**

CASE NO. 07-cv-02424 SC

1    PEI also alleges that, as a result of these disclosures, CCE obtained unduly favorable

2    concessions from PEI that had the effect of reducing, or eliminating, PEI's profits.  TAC 2 at ¶ 68.

3    PEI, however, does not identify the concessions obtained by CCE.  PEI also fails to describe how

4    the disclosure of the twelve day lag in payment harmed PEI.   Because PEI has not adequate pled a

5    "cause and effect" between the fraud and the damages sought, it has failed to state a claim for fraud.

6              **4.        PEI Has Not Stated A Claim For Common Law Misappropriation**

7              In its March 2008 Order, this Court held that CUTSA preempts claims based upon a

8    misappropriation of trade secrets, but does not preempt those claims based upon a misappropriation

9    of confidential information that is not a trade secret.   Document No. 46 at 19-20.  Seeing a window

10   of opportunity, PEI now seeks to assert a claim for common law misappropriation by alleging that

11   First Advantage improperly disclosed confidential information to CCE that is not a trade secret.

12   This attempt is unsuccessful because PEI's claims of confidentiality ring hollow and PEI has not

13   stated any facts supporting its conclusory statement that it used substantial time, skill or money to

14   develop the payment and invoicing procedures.  Further, PEI has not stated any facts showing how

15   the alleged disclosures injured it.

16   
17             To state a claim for misappropriation under California law, PEI must plead that (a) it

18   invested substantial time, skill or money in developing the property; (b) First Advantage

19   appropriated and used the property at little or no cost to it; (c) First Advantage's appropriation and

20   use of the property was without the authorization or consent of PEI; and (d) PEI was injured by

21   First Advantage's conduct.  *U.S. Golf Ass'n v. Arroyo Software Corp.*, 69 Cal. App. 4th 607, 618

22   (1999); *see Balboa Ins. Co. v. Trans Global Equities*, 218 Cal. App. 3d 1327, 1342 (1990).  Courts

23   have described common law misappropriation as  "one of a number of doctrines subsumed under

24   the umbrella of unfair competition.  It is normally invoked in an effort to protect something of value

25   
26   
27   
28   

-13-
**Memorandum of Points and Authorities in Opposition to Counterclaimant Private Eyes, Inc.'s Amended Motion
for Leave to File a Third Amended Counterclaim**

CASE NO. 07-cv-02424 SC

not otherwise covered by copyright law, trade secret law, breach of confidential relationship or some other form of unfair competition." *Id.*

Here, PEI alleges that, in March 2006, First Advantage revealed the following to CCE:

- First Advantage would charge less than PEI for drug testing, alcohol tests and exams and

- CCE paid PEI on the 10th of each month and PEI paid First Advantage on the 22nd of each month.

TAC 2 at ¶ 92.   PEI alleges that, although CCE was generally aware of PEI's invoicing practices and the fact that there was a delay in payment to First Advantage, CCE did not know about the twelve day delay in payment. *Id.*   PEI avers that it invested substantial time, skill and money in developing its invoicing and payment procedures and that First Advantage improperly misappropriated PEI's invoicing and payment procedures.   TAC 2  at ¶ ¶ 93,94.   PEI also avers that it has been injured by First Advantage's conduct because the disclosure of the invoicing and payment procedures to CCE caused "CCE to seek unduly favorable concessions from PEI, which in turn had the effect of reducing, or eliminating PEI's profits."   TAC 2  at ¶ 96.

As an initial matter, PEI has not stated any facts that could support a finding that the exact sequencing of payment was something of value to PEI.   Moreover, PEI's claim that its invoicing and payment procedures are confidential strains credulity.   PEI admits that its invoicing and payment procedures were not only known to CCE, but were readily known within the background-check industry.   Mem. at 9.   ("CCE was aware of PEI's invoicing procedures (information that is readily known in the background-check industry . . .").   Nonetheless, PEI contends that the specific information about the twelve day delay between the time PEI received payment from CCE and made payment to First Advantage was confidential.   It is logically impossible for something to be readily known and confidential at the same time.

Further, PEI's bold assertion that it invested substantial time, skill and money to develop the twelve day delay between the time PEI received payment is conclusory and unsupported.   It is common sense that, when a subcontractor is involved in a transaction, that there will be a delay of payment between the general contractor and the subcontractor.   PEI has not stated any facts to

-14-
**Memorandum of Points and Authorities in Opposition to Counterclaimant Private Eyes, Inc.'s Amended Motion for Leave to File a Third Amended Counterclaim**

CASE NO. 07-cv-02424 SC

1  support its claim that it invested a substantial amount of time, skill and money to arrive at a twelve

2  day delay in payment, rather than an eleven day or thirteen day delay in payment.

3       PEI also alleges in a conclusory fashion that, as a result of the disclosure of the twelve day

4  delay in payment, CCE sought concessions from PEI which then had the effect of eliminating or

5  reducing PEI's profit.  PEI, however, has not stated any facts which support this allegation.  It has

6  not identified the concessions sought by PEI or how those concessions directly related to the

7  disclosure of the twelve day delay in payment.

8       Because PEI cannot state a claim for common law unfair competition, the Court should deny

9  its amended motion for leave to file the third amended counterclaim.

10 **V.    CONCLUSION**

11      For the past fourteen months, First Advantage has been trapped in expensive and lengthy

12 motion practice while PEI tries to sort out its counterclaims.  During this time, First Advantage has

13 been unable to either frame a defense to or take meaningful discovery on PEI's ever-changing

14 kaleidoscope of legal theories.  First Advantage respectfully submits that this Court has been more

15 than liberal in allowing PEI three strikes at stating a proper Counterclaim, and that justice does not

16 require granting PEI a fourth or fifth strike -- particularly one that still contains substantial legal

17 deficiencies.  PEI's amended motion for leave to file a third amended counterclaim should be

18 denied.

19

20

21 DATED:  July 11, 2008                    BUCHANAN INGERSOLL & ROONEY LLP

22

23                                                          /s/ Craig D. Mills

24                                      By:    CRAIG D. MILLS
                                              SAMANTHA L. SOUTHALL
25                                             CYRIL J. DANTCHEV
                                              Attorneys for Plaintiff and Counter-Defendant
26                                            FIRST ADVANTAGE BACKGROUND
                                              SERVICES CORP.

27

28

-15-

**Memorandum of Points and Authorities in Opposition to Counterclaimant Private Eyes, Inc.'s Amended Motion for Leave to File a Third Amended Counterclaim**